1   ELIZABETH STAGGS WILSON, Bar No. 183160
    estaggs-wilson@littler.com
2   MICHELLE RAPOPORT, Bar No. 247459
    mrapoport@littler.com
3   BROOKE DEARDURFF, Bar No. 292433
    bdeardurff@littler.com
4   LITTLER MENDELSON, P.C.
    633 West 5th Street
5   63rd Floor
    Los Angeles, CA  90071
6   Telephone:  213.443.4300
    Facsimile:   213.443.4299
7
8   Attorneys for Defendants
    THE GEO GROUP, INC. and GEO
9   CORRECTIONS AND DETENTION, LLC

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12  EMANUEL SANTIAGO, an              Case No.  5:16-CV-02263 – DOC - KK
    individual,
13
                Plaintiff,            **MEMORANDUM OF POINTS AND**
14                                    **AUTHORITIES IN SUPPORT OF**
          v.                          **DEFENDANTS' NOTICE OF**
15                                    **MOTION AND MOTION FOR**
    THE GEO GROUP, INC., a Florida    **SUMMARY JUDGMENT, OR IN**
16  Corporation dba GEO CALIFORNIA,   **THE ALTERNATIVE MOTION FOR**
    INC.; GEO Corrections and Detention, **SUMMARY ADJUDICATION**
17  LLC; DOES 1 - 10, individuals, and
    DOES, 11 - 20, business entities  *[Filed concurrently with Notice of*
18  inclusive,                        *Motion and Motion; Statement of*
                                      *Uncontroverted Facts & Conclusions of*
19              Defendants.           *Law; Declaration of Michelle Rapoport;*
                                      *Declaration of James Janecka;*
20                                    *Compendium of Evidence; [Proposed]*
                                      *Judgment Granting Defendants' Motion]*
21
22                                    **Date:          December 18, 2017**
                                      **Time:          8:30 a.m.**
23                                    **Courtroom:     9D – 9th Floor**

24                                    Trial Date: January 23, 2018
25
26
27
28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ          1.

# TABLE OF CONTENTS

**PAGE**

I.  SUMMARY ................................................................................................ 1

II. STATEMENT OF FACTS ...................................................................... 2

    A.  About GEO and The Adelanto Detention Facility .................................... 2

    B.  On August 5, 2015, Plaintiff Failed To Secure A High Security Detainee, Who Then Gained Access Through Four Doors And Nearly Walked Out Of The Facility ..................................................... 3

    C.  GEO Made The Decision To Terminate Both Plaintiff and Officer Marquez Because Of The August 5, 2015 Incident ............................... 4

    D.  Officer Marquez Commenced a Protected Leave of Absence Immediately Following the Attempted Escape And Was Terminated Upon Conclusion Of Her Leave .......................................... 5

    E.  Plaintiff Concedes Officer Marquez Was Terminated as a Result of the August 5, 2015 Incident ................................................................... 6

    F.  A Female Officer Was Previously Terminated In Connection With An Attempted Escape From Adelanto .................................................. 6

    G.  GEO  Complies With All Applicable State And Federal Leave Laws ................................................................................................... 6

    H.  GEO's Policy Prohibits Discrimination Based On Any Protected Activity ............................................................................................... 7

    I.  Plaintiff and Officer Marquez both Filed Union Grievances Challenging their Termination ........................................................... 8

    J.  The CBA Defines Just Cause For Termination of Detention Officers ............................................................................................... 8

    K.  GEO's CBA Provides For Meal and Rest Breaks ................................. 9

III. LEGAL ARGUMENT ........................................................................... 9

    A.  Standard for Summary Judgment ......................................................... 9

    B.  Plaintiff's Claim For Gender Discrimination Fails Because He Cannot Make A Prima Facie Case Or Overcome GEO's Legitimate Non-Discriminatory Reason For Its Decision ....................................... 10

        1.  Plaintiff Cannot Show a Causal Connection Between His Gender and Termination ............................................................. 11

        2.  Plaintiff's Employment Was Terminated For A Legitimate, Nondiscriminatory Reason ........................................................ 12

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

i.

1
2

3.    Plaintiff Cannot Establish GEO's Legitimate Business
Reason is Pretextual ................................................................................ 14

C.    Plaintiff Cannot Establish a Claim for Failure to Prevent
Discrimination ...................................................................................... 14

D.    Plaintiff's Wrongful Termination Claim Fails As It Is Derivative
Of His Other Termination-Related Claims ............................................ 15

E.    Plaintiff's Claim For Retaliation In Violation of Labor Code
Section 1102.5 Fails Because He Did Not Engage In A Protected
Activity, And He Cannot Overcome GEO's Legitimate Business
Reason for his Termination .................................................................... 16

F.    Plaintiff's Claims For Failure To Provide Meal And Rest Breaks
Fails Because The CBA Governs Meal and Rest Breaks And
Provides The Exclusive Remedy For Alleged Violations ...................... 17

G.    Plaintiff's Claim For Overtime Compensation Fails ............................. 19

H.    Plaintiff's Claim For Failure To Provide Accurate Itemized Wages
Fails ...................................................................................................... 19

I.    Plaintiff's Claim Regarding Failure To Pay Wages Upon
Termination Fails as a Matter of Law ................................................... 20

J.    Plaintiff's Claim Under Section 204 or 210 Regarding The Alleged
Failure To Establish Regular Paydays Fails .......................................... 20

K.    Plaintiff's UCL Claim Fails Because It is Derivative Claim .................. 21

L.    Plaintiff Cannot Maintain a Claim for Punitive Damages ..................... 21

IV.    CONCLUSION ................................................................................................ 23

20
21
22
23
24
25
26
27
28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Alch v. Super. Ct.*,
122 Cal. App. 4th 339 (2004) .................................................................. 21

*Amaral v. Cintas Corp. No. 2*,
163 Cal. App. 4th 1157 (2008) ............................................................... 20

*Araquistain v. Pacific Gas & Elec. Co.*,
229 Cal.App.4th 227 (2014) ................................................................... 18

*Associated Builders & Contractors v. Local 302 Int'l Bhd. of Elec. Workers*,
109 F.3d 1353 (9th Cir. 1997) ........................................................... 13, 18

*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.*,
122 Cal.App.4th 1004 (2004) ................................................................. 15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................. 9, 10

*Coll. Hosp., Inc. v. Super. Ct.*,
8 Cal. 4th 704 (1994) .............................................................................. 22

*Dothard v. Rawlinson*,
433 U.S. 321 (1977) ................................................................................ 13

*Douglas v. Anderson*,
656 F.2d 528 (9th Cir. 1981) .................................................................. 10

*Everson v. Mich. Dep't of Corr.*,
391 F.3d 737 (6th Cir.2004) .................................................................... 13

*Foster v. Arcata Assocs., Inc.*,
772 F.2d 1453 (9th Cir. 1985) (overruled on other grounds by,
*Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir.1991)) ......... 12

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) ...................................................................... 10, 13

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

iii.

1
2

3   *Horn v. Cushman & Wakefield Western Inc.,*
4       72 Cal. App. 4th 798 (1999) ................................................................ 10, 14

5   *Kelly-Zurian v. Wohl Shoe Co.,*
6       22 Cal. App. 4th 397 (1994) ....................................................................... 22

7   *Kirby v. Immoos Fire Prot., Inc.,*
8       53 Cal.4th 1244 (2012) .............................................................................. 20

9   *Kobold v. Good Samaritan Reg'l Med. Ctr.,*
        832 F.3d 1024 (9th Cir. 2016) .................................................................... 19
10

11  *Korea Supply Co. v. Lockheed Martin Corp.,*
        29 Cal. 4th 1134 (2003) .............................................................................. 21
12

13  *Martin v. Lockheed Missiles & Space Co.,*
        29 Cal. App. 4th 1724 (1994) ..................................................................... 14
14

15  *McDonnell Douglas Corp. v. Green,*
        411 U.S. 792 (1973) ............................................................................... 10, 14

16  *Moore v. Cal. Dep't of Corr. & Rehab,*
17      2012 WL 5288785 (E.D. Cal. Oct. 25, 2012) ............................................ 14

18  *Morgan v. Regents of the Univ. of Cal.,*
19      88 Cal.App.4th 52 (2008) ........................................................................... 16

20  *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.,*
        103 Cal.App.4th 1021 (2002) ..................................................................... 15
21

22  *Patten v. Grant Union High Sch. Dist.,*
        134 Cal.App.4th 1378 (2005) ..................................................................... 16
23

24  *Real v. Cont'l Grp., Inc.,*
        627 F.Supp. 434 (N.D. Cal. 1986) ......................................................... 21, 22
25

26  *Reinhardt v. Gemini Motor Transp.,*
        869 F. Supp. 2d 1158 (E.D. Cal. 2012) ...................................................... 19
27

28  *Renne v. Servantes,*
        86 Cal. App. 4th 1081 (2001) ..................................................................... 21

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

iv.

*Sanders v. City of Newport*,
   657 F. 3d 772 (9th Cir. 2011) ................................................................. 11

*Smolen v. Deloitte, Haskins & Sells*,
   921 F.2d 959 (9th Cir. 1990) .................................................................... 9

*Sneddon v. ABF Freight Systems*,
   489 F. Supp.2d 1124 (2007) ................................................................... 15

*Steckl v. Motorola, Inc.*,
   703 F.2d 392 (9th Cir. 1983) .................................................................. 14

*Teamsters Local Union No. 117 v. Washington Dep't of Corr.*,
   789 F.3d 979 (9th Cir. 2015.) ................................................................. 13

*Texas Dep't of Cmty. Affairs v. Burdine*
   (1981) 450 U.S. 248 ................................................................... 10, 12, 13

*Tomaselli v. Transamerica Ins.*,
   25 Cal. App. 4th 1269 (1994) ................................................................ 22

*Trujillo v. County Trans. Dist.*,
   63 Cal.App.4th 280 (1998) .................................................................... 15

*TRW, Inc. v. Super. Ct.*,
   25 Cal. App. 4th 1834 (1994) ................................................................ 15

*Wallis v. J.R. Simplot Co.*,
   26 F.3d 885 (9th Cir. 1994) ................................................................... 14

*White v. Starbucks Corp.*,
   497 F. Supp. 2d 1080 (N. D. Cal. 2007) ................................................ 21

*White v. Ultramar, Inc.*,
   21 Cal. 4th 563 (1999) .......................................................................... 22

*Wills v. Super. Ct.*,
   195 Cal.App 4th 143 (2011) ................................................................. 12

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

29 U.S.C. 2612(a) 2614(a) ........................................................................ 11

29 U.S.C. 2615(a)(1) ................................................................................ 11

CAL. CIV. CODE § 3294(a) .................................................................. 21, 22

CAL. CIV. CODE § 3294(b) ........................................................................ 22

CAL. LAB. CODE § 226(e)(2)(B) .............................................................. 20

FMLA ........................................................................................................ 11

Government Code § 12940, subsection (k) ............................................... 14

Government Code § 12940(k) ................................................................... 15

Labor Code Section 203 ........................................................................... 20

Labor Code Sections 204 and 210 ........................................................... 20

Labor Code Section 226 ..................................................................... 19, 20

Labor Code Section 510 ........................................................................... 19

Labor Code Section 512(a) ....................................................................... 18

Labor Code Section 512(e)(2) .................................................................. 18

Labor Code Section 514 ........................................................................... 19

Labor Code Section 1102.5 ................................................................. 16, 17

Labor Code § 1102.5(b) ........................................................................... 16

Labor Management Relations Act Section 301 .............................. 13, 18, 19

**Other Authorities**

CACI No. 3945 .......................................................................................... 23

FED. R. CIV. P. 56 ....................................................................................... 9

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

## I.   SUMMARY

Plaintiff, a former Detention Officer with GEO,[1] was terminated when he failed to secure a federal high-security detainee, who thereafter gained access through locked doors that were opened by another officer and nearly escaped.   Plaintiff claims he "was terminated because of his gender, while another employee, Officer Marquez, who was pregnant at the time, was not treated similarly." However, Plaintiff also concedes that "Officer Marquez was terminated related to the August 2015 incident with detainee Irias.   Geo terminated her at a different time than Officer Santiago because at the time that this happened Officer Marquez was pregnant and she went out on maternity leave the following day.  When she returned after having her baby in May, she was terminated…"

Plaintiff's allegations are self-defeating.  First, he attempts to establish disparate treatment by reference to a single other employee, but he concedes the other employee, Officer Marquez, *was also terminated in connection with the same incident*.  Officer Marquez  requested and qualified for a leave of absence protected by federal and state law immediately after the incident, and before GEO terminated her employment.  As a result, GEO implemented its decision to terminate her employment at the conclusion of her leave.  What differentiates Plaintiff and Officer Marquez (even if Plaintiff could establish they were similarly situated in all other respects with regard to the August 2015 near escape) is her protected leave of absence, not their gender, or Officer Marquez's pregnancy.  Officer Marquez's qualifying condition happened to be related to pregnancy, but the nature of her qualifying condition is coincidental and irrelevant.   A different qualifying condition, unrelated to pregnancy, would have necessarily led to the same result.   Furthermore, Plaintiff cannot establish GEO was motivated to terminate him *because of his gender*.  His claim fails at the

---

[1] "GEO" refers to Defendants GEO Corrections and Detentions, LLC and the GEO Group, Inc.  Plaintiff was employed by GEO Corrections and Detentions, LLC and not the GEO Group, but the term "GEO" is used collectively for ease of reference.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    1.

*prima facie* stage, because there is no link between his gender and termination.

Further, Plaintiff's failure to secure a detainee in the shower, which unquestioningly contributed to the detainee's attempted escape is, quite clearly, a legitimate business reason for his termination. The essence of a Detention Officer's job is to maintain security by ensuring detainees remain secured. GEO was amply justified in terminating his employment, and his gender discrimination claim fails. Plaintiff then dresses the same allegations up as other theories of liability, including wrongful termination and retaliation, but those causes of action are doomed for the same reason.

Plaintiff's claims for missed meal and rest breaks, and derivative claims for overtime and penalties flowing from these allegations similarly fail. GEO's collective bargaining agreement with Detention Officers ("CBA") provides a lawful meal and rest break policy. The CBA preempts Plaintiff's claims, and provides for the sole method of resolution of these claims. Furthermore, Plaintiff seeks to recover penalties in connection with these allegations that are simply not recoverable.

Plaintiff has refused to appear for deposition, and his refusal is the subject of GEO's Motion to Amend and Motion to Compel his deposition, set for a hearing on December 7, 2017. In its Motion to Compel and Motion to Amend, GEO has also requested the Court permit it to supplement this Motion following Plaintiff's compelled deposition. However, even without his deposition testimony, his claims are unsustainable, and the Court should grant summary judgment, or partial summary judgment.

## II.    STATEMENT OF FACTS

### A.    About GEO and The Adelanto Detention Facility.

GEO operates corrections and detentions facilities, including the Adelanto Detention Facility, in Adelanto California, where Plaintiff worked.[2]   Plaintiff was

---

[2] GEO maintains an active private patrol operator branch license in Adelanto. (SUF No. 29.)

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    2.

1   hired on March 18, 2013 as a Detention Officer.  (Statement of Uncontroverted Facts

2   ("SUF") No. 1.) Adelanto houses detainee awaiting proceedings to determine their

3   immigration status.  (Declaration of James Janecka ("Janecka Decl."), ¶ 2.) At all

4   times relevant to this lawsuit, Plaintiff was assigned to the Restricted Housing Unit

5   (also referred to as the Segregation Unit), where detainees are placed because they

6   cannot reside with detainees in the general population for various reasons.  (*Id*. 6.)

7   There are two tiers, or levels, within the Restricted Housing Unit on which detainees

8   are housed.  (*Id*.)

9        **B.**    **On August 5, 2015, Plaintiff Failed To Secure A High Security**

10               **Detainee, Who Then Gained Access Through Four Doors And**

11               **Nearly Walked Out Of The Facility.**

12       On August 5, 2015, Plaintiff escorted a detainee from his cell to the shower.

13   Once the detainee was in the shower, Plaintiff did not secure the shower door.  He left

14   the detainee with the shower door unlocked, and left to attend to other duties.  (SUF

15   No. 2.)

16       With Plaintiff away performing other functions, the unattended detainee exited

17   the shower, walked towards the exit from the Restricted Housing Unit, and pushed a

18   button seeking access through a locked door leading out of the unit.  Officer Elizabeth

19   Marquez, hired on July 9, 2012, was stationed in Central Control and tasked with

20   ensuring only authorized personnel gain access through locked doors.  (SUF No. 3.)

21   When the detainee pushed the button, Officer Marquez unlocked the door remotely

22   from Central Control for him, and the detainee passed through the door.  The detainee

23   continued on, gaining access through four doors monitored by Officer Marquez, until

24   he was apprehended and returned to the Restricted Housing Unit. (SUF No. 4.)

25       Plaintiff submitted a report in connection with the incident.  In the report, he

26   describes the incident, stating: "On 8.5.15, shortly before the 1630 count,[3] I placed

---

[3] "Counting" refers to the requirement that Officers count detainees at various points throughout the day.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ       3.

D/T Irias into a lower tier shower.   Plaintiff then goes on in some detail about the activities he engaged in after placing the detainee in the shower, including "counting" detainees, and delivering dinner trays to detainees, first on the lower tier, and then on the upper tier, as the detainee remained in the lower tier shower.   Plaintiff concludes his report by stating, "I had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters." (SUF No. 5.)

### C.   GEO Made The Decision To Terminate Both Plaintiff and Officer Marquez Because Of The August 5, 2015 Incident.

GEO made the decision to terminate both Plaintiff and Officer Marquez for their respective roles in the escape attempt. Plaintiff was placed on administrative leave immediately after the incident and ultimately terminated.  (SUF No. 6.)

Plaintiff's termination notice states:

On 8-5-2015, Officer E. Santiago was assigned as the 2nd Watch West Administrative Segregation Housing Unit Officer.  He was given specific direction from Lt. Duran [a supervisor] to ensure two officers are present when escorting Detainee Irias …from in cell in Administrative Segregation to the shower.  At approximately 1623 hours Officer Santiago conducted a single officer escort of detainee Irias to the shower area, where he failed to lock and secure the shower door.  Officer Santiago then proceeded to retrieve two detainee porters to facilitate distribution of meal trays.  Formal count commenced at 1630 and was conducted by Officer Santiago and Officer Patterson.   Once count was completed Officer Patterson departed the unit to facilitate a lunch break for another officer. Officer Santiago failed to get supervisory authorization to outcount detainee Irias in the shower area and further authorization to bring out two detained porters prior to the facility formal count clearing.   While supervising detainee porters as they handed out meal trays on the far

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                4.

1    upper tier, detainee Irias completed his shower and pushed open the
2    unsecure shower door at 1653 hours.   Detainee Irias departed the
3    Segregation housing unit unsupervised and unrestrained at approximately
4    1653 hours. (SUF No. 7.)

5    The reason stated on his termination was "inability to perform job."  (SUF No.
6    8.)

7    **D.  Officer Marquez Commenced a Protected Leave of Absence**
8    **Immediately Following the Attempted Escape And Was Terminated**
9    **Upon Conclusion Of Her Leave.**

10   Officer Marquez was pregnant when the August 5, 2015 incident occurred.  She
11   began her maternity leave pursuant to the Family Medical Leave Act immediately
12   following the incident, on August 6, 2015.   (SUF No. 9.) GEO paid her no
13   compensation during her leave.  Like Plaintiff, she performed no work for GEO at any
14   time following the August 5, 2015 incident.    (SUF No. 10.) Following her FMLA
15   leave, Officer Marquez extended her protected leave for her pregnancy related
16   condition.  In all, Officer Marquez was on a leave of absence from August 5, 2015
17   until April 5, 2016. (SUF No. 11.)

18   Shortly after she began her leave, GEO notified her that GEO was investigating
19   the August 5, 2015 incident and would take appropriate action upon her return from
20   leave. When she attempted to return, the Warden at Adelanto, as he previously stated
21   he would do, placed a request for her termination.  The termination request states:

22   Ms. Marquez had been on FMLA/PFL from 8/6/2015 through 4/5/2016.
23   Prior to going on FMLA/PFL Ms. Marquez accessed 4 doors from Central
24   Control to allow a detainee house[d] in Administrative Segregation to exit
25   Segregation.  The day that she was going to be placed on Administrative
26   Leave without pay (8/6/2015), Ms. Marquez did not return back to work
27   but instead indicated that she was going to be off on FMLA.  The letter
28   was mailed to her notifying her that she was under investigation due to the

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                5.

1    incident on August 5, 2015 and due to being out on FMLA the matter
2    being investigated prior to her FMLA will remain open, but will need to
3    close out upon her [return]…. [W]e are recommending termination of the
4    following employee for inability to perform job. (SUF No. 12.)

5    GEO terminated Officer Marquez's employment upon completion of her
6    protected leave of absence. (SUF No. 14.

7    **E.     Plaintiff Concedes Officer Marquez Was Terminated as a Result of**
8    **the August 5, 2015 Incident.**

9    Plaintiff alleges he "was terminated because of his gender, while another
10   employee, Officer Marquez, who was pregnant at the time, was not treated similarly."
11   However, in his verified discovery responses, Plaintiff conceded:

12   Officer Marquez was terminated related to the August 2015 incident with
13   detainee Irias.   Geo terminated her at a different time than Officer
14   Santiago because at the time that this happened Officer Marquez was
15   pregnant and she went out on maternity leave the following day.  When
16   she returned after having her baby in May, she was terminated… (SUF
17   No. 15.)

18   Indeed, this summary is the only information Plaintiff has provided in support
19   of his discrimination claim.

20   **F.     A Female Officer Was Previously Terminated In Connection With**
21   **An Attempted Escape From Adelanto.**

22   In November 2013, a detainee scaled a fence in Adelanto's recreation yard,
23   while supervised by a female Detention Officer. The female Officer was placed on
24   administrative leave without pay, and following an investigation, terminated for
25   inattention to duty. There have been no other incidents at Adelanto in which a
26   detainee attempted to escape.  (Janecka Decl., ¶ 13.)

27   **G.     GEO  Complies With All Applicable State And Federal Leave Laws.**

28   In compliance with federal and state law, GEO provides employees with

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                     6.

1   various types of protected leaves of absence.  Among them is the Family Medical

2   Leave Act, which entitles eligible employees to take 12 weeks off every calendar year

3   for a qualifying condition.  Qualifying conditions are defined by statute and include,

4   but are not limited to, the birth of a child, or due to the employee's own serious health

5   condition.  (SUF No. 17.) Indeed, like Officer Marquez, Plaintiff too was afforded a

6   leave of absence under the FMLA during his employment. (Janceka Decl. ¶ 15.)

7   Plaintiff took leave between August 2014 and January 2015 under GEO's FMLA

8   policy to recover from non-work related injuries.  (*Id*.)

9        GEO also provides employees, in compliance with state and federal legal

10   requirements, other types of leave, including Pregnancy Disability Leave, which

11   entitles employees to time off due to a disability caused by pregnancy or childbirth.

12   And, GEO provides leaves of absence under the Americans with Disabilities Act, and

13   its state equivalents, where required and appropriate for employees who need

14   accommodations. (SUF No. 18.)

15        Obviously, GEO's policy covers any qualifying condition as required by law.

16   GEO administers its leave of absence equally to eligible employees with a qualifying

17   condition, regardless of the qualifying reason for the leave.  GEO typically does not

18   terminate employees during a legally protected leave of absence, regardless of the

19   qualifying reason for the leave of absence.  (SUF No. 19.)

20        GEO would have waited until the conclusion of Officer Marquez's leave of

21   absence to terminate her employment had she taken the leave for any protected reason

22   other than childbirth and related medical conditions. (SUF No. 20.) Similarly, had

23   Plaintiff requested and qualified for a protected leave of absence immediately after the

24   August 5, 2015 incident, GEO likely would have waited to terminate his employment

25   until his return from leave. (SUF No. 21.)

26        **H.    GEO's Policy Prohibits Discrimination Based On Any Protected**

27              **Activity.**

28        GEO's policy is to "provide equal employment opportunity to all qualified

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                7.

individuals without regard to race, religion, color, sex, sexual orientation, age, national origin, disability, veteran status, marital status, gender discrimination, military status, medical condition or any other category protected by law….”

The policy contains a complaint procedure, which encourages employees to report incidents that are believed to violate the policy.  The policy further prohibits retaliation against any employee who files a charge of discrimination, cooperates with a governmental investigation of a charge, or exercises any right protected by federal or state law requiring equal opportunity.  (SUF No. 22.)

## I.   **Plaintiff and Officer Marquez both Filed Union Grievances Challenging their Termination.**

GEO’s Adelanto Facility is unionized, and Detention Officers are represented by a labor union - the United Government Security Officers of America International Union, Local 880 (“the Union”).  (Janceka Decl. ¶ 19.) The Union filed grievances challenging both Plaintiff’s and Officer Marquez’s termination.  (*Id*. at ¶ 20.)

The arbitration hearings of both Officer Marquez and Plaintiff were scheduled for June, 2017.  (*Id*. at ¶ 21.)  However, the arbitration hearing regarding Plaintiff’s grievance was continued to December 2017.  (*Id*.)  Marquez’s arbitration proceeded on June 14, 2016. (*Id*.)  On September 1, 2017, the arbitrator issued an award in favor of GEO, holding Officer Marquez’s termination was supported by just cause.  (*Id*.)  Shortly after the arbitrator’s decision in the Marquez matter, Plaintiff elected to abandon his grievance, cancel the arbitration, and limit his claims to those alleged in this lawsuit.  (Declaration of Michelle Rapoport (“Rapoport Decl.”) ¶ 4.)

## J.   **The CBA Defines Just Cause For Termination of Detention Officers.**

The CBA states, in relevant part, “No Officer shall be disciplined or discharged without Just Cause.  The Company shall provide the Officer and the Union with a copy of all disciplinary action forms…”

The CBA also provides a representative list of reasons that constitute Just Cause for immediate dismissal, which includes inattention to one’s post.  (SUF No.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    8.

27.)

## K.    GEO's CBA Provides For Meal and Rest Breaks.

The contract between GEO and the Union provides the following meal and rest break policy:

- "Each Officer will be given a thirty (30) minute unpaid off-duty meal period.  The Office will not be required to perform any duties, whether active or inactive, while eating.  Should the officer be required to perform any duties, whether active or inactive, the affected Officer will be paid for the meal period at the appropriate rate.  The meal period shall commence after the start of the second (2) hour and before the start of the sixth (6) hour.  Officers shall be allowed to leave the facility during their meal period after notification to their supervisor." (SUF 24.)
- "Each Officer will be given two (2) ten (10) minute paid rest periods per shift.  The Company will provide rest periods as close to practical to the center of each four (4) hour portion of a shift."  (SUF No. 25)

The CBA includes a grievance procedure, which requires covered employees (and GEO) to resolve covered disputes through arbitration.  (SUF No. 28.)

## III.   LEGAL ARGUMENT

### A.    Standard for Summary Judgment.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  A claim has no merit if a defendant demonstrates that one or more of the elements of a cause of action cannot be established.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once a defendant makes such a showing, the burden shifts to the plaintiff to show that a genuine issue of material fact exists.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A plaintiff may not rely upon the mere allegations in the pleadings to show that a genuine issue exists, but must offer

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                        9.

1  "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S.
2  at 322.

3  **B.**   **Plaintiff's Claim For Gender Discrimination Fails Because He**
4        **Cannot Make A *Prima Facie* Case Or Overcome GEO's Legitimate**
5        **Non-Discriminatory Reason For Its Decision.**

6        Courts analyze discrimination claims under a three-step burden shifting
7  framework.  To establish a claim of discrimination, a plaintiff must first establish a
8  *prima facie* case of discrimination by showing (1) he is a member of a protected
9  category; (2) he was qualified to do his job; (3) he was subjected to an adverse
10  employment action; and (4) a causal connection between the adverse employment
11  action and his protected category. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355
12  (2000); *Douglas v. Anderson*, 656 F.2d 528, 531 (9th Cir. 1981).

13        Only once Plaintiff has established the elements of a *prima facie* case, does the
14  burden shift to the employer to articulate a legitimate, non-discriminatory reason for
15  the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973);
16  *Horn v. Cushman & Wakefield Western Inc.*, 72 Cal. App. 4th 798, 805-06 (1999).
17  The plaintiff then has the burden to prove by substantial evidence—and not by
18  speculation—that the legitimate reason proffered by the employer was not its true
19  reason, but was merely a pretext for discrimination. *McDonnell Douglas Corp.*, 411
20  U.S. at 802-05.  It is Plaintiff who at all times retains the burden of persuading the
21  trier-of-fact that he was subjected to discrimination. *Id.; Guz*, 24 Cal. 4th at 356.
22  "The ultimate burden of persuading the trier of fact that the defendant intentionally
23  discriminated against the plaintiff remains at all times with the plaintiff." (*Texas
24  Dep't of Cmty. Affairs v. Burdine* (1981) 450 U.S. 248, 253.)  Here, Plaintiff's *prima
25  facie* claim fails, because he cannot establish GEO subjected him to an adverse
26  employment action *because of* his gender.  Likewise, he cannot overcome GEO's
27  legitimate business reason for terminating his employment.

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    10.

### 1.   Plaintiff Cannot Show a Causal Connection Between His Gender and Termination.

As detailed above, GEO terminated both Plaintiff and Officer Marquez as a result of the attempted escape on August 5, 2017.  Plaintiff's claim that he was terminated because of his gender is fundamentally unsustainable.  He claims he was treated "differently" from Officer Marquez, who is female, but at the same time he fully concedes Officer Marquez was terminated due to the incident.  Therefore, even if he could establish he and Officer Marquez were similarly situated with regard to the August 5, 2015 incident, they were both subject to the same adverse employment action as a result of the incident.  The inquiry should end here.

Plaintiff further concedes that GEO implemented its decision to terminate Officer Marquez's employment at a different time than its decision to terminate his employment because of her protected leave of absence.  Officer Marquez: 1) took a leave of absence immediately after the incident due to a medical condition and returned in April 2016; 2) performed no work for GEO after the August 5, 2015 incident; and 3) was terminated upon her return.  She took an unpaid leave of absence protected by *federal and state law*.  GEO, in compliance with the law, granted her leave as it was required to do.  That Officer Marquez took leave relating to *pregnancy*, and not some other protected reason, is of no consequence. Had Officer Marquez requested leave for a different qualifying medical condition, unrelated to pregnancy, the result would have been the same.  She would have been granted leave in compliance with the law.  And the same holds true for Plaintiff.

To state the obvious, FMLA provides employees with the right to use a certain amount of job protected leave for protected reasons.  29 U.S.C. 2612(a) 2614(a).  It is "unlawful for any employer to interfered with, restrain, or deny the exercise of or the attempt to exercise" these rights.  29 U.S.C. 2615(a)(1); *Sanders v. City of Newport,* 657 F. 3d 772, 778 (9th Cir. 2011).   Other leave entitlements provide similar protections.  GEO's obligation to grant leaves of absences to employees is prescribed

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ          11.

1   by law.  GEO simply followed those legal requirements and granted Officer Marquez

2   leave.

3        Further, Plaintiff cannot establish that GEO terminated him *because of* his

4   gender.  Indeed, GEO likewise terminated the Detention Officer involved in the only

5   other attempted escape, in 2013.  The Detention Officer happened to be female.

6   Without this essential link between his termination and his gender, his discrimination

7   claim fails as a matter of law.

8        Notably, in his complaint filed on July 28, 2016, Plaintiff alleges that he

9   "abided by all new policies but was still terminated while Officer Marquez remains

10  employed and on family medical leave."  Complaint, ¶ 87.  He further alleges,

11  "Plaintiff was terminated because he was an easier target than Officer Marquez since

12  she was a female who at the time was also pregnant.  It was easier for Defendant to

13  terminate Plaintiff, rather than Officer Marquez because of her physical state and the

14  fear of a lawsuit, even though she was the one who ultimately failed her duties, by

15  allowing detainee Irias to exit four separate controlled doors before he was escorted

16  back to his cell." Complaint, ¶ 88.  The premise for his lawsuit (misguided though it

17  is) was that Officer Marquez remained employed, while he was terminated.  Surely

18  when he finally determined she too was terminated, as he was clearly aware when he

19  served his discovery responses in April 2017, he should have dismissed his claim.

## 2.   Plaintiff's Employment Was Terminated For A Legitimate, Nondiscriminatory Reason.

22       Even if Plaintiff could establish a *prima facie* claim of discrimination, which he

23  cannot, the burden shifts to GEO to only articulate a legitimate, nondiscriminatory

24  reason for Plaintiff's termination. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253-54.

25  The employer's burden is "not onerous." *Wills v. Super. Ct.*, 195 Cal.App 4th 143,

26  160 (2011); see also  *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1459 (9th Cir.

27  1985) (overruled on other grounds by, *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d

28  262 (9th Cir.1991)).  In conducting this inquiry, the question is not whether the

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                12.

decision was based on correct assumptions, but whether the employer reasonably believed its reasons and validly exercised its business judgment. *Guz,* 24 Cal. 4th at 358.   The defendant's burden is a minimal burden of production, not a burden of persuasion. *Texas Dep't of Cmty. Affairs*, 411 U.S., at 255. The defendant's reasons do not need to be "wise or correct," and if the articulated reasons are unrelated to the prohibited form of discrimination, then an honest belief, even if foolish, trivial, or baseless suffices. *Guz*, 24 Cal. 4th, at 356.

Plaintiff was terminated for failing to secure a shower door with a detainee inside.   While the detainee was in the first tier shower, Plaintiff then left for a period of time to attend to other duties on a different tier.   The unescorted, unsupervised detainee then gained unauthorized access through four locked doors.  Plaintiff's action unquestioningly contributed to the detainee's near escape.   Security, of course, is the paramount concern of prison administrators. As the Supreme Court has noted: "The essence of a correctional counselor's job is to maintain prison security." *Dothard v. Rawlinson*, 433 U.S. 321, 335 (1977); *see also Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 753 (6th Cir.2004) ("Unquestionably, the security of the prisons relates to the essence of [prison business].") Security concerns are necessarily intertwined with prison programs and objectives. *Teamsters Local Union No. 117 v. Washington Dep't of Corr.*, 789 F.3d 979, 990 (9th Cir. 2015.) A Detention Officer's failure to secure a detainee, which contributes to the detainee's attempted escape is, quite clearly, a legitimate business reason for termination.

Further, any argument by Plaintiff that GEO did not have just cause to terminate his employment, those claims are preempted by Section 301 of the Labor Management Relations Act ("Section 301").   Section 301 preempts state-law claims that are either based on, or require interpretation of, a collective bargaining agreement ("CBA"). *Associated Builders & Contractors v. Local* 302 Int'l *Bhd. of Elec. Workers*, 109 F.3d 1353, 1356-1357 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    13.

**3.** **Plaintiff Cannot Establish GEO's Legitimate Business Reason is Pretextual.**

Once the employer has offered a legitimate nondiscriminatory reason for the adverse employment action, the plaintiff must offer evidence that the employer's stated reason is pretextual, or present evidence that the employer acted with discriminatory animus.  *See McDonnell Douglas Corp.*, 411 U.S. at 805.  To survive summary judgment, Plaintiff "must produce 'specific, substantial evidence of pretext.'"  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) (citation omitted) (emphasis added); *Horn*, 72 Cal. App. at 807.   Protestations of discriminatory motive and intent, without substantial evidence, are inadequate to meet the burden of this prong and cannot create an issue of fact.   *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); *Martin v. Lockheed Missiles & Space Co.,* 29 Cal. App. 4th 1724, 735 (1994) (speculation of discrimination is not "substantial responsive evidence"); *Moore v. Cal. Dep't of Corr. & Rehab*, 2012 WL 5288785 at *10 (E.D. Cal. Oct. 25, 2012).

Likewise here, Plaintiff cannot overcome GEO's legitimate business reason for terminating him for his role in a detainee's attempted escape.  Although Plaintiff will undoubtedly argue he was following policy, or that GEO is at fault for his failure to secure the shower door once the detainee was inside, his protestations are insufficient to establish pretext.

Because Plaintiff cannot show a link between his gender and his termination, and because he cannot overcome GEO's legitimate business reason for his termination, his second cause of action for gender discrimination fails.

**C.** **Plaintiff Cannot Establish a Claim for Failure to Prevent Discrimination.**

The FEHA requires employers to take reasonable steps to prevent discrimination in the workplace.  (Gov. Code, § 12940, subsection (k).)   Here, Plaintiff's claim fails because he does not have a viable claim for discrimination under

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    14.

FEHA and because GEO took reasonable steps to prevent discrimination.

A cause of action for failure to prevent discrimination cannot stand, except where Plaintiff has established the underlying act of discrimination.  *Sneddon v. ABF Freight Systems,* 489 F. Supp.2d 1124, 1132-1133 (2007) ("absent a showing of actionable discrimination, there can be no violation of Government Code § 12940(k).); *Trujillo v. County Trans. Dist*., 63 Cal.App.4th 280, 289 (1998) ("Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where such actions took place and were not prevented."); *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd*., 103 Cal.App.4th 1021, 1035 (2002).)

As established above, Plaintiff has failed to establish that GEO discriminated against him because of  his gender, so he similarly cannot state a claim for failure to prevent discrimination.  Further, Plaintiff's claim fails because GEO took reasonable steps to prevent discrimination, including establishing and promulgating anti-discrimination policies, and implementing effective procedures to handle complaints. *California Fair Employment & Housing Com. v. Gemini Aluminum Corp*., 122 Cal.App.4th 1004 (2004).  There is simply no evidence that GEO failed to take steps to prevent discrimination, and Plaintiff's first cause of action fails.

### D.    Plaintiff's Wrongful Termination Claim Fails As It Is Derivative Of His Other Termination-Related Claims.

In addition to claiming gender discrimination in violation of FEHA, Plaintiff alleges wrongful termination in violation of FEHA.  Plaintiff may not assert a wrongful termination claim as a fall-back to a statutory claim where the underlying statutory claim itself fails. *TRW, Inc. v. Super. Ct.*, 25 Cal. App. 4th 1834 (1994). Plaintiff's third cause of action for wrongful termination fails because as discussed above, the underlying statutory claim upon which this claim is premised – his gender discrimination claim – fails as a matter of law.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                              15.

**E.**     **Plaintiff's Claim For Retaliation In Violation of Labor Code Section 1102.5 Fails Because He Did Not Engage In A Protected Activity, And He Cannot Overcome GEO's Legitimate Business Reason for his Termination.**

To establish a *prima facie* case of retaliation, Plaintiff must establish he engaged in protected activity. Labor Code § 1102.5(b) prohibits an employer from retaliating against an employee for:

> "disclosing information… to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance … if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

Cal. Labor Code § 1102.5(b).

In analyzing retaliation claims under section 1102.5, California courts follow the familiar three-step burden shifting analysis to determine whether there are triable issues of fact. *See Patten v. Grant Union High Sch. Dist.*, 134 Cal.App.4th 1378, 1384 (2005); *Morgan v. Regents of the Univ. of Cal.*, 88 Cal.App.4th 52, 59 (2008).

Plaintiff's claim fails, because he did not engage in a protected activity, and because he cannot overcome GEO's legitimate reason for his termination.

In response to GEO's interrogatory seeking all facts in support of his claim for Retaliation in Violation of Labor Code section 1102.5, Plaintiff provided the following verified response:

Defendants, made, adopted, and enforced a rule, regulation, and policy requiring Plaintiff to comply with Defendant's procedures, yet due to their under-staffing the facility, and forcing Defendant [sic] to be the only officer in a two officer post.  Upon learning Plaintiff was the only officer on duty in a two officer post, while the second officer was required to be elsewhere by the defendant, when their policies resulted

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    16.

1    in a detainee's near escape from the facility, Defendants retaliated

2    against Plaintiff by terminating his employment, while not terminating

3    or disciplining the other employee officer who had left her post, or the

4    other employee from Control Center who allowed detainee Irias to exit

5    through four security points.   Furthermore, when plaintiff made

6    disclosures for what happened regarding the attempted scape [sic] by

7    Orias [sic] Defendants retaliated against him by engaging in the

8    adverse employment actions described hearing, which adversely and

9    materially affected Plaintiff's employment.

10    Even if the facts Plaintiff claims support this cause of action were intelligible,

11    they do nothing to establish retaliation.  First, Plaintiff seems to allege, as he does in

12    support of his other claims, that he was treated differently than other employees.  But

13    the only comparison he draws on is another employee who was terminated for her role

14    in the August 5, 2015 incident.  And in any event, the comparison is irrelevant as it

15    does not establish a protected activity, and cannot support a claim for retaliation under

16    Labor Code Section 1102.5.

17    Alternatively, Plaintiff absurdly argues the statement he provided regarding the

18    August 5, 2015 incident, after the incident, led to his termination – rather than the

19    incident itself. Plaintiff's claim fundamentally fails because he did not disclose a

20    violation of a state or federal statute, or a violation of or noncompliance with a local,

21    state, or federal rule or regulation, and he cannot overcome GEO's legitimate, non-

22    discriminatory reason for his termination. Therefore, Plaintiff's fifth cause of action

23    for retaliation fails.

24    **F.**      **Plaintiff's Claims For Failure To Provide Meal And Rest Breaks**

25          **Fails Because The CBA Governs Meal and Rest Breaks And**

26          **Provides The Exclusive Remedy For Alleged Violations.**

27    The CBA applicable during Plaintiff's employment prescribes the terms and

28    conditions of his employment and describes the meal and rest break policy applicable

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                  17.

1    to Detention Officers.

2          Labor Code Section 512(a) requires, in relevant part: "An employer may not

3    employ an employee for a work period of more than five hours per day without

4    providing the employee with a meal period of not less than 30 minutes[.]" A second

5    30-minute meal period is then generally required after 10 hours of work. Id. AB 569

6    provides an exemption from Section 512(a) for, inter alia, security officers covered by

7    a collective bargaining agreement that "expressly provides for ... meal periods for

8    those employees, final and binding arbitration of disputes concerning application of its

9    meal period provisions, premium wage rates for all overtime hours worked, and a

10   regularly hourly rate of pay of not less than 30% more than the state minimum wage

11   rate." Labor Code Section 512(e)(2); *see also*, *Araquistain v. Pacific Gas & Elec. Co.*,

12   229 Cal.App.4th 227 (2014) (affirming summary judgment when a CBA for covered

13   employees included language regarding permission of employees to eat meals during

14   work hours.)

15         Here, the CBA provides Plaintiff with the remedy of final and binding

16   arbitration to resolve any disputes concerning their rights under the Contract's meal

17   and rest break period provision. By virtue of AB 569 and the preemption doctrine,

18   Plaintiff's sole remedy to resolve his claims regarding his meal and rest breaks is

19   through the grievance process, as provided in the CBA.  AB 569 applies where, as

20   here, the CBA provides covered employee must be able to use the grievance and

21   arbitration process to enforce his/her contractual meal period rights.  Moreover, the

22   CBAs in place during Plaintiff's employment provided wages for employees which

23   are 30% more than the California state minimum wage.[4] Section 301 of the Labor

24   Management Relations Act ("Section 301") preempts with equal force Plaintiff's rest

25   break claim.  *Associated Builders & Contractors v. Local 302 Int'l Bhd. of Elec.*

26

27   [4] The CBA in effect from April 25, 2011 until July 2, 2015 provided for wages
     ranging from $15.59 per hour to $18.19 per hour. The CBA in effect from July 3,
28   2015 provided for wages ranging from $16.54 per hour to $19.30. (SUF No. 26.)

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    18.

*Workers*, 109 F.3d 1353, 1356-1357 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements"). *See also*, *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016) (concluding claims for premium pay were preempted because the amount owed was dependent on an analysis of the CBA.) State-law claims that are either based on, or require interpretation of, a collective bargaining agreement are preempted.  Accordingly, his sixth cause of action fails.

### G.   Plaintiff's Claim For Overtime Compensation Fails.

In his seventh cause of action, Plaintiff seeks compensation for alleged unpaid overtime wages under Labor Code section 510.  The cause of action fails. Section 514 of the Labor Code specifically addresses the issue:

Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

The parties' CBA addresses the wages and working conditions of Plaintiff's employment, and Plaintiff was paid at least 30 percent more than minimum wage.  As a result, Plaintiff cannot bring a claim for violation of Section 510, as he must address the claim within the scope of a grievance with the Union.

### H.   Plaintiff's Claim For Failure To Provide Accurate Itemized Wages Fails.

To prevail on a Section 226 claim, a plaintiff must establish that: (1) wage statements violated one of the enumerated requirements in § 226(a), (2) the violation was "knowing and intentional" and (3) the violation resulted in "injury." *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1169 (E.D. Cal. 2012).  An employee is only deemed to suffer injury if the employer "fails to provide accurate and complete information as required [by section 226(a)] and the employee cannot promptly and

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    19.

easily determine from the wage statement alone" the information required by Section 226(a).  CAL. LAB. CODE § 226(e)(2)(B) (emphasis added).

Plaintiff cannot bring a claim for failure to provide accurate itemized wage sheets based solely on alleged missed meal and rest periods. There can be no section 226 claim for noncompliant wage statements based only on meal or rest period violations because section 226(a) does not require a wage statement to include itemized listings of premium payments. *Kirby v. Immoos Fire Prot., Inc.,* 53 Cal.4th 1244, 1256 (2012). Plaintiff's eighth claim for violation of Labor Code section 226 fail as a matter of law.

## I.    Plaintiff's Claim Regarding Failure To Pay Wages Upon Termination Fails as a Matter of Law.

California Labor Code section 203 states, "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days." CAL. LAB. CODE § 203. "The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act that was required to be done." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008).  There is no evidence of willfulness here.  Furthermore, Plaintiff's ninth cause of action for failure to pay wages upon termination is derivative of his claims for meal and rest break violations, and fails for the same reasons that claim cannot survive.

## J.    Plaintiff's Claim Under Section 204 or 210 Regarding The Alleged Failure To Establish Regular Paydays Fails.

Plaintiff's tenth cause of action alleges a violation of Labor Code sections 204 and 210 regarding wages paid on designated pay days.  The cause of action fails.

Plaintiff's claim is not that the designated pay days were untimely or otherwise improper; his claim is that he was not paid "all wages earned" during his employment,

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    20.

based on the other alleged Labor Code violations.  (Complaint, ¶ 197.)  The claim is derivative of other Labor Code claims, and fails for the same reason they fail. Plaintiff should have brought the claim as part of a grievance within the scope of the parties' CBA.  He cannot circumvent that process and pursue the claim here.

### K.   Plaintiff's UCL Claim Fails Because It is Derivative Claim.

Plaintiff's unfair competition law ("UCL") claim is derivative of his underlying claims.  Because those claims fail, Plaintiff's UCL claim must also fail.  *See White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089-90 (N. D. Cal. 2007); *Renne v. Servantes*, 86 Cal. App. 4th 1081, 1087 (2001). Additionally, to the extent the UCL claim is derivative of his FEHA or wrongful termination claims, it fails because an UCL claim is limited to injunctive relief and restitution, and not monetary damages such as lost wages and benefits. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003); *Alch v. Super. Ct.,* 122 Cal. App. 4th 339, n.79 (2004). Accordingly, his fourth cause of action fails.

### L.   Plaintiff Cannot Maintain a Claim for Punitive Damages.

A prayer for punitive damages cannot be sustained unless the plaintiff can demonstrate, by clear and convincing evidence that a defendant acted with oppression, fraud, or malice. Cal. Civ. Code § 3294(a); *Real v. Cont'l Grp., Inc*., 627 F.Supp. 434 (N.D. Cal. 1986). Even if Plaintiff had sufficient evidence to support his discrimination and wrongful termination claims (which he does not), such a finding is not sufficient in and of itself to warrant punitive damages. For example, in *Real Group*, the federal district court, applying California law, held that an employee who had been willfully discriminated against because of his age and constructively discharged by his employer was not entitled to punitive damages because he had failed to show that his employer – despite having willfully discriminated against him – had acted with malice, oppression or fraud, as required under California law. Specifically, the court held that there existed ample evidence from which the jury could infer that the employer's proffered reasons for denying the plaintiff promotional

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    21.

1   opportunities were a pretext for age discrimination. Nonetheless, the court concluded
2   that such action on the part of the employer did not warrant the awarding of punitive
3   damages. *Id*. at 448-449.

4       Assuming, *arguendo,* the Court concludes Plaintiff has presented sufficient
5   evidence to withstand summary judgment as to some or all of his claims, he still has
6   insufficient evidence to support a claim for punitive damages.  "Punitive damages are
7   proper only when the tortious conduct rises to levels of extreme indifference … a level
8   which decent citizens should not have to tolerate." *Tomaselli v. Transamerica Ins*., 25
9   Cal. App. 4th 1269, 1287 (1994).  To state a claim for punitive damages, Plaintiff
10  must prove "by clear and convincing evidence" that GEO acted with malice and
11  oppression *through one of its officers, directors, or managing agents*.  CAL. CIV. CODE
12  § 3294(b).  Plaintiff admits that he does not know who made any of the decisions
13  regarding his employment.  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577 (1999).
14  Mere supervisory status is insufficient to establish that an employee is a "managing
15  agent" for punitive damages purposes.  *White*, 21 Cal. 4th at 577; *Kelly-Zurian v.*
16  *Wohl Shoe Co.*, 22 Cal. App. 4th 397, 421-22 (1994).  Likewise, Plaintiff cannot
17  establish that *any* officer, director or managing agent authorized or ratified the alleged
18  conduct.  *See* CAL. CIV. CODE § 3294(b); *Coll. Hosp., Inc. v. Super. Ct.*, 8 Cal. 4th
19  704, 726 (1994).

20      Assuming, *arguendo*, that Plaintiff can establish an officer, director, or
21  managing agent engaged in alleged improper conduct or authorized or ratified such
22  conduct, he will still be unable to prove they acted with the requisite fraud,
23  oppression, or malice in regards his employment and, therefore, will be unable to
24  make a claim for punitive damages. CAL. CIV. CODE § 3294(a).  Even when finding
25  liability on the underlying claims, courts have held punitive damages are not
26  recoverable where the employer's conduct does not meet the level of egregiousness
27  required to warrant the award of punitive damages.  *See Real v. Cont'l Grp., Inc.*, 627
28  F. Supp. 434 (no punitive damages even when court found that company willfully

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                    22.

1   discriminated against employee).

2        Plaintiff cannot offer any evidence, let alone *clear and convincing evidence*, to

3   demonstrate that GEO acted with fraud, oppression, or malice in regards to his

4   employment.  The actions, as testified to by Plaintiff, fall far short of conduct that is

5   "so mean, vile, base, or contemptible that it would be looked down on and despised by

6   reasonable people."  CACI No. 3945.  Accordingly, any claim for punitive damages

7   should be dismissed on summary judgment.

8   **IV.    CONCLUSION**

9        For the foregoing reasons, GEO respectfully requests this Court grant their

10  motion for summary judgment, or in the alternative, summary adjudication of all

11  issues presented.

12  Dated:   November 20, 2017

13

14                              */s/ Michelle Rapoport*
                                ELIZABETH STAGGS WILSON
15                              MICHELLE RAPOPORT
                                BROOKE DEARDURFF
16                              LITTLER MENDELSON, P.C.
                                Attorneys for Defendants
17                              THE GEO GROUP, INC. and GEO
                                CORRECTIONS AND DETENTION,
18                              LLC

19

20

21

22

23  Firmwide:150589942.4 059218.1286

24

25

26

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

MPA's ISO MSJ/PARTIAL MSJ                              23.