AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
11835 W Olympic Blvd., STE 1055
Los Angeles, California 90064
Telephone: (310) 473-1111
Facsimile: (310) 473-2222
amir@mostafavilaw.com

Attorneys for Plaintiff EMANUEL SANTIAGO

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL SANTIAGO, an individual,<br><br>PLAINTIFF,<br><br>vs.<br><br>THE GEO GROUP, INC., a Florida Corporation dba GEO CALIFORNIA, INC.; GEO Corrections and Detention, LLC; DOES 1-10, individuals, and DOES, 11-20, business entities inclusive,<br><br>DEFENDANTS. | Case No. 5:16-cv-02263-DOC-KK<br><br>**PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently: Plaintiff's Statement of Genuine Disputes of Material Facts; Evidentiary Objections; Declarations; Appendix of Evidence, Request for Judicial Notice, and Proposed Order]*<br><br>Assigned to: Hon. David O. Carter<br>Date: December 18, 2017<br>Time: 8:30 a.m.<br>Courtroom: 9D – 9th Floor<br>Action Filed: July 18, 2016<br>Trial: January 23, 2017 |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

**TO DEFENDANT AND ITS ATTORNEYS, AND TO THE HONORABLE COURT:**

Plaintiff Emanuel Santiago ("Plaintiff") hereby respectfully submits this Memorandum of Points and Authorities in support of Plaintiff's Opposition to Defendant THE GEO GROUP, INC., dba GEO CALIFORNIA, INC.; GEO Corrections and Detention, LLC's ("GEO" or "Defendant"), Motion of Summary Judgment, or in the alternative, Partial Summary Judgment.

Date: November 27, 2017                    **MOSTAFAVI LAW GROUP, APC**

By: _____

Amir Mostafavi, Esq.
Attorney for Plaintiff Santiago

# TABLE OF CONTENTS

I.   **INTRODUCTION** ........................................................................ 1

II.  **STATEMENT OF FACTS** ........................................................ 1

A. **Santiago's Employment with GEO** ...................................... 1

B. **Division of Segregation Unit in July 2015** ......................... 2

C. **Orders and Instructions to Santiago as Detention Officer** ...... 2

D. **The August 5, 2015 Incident (the "Incident")** ...................... 3

E. **Santiago's Termination** ........................................................ 4

F. **Gender Discrimination** ......................................................... 4

G. **GEO's General Practice of Gender Discrimination Against Its Male Employees** ....................................................................... 5

   1) Light Duty Accommodation ................................................. 5

   2) Sleeping During work Hours ............................................... 5

   3) Harassment ......................................................................... 6

   4) Driving Policy .................................................................... 6

H. **Retaliation** .......................................................................... 7

I. **Meal and Rest Breaks Violation** .......................................... 7

J. **GEO's Policy Changes** ........................................................ 8

K. **Second Attempted Escape by Irias** ...................................... 8

III. **LEGAL STANDARD** ............................................................ 8

IV.  **ARGUMENT** ....................................................................... 9

A. **Substantial Triable Issues of Fact Exist as to GEO 's Discriminatory Motive and Pretext in the Discrimination Claim** ................... 9

   1) **GEO 's Argument that Santiago Did Not Make A Prima Facie Case Fails Because It Is Based on a Misstatement of the Law** ......... 10

   2) **Triable Issues of Fact Exist as to GEO 's Discriminatory Motive** .. 11

   3) **Triable Issues of Fact Exist as to GEO 's Proffered Reason** ......... 13

   4) **Additional Evidence on GEO's General Practice of Gender Bias** ... 15

a. *Light Duty Accommodation* ................................................ 15

b. *Sleeping During work Hours* ............................................... 15

c. *Harassment* ...................................................................... 15

d. *Driving Policy* ................................................................... 15

B. **When GEO 's Challenge to the Gender Discrimination Claim Fails, So Too Does Its Challenge to the Wrongful Termination Claim** ............... 16

C. **When GEO 's Challenge to the Gender Discrimination Claim Fails, So Too Does Its Challenge to the Failure to Prevent Claim** ........................ 16

D. **Santiago was Wrongfully Terminated in Violation of Public Policy** ... 16

E. **Santiago was Retaliated Against for Engaging in Protected Activity** ... 17

F. **Santiago W&H Claims Are Not Based on Interpretation of the CBA and Thus, Not Subject to the LMRA Preemption** ............................... 18

G. **Claims for the Enforcement of Nonnegotiable State Law Rights are Not Preempted by § 301** ............................................................... 18

H. **California Labor Code Governs Santiago's Wage & Hour Claims** ...... 19

I. **There Is No Preemption in This Case Under Section 301** .................... 19

J. **The Overtime Claim is Not Preempted By Section 301** ...................... 20

K. **Break Periods Are Non-Waivable Minimum Labor Standards** ......... 20

L. **GEO Failed to Provide Accurate Itemized Wage Statements** ............... 21

M. **Santiago Did Not Receive All Wages Due at Termination** .................... 21

N. **GEO Failed to Pay Santiago in Regularly Established Paydays** .......... 21

O. **GEO 's Engaged in Unfair and Unlawful Business Practices** ............... 22

P. **Triable Issue of Fact Exists As to the Punitive Damage Claims** ........... 23

Q. **There Are Sufficient Evidence of Genuine Issue of Material Fact** ...... 24

R. **Motion Must Be Denied So As to Allow Santiago to Conduct Discovery** ................................................................................... 25

V. **CONCLUSION** .................................................................... 25

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

## STATUTES

### California

### Government Code

Section 12940 .................................................................................... 22

Section 12940(k) ............................................................................. 16,22

Section 1102.5(b) ................................................................................. 17

### Labor Code

Section 203 ............................................................................... 19,22,23

Section 204 .................................................................................. 19,23

Section 210 ...................................................................................... 23

Section 219 ...................................................................................... 23

Section 226 ............................................................................ 19,21,22,23

Section 226(a) .................................................................................. 21

Section 226.7 ........................................................................... 19,21,22

Section 510 ...................................................................................... 22

Section 1194 ................................................................................ 19,22

Sections 2698-2699.5 ........................................................................... 23

### Business and Professions Code

Section 17200 ................................................................................... 23

### Federal

### United States Code

29 U.S.C. § 185(a) .............................................................................. 20

29 U.S.C. § 2612 ................................................................................ 12

### Federal Rules of Civil Procedure

Rule 56(a) ........................................................................................ 8

Rule 56(c)(3) ..................................................................................... 9

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

Rule 56(d) ............................................................................... 25

**CASES**

    **California**

*Adams v. Pacific Bell Directory*

    111 Cal.App.4th 93 (2003) ............................................ 23

*Araquistain v. Pacific Gas & Electric Co.*

    229 Cal.App.4th 227 (2014) .......................................... 21

*Arteaga v. Brink's, Inc.*

    163 Cal. App. 4th 327 (2008) ....................................... 10

*Bozzi v. Nordstrom, Inc.*

    186 Cal. App. 4th 755 (2010) ....................................... 12

*Camargo v. California Portland Cement Co.*

    86 Cal.App.4th 995 (2001) ........................................... 22

*College Hospital, Inc. v. Superior Court*

    8 Cal.4th 704 (1994) ................................................... 24

*Densmore v. Mission Linen Supply*

    164 F. Supp. 3d 1180, 2016 U.S. Dist. LEXIS 21354 (2016) ............. 21

*Faust v. Cal. Portland Cement Co.*

    150 Cal. App. 4th 864 (2007) ....................................... 13

*Guz v. Bechtel National, Inc.*

    24 Cal. 4th 317 (2000) ......................................... 10,11,13

*Heard v. Lockheed Missiles & Space Co.*

    44 Cal. App. 4th 1735 (1996) ....................................... 10

*Hersant v Dep't of Soc. Servs.*

    57 Cal. App. 4th 997 (1997) ...................................... 10,13

*Lujan v. So. Cal. Gas. Co.*

    96 Cal.App.4th 1200 (2002) ..................................... 20,23,24

*Mechanical Contractors Assn. v. Greater Bay Area Assn.*

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

66 Cal.App.4th 672 (1998) ........................................................ 23

*Meyer v. Irwin Indus*

723 F. Supp. 2d 1237, 2010 U.S. Dist. LEXIS 81713 (2010) . . . . . . . 19

*Molko v. Holy Spirit Assn.*

46 Cal.3d 1092 (1988) ........................................................ 13

*Phillips v. Gemini Moving Specialists*

63 Cal.App.4th 563 (1998) ........................................................ 23

*Sandell v. Taylor-Listug, Inc.*

188 Cal. App. 4th 297 (2010) ........................................................ 14

*Soldinger v. Northwest Airlines, Inc.*

51 Cal.App.4th 345 (1996) ........................................................ 19

*Tameny v. Atlantic Richfield Co.*

27 Cal. 3d 167 (1980) ........................................................ 17

*Volpei v. County of Ventura*

Cal. App. LEXIS 903 (2013) ........................................................ 18

*Wade v. Ports Am. Mgmt. Corp.*

218 Cal. App. 4th 648 (2013) ........................................................ 18

*Weeks v. Baker & McKenzie*

63 Cal.App.4th 1128 (1998) ........................................................ 24

*Zavala v. Scott Brothers Dairy, Inc.*

143 Cal. App. 4th 585  (2006) ........................................................ 21

**Federal**

*Allis-Chalmers Corp. v. Lueck*

471 U.S. 202 (1985) ........................................................ 18, 20

*Anderson v. Liberty Lobby, Inc.*

477 U.S. 242 (1986) ........................................................ 8, 25

*Balcorta v. Twentieth Century-Fox Film Corp.*

208 F.3d 1102 (2000) ........................................................ 22,23,24

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

*Carmen v. S.F. Unified Sch. Dist.*

    237 F.3d 1026 (9th Cir. 2001) ................................................................ 9

*Caterpillar, Inc. v. Williams*

    482 U.S. 386 (1987) ...................................................................... 20

*Celotex Corp. v. Catrett*

    477 U.S. 317 (1986) .................................................................. 8,9,25

*Chevron Corp. v. Pennzoil Co.*

    974 F.2d 1156 (9th Cir. 1992) ................................................................ 9

*Douglas v. Anderson*

    656 F. 2d 528 (9th Cir. 1981) ................................................................ 10

*Leland v. City & Cnty. Of San Francisco*

    576 F. Supp. 2d 1079 (N.D. Cal. 2008) ........................................................ 16

*Lingle v. Norge Div. Of Magic Chef, Inc.*

    486 U.S. 399 (1988) ...................................................................... 19

*Liu v. Amway Corp.*

    347 F. 3d 1125 (9th Cir. 2003) ................................................................ 12

*Livadas v. Bradshaw*

    512 U.S. 107 (1994) .................................................................. 18,22,23

*McDonnell Douglas Corp. v. Green*

    411 U.S. 792 (1973) ...................................................................... 10

*Musick v. Burke*

    913 F.2d 1390 (9th Cir. 1990) ................................................................ 9

*Reeves v. Sanderson Plumbing Product, Inc.*

    530 U.S. 133 (2000) .................................................................... 9,13

*S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*

    690 F.2d 1235 (9th Cir. 1982) ................................................................ 9

*St. Mary's Honor Center v. Hicks*

    509 U.S. 502 (1993) ...................................................................... 10

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

*Texas Dep't. of Community Affairs v. Burdine*

    450 U.S. 248 (1981) ................................................................. 13

*United States v. Diebold, Inc.*

    369 U.S. 654 (1992) ................................................................. 9

*Valles v. Ivy Hill Corporation*

    410 F.3d 1071 (9th Cir. 2005) .................................................. 21

*Wallis v. J.R. Simplot Co.*

    26 F.3d 885 (9th Cir. 1994) ..................................................... 18

*White v. Ultramar, Inc.*

    21 Cal.4th 563 (1999) ............................................................. 24

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case precisely illustrates why courts allow subtle and indirect proof of discriminatory intent in employment discrimination cases. Usually, discriminators are not foolish and are able to concoct superficially sound reasons for their illegal behavior. Here, GEO tries to hide behind the convenient, self-serving and completely uncorroborated position that it terminated Santiago based solely upon his failure "to secure a federal, high-security detainee," while conceding the fact that "the doors were opened by another officer" on August 5, 2015. As the evidence shows, in July 2015, GEO created a new segregation unit at the Adelanto Facility called Administrative Unit, which is physically and operationally separate from the Disciplinary Unit. This new development, less than a month before the incident, caused the entire Facility to be understaffed in violation of the ICE Detention Standard.

After a detainee attempted to escape, the Adelanto Facility held two officers responsible: Santiago and Marquez. The Adelanto Facility placed both employees in administrative leave to conduct investigation. At the conclusion of the investigation, to cover up its own fault, the Adelanto Facility decided to terminate both employees and requested formal process from corporate GEO. Corporate GEO, believing both employees were ***males***, approved the termination and directed the Adelanto Facility to execute the termination. However, when the corporate GEO learned that one of the employees was a pregnant ***female***, it directed Adelanto to place her on maternity leave instead of firing her, as requested and previously approved, and fired the male employee, Plaintiff.

### II. STATEMENT OF FACTS

#### A. Santiago's Employment with GEO

Santiago started his employment with GEO at the Adelanto Detention Facility (the "Facility") on March 18, 2013. SGD1. During his employment with GEO, he

was neither an administrative nor a professional exempt employee. SGD1. Nevertheless, Santiago was an effective Detention Officer with no other disciplinary actions prior to the August 5, 2015 incident (the "Incident") that led to the current lawsuit. SGD7.

**B. Division of Segregation Unit in July 2015**

Before July 2015, there was only one Segregation Unit (the "Unit") at Adelanto Facility. SGD2. After July 2015, this Segregation Unit was separated into two segregation units: the Administrative Segregation Unit ("ASU") and Disciplinary Segregation Unit ("DSU"). SGD2. The ASU held detainees who were under protective custody, or for any administrative reason, while the DSU held only detainees who were on disciplinary status and who were not allowed to be part of the general population. SGD2. This division gave way to a new policy for the ASU. SGD2. Detainees in the ASU were allowed to move freely in and out of their cells to access the showers, television, telephones, and law library terminals. As Detention Officer, Santiago was instructed to treat the detainees in the ASU like how he would treat detainees in the general population. SGD2.

Detention Officers working in the Unit were responsible for conducting many tasks throughout their shifts, including hourly detainee "checks" and post orders state security checks. SGD3. Given the number of tasks to be completed, the Facility was often times extremely short-staffed. SGD3.

**C. Orders and Instructions to Santiago as Detention Officer**

Before August 5, 2015, Assistant Warden Patricia Siebert-Love gave an order to all the Detention Officers that detainees did not need to be secured in the showers unless they requested a shaving razor. SGD2. Additionally, Santiago was responsible only for areas within range of his vision, such that his responsibility did not extend to different floors at the Unit where he was not physically present or could not have been physically present. SGD7. Instructions were also given to Santiago and other officers that they must stop whatever they were doing and

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

1  ensure that detainees receive their food at a proper temperature when it was meal

2  time for the detainees. SGD3.

3  **D. The August 5, 2015 Incident (the "Incident")**

4  On August 5, 2015, Detainee Irias ("Irias") requested to use the shower. SGD2.

5  Santiago was never advised that Irias was at risk of an escape or being dangerous,

6  and there was no record in his activity log that Irias exhibited unusual activity or

7  behavior at any time between March 18, 2013 and August 4, 2015. SGD2. Thus,

8  Santiago allowed him to shower and treated him the same as any other detainees

9  in the general population pursuant to the policy. SGD2. While Irias was taking the

10  shower, Santiago did not lock the shower door because the detainee did not

11  request a shaving razor. SGD2.

12  Shortly after Santiago escorted Irias to the shower, a Lieutenant ordered

13  Officer Patterson to leave his assigned post in Segregation, so as to serve Central

14  Command with the Facility Count paperwork. SGD3. By ordering Officer

15  Patterson to leave Segregation, which was a two-man post, Santiago was left alone

16  to perform the workload of two officers. SGD3. At this point, while Officer

17  Patterson had gone and Irias was still in the shower, dinner for all detainees had

18  arrived. SGD5. Per GEO's policy, Santiago needed to stop whatever he was doing,

19  and to distribute dinner dishes to the detainees. SGD5. With the help of two

20  authorized porters, Santiago distributed dinner to the lower tier detainees. SGD5.

21  Once done, Santiago checked Irias and saw that he was still showering. SGD5. He

22  then proceeded to the upper level of the Unit to finish distributing the dinner.

23  SGD5. As soon as he finished distributing dinner, Santiago headed back to the

24  lower floor and saw multiple officers entering the Unit with Irias. They escorted

25  Irias into his cell and secured the cell door. SGD5. Shortly after, Santiago learned

26  that, Officer Marquez, from the Central Control office, granted Irias access to four

27  doors before he was caught. SGD4.

28  In fact, short staffing was a constant problem in the Unit. On the day of the

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

Incident, the post at the Unit's control center was left unattended. SGD4. If there were an officer manning that station, that officer would have seen a detainee exit the shower and attempt an escape. SGD4. Instead, GEO ordered the officer that was supposed to be stationed at that post to cover another post in the Unit. SGD4. Supervisory Shift Log shows that "D. Marieko" was assigned to the "Segregation Control" on August 5, 2015.  However, no such officer was on site. SGD3.

### E. Santiago's Termination

On August 13, 2015, Lieutenant Duran and Assistant Warden Love requested to terminate Santiago. Warder and Facility Administrator James Janecka approved the termination on August 17, 2015. On August 26, 2015, Regional Office HR Director Sandra Gyenes approved the termination of Santiago. And on the same day, Director of Operation C. Nelson and Mr. J. H. Black, Regional Officer Vice President also approved it.

On August 31, 2015, GEO's Corporate Legal Alex L. approved the termination. SGD . On September 1, 2015, GEO's Corporate Human Resources Maria Barsallo, approved it on behalf of Christopher D. Ryan, Vice President of Employee and Labor Relations, and the CEO.

Santiago was notified of his termination on September 16, 2015. SGD6. Even though Santiago followed GEO's policies and procures on August 5, 2015, he was still terminated. SGD7.

### F. Gender Discrimination

The investigation of Officer Marquez's involvement and culpability in regards to the Incident was determined locally at the Facility, and a request for her termination was submitted to GEO. SGD6. On August 28, 2015, Sandra S. Gyenes requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. SGD6. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

terminate. SGD6. On September 1, 2015, a Disciplinary Action Form for Marquez's termination with GEO's approval signatures was prepared and ready to proceed. SGD6. Local Facility HR, Aida Adalpe, was instructed to proceed the termination at her earliest convenience. SGD6.  However, on September 2, 2015, after Sandra Gyenes became aware that Marquez was a pregnant woman, Marquez's termination was immediately withdrawn. SGD6. Instead, the local HR received new instruction to send a letter to Marquez, informing her that she was still under an investigation due to the Incident as of September 2, 2015, and that the investigation would remain open until her return to work. SGD6. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015. SGD6. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. SGD6.

## G. GEO's General Practice of Gender Discrimination Against Its Male Employees

There have been many instances where female employees who failed to conduct their jobs properly and yet were not reprimanded or fired, while the male employees would be held to a stricter standard or terminated if they made similar mistakes. SGD22.

Light Duty Accommodation. In 2014, Santiago broke his leg and was out of work for five months. He had requested multiple times for light duty (such as in clerical or central control room), but was repeatedly told that there was no light duty for him. SGD22. However, every time when a female officer requests a light duty, for either physical injury or pregnancy, GEO always grants it. SGD22.

Sleeping During work Hours. On one occasion in 2013, Officer Robertson fell asleep at her desk while on watch in Segregation—the unit that houses the most dangerous detainees in the entire facility. Lieutenant Cheney or Lieutenant Salgado saw her sleeping and did not reprimand her. SGD22. On August 8, 2017, Officer A.A. Maciel, was in charge of watching a detainee who was in the care of

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1863 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

Victor Valley Hospital. She fell asleep for at least one hour. Supervisors were notified but she was never reprimanded nor terminated. SGD22. However, on another occasion in 2015, when the then Deputy Warden saw Officer W. Luis sleeping on his watch at the perimeter of the facility, Officer Luis was terminated as a result. In addition, on September 25, 2017, Sergeant Hutchinson was reported by other employees that he was sleeping in the car while on duty. And he was also terminated as a result. SGD22.

Harassment. Around August 2014, Elizabeth Walker, a female employee at GEO began stalking and harassing Sergeant Hutchinson, who then made several formal complaints to Assistant Warden Love. No disciplinary action was taken against Walker. SGD22. Then, in August 2015, after Officer Maciel started spreading rumors that Sergeant Hutchinson was having an affair with her and kept harassing him, Hutchinson made a complaint in September. Maciel was put on leave for a period of time, but later was allowed to return to work. SGD22. Nevertheless, in 2013, after Officer P. Gutierrez had an affair with Lieutenant Rogokos, she filed a sexual harassment complaint against him and then he was terminated. SGD22.

Driving Policy. Under GEO's driving policy, anyone who gets into a car accident will not be allowed to drive for the company until they have passed a drug test and completed remedial training. SGD22. After Officer D. Baltazar got into a car accident in September 2017, she continued to drive in the company car on the following Monday. And She was never reprimanded or terminated. SGD22. However, on one occasion in 2016, when Officer J. Rocha was driving the company bus, and hit the passenger side mirror of a U.S. Marshall bus while still on company property, he was not allowed to drive until he completed all of the requirements, including the drug test and the remedial training, which in total would typically take more than four weeks. SGD22.

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

**H. Retaliation**

Santiago knew that GEO was required to comply with ICE Detention Standard. SGD23. Santiago also knew that GEO violated many of these standards. SGD23. Santiago noticed and knew that the ASU was always understaffed, that it placed everyone inside and outside of the facility in danger, and that officers were not granted their meal and rest breaks. SGD23. In addition, there was no control officer designated for the segregation units, and officers were encouraged to conduct count when detainees were not in their cells. SGD23. Since Santiago knew that the Facility was operated under the ICE Detention Standard, he went to the ICE website at https://www.ice.gov/factsheets/facilities-pbnds to see if his observations were justified under the guidance required by ICE. SGD23. He even printed a couple of pages from the website to discuss with his shift supervisor about his findings and concerns. SGD23. When he drafted a memo regarding the Incident on August 5, 2015, he included some of issues that he had observed at work that were not in compliance with the ICE detention standard. SGD23.

**I. Meal and Rest Breaks Violation**

GEO's practice of not providing Detention Officers with their lunches and ten-minute breaks has been a common occurrence for at least 6 years. SGD24. Officers would work 12-16 hours without being granted a restroom break. SGD24. On more than one occasion, supervisors would have the Detention Officer sign the break log indicting that the officer had received a break, when in fact, the officer did not. SGD24. The Supervising Lieutenant has discretion to assign an officer to any post. SGD24. It is common knowledge amongst the Detention Officers in the Facility that if an officer does not sign the roster indicating that he or she had received the sanctioned break, the Lieutenant will assign that officer to an undesirable post. SGD24. There was an individual instance where Sergeant Hutchinson refused to sign, his supervisors threatened him with an undesirable post and even mandated overtime. SGD24. Supervisors also forged his signature

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

on the break log. SGD24. Because GEO never provided enough officers, officers on duty are forced to either forgo or take their meal or rest breaks later than mandated time. SGD24. As Detention Officer, Santiago was rarely able to take rest and meal breaks. Because of the constant short staffing, GEO did not offer officers on duty sufficient time to take their meal and rest breaks because they were not allowed to leave their posts unattended. SGD24.

**J. GEO's Policy Changes**

Following the Incident on August 5, 2015 and Santiago's termination, GEO changed its meal service procedure. Santiago was required to distribute the meal to the entire unit cell by cell. SGD3. After his termination, GEO requires one detention officer to set-up a food cart in the middle of the dorm at the day room, and another detention officer observe and monitor as detainees come to pick up their meals themselves. SGD3.

**K. Second Attempted Escape by Irias**

A week after Santiago was terminated due to Irias's attempted escape on August 5, 2015, Irias attempted another escape. SGD16. Another female Central Control Officer unlocked an interior door, thereby allowed Irias access to the outside of the Unit. SGD16. However, she was neither disciplined nor terminated. SGD16. It is contradictory to GEO's statement that Irias did not leave his housing unit unsupervised from March 13, 2013 through January 16, 2017 more than once. SGD16.

**III.  LEGAL STANDARD**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an ***essential*** element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. (*See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . " *Id*. at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc*., 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id*. The court need not "comb the record" looking for other evidence; it is required only to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

## IV. <u>ARGUMENT</u>

### A. <u>Substantial Triable Issues of Fact Exist as to GEO 's Discriminatory Motive and Pretext in the Discrimination Claim</u>

Very little evidence is required to survive summary judgment in a discrimination case because the ultimate question is one that can only be resolved through a searching inquiry appropriately conducted by the fact finder upon a full record. *Reeves v. Sanderson Plumbing Product, Inc.*, 530 U.S. 133, 138 (2000).

California has adopted the three-prong test for discrimination claims set forth

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

in *McDonnell Douglas Corp. v. Green. Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317,354-356 (2000). When applying the three-prong test in a summary judgment motion, the plaintiff will need to establish his prima facie case of unlawful discrimination first. Then the employer needs to present admissible evidence by showing that either one or more of Plaintiff's prima facie elements is lacking, or that the adverse employment actions are based on legitimate, nondiscriminatory factors. Even if GEO has met its burden of production, GEO will still not be entitled to summary judgment if Plaintiff produces evidence raising a triable issue of fact material to the GEO 's showing. *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 343-344 (2008).

### 1) GEO 's Argument that Santiago Did Not Make A Prima Facie Case Fails Because It Is Based on a Misstatement of the Law

Applying the *McDonnell Douglas* three-prong test in the current summary judgment motion of Santiago's discrimination claim, GEO does not challenge the first three elements of Santiago's prima facie case, that (1) he was a member of a protected category; (2) he was qualified to do his job; and (3) he suffered an adverse employment action. *Guz*, 24 Cal.4th at 356. GEO only argues that Santiago did not meet the fourth element because he failed to establish a causal connection between his gender and the termination. GEO's P&A, 10:24-26. This argument clearly fails because it is based on an apparent misstatement of the law.

Santiago can meet the fourth element by proving that the adverse employment action occurred under circumstances suggesting a discriminatory motive. *Guz*, 24 Cal.4th at 356. As the courts clearly point out, this is only a minimal evidentiary burden. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Heard v. Lockheed Missiles & Space Co.*, 44 Cal. App. 4th 1735, 1751 (1996); *Hersant v Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1002 (1997); *Douglas v. Anderson*, 656 F. 2d 528, 531 (9th Cir. 1981).

For the same reason, GEO's argument that Santiago failed to prove a causal

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

link between gender and discrimination, given the fact that GEO terminated a female Detention Officer in "the only other attempted escape" in 2013 is also irrelevant. GEO's P&A, 12:3-5. With no legal merit and no further facts presented, this singular incident is neither relevant to the current lawsuit, nor can it negate any elements in Santiago's prima facie case. Besides, triable issues of fact does exist because detainee Irias did in fact made another attempt to escape one week after Santiago was terminated. The only, and *non-coincidental*, difference between the two incidents involving detainee Irias' attempted escapes is that the female employee responsible for the attempted escape a week after Santiago's termination was neither disciplined nor terminated. SGD16.

GEO also misconstrues the timing requirement under the fourth element by arguing that Santiago and Marquez were treated equally because they were eventually both terminated. GEO's P&A 11:3-10. As explained above, the fourth element Santiago needs to show is that the adverse employment action he suffered, i.e., his termination, occurred under circumstances suggesting discrimination. *Guz*, 24 Cal.4th at 356. The request to terminate both Santiago and Marquez was made and approved by GEO around the same time, until GEO withdrew its decision to terminate Marquez immediately after it realized that Marquez was a pregnant woman while Santiago was not. SGD9.

### 2) Triable Issues of Fact Exist as to GEO 's Discriminatory Motive

Substantial triable issues of fact exist as to whether GEO treated Santiago and Marquez unequally because when the decision was made, Marquez was a pregnant woman while Santiago was not. SGD9. GEO concedes that Santiago and Marquez were involved in the same August 5, 2015 incident, which led to an investigation against both of them. GEO's P&A, 4:10-11, 5:18-19. GEO states that because Marquez began her FMLA leave the next day after the incident, on August 6, 2015, GEO remained the investigation open during her leave and would resume the investigation upon her return. GEO's P&A, 5:10-20.

11

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

However, on September 1, 2015, when GEO signed and approved the Disciplinary Action Form for Santiago's termination, it also signed and approved a Disciplinary Action Form for Marquez's termination with the Regional HR's mistaken belief that Officer Marquez was on "**administrative leave** w/o pay pending approval of **his** termination due to *109 – Inability to Perform Job*." SGD 12. Local facility HR, the HR at Adelanto Facility, was instructed to process Marquez's termination at its earliest convenience. SGD12. Nevertheless, on September 1, after realizing that Marquez was a pregnant woman, GEO quickly withdrew the termination. Instead, it instructed Aida Adalpe, Adelanto Facility's HR personnel, to sent a letter to Marquez indicating that Marquez was still under an investigation for the Incident as of September 2, 2015, and that the matter would remain open until her return to work. GEO made no disclosure in that letter that a decision to terminate her was already made on September 1, 2015. SGD12.

Although the local facility made a request to terminate both of them as a result of the Incident, GEO retained Marquez as employee for another eight months after it realized Marquez was a pregnant woman. *Liu v. Amway Corp.*, 347 F. 3d 1125, 1132 (9th Cir. 2003) ("The FMLA provides job security and leave entitlements for employees who need to take absences from work … "); 29 U.S.C. § 2612. At the same time, Santiago was terminated immediately pursuant to the request to terminate.

GEO also argues that GEO would have waited until the conclusion of Marquez's leave to terminate her had she requested the leave for any other protected reason rather than pregnancy, and that it would have also waited to terminate Santiago had he requested for a protected leave. Both arguments fail because they are purely based on self-serving speculation without any evidentiary merit. Code Civ. Proc., § 437c(d); *Bozzi v. Nordstrom, Inc.*, 186 Cal. App. 4th 755, 761 (2010) ("Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

inadmissible hearsay or opinion. [citation]"); *Molko v. Holy Spirit Assn.*, 46 Cal.3d 1092, 1107 (1988) ("The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed.")

### 3) Triable Issues of Fact Exist as to GEO's Proffered Reason

Where Santiago has established his *prima facie* case, the burden shifts to the employer who must articulate a "legitimate nondiscriminatory reason" for the adverse employment action. *Texas Dep't. of Community Affairs v. Burdine* 450 U.S. 248, 254-255 (1981); *Guz*, 24 Cal. 4th at 355-356. Once the employer has offered a legitimate, nondiscriminatory reason, the plaintiff can offer evidence that the employer's stated reason is either false or pretextual, by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason that a reasonable fact finder could rationally find it unworthy of credence. *Hersant*, 57 Cal. App. 4th at 1005; *Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th 864, 886 (2007).  Also, Santiago's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Product, Inc.*, 530 U.S. 133, 148 (2000).

Substantial triable issues of fact exist here in regards to the credence of GEO's proffered legitimate nondiscriminatory reason. GEO proffers that it terminated Santiago because on August 5, 2015, Santiago failed to lock and secure a shower door, which resulted in an attempted escape of a detainee. GEO's P&A, 4:10-11. However, on August 5, 2015, Santiago completed each task in his job requirements mandated by GEO. SGD 8.

Santiago did not lock the shower door because, first, detainees in the Administrative Unit were allowed to move around the facility without restriction. SGD2. Accordingly, there was an order by Assistant Warden Patricia Siebert-

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

Love, memorialized by a memorandum by Officer Shelton, that detainees need not be secured in the showers unless they request a razor. SGD3. Second, at the time Santiago was working in the Administrative Segregation Unit as a detention officers, GEO instructed all detention officer in the Administrative Unit to lock and secure the shower door only if the detainee in the shower requested a razor. On August 5, 2015, the detainee who attempted the escape did not request a razor. Thus, Santiago was following rules and guidelines mandated by GEO to not lock the detainee inside the shower. SGD2. Further, GEO's policy states that Detention Officers must ensure that detainees receive their food while it is warm, so detention officers must stop whatever they are doing when meals arrive from the kitchen staff. When the Incident occurred, it was dinnertime for the detainees, and Santiago was the only officer on duty to distribute the meals. The detainee was able to make an attempted escape because of GEO's lack of staffing, not because of Santiago's inability to do his job. GEO 's proffered reason that Santiago failed to unlock the shower door is weak, implausible and contradicts its own practices at the Facility. Such weakness and inconsistency should enable a reasonable fact finder rationally find it unworthy of credence, and hence infer that GEO did not act for the asserted nondiscriminatory reason. *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App. 4th 297, 314 (2010).

Further, GEO concealed the fact that a request to terminate Santiago and Marquez was made at the same time and a termination decision against Marquez was originally approved and signed on September 1, 2015. It chose not to disclose that its decision to withdraw termination of Marquez was due to its discovery that Marquez was a pregnant woman. Such a showing of "mendacity" goes a long way to proving intentional discrimination against Santiago because he was not a pregnant woman. *Reevs*, 530 U.S. at 147. In addition, any argument that the claims are preempted by Section 301 of the Labor Management Relations Act ("Section 301") will certainly fail, for reasons set forth below.

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

### 4)  Additional Evidence on GEO's General Practice of Gender Bias

Santiago may prove pretext by evidence including facts as to GEO's general policy and employment practices. *McDonnell Douglas,* 411 U.S. at 804-805. As described above, ample circumstantial evidence of pretext exists as to GEO 's general practice pattern of gender favoritism towards its female employees. Many of those instances concern female employees who have failed to conduct their jobs properly and were not reprimanded or terminated, but male employees were terminated for the same or similar mistakes.

***Light Duty Accommodation***. When Santiago requested multiple times for light duty accommodation due to his leg injury one year prior to his termination, he was repeatedly told that there was no light duty for him. However, often times when a female officer request for light duty, GEO always grants it. SGD 22.

***Sleeping During work Hours.*** After Officer Robertson was observed sleeping at her desk on her watch in Segregation, she was not reprimanded or terminated. SGD22.  Also, after Officer A.A. Maciel fell asleep while watching a detainee, she was not reprimanded nor terminated. SGD22. Nevertheless, after Officer W. Luis was observed sleeping on his watch, he was terminated. SGD22. Further, when Officer Hutchinson was reported to be sleeping in the car while on duty, he was terminated. SGD22.

***Harassment.*** After Officer Hutchinson made several formal complaints at different times regarding harassment from two female employees, either nothing was done regarding his complaints or the female employee was only put on leave and was allowed to return to work after a short while. SGD22.  However, when Officer P. Gutierrez had an affair with Lieutenant Rogokos, and after Lt. Rogokos ended the affair, she filed a sexual harassment complaint against him. He was terminated.

***Driving Policy.*** After Officer D. Baltazar got into a car accident, she was not allowed to drive another company car until she successfully completed a drug test

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

and remedial driving training per GEO's policy. SGD22. Yet she continued to drive on the following Monday. SGD22.  She was never reprimanded nor terminated. SGD22. Nevertheless, when Officer J. Rocha hit the passenger side mirror of a U.S. Marshall bus while driving the company bus on company property, he was not allowed to drive for more than four weeks until he passed the drug test and finished the remedial training. SGD22.  As set forth above, substantial triable issues of fact exist as to whether GEO  has been engaged in a general policy and employment practice of treating its female employees much more favorably even when they are similarly situated as male employees.

## B.  When GEO 's Challenge to the Gender Discrimination Claim Fails, So Too Does Its Challenge to the Wrongful Termination Claim

GEO  challenges the wrongful termination claim by arguing that Santiago must first establish a viable claim of gender discrimination. For the reasons set forth above, Santiago has shown many triable issues on the underlying discrimination claim, and thus, his wrongful termination claim should reach the jury too.

## C.  When GEO 's Challenge to the Gender Discrimination Claim Fails, So Too Does Its Challenge to the Failure to Prevent Claim

It is an unlawful employment practice under FEHA for an employer to "fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). Plaintiff who show that they have suffered discrimination in violation of FEHA can thereafter also bring suit alleging that the employer failed to meet its affirmative duty to prevent discrimination from occurring. *Lelaind v. City & Cnty. Of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). For the reasons set forth above, substantial triable issues of fact exist for Santiago's gender discrimination claim under FEHA, and thus, his failure to prevent discrimination claim should reach the jury as well.

## D. Santiago was Wrongfully Terminated in Violation of Public Policy

California recognizes tort claims for wrongful termination in violation of a

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1855 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

public policy reflected in a statute or constitutional provision. *Tameny v. Atlantic Richfield Co.,* 27 Cal. 3d 167 (1980). Sex/Gender discrimination in violation of FEHA violates public policy and can ground a tort claim for wrongful termination. Because GEO has not shown any evidence that requires dismissal of the Santiago's *Tameny* claim independent from the statutory discrimination claim, the tort claim must survive with denial of GEO's summary adjudication to the statutory claim.

### E.   Santiago was Retaliated Against for Engaging in Protected Activity

Section 1102.5(b) enjoins employers from retaliating against employees who report illegal activities. Santiago meets the requisite degree of proof necessary to prove a *prima facie* case by showing that he engaged in a protected activity when he disclosed information related to GEO's mandated rules and regulations in direct violation of ICE Detention Standards. Santiago knew that the Facility was constantly understaffed since officers could not properly take meal and rest breaks, were posting by themselves at a two-men posts, and were being deployed to other areas of the Facility because of GEO's short staffing. Since Adelanto was operated under the ICE Detention Standard, Santiago went to the ICE website at https://www.ice.gov/factsheets/facilities-pbnds to confirm his suspicions and raise his concerns with his supervisors. Additionally, he printed couple of pages from that website to discuss with his shift supervisor about his findings and GEO's violations.

After the Incident, Santiago drafted his memorandum detailing the events that lead to the attempted escape. Santiago made sure to include some of his findings from the website to ensure that he will not be held responsible for GEO's violations of ICE's standards. In addition to Santiago, other detention officers started to complain about deviations from ICE's standards and GEO's own operational policies and procedures to their shift supervisors. SGD 23.

Even assuming, *arguendo* that GEO can meet its burden of production to

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

proffer evidence of a legitimate, non-retaliatory reason for the adverse employment action taken against Santiago, there is enough evidence to show the pretext. SGD7. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

## F.  Santiago W&H Claims Are Not Based on Interpretation of the CBA and Thus, Not Subject to the LMRA Preemption

Appellate Courts have recently upheld that a claimant does not forego his/her statutory claims, such as FEHA, Gov't Code ,and Labor Code violations, simply because he/she is subject to a valid CBA. *Volpei v. County of Ventura*, Cal. App. LEXIS 903 (2013). Additionally, the only time Appellate Courts have barred subsequent statutory claims when a CBA is in effect, is if the Union properly grieved that specific claim in Arbitration. (*Wade v. Ports Am. Mgmt. Corp*. 218 Cal. App. 4th 648 (2013)]. Contrary to GEO  characterization, union has not aggrieved any of plaintiff's claims. SGD 26 .  [evidence]

## G.  Claims for the Enforcement of Nonnegotiable State Law Rights are Not Preempted by § 301

The U.S. Supreme Court has continuously held that the preemptive reach of § 301 does not extend to "nonnegotiable rights conferred on individual employees as a matter of state law…" (*E.g., Livadas v. Bradshaw,* 512 U.S. 107, 123 (1994); *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 212 (1985) ("It would be inconsistent with congressional intent under [section 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").

Applying these guiding standards, courts have repeatedly recognized that employees' claims based on "rights arising out of a statute designed to provide minimum substantive guarantees to individual workers" are not preempted because they may exist without any need to interpret a CBA. *Lingle v. Norge Div. Of Magic Chef, Inc.*  486 U.S. 399, 412, (1988); *see also Soldinger v. Northwest Airlines, Inc.*, 51 Cal.App.4th 345, 359 (1996) (No § 301 preemption of

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

1    employment standards that fall within the traditional police power of the state).

2    ### H. California Labor Code Governs Santiago's Wage & Hour Claims

3    Santiago based his claims entirely on violations of California law regarding

4    minimum requirements for overtime, meal and rest periods. California requires

5    "off duty" meal and rest periods where employees have no work responsibilities.

6    Yet GEO unlawfully requires the officers to work "on duty" meal periods in

7    which they remain at their work positions performing the assigned functions

8    while they eat quickly. Similarly, GEO unlawfully requires the employees to

9    remain at their work areas to during any supposed rest periods. These are blatant

10   violations of California requirements. No federal law is involved.

11   Because plaintiff's claims for travel time under Lab C § 1194, a second meal

12   period under Lab C § 512(d), a third rest break under Lab C §  **226**.7, and other

13   derivative labor law violations under Lab C §  **226**, 201, 202, 203, and 204, arose

14   under state law and did not substantially depend on an interpretation of a

15   collective bargaining agreement (CBA), the claims were not preempted by §  301

16   (29 U.S.C.S. §195(a)). It was irrelevant that the CBA provided for some of the

17   same claims under its own terms because the state law claims could have been

18   resolved without interpreting the CBA. *Meyer v. Irwin Indus.* 723 F. Supp. 2d

19   1237, 2010 U.S. Dist. LEXIS 81713 (2010).

20   ### I.   There Is No Preemption in This Case Under Section 301

21   GEO has asserted that a federal question exists here based on section 301 of the

22   Labor Management Relations Act ("section 301" or "LMRA"), 29 U.S.C. §

23   185(a). Under section 301, federal law exclusively governs suits for violation of

24   contracts between an employer and a labor organization representing employees in

25   an industry affecting commerce. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394

26   (1987). However, the LMRA does not preempt an employee's independent,

27   freestanding state rights. *Id.* at 395. It is only "[w]hen resolution of a state-law

28   claim is substantially dependent upon analysis of the terms of an agreement made

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

19

between the parties in a labor contract, that [such] claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). As no terms of the governing CBA need to be enforced or interpreted here, there is no LMRA preemption as the basis for federal jurisdiction, and the motion should be denied.

## J.  The Overtime Claim is Not Preempted By Section 301

In *Lujan v. So. Cal. Gas. Co.,* 96 Cal. App. 4th 1200 (2002), the California Court of Appeal recently addressed whether § 301 preempted overtime claims. There, the CBA contained an overtime compensation plan for meter readers. The Labor Commissioner sued, alleging that the plan violated California's overtime laws. The defendant employer moved for summary judgment based upon § 301 preemption. Noting "that establishment of labor standards falls within the traditional police powers of the state," the court found no preemption, despite the fact that the CBA purported to establish and govern the overtime plan. *Id.* at 1209. "California law provides clear standards regarding rates of overtime pay which establish rights independent of a collective bargaining agreement." (*Id.* at 1211.) Each of these cases firmly establishes that claims asserted by unionized employees for violations of California's wage and hour laws are ***not*** preempted by § 301.

## K. Break Periods Are Non-Waivable Minimum Labor Standards

The Ninth Circuit decided a case remarkably similar to the present case. In *Valles v. Ivy Hill Corporation*, 410 F.3d 1071(9th Cir. 2005) , the court held that California meal periods (which are governed by the exact same statute as rest periods, Labor Code §226.7) are a non-negotiable right, and mere reference to the collective bargaining agreement does not give rise to federal preemption. *Id.* at 1082. Similarly, California's rest period requirement is a state-mandated minimum labor standard applicable to workers covered by a CBA. (*Zavala v. Scott Brothers Dairy, Inc.*, 143 Cal. App. 4th 585, 591 (2006). GEO would have the Court apply a preemption doctrine, which routinely has been held ***not*** to apply to wage and

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1865 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

hour cases such as this one.  GEO 's reliance on *Araquistain v. Pacific Gas & Electric Co.* (2014) 229 Cal.App.4th 227 is mistaken. In *Araquistain* the issue was the interpretation of the CBA on whether employees were permitted to eat their meals during work hours, an interpretation of the CBA. *Id*., 229. Contrary to defendant's attempt of mischaracterization of the issue, plaintiff's claims do not seek the interpretation of the terms of CBA, but rather alleged that defendant had violated non-waivable state law rights that set minimum labor standards.

### L. GEO Failed to Provide Accurate Itemized Wage Statements

Geo's preemption argument for Santiago's claim pursuant to Labor Code § 226 similarly should fail as was the case in *Densmore* where the court held that former employee's claims that former employer failed to furnish accurate wage statements and maintain required records, in violation of Cal. Lab. Code §226(a), were not preempted by the LMRA because interpretation of the collective bargaining agreements was not required to resolve claims. *Densmore v. Mission Linen Supply,* 164 F. Supp. 3d 1180, 2016 U.S. Dist. LEXIS 21354 (2016).

### M. Santiago Did Not Receive All Wages Due at Termination

The U.S. Supreme Court, the Ninth Circuit and California courts have all uniformly held that claims for the violation of California's statutory minimum labor standards – such as the claims alleged herein – are not preempted by § 301 as a matter of law. For example, in *Livadas*, 512 U.S. at 125, the U.S. Supreme Court held that § 301 did ***not*** preempt the plaintiff's claims for waiting time wage continuation under Labor Code § 203 because the issue "was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer." *Id.*

### N. GEO Failed to Pay Santiago in Regularly Established Paydays

Likewise, in *Balcorta v. Twentieth Century-Fox Film Corp.,* 208 F.3d 1102 (2000), the Ninth Circuit held that §301 did ***not*** preempt claims for the violation of Labor Code §201.5 (requiring that discharged employees in the motion picture

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1855 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

industry be paid within a specified time period). Significantly, the *Balcorta* court held §301 inapplicable, despite the fact that the collective bargaining agreement at issue expressly set forth time requirements governing the payment of wages after discharge. *Id.* at 1110. In rejecting the defendant's argument that the claim required interpretation of the collective bargaining agreement, the court held that "whether a violation has occurred is controlled only by the provisions of the state statute and does not turn on whether the payment was timely under the provisions of the collective bargaining agreement." *Id.* At 1111 (citation omitted). California has followed the federal rule on this issue, holding that rights under a collective bargaining agreement are contractual in nature and are independent from statutory rights. *Camargo v. California Portland Cement Co.*, 86 Cal.App.4th 995, 1008 (2001)

## O. GEO 's Engaged in Unfair and Unlawful Business Practices

Santiago brought claims based on Geo's policy or discriminatory practice in violation of Gov. Code. §12940 based on sex or gender, failing to prevent discrimination (§12940 (K), retaliation under section 1102.5, failure to provide rest and meal periods, failure to pay state overtime compensation under sections 510 and 1194, failure to provide accurate wage statements (§226), failure to pay wages timely upon termination (§203), and failure to pay wages on regularly established paydays (§§204, 210), and pursuant to PAGA Labor Code §2698-2699.5.

Santiago also alleged that these same statutory violations constitute unlawful and unfair business practices in violation of Business and Professions Code § 17200. All of the Labor Code provisions at issue in this case are designed to protect employees. Labor Codes §§ 226.7 and 226 set minimum labor standards. Labor Code § 203 – which is based upon an employer's obligation to timely pay discharged employees – insures prompt payment of all wages earned to discharged employees. These statutes embody California's fundamental public policy

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

PLAINTIFF EMANUEL SANTIAGO'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION

protecting working conditions. *E.g., Phillips v. Gemini Moving Specialists* 63 Cal. App. 4th 563, 571, 574 (1998) ("California courts have long recognized wage and hour laws concern not only the health and welfare of the workers themselves, but also the public health and general welfare.") (quotations omitted). It is also extremely significant that all of these Labor Code provisions are ***nonnegotiable***. Labor Code § 219 ("No provision of this article can in any way be contravened, or set aside by private agreement, whether written, oral, or implied"); *see also Mechanical Contractors Assn. v. Greater Bay Area Assn.*, 66 Cal. App. 4th 672, 688 (1998)  ("Contracts that are contrary to express statutes or the policy of express statutes . . . are illegal contracts") (citations omitted).

*Livadas, Balcorta , Lujan* and the other authority cited above all confirm that the preemptive reach of § 301 falls short of the statutory claims alleged in this case. All of the causes of action asserted concern minimum wage and hour standards regulated by state law that exist independent of the CBA, and are nonnegotiable rights. The § 17200 claim also falls into this category because the claim is based upon the violation of wage and hour statutes that establish nonnegotiable rights. See *Adams v. Pacific Bell Directory* 111 Cal. App. 4th 93, 98-100 (2003) (§ 301 did not preempt action against employer alleging that commission deductions violated § 17200).

In fact, contrary to GEO 's arguments, these cases also make clear that § 301 does ***not*** apply ***even*** where the CBA contains provisions embracing the identical subject matter as the state law claims, and the statutes on which they are based. *See Balcorta* , 208 F.3d 1102; *Lujan* , 96 Cal.App.4th 1200.  Santiago's claims are independent of the CBA. Thus, they do not arise out of the CBA, they are not preempted, and the CBA's grievance and arbitration provisions are therefore inapplicable.  The Court need go no further in denying Geo's motion.

## P.  Triable Issue of Fact Exists As to the Punitive Damage Claims.

It is well settled that punitive damages may be recovered for violations of the

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

FEHA. *Weeks v. Baker & McKenzie* , 63 Cal. App. 4th 1128, 1147-48 (1998). It is further established that an employer may be subject to punitive damages when the bad actor was a managing agent acting in the scope of employment and/or "when the employer or a manager of the employer ratified or approved the act." *Weeks*, 63 Cal. 4th at 1148-49. As described above and also in SGD 6, it is undisputed that Santiago termination received approval and ratification by GEO's corporate executives. Making Geo's reliance on *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566 (1999) inapposite.

To allow defendant to argue as it does that Mr. Janecka was merely a conduit of information to his superiors would be to condone and encourage any employer in this situation to send the lowliest and least effective employee into the "zone of danger" to immunize the corporation from punitive damage exposure. Plainly this is not a result this court should encourage. A corporation's liability for punitive damages attaches when an employer authorizes or ratifies the wrongful act. *College Hospital, Inc. v. Superior Court*, 8 Cal.4th 704 (1994). Ratification is found when employer demonstrates an intent to approve of oppressive, fraudulent, or malicious behavior by an employee in the performance of his or her job duties, such as when a managing agent fails to interceded in a pattern of workplace abuse or fails to investigate or discipline known conduct. *Id*. That is precisely what occurred here.

## Q. There Are Sufficient Evidence of Genuine Issue of Material Fact

If the non-moving party affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial, the motion must be denied. (*See Celotex Corp.*, 477 U.S. at 324.) The materiality of a fact is determined by whether it might influence the outcome of the case based on the contours of the underlying substantive law. (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over such facts amount to genuine issues if a reasonable jury could resolve the motion favor of the nonmoving patty. *Id*.

**R. Motion Must Be Denied So As to Allow Santiago to Conduct Discovery**

As the Court is aware, Santiago's discovery motion will be heard on December 7, 2017. GEO has stead fatedly refused to provide substantive responses to Santiago's written discovery requests. Pursuant to FRCP 56(d), Santiago respectfully requests this Court to deny the motion, or in the alternative, allow time to obtain affidavits or declarations or to take discovery. (Exh. A, "Mostafavi Decl." ¶¶19-20.)

**V. CONCLUSION**

For all the foregoing reasons, GEO 's Motion must be denied in its entirety. In the alternative, the Court should allow Santiago to conduct discovery.

Date: November 27, 2017                    MOSTAFAVI LAW GROUP, APC

By: _____

Amir Mostafavi, Esq.
Attorney for Plaintiff
Emanuel Santiago

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064