AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
11835 W Olympic Blvd., STE 1055
Los Angeles, California 90064
Telephone: (310) 473-1111
Facsimile: (310) 473-2222
amir@mostafavilaw.com

Attorneys for Plaintiff EMANUEL SANTIAGO

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

EMANUEL SANTIAGO, an individual,

PLAINTIFF,

vs.

THE GEO GROUP, INC., a Florida Corporation dba GEO CALIFORNIA, INC.; GEO Corrections and Detention, LLC; DOES 1-10, individuals, and DOES, 11-20, business entities inclusive,

DEFENDANTS.

Case No. 5:16-cv-02263-DOC-KK

**PLAINTIFF EMANUEL SANTIAGO'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

*[Filed concurrently: Memorandum of Points and Authorities; Evidentiary Objections; Declarations; Appendix of Evidence; and Proposed Order]*

Assigned to: Hon. David O. Carter
Date: December 18, 2017
Time: 8:30 a.m.
Courtroom: 9D – 9th Floor
Action Filed: July 18, 2016
Trial: January 23, 2017

Plaintiff Emanuel Santiago ("Plaintiff") submits his Statement of Genuine Disputes Of Material Facts In Support Of His Opposition To Defendant THE GEO GROUP, INC., dba GEO CALIFORNIA, INC.; GEO Corrections and

Detention, LLC's Motion For Summary Judgment Or, In The Alternative, Partial Summary Judgment pursuant to Local Rule 56-2.

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS**

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| 1. GEO Corrections and Detentions, LLC hired Plaintiff to work as a Detention Officer at the Adelanto Facility in March 2013. (Declaration of James Janecka, Exhibit 1 to Compendium of Evidence ("Janecka Decl.") ¶¶ 2, 5.) | Disputed.<br>James Janecka started working as the Warden and Facility Administrator of the Adelanto Detention Facility in September 2014.<br>("Janecka Decl.") ¶ 2.)<br><br>Janecka was not working as the Warden and Facility Administrator when Plaintiff was hired in 2013. ("Janecka Decl.") ¶ 2.)<br><br>Santiago was hired on March 18, 2013. (Exh. A, "Mostafavi Decl." ¶ 2-3, Exhibit 1-2: ¶2.)<br><br>Santiago was not an administrative or professional exempt employee.<br>(Exh. A, "Mostafavi Decl." ¶ 6, Exhibit 5: ¶ 2, 3.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's Evidentiary Objection #3. |
| 2. On August 5, 2015, Plaintiff escorted a detainee from his cell to the shower. Once the detainee was in the shower, Plaintiff did not secure the shower door. Plaintiff left the detainee with the shower door unlocked, and left to attend to other duties.<br>(Janecka Decl., ¶¶ 7-8.) | Disputed.<br>Plaintiff was assigned to the Administrative Segregation Unit on August 5, 2015.<br>(Exh. B, "Santiago Decl." ¶ 3.)<br><br>Detainees in the Administrative Unit were allowed to move around the facility without restriction.<br>(Exh. C, "Hutchinson Decl." ¶ 9.)<br><br>Detainees' movement in the segregation unit did not require two-officer escort.<br>(Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶7.)<br><br>GEO did not require, and there were never any indications made on detainee's prison cell of his or her propensity to be dangerous or tendency to attempt an escape. There were never any signs advising staff of detainee Irias |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | being at risk of an escape or being dangerous. (Exh. G, "Macias Decl." ¶ 16.)<br><br>Detainee Irias did not require extra precautions or higher level of security. (Exh. A, "Mostafavi Decl." ¶ 2-3, Exhibit 1-2: ¶12.)<br><br>Detainee Irias was not under any modified procedure or specific restriction different from other detainees. (Exh. A, "Mostafavi Dec." ¶ 2-3, Exhibit 1-2: ¶13.)<br><br>There is no record of detainee Irias exhibiting unusual activity or behavior in his activity log at any time between March 18, 2013 and August 4, 2015. (Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶25.)<br><br>On August 5, 2015, when the incident occurred, Santiago was in the |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | segregation unit handing out the evening meal trays. It was common practice to be able to take a detainee from their cell, take them down to the shower area, and leave them there until they were completed with their shower. It happened on a regular basis that officers left detainees in showers and left the door unlocked. (Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 095.)<br><br>After July 2015, the Administrative Segregation Unit now held detainees who were under protective custody, or for any administrative reason, while the Disciplinary Segregation Unit held only detainees who were on disciplinary status. The new policy for the Administrative Segregation Unit no longer required officers to handcuff or escort detainees outside of their cells. Detainees were allowed to move freely in and out of their cells for access to the |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | showers,<br>television, social interaction, telephones, and law library terminals, which were all in a shared living area (dayroom). As an officer Plaintiff was instructed to treat the detainees in this Unit like they would treat detainees in the general population.<br>(Exh. B, "Santiago Decl." ¶ ¶ 3, 5, 10, 12.)<br><br>At no time on August 5, 2015, was detainee Irias considered to require a dedicated escort, or require to be locked inside the shower as he had not requested a razor.<br>(Exh. B, "Santiago Decl." ¶19.)<br><br>Detainee Irias did not receive a shaving razor when he requested to use the shower on August 5, 2015. (Exh. A, "Mostafavi Decl." ¶5, Exhibit 4: ¶23.)<br><br>Accordingly, Assistant Warden Patricia |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Siebert-Love gave the order that detainees need not be secured in the showers.<br>(Exh. C, "Hutchinson Decl." ¶ 9.)<br><br>At the time Plaintiff was working in the Administrative Segregation Unit, Detention Officers were told that Detention Officers shall secure the shower by locking it only if a detainee were to request for a razor. If a detainee did not request a razor while taking a shower, Officers should not lock the showers.<br>(Exh. F, "Moreiko Decl." ¶ 16.)<br><br>Just prior to Plaintiff's termination, GEO circulated paperwork that provided that detainees under protective custody should not be locked in the shower unless they were given a razor. Detainee Irias on the date of the incident did not request a razor.<br>(Exh. E, "Harris Decl. ¶ 18.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Detainee Irias requested to use the shower, and given the new policy, Plaintiff allowed him to do so. Plaintiff unlocked his cell door allowing him to proceed to the shower without locking it because detainee did not request a shaving razor.<br>(Exh. B, "Santiago Decl." ¶ 20.)<br><br>Detention Officers working in the Segregation Unit were responsible for conducting many tasks throughout the workday. For example, Detention Officers working in Segregation were responsible for conducting hourly detainee "checks" to ensure that every detainee within their assigned Unit is safe, and present. Post orders state security checks must be completed before every 30 minutes to check for living breathing flesh. Additionally, Officers working in Segregation Unit and particularly during the Second Shift, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | were required to monitor detainee movement more closely because Detainees frequently requested going to restrooms, bathrooms, recreational areas, and dormitory areas, especially during this shift period.<br>(Exh. F, "Moreiko Decl." ¶ 12.)<br><br>There is an additional pressure on Detention Officers because the Facility is extremely short-staffed; Given the number of tasks to be completed, and that detainee movement is more frequent during Second Watch, and coupled with the fact that Segregation Unit is short-staffed, Officers are given a lot of discretion to accomplish their daily and weekly tasks.<br>(Exh. F, "Moreiko Decl." ¶ 14.)<br><br>Detention Officers often allow detainees to shower during the time that they are conducting other duties, and supervisors have not taken adverse action against |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Officers for doing so because they realize that there are only so many hours in a day for Officers to complete all their given tasks.<br>(Exh. D, "Nowicki Decl." ¶ 34.)<br><br>Geo allowed Detention Officers to allow detainees to use the showers while unit count was in progress. (Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶68.)<br><br>Right before the incident on August 5, 2015, the 2nd officer on duty with Plaintiff had taken a group of detainees outside for required recreation time. Shortly after Plaintiff placed detainee Irias in the shower, 2nd officer came back to the unit.<br>Detainee Irias had not finished showering when the facility count commenced so he was counted in the shower. Once the count commenced, the dinner trays were delivered to the Unit by kitchen staff. Once the 2nd officer and |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff completed counting the unit, 2nd officer left Administrative Segregation once again to deliver the count paperwork to the Central Control. 2nd officer on duty did not return to the Unit as he was required to cover for another officer at a different post during that officer's meal break. Plaintiff was left alone. Since dinner had arrived, Plaintiff needed to start distributing it to the detainees per GEO's policy. Detainee Irias was still in the shower. Plaintiff distributed dinner on the lower tier of the facility. Once done with the lower tier, Plaintiff checked on detainee Irias again and saw that he was still showering. Plaintiff proceeded to the upper level to finish distributing dinner. Once completed, Plaintiff headed back. This is when Plaintiff saw multiple officers entering the Unit with detainee Irias. They escorted him into his cell and secured the cell door. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. B, "Santiago Decl." ¶ ¶ 21, 22, 23, 24.)<br><br>Plaintiff's Evidentiary Objection # 4.<br>Plaintiff's Evidentiary Objection # 5.<br>Plaintiff's Evidentiary Objection # 6. |
| 3. With Plaintiff away performing other functions, the unattended detainee exited the shower, walked towards the exit from the Restricted Housing Unit, and pushed a button seeking access through a locked door leading out of the unit. Officer Elizabeth Marquez, hired on July 9, 2012, was stationed in Central Control and tasked with ensuring only authorized personnel gain access through locked doors.<br>(Janecka Decl., ¶¶ 7-8, Ex. A.) | Disputed.<br>Once detainee Irias was in the shower, Santiago began assisting Officer Patterson in returning certain detainees in their cells and securing their cell doors around 4: 25pm on August 5, 2015.<br>(Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶35.)<br><br>On August 5, 2015 Adelanto Detention Facility Count commenced at 4:30pm.<br>(Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶36.)<br><br>In his 4:30pm detainee count on August 5, 2015, Officer Patterson had accounted for detainee Irias. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶38.)<br><br>On August 5, 2015, the kitchen staff delivered meals for Santiago to distribute.<br>(Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶67.)<br><br>Food must be delivered to detainees at the proper temperature.<br>(Exh. A, "Mostafavi Decl." ¶7, Exhibit 6: SANTIAGO004 (D).)<br><br>GEO instructed Detention Officers in the Segregation Unit that meals shall be served at the proper temperature. This means that as soon as the kitchen staff delivers the meal trays to the Unit, Officers should assume that the meals are at the proper temperature.<br>(Exh. E, "Harris Decl." ¶ 22.)<br><br>GEO policy dictates that Detention |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Officers must stop whatever they are doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl." ¶ 39.)<br><br>Detention Officers working in the Segregation Unit were responsible for conducting many tasks throughout the workday. For example, Detention Officers working in Segregation were responsible for conducting hourly detainee "checks" to ensure that every detainee within their assigned Unit is safe, and present. Post orders state security checks must be completed before every 30 minutes to check for living, breathing flesh. Additionally, Officers working in Segregation Unit and particularly during the Second Shift, were required to monitor detainee movement more closely because detainees frequently requested going to restrooms, bathrooms, recreational areas, and dormitory areas, especially |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | during this shift period.<br>(Exh. F, "Moreiko Decl." ¶ 12.)<br><br>There is an additional pressure on Detention Officers because the Facility is extremely short-staffed; Given the number of tasks to be completed, and that detainee movement is more frequent during Second Watch, and coupled with the fact that Segregation Unit is short-staffed, Officers are given a lot of discretion to accomplish their daily and weekly tasks.<br>(Exh. F, "Moreiko Decl." ¶ 14.)<br><br>Following the incident on August 5, 2015 and Plaintiff's termination, GEO changed its meal service procedure. Plaintiff was required to distribute the meal to the entire unit cell by cell. After his termination, GEO requires one detention officers to set-up a food cart in the middle of the dorm at the day room, and another detention officer observe |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | and monitor as detainees leave their cells and come to pick up their meals. (Exh. F, "Moreiko Decl." ¶ 20.)<br><br>Short staffing was a constant problem at the Adelanto Detention Facility, which created significant safety risks for GEO staff, and inmates, alike. On the day of the incident involving detainee Irias, a Lieutenant ordered Officer Patterson to leave his assigned post in Segregation, serve Central Command with the Facility Count paperwork, and then go relieve other officers for break so GEO would not incur meal penalties. By ordering Officer Patterson to leave Segregation, which was a two-man post, Plaintiff was left alone. Plaintiff was performing the workload of two officers.<br>(Exh. E, "Harris Decl." ¶¶ 15, 16.)<br><br>Supervisory Shift Log shows that "D. Marieko" was assigned to the |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | "Segregation Control" on August 5, 2015.(Exh. A, "Mostafavi Decl." Exhibit 23.) No such officer was on site, and so Officer Marquez in Central Control granting detainee Irias access. ("Exh. B, "Santiago Decl." ¶13.)<br><br>Plaintiff's Evidentiary Objection #7.<br>Plaintiff's Evidentiary Objection #8. |
| 4. When the detainee pushed the button, Officer Marquez unlocked the door remotely from Central Control for him, and the detainee passed through the door. The detainee continued on, gaining access through four doors monitored by Officer Marquez, until he was apprehended and returned to the Restricted Housing Unit.<br>(Janecka Decl., ¶¶ 7-8.) | <u>Disputed.</u><br>Supervisory Shift Log shows that "D. Marieko" was assigned to the "Segregation Control" on August 5, 2015. (Exh. A, "Mostafavi Decl." Exhibit 23.) No such officer was on site, and so Officer Marquez in Central Control granting detainee Irias access. ("Exh. B, "Santiago Decl." ¶13.)<br><br>There is a control center within the Segregation Unit. GEO labels the officer responsible for the post as "control officer" on the shift roster. On |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | the date of the incident, that post was left unattended. If there were an officer manning that station, that officer would have seen the detainee exit the shower and attempt an escape. Instead, GEO used the person that was supposed to be stationed at that post to cover another post in Segregation. "This was a staffing plan that GEO kept getting away with." (Exh. E, "Harris Decl." ¶ 25.)<br><br>Two officers from the Central Control office usually operate facility doors. There is a button by each security door, which has a speaker and microphone. To access a door, an officer presses this button, which relays to Central Control that<br>someone is trying to access the door. Most doors have cameras on both sides of the door so control officers can see who is trying to access the door before remotely unlocking it. |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Officer Marquez granted detainee Irias access to 4 doors before he was caught. (Exh. B, "Santiago Decl.") ¶ ¶ 26, 29.)<br><br>Officer Marquez unlocked the Segregation Housing Unit doors for detainee Irias on August 5, 2015. (Exh. A, "Mostafavi Decl." ¶5, Exhibit 4: ¶54.)<br><br>Plaintiff was not responsible for detainee Irias' access of the 4 door before he was caught. Plaintiff's memo to GEO of the incident on August 5, 2015, is as follows: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by the staff, and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Irias had not finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve each other on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainees' hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to discipline segregation side to relieve the 2 officers working disciplinary segregation, one officer at |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | the time, leaving me to complete the distribution of dinner trays. The 2 segregation porters were utilized to complete the distribution of dinner trays and I began distributing with them on the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell, so we skipped him and were to go back and feed him. When finished distributing to the bottom of the tier D/T Irias still had not finished in the shower se we continued to the top tier to distribute trays, this time from the right to the left. Once we finished distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I [seen] D/T Irias being escorted by multiple staff back into segregation and into his cell. I had not secured the shower door when placing D/T Irias in it due to administrative segregation now |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters."<br><br>(Exh. A, "Mostafavi Decl." Exhibit 19.)<br><br>Plaintiff's Evidentiary Objection #9.<br>Plaintiff's Evidentiary Objection #10. |
| 5. Plaintiff submitted a report in connection with the incident. In the report, he described the incident: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Plaintiff's report included additional details about the activities he engaged in after placing the detainee in the shower, including "counting" detainees, and delivering dinner trays to detainees, first on the lower tier, and then on the upper tier, as the detainee remained in the lower tier shower. Plaintiff's report states, "I had not secured the shower door when placing D/T Irias in it due to | Disputed.<br>Plaintiff's submitted report is as follows: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by the staff, and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T Irias had not finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters." (Janecka Decl., ¶ 8, Ex. A.) | lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve each other on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainees' hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to discipline segregation side to relieve the 2 officers working disciplinary segregation, one officer at the time, leaving me to complete the distribution of dinner trays. The 2 segregation porters were utilized to complete the distribution of dinner trays and I began distributing with them on |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell, so we skipped him and were to go back and feed him. When finished distributing to the bottom of the tier D/T Irias still had not finished in the shower se we continued to the top tier to distribute trays, this time from the right to the left. Once we finished distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I [seen] D/T Irias being escorted by multiple staff back into segregation and into his cell. I had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters."<br>(Exh. A, "Mostafavi Decl." Exhibit 19.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's Evidentiary Objection #11.<br>Plaintiff's Evidentiary Objection #12.<br>Plaintiff's Evidentiary Objection #13.<br>Plaintiff's Evidentiary Objection #14. |
| 6. GEO made the decision to terminate both Plaintiff and Officer Marquez for their respective roles in the escape attempt. Plaintiff was placed on administrative leave immediately after the incident and ultimately terminated.<br>(Janecka Decl., ¶ 9.) | Disputed.<br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave. (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015. (Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br><br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female. (Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #15.<br>Plaintiff's Evidentiary Objection #16. |
| 7. Plaintiff's termination notice states: "On 8-5-2015, Officer E. Santiago was assigned as the 2nd Watch West Administrative Segregation Housing Unit Officer. He was given specific direction from Lt. Duran [a supervisor] to ensure two officers are present when escorting Detainee Irias …from in cell in Administrative Segregation to the shower. At approximately 1623 hours Officer Santiago conducted a single officer escort of detainee Irias to the shower area, where he failed to lock and secure the shower door. Officer Santiago then proceeded to retrieve two detainee porters to facilitate distribution of meal trays. Formal count commenced at 1630 and was | Disputed<br>Even though Plaintiff followed GEO's policies and procures on August 5, 2015, he was still terminated. (Exh. B, "Santiago Decl." ¶ 38.)<br><br>As a detention officer at the Administrative Segregation Unit, Plaintiff was responsible only for areas within range of his vision, areas within sight and sound including windows, emergency fire doors, corridors, the entrances and observation of the exterior of the facility grounds area Plaintiff's responsibility did not extend to different floors at the segregation unit where he was not physically present or could not have been physically present. (Exh. B, "Santiago Decl." ¶ 40.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| conducted by Officer Santiago and Officer Patterson. Once count was completed Officer Patterson departed the unit to facilitate a lunch break for another officer. Officer Santiago failed to get supervisory authorization to outcount detainee Irias in the shower area and further authorization to bring out two detained porters prior to the facility formal count clearing. While supervising detainee porters as they handed out meal trays on the far upper tier, detainee Irias completed his shower and pushed open the unsecure shower door at 1653 hours. Detainee Irias departed the Segregation housing unit unsupervised and unrestrained at approximately 1653 hours."<br>(Janecka Decl., ¶ 9, Ex. B.) | Detainees in the Administrative Unit were allowed to move around the facility without restriction. Accordingly, Assistant Warden Patricia Siebert-Love gave the order that detainees need not be secured in the showers.<br>(Exh. C, "Hutchinson Decl." ¶ 9.)<br><br>At the time Plaintiff was working in the Administrative Segregation Unit, Detention Officers were told that Detention Officers shall secure the shower by locking it only if a detainee were to request for a razor. If a detainee did not request a razor while taking a shower, Officers should not lock the showers.<br>(Exh. F, "Moreiko Decl." ¶ 16.)<br><br>GEO did not require, and there were never any indications made on detainee's prison cell of his propensity to be dangerous or tendency to attempt |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | an escape. There were never any signs advising staff of detainee Irias being an escape risk or dangerous.<br>(Exh. G, "Macias Decl. ¶ 16.)<br><br>Detention Officers often allow detainees to shower during the time that they are conducting other duties, and supervisors have not taken adverse action against Officers for doing so because they realize that there are only so many hours in a day for Officers to complete all their given tasks.<br>(Exh. D, "Nowicki Decl." ¶ 34.)<br><br>GEO policy dictates that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl. ¶ 39.)<br><br>The showers for the detainees are within |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | the Administrative Segregation Unit. For procedural purposes for GEO, this means that if the detainee is in the shower, and the shower is within the housing unit, the officer in that housing unit is still considered to have full custody over the detainee. During count, the detainee in the shower would also be counted regardless whether or not in the shower or secured in the cell. (Exh. D, "Nowicki Decl. ¶ ¶ 30, 31.)<br><br>Following the incident on August 5, 2015 and Plaintiff's termination, GEO changed its meal service procedure. Plaintiff was required to distribute the meal to the entire unit cell by cell. After his termination, GEO requires one detention officers to set-up a food cart in the middle of the dorm at the day room, and another detention officer observe and monitor as detainees leave their cells and come to pick up their meals. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. F, "Moreiko Decl." ¶ 20.)<br><br>Short staffing was a constant problem at the Adelanto Detention Facility, which created significant safety risks for GEO staff, and inmates, alike. On the day of the incident involving detainee Irias, a Lieutenant ordered Officer Patterson to leave his assigned post in Segregation, serve Central Command with the Facility Count paperwork, and then go relieve other officers for break so GEO would not incur meal penalties. By ordering Officer Patterson to leave Segregation, which was a two-man post, Plaintiff was left alone. Plaintiff was performing the workload of two officers.<br>(Exh. E, "Harris Decl." ¶¶ 15, 16.)<br><br>There is a control center within the Segregation Unit. GEO labels the officer responsible for the post as |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | "control officer" on the shift roster. On the date of the incident, that post was left unattended. If there were an officer manning that station, that officer would have seen the detainee exit the shower and attempt an escape. Instead, GEO used the person that was supposed to be stationed at that post to cover another post in Segregation. "This was a staffing plan that GEO kept getting away with." (Exh. E, "Harris Decl." ¶ 25)<br><br>Plaintiff's submitted report is as follows: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by the staff, and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T Irias had not finished showering, so we counted him |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve each other on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainees' hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to discipline segregation side to relieve the 2 officers working disciplinary segregation, one officer at the time, leaving me to complete the distribution of dinner trays. The 2 |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | segregation porters were utilized to complete the distribution of dinner trays and I began distributing with them on the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell, so we skipped him and were to go back and feed him. When finished distributing to the bottom of the tier D/T Irias still had not finished in the shower se we continued to the top tier to distribute trays, this time from the right to the left. Once we finished distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I [seen] D/T Irias being escorted by multiple staff back into segregation and into his cell. I had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | the top tier with the porters."<br><br>(Exh. A, "Mostafavi Decl." Exhibit 19.)<br><br>Plaintiff's termination was not justified. He was not the one who allowed a detainee to access 4 different doors. (Exh. C, "Hutchinson Decl." ¶ 12.)<br><br>Plaintiff's termination was not justified because the detainee was still within the facility in a secured area, where general population goes through all the time. Plaintiff was manning the Segregation Unit by himself at the time when there should have been two officers on watch. (Exh. E, "Harris Decl." ¶ 19.)<br><br>Detainee's dangerous propensity was not communicated to the detention officers, including Plaintiff. Management, like Sergeants, were the only ones aware.<br>(Exh. C, "Hutchinson Decl." ¶ 18.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | If a detainee was one who posed an escape risk or exhibited violent behavior towards staff, GEO was required to notify the officers in writing indicating that extra precautions should be taken with that detainee. No such information was provided to Plaintiff. (Exh. E, "Harris Decl." ¶ 21.)<br><br>GEO policy states that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm. (Exh. D, "Nowicki Decl." ¶ 39.)<br><br>During Plaintiff's employment with GEO, detention officers were to secure the shower by locking it if the detainee requested a razor. After the incident on August 5, 2015, GEO policy has changed. Officers at Segregation are now required to secure a detainee in the shower at all times, whether or not the |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | detainee requests a shaving razor<br>(Exh. D, "Nowicki Decl." ¶¶ 46, 47.)<br><br>Plaintiff's termination would have been prevented if GEO provided a Segregation Control Room Officer to monitor the area when other officers are occupied with different, but required tasks.<br>(Exh. F, "Moreiko Decl." ¶ 23.)<br><br>Plaintiff was an effective Detention Officer while employed with GEO Corrections and Detention Facility.<br>(Exh. F, "Moreiko Decl." ¶ 6.)<br><br>GEO has always had problem with short staffing.<br>(Exh. G, "Macias Decl." ¶ 20.)<br><br>GEO suffered from chronic short staffing because of the increased need for more officers in the Segregation Unit and the sheer magnitude of duties |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | officers were assigned and responsible for.<br>(Exh. E, "Harris Decl." ¶ 13.)<br><br>Plaintiff's Evidentiary Objection #17. |
| 8. The reason stated on Plaintiff's termination notice was "inability to perform job."<br>(Janecka Decl., ¶ 9, Ex. B.) | Disputed.<br>Even though Plaintiff followed GEO's policies and procures on August 5, 2015, he was still terminated.<br>(Exh. B, "Santiago Decl." ¶ 38.)<br><br>As a detention officer at the Administrative Segregation Unit, Plaintiff was responsible only for areas within range of his vision, areas within sight and sound including windows, emergency fire doors, corridors, the entrances and observation of the exterior of the facility grounds area Plaintiff's responsibility did not extend to different floors at the segregation unit where he was not physically present or could not have been physically present.<br>(Exh. B, "Santiago Decl." ¶ 40.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's termination was not justified. He was not the one who allowed a detainee to access 4 different doors. (Exh. C, "Hutchinson Decl." ¶ 12.)<br><br>Plaintiff's termination was not justified because the detainee was still within the facility in a secured area, where general population goes through all the time. Plaintiff was manning the Segregation Unit by himself at the time when there should have been two officers on watch. (Exh. E, "Harris Decl." ¶ 19.)<br><br>Detainee's dangerous propensity was not communicated to the detention officers, including Plaintiff. Management, like Sergeants, were the only ones aware. (Exh. C, "Hutchinson Decl." ¶ 18.)<br><br>If a detainee was one who posed an escape risk or exhibited violent behavior |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | towards staff, GEO was required to notify the officers in writing indicating that extra precautions should be taken with that detainee. No such information was provided to Plaintiff.<br>(Exh. E, "Harris Decl." ¶ 21.)<br><br>GEO policy states that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl." ¶ 39.)<br><br>During Plaintiff's employment with GEO, detention officers were to secure the shower by locking it if the detainee requested a razor. After the incident on August 5, 2015, GEO policy has changed. Officers at Segregation are now required to secure a detainee in the shower at all times, whether or not the detainee requests a shaving razor<br>(Exh. D, "Nowicki Decl." ¶¶ 46, 47.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's termination would have been prevented if GEO provided a Segregation Control Room Officer to monitor the area when other officers are occupied with different, but required tasks.<br>(Exh. F, "Moreiko Decl." ¶ 23.)<br><br>Plaintiff was an effective Detention Officer while employed with GEO Corrections and Detention Facility.<br>(Exh. F, "Moreiko Decl." ¶ 6.)<br><br>GEO has always had problem with short staffing.<br>(Exh. G, "Macias Decl." ¶ 20.)<br><br>GEO suffered from chronic short staffing because of the increased need for more officers in the Segregation Unit and the sheer magnitude of duties officers were assigned and responsible for.<br>(Exh. E, "Harris Decl." ¶ 13.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>GEO learned of Officer Marquez's pregnancy on September 1, 2015. Once they found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination process. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>Plaintiff's Evidentiary Objection #16. |
| 9. Officer Marquez was pregnant when the August 5, 2015 incident occurred. She began her maternity leave pursuant to the Family Medical | Disputed.<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| Leave Act immediately following the incident, on August 6, 2015.<br>(Janecka Decl., ¶ 10.) | was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave. (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female. (Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Plaintiff's Evidentiary Objection #15. Plaintiff's Evidentiary Objection #16. Plaintiff's Evidentiary Objection #18. |
| 10. GEO paid her no compensation during her leave. Like Plaintiff, she performed no work for GEO at any time following the August 5, 2015 incident. (Janecka Decl., ¶ 10.) | Disputed. The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged. (Exh. A, "Mostafavi Decl." Exhibit. 30.) In addition to withdrawing Officer Marquez's termination, GEO instructed |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015. (Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br><br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control.<br>(Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident.<br>(Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer |





MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #15.<br>Plaintiff's Evidentiary Objection #16.<br>Plaintiff's Evidentiary Objection #18. |
| 11. Following her FMLA leave, Officer Marquez extended her protected leave for her pregnancy related condition. In all, Officer Marquez was on a leave of absence from August 5, 2015 until April 5, 2016.<br>(Janecka Decl., ¶ 10.) | Disputed<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation*<br>regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident).<br>(Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #15.<br>Plaintiff's Evidentiary Objection #16.<br>Plaintiff's Evidentiary Objection #18. |
| 12. Shortly after she began her leave, GEO notified her that GEO was investigating the August 5, 2015 incident and would take appropriate action upon her return from leave. (Janecka Decl., ¶ 11, Ex. E.) | <u>Disputed</u><br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation*<br>regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016. (Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female. |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | (Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #15.<br>Plaintiff's Evidentiary Objection #16.<br>Plaintiff's Evidentiary Objection #18. |
| 13. When she attempted to return, the Warden at Adelanto, as he previously stated he would do, placed a request for her termination. The | Disputed<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, |





MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| termination request states: Ms. Marquez had been on FMLA/PFL from 8/6/2015 through 4/5/2016. Prior to going on FMLA/PFL Ms. Marquez accessed 4 doors from Central Control to allow a detainee house[d] in Administrative Segregation to exit Segregation. The day that she was going to be placed on Administrative Leave without pay (8/6/2015), Ms. Marquez did not return back to work but instead indicated that she was going to be off on FMLA. The letter was mailed to her notifying her that she was under investigation due to the incident on August 5, 2015 and due to being out on FMLA the matter being investigated prior to her FMLA will remain open, but will need to close out upon her [return]…. [W]e are recommending termination of the following employee for inability to perform job. | was not. Instead, Officer Marquez was granted maternity leave (Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged. (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| (Janecka Decl., ¶ 11, Ex. E.) | to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br><br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's Evidentiary Objection #15.<br>Plaintiff's Evidentiary Objection #16.<br>Plaintiff's Evidentiary Objection #18. |
| 14. GEO terminated Officer Marquez's employment upon completion of her protected leave of absence.<br>(Janecka Decl., ¶ 11.) | Disputed:<br><br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation*<br>regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female. (Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #15.<br>Plaintiff's Evidentiary Objection #16.<br>Plaintiff's Evidentiary Objection #18. |
| 15. In his verified response to GEO's interrogatory asking Plaintiff to state all facts that support his claim for gender discrimination, Plaintiff stated the following:<br>Officer Marquez was terminated related to the August 2015 incident with detainee Irias. Geo terminated her at a different time than Officer Santiago because at the time that this | <u>Disputed</u><br><br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| happened Officer Marquez was pregnant and she went out on maternity leave the following day. When she returned after having her baby in May, she was terminated… (Declaration of Michelle Rapoport, Exhibit 2 to Compendium of Evidence ("Rapoport Decl.") ¶ 3, Ex. I.) | involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged. (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015. (Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident).<br>(Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control.<br>(Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident.<br>(Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.) |
| 16. In November 2013, a detainee scaled a fence in Adelanto's recreation yard, while supervised by a female Detention Officer. The female | Disputed<br><br>A week after Plaintiff was terminated for detainee Irias' attempted escape, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| Officer was placed on administrative leave without pay, and following an investigation, GEO terminated the Officer for inattention to duty. There have been no other incidents at Adelanto in which a detainee attempted to escape.<br>(Janecka Decl., ¶ 13.) | detainee Irias attempted another escape. Another Central Control Officer unlocked an interior door, thereby allowing detainee Irias access outside the Unit. However, unlike the August 5, 2015 incident involving Plaintiff, no officer or staff involved in this incident were disciplined or terminated.<br>(Exh. D, "Nowicki Decl." ¶ 59.)<br><br>Geo claimed that detainee Irias did not leave his housing unit unsupervised from March 13, 2013 through January 16, 2017 more than once.<br>(Exh. A, "Mostafavi Decl." ¶ 2, Exhibit 1: ¶25.)<br><br>Plaintiff's Evidentiary Objection #18. |
| 17. In compliance with federal and state law, GEO provides employees with various types of protected leaves | Disputed<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| of absence. Among them is the Family Medical Leave Act, which entitles eligible employees to take 12 weeks off every calendar year for a qualifying condition. Qualifying conditions are defined by statute and include, but are not limited to, the birth of a child, or due to the employee's own serious health condition.<br>(Janecka Decl., ¶ 10, Ex. D.) | allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br><br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female. (Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Exhibit 26: GEO000235.) |
| 18. GEO provides employees, in compliance with state and federal legal requirements, other types of leave, including Pregnancy Disability Leave, which entitles employees to time off due to a disability caused by pregnancy or childbirth. And, GEO provides leaves of absence under the Americans with Disabilities Act, and its state equivalents, where required and appropriate for employees who need accommodations. (Janecka Decl., ¶ 16.) | Disputed<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave (Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation*<br>regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015. (Exh. A,"Mostafavi Decl." ¶ 10(d), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶¶ 29, 30.)<br><br>Officer Marquez was granted maternity |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident. (Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men. (Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.) |
| 19. GEO's leave policy covers any qualifying condition, as required by law. GEO administers its leave of absence equally to eligible employees with a qualifying condition, regardless of the qualifying reason for the leave. GEO typically does not terminate employees during a legally protected leave of absence, regardless of the qualifying reason for the leave of absence.<br>(Janecka Decl., ¶ 16.) | <u>Disputed.</u><br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation*<br>regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015.<br>(Exh. A, "Mostafavi Decl." ¶ 9(p), |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.) |
| 20. GEO would have waited until the conclusion of Officer Marquez's leave of absence to terminate her employment had she taken the leave for any protected reason other than childbirth and related medical conditions.<br>(Janecka Decl., ¶ 17.) | Disputed.<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation*<br>regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for |





MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident).<br>(Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident. (Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men. (Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #20. |
| 21. Had Plaintiff requested and qualified for a protected leave of absence immediately after the August 5, 2015 incident, GEO likely would have waited to terminate his employment until his return from leave.<br>(Janecka Decl., ¶ 17.) | Disputed.<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was |



MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation*<br>regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 1, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident).<br>(Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control.<br>(Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident.<br>(Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #20. |
| 22. GEO's policy is to "provide equal employment opportunity to all qualified individuals without regard to race, religion, color, sex, sexual orientation, age, national origin, | <u>Disputed</u><br>GEO treats women differently than they treat men. Many of those instances are of women employees who fail to conduct their jobs properly and yet are |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| disability, veteran status, marital status, gender discrimination, military status, medical condition or any other category protected by law…."<br><br>The policy contains a complaint procedure, which encourages employees to report incidents that are believed to violate the policy. The policy further prohibits retaliation against any employee who files a charge of discrimination, cooperates with a governmental investigation of a charge, or exercises any right protected by federal or state law requiring equal opportunity.<br>(Janecka Decl., ¶ 18, Ex. F.) | not fired.<br><br>In 2013, between 10:00pm to 6:30 am Officer Robertson fell asleep at her desk while on watch in Segregation --he unit that houses the most dangerous detainees in the entire facility. Lieutenant Cheney or Lieutenant Salgado saw her sleeping and did not reprimand her.<br><br>On August 8, 2017, Officer A.A. Maciel, a woman, was in charge of watching a detainee while the detainee was in the care of Victor Valley Hospital. She started falling asleep at around 11:30 pm. A nurse came in around 1:30 am to take the detainee's vital signs. Officer Maciel did not awake. An hour later, another nurse woke up Officer Maciel. Officer Cleveland notified his supervisors but she was never reprimanded nor terminated. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | In 2015, between 6:00 am to 2:30 pm Officer W. Luis was on watch at the perimeter of the facility. He had a condition that made him fall asleep at random places. The Deputy Warden at the time saw him sleeping and got Lieutenant Jameson to wake him up. After that incident Officer Luis was terminated.<br><br>On September 25, 2017, Sergeant Hutchinson was working as a Transportation Officer. A complaint was made other employees alleging that he was sleeping. The allegations were false. After this incident he was terminated.<br><br>Around August 2014, Elizabeth Walker, another employee at GEO began stalking and harassing Sergeant Hutchinson. Sargent Hutchinson I made several formal complaints to Assistant Warden Love showing her pictures, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | tests, and voicemail messages as proof. Assistant Warden Love did not discipline Walker because she is a woman.<br><br>In August 2015, Officer Maciel started spreading rumors that Sergeant Hutchinson was having an affair with her. Since she worked in Central Control she was able to obtain his personal information, such as cell phone number. She began sending him texts messages and waiting outside his house in her car. He made a complaint in September 2015. She was put on leave, but continued to harass him. GEO allowed her to come back to work in December of 2016. She is still employed by GEO.<br><br>In 2013, Officer P. Gutierrez was having an affair with Lieutenant Rogokos. He decided he did not want to continue with the affair and broke up with her. Afterwards, she filed a sexual |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | harassment complaint against him and he was terminated.<br><br>Under GEO policies, anyone who gets into a car accident will not be able to continue to drive for the company until they have pass a drug test and complete remedial training. Officer D. Baltazar got into a car accident in September of 2017. She was driving a detainee to the UCLA hospital with Officer Juarez. The accident occurred while they were on the freeway, early morning between 4:00 am and 6:00 am. Yet, the following Monday she went with J. Lugo, another GEO employee, in the company car to the DMV without a license during company time to get a license for class B. She was not supposed to drive until after her drug test came back and after her remedial training, but she did anyway. She never got reprimanded or terminated. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | In 2016, Officer J. Rocha had an accident. He was driving the company bus and hit the passenger side mirror of a U.S. Marshall bus while still on company property. He was not able to drive until he completed all of the requirements. The drug test he needed to pass typically takes 3 days. He then attended the remedial training in order to get re-trained and re-certified, which typically takes 4 weeks.<br><br>(Exh. C, "Hutchinson Decl." ¶¶ 27, 28, 29, 30, 31, 32, 33, 34, 35, 36.)<br><br>About a year before Plaintiff was terminated, he broke his leg and was out of work for 5 months. He had asked HR multiple times to place him on light duty (clerical or central control room), but HR repeatedly told him that they do not have work for him. However, every time a female officer requests a light duty, for either physical injury or pregnancy, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | GEO always grants women light duty—just like they had placed Marquez on light duty in the Central Control because she was pregnant at the time of the incident.<br><br>(Exh. B, "Santiago Decl." ¶ 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control.<br>(Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident.<br>(Exh. E, "Harris Decl." ¶ 30.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>The investigation of Office Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. GEO learned of Officer Marquez's pregnancy on September 2, 2015. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Officer Marquez's termination process. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>GEO, after learning that local HR had submitted a termination letter in regards to a pregnant woman to corporate GEO on September 2, 2015, instructed local HR's Aida Aldape, to send a letter to Officer Marquez notifying her that the "investigation" regarding the August 5, 2015 incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>GEO learned of Officer Marquez's pregnancy on September 2, 2015. Once they found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination process. Local HR, Aida Adalpe, obliged. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident).<br>(Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>Plaintiff's Evidentiary Objection #21. |
| 23. In his verified response to GEO's interrogatory asking Plaintiff | Disputed<br>Plaintiff knew that GEO was required to |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| to state all facts that support his claim for retaliation in violation of Labor Code section 1102.5, Plaintiff stated the following: Defendants, made, adopted, and enforced a rule, regulation, and policy requiring Plaintiff to comply with Defendant's procedures, yet due to their under-staffing the facility, and forcing Defendant [sic] to be the only officer in a two officer post. Upon learning Plaintiff was the only officer on duty in a two officer post, while the second officer was required to be elsewhere by the defendant, when their policies resulted in a detainee's near escape from the facility, Defendants retaliated against Plaintiff by terminating his employment, while not terminating or disciplining the other employee officer who had left her post, or the other employee from Control Center who allowed detainee Irias to exit through four security | comply with ICE Detention Standard. Plaintiff also knew that GEO violated many of these standards. Plaintiff noticed and knew that administrative unit was always understaffed, placing everyone inside and outside the facility in danger, officers were not granted their meal and rest breaks, there was no control officer designated for the segergation units, and officers were encouraged to conduct count when detainees were not in their cells. Additionally, given the understaffing, officers could not be as diligent on duty as required by thee ICE standards. Since Plaintiff knew that Adelanto was operated under the ICE Detention Standard, he went to the ICE website at https://www.ice.gov/factsheets/facilities-pbnds to see ifhis observations were justified under the guidance required by ICE. He printed a couple of pages from the website to discuss with his shift supervisor about his findings |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| points. Furthermore, when plaintiff made disclosures for what happened regarding the attempted scape [sic] by Orias [sic] Defendants retaliated against him by engaging in the adverse employment actions described hearing, which adversely and materially affected Plaintiff's employment.<br>(Rapoport Decl., ¶ 3, Ex. I.) | and concerns. When he drafted the memo regarding the incident on August 5, 2015, he included some of issues that he had observed at work in contrast with the ICE detention standard.<br><br>(Exh. B, "Santiago Decl." ¶ 46.") |
| 24. The contract between GEO and the Union provides the following meal and rest break policy:<br>"Each Officer will be given a thirty (30) minute unpaid off-duty meal period. The Office will not be required to perform any duties, whether active or inactive, while eating. Should the officer be required to perform any duties, whether active or inactive, the affected Officer will be paid for the meal period at the appropriate rate. The meal period shall commence after the start of the | <u>Disputed</u><br>It is common practice for Detention Officers to work without receiving breaks. GEO's practice of not providing Officers with their lunches and ten-minute breaks has been a common occurrence for at least the past 6 years. Officers would work 12-16 hours without being granted a restroom break. On more than one occasion, Supervisors would have the detention officer sign the break log indicting that the officer had received a break, when in fact, the officer had not received such breaks. |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| second (2) hour and before the start of the sixth (6) hour. Officers shall be allowed to leave the facility during their meal period after notification to their supervisor." (Janecka Decl., ¶ 19, Ex. G.) | The Supervising Lieutenant has discretion to assign an officer to any post. If an officer does not sign the roster indicating that he or she had received the sanctioned break, it is common knowledge amongst the detention officers in the Adelanto Facility, that the Lieutenant will assign that objecting Officer to an undesirable post. (Exh. D, "Nowicki Decl." ¶¶ 48, 49, 50, 51, 52.) Sergeant Hutchinson worked more than 9 hours per day, rarely, if at all took meal and rest breaks. He was forced to sign the break log without taking any breaks. If he did not sign, his supervisors threatened him with an undesirable post or even mandated overtime. Supervisors would also forge his signature on the break log. The breaks are not scheduled, but there is a cut off time for meals and rest breaks. Because GEO never provided enough |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | officers, officers on duty are forced to either forgo or take their meal or rest breaks later than mandated time.<br>(Exh. C, "Hutchinson Decl. ¶¶ 20, 21.)<br><br>Officers rarely receive their minute breaks in Segregation during their 8 hour working shift. Officers not receiving their state sanctioned meal and rest breaks happened regularly. "Utilities" – who are responsible for ensuring breaks are completed—sign the Break-Log on behalf of officers to indicate that an officer had received their required break even though the officer had not received a break.<br>(Exh. F, "Moreiko Decl." ¶¶ 21.)<br><br>Even if officers are working 8-16 hours a day, they are only able to make meal or rest breaks when there is sufficient coverage. Most of the time there is available post coverage and officers are not able to take breaks. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. G, "Macias Decl." ¶ 13.)<br><br>Detention Officers were simply not allowed to take their ten-minute or meal breaks.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>As a detention officer, Plaintiff was rarely able to take my rest and meal breaks. Because of the constant short staffing, officers on duty had no choice but to skip meal and rest breaks because they were not allowed to leave their posts unattended.<br>(Exh. B, "Santiago Decl." ¶ 33.)<br><br>Plaintiff's Evidentiary Objection #22 |
| 25. The CBA further states, "Each Officer will be given two (2) ten (10) minute paid rest periods per shift. The Company will provide rest periods as close to practical to the center of each four (4) hour portion of a shift." | <u>Disputed</u><br>It is common practice for Detention Officers to work without receiving breaks. GEO's practice of not providing Officers with their lunches and ten-minute breaks has been a common occurrence for at least the past 6 years. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| (Janecka Decl., ¶ 19, Ex. G.) | Officers would work 12-16 hours without being granted a restroom break. On more than one occasion, Supervisors would have the detention officer sign the break log indicting that the officer had received a break, when in fact, the officer had not received such breaks. The Supervising Lieutenant has discretion to assign an officer to any post. If an officer does not sign the roster indicating that he or she had received the sanctioned break, it is common knowledge amongst the detention officers in the Adelanto Facility, that the Lieutenant will assign that objecting Officer to an undesirable post.<br>(Exh. D, "Nowicki Decl." ¶¶ 48, 49, 50, 51, 52.)<br>Sergeant Hutchinson worked more than 9 hours per day, rarely, if at all took meal and rest breaks. He was forced to sign the break log without taking any breaks. If he did not sign, his |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | supervisors threatened him with an undesirable post or even mandated overtime. Supervisors would also forge his signature on the break log. The breaks are not scheduled, but there is a cut off time for meals and rest breaks. Because GEO never provided enough officers, officers on duty are forced to either forgo or take their meal or rest breaks later than mandated time. (Exh. C, "Hutchinson Decl. ¶¶ 20, 21.)<br><br>Officers rarely receive their minute breaks in Segregation during their 8 hour working shift. Officers not receiving their state sanctioned meal and rest breaks happened regularly. "Utilities" – who are responsible for ensuring breaks are completed—sign the Break-Log on behalf of officers to indicate that an officer had received their required break even though the officer had not received a break. (Exh. F, "Moreiko Decl." ¶¶ 21.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Even if officers are working 8-16 hours a day, they are only able to make meal or rest breaks when there is sufficient coverage. Most of the time there is available post coverage and officers are not able to take breaks.<br><br>(Exh. G, "Macias Decl." ¶ 13.)<br><br>Detention Officers were simply not allowed to take their ten-minute or meal breaks.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>As a detention officer, Plaintiff was rarely able to take my rest and meal breaks. Because of the constant short staffing, officers on duty had no choice but to skip meal and rest breaks because they were not allowed to leave their posts unattended.<br>(Exh. B, "Santiago Decl." ¶ 33.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's Evidentiary Objection # |
| 26. The CBA in effect from April 25, 2011 until July 2, 2015 provided for wages ranging from $15.59 per hour to $18.19 per hour. The CBA in effect from July 3, 2015 provided for wages ranging from $16.54 per hour to $19.30.<br>(Janecka Decl., ¶ 19, Ex. G.) | Undisputed. |
| 27. The CBA states, in relevant part, "No Officer shall be disciplined or discharged without Just Cause. The Company shall provide the Officer and the Union with a copy of all disciplinary action forms…" The CBA also provides a representative list of reasons that constitute Just Cause for immediate dismissal, which includes inattention to one's post.<br>(Janecka Decl., ¶ 19, Ex. G.) | Disputed<br>Even though Plaintiff followed GEO's policies and procures on August 5, 2015, he was still terminated.<br>(Exh. B, "Santiago Decl." ¶ 38.)<br><br>As a detention officer at the Administrative Segregation Unit, Plaintiff was responsible only for areas within range of his vision, areas within sight and sound including windows, emergency fire doors, corridors, the entrances and observation of the exterior of the facility grounds area Plaintiff's |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | responsibility did not extend to different floors at the segregation unit where he was not physically present or could not have been physically present.<br>(Exh. B, "Santiago Decl." ¶ 40.)<br><br>Detainees in the Administrative Unit were allowed to move around the facility without restriction. Accordingly, Assistant Warden Patricia Siebert-Love gave the order that detainees need not be secured in the showers.<br>(Exh. C, "Hutchinson Decl." ¶ 9.)<br><br>At the time Plaintiff was working in the Administrative Segregation Unit, Detention Officers were told that Detention Officers shall secure the shower by locking it only if a detainee were to request for a razor. If a detainee did not request a razor while taking a shower, Officers should not lock the showers.<br>(Exh. F, "Moreiko Decl." ¶ 16.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | GEO did not require, and there were never any indications made on detainee's prison cell of his propensity to be dangerous or tendency to attempt an escape. There<br>were never any signs advising staff of detainee Irias being an escape risk or dangerous.<br>(Exh. G, "Macias Decl. ¶ 16.)<br><br>Detention Officers often allow detainees to shower during the time that they are conducting other duties, and supervisors have not taken adverse action against Officers for doing so because they realize that there are only so many hours in a day for Officers to complete all their given tasks.<br>(Exh. D, "Nowicki Decl." ¶ 34.)<br><br>GEO policy dictates that Detention Officers must stop whatever they are |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl. ¶ 39.)<br><br>The showers for the detainees are within the Administrative Segregation Unit. For procedural purposes for GEO, this means that if the detainee is in the shower, and the shower is within the housing unit, the officer in that housing unit is still considered to have full custody over the detainee. During count, the detainee in the shower would also be counted regardless whether or not in the shower or secured in the cell.<br>(Exh. D, "Nowicki Decl. ¶ ¶ 30, 31.)<br><br>Following the incident on August 5, 2015 and Plaintiff's termination, GEO changed its meal service procedure. Plaintiff was required to distribute the meal to the entire unit cell by cell. After his termination, GEO requires one |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | detention officers to set-up a food cart in the middle of the dorm at the day room, and another detention officer observe and monitor as detainees leave their cells and come to pick up their meals. (Exh. F, "Moreiko Decl." ¶ 20.)<br><br>Short staffing was a constant problem at the Adelanto Detention Facility, which created significant safety risks for GEO staff, and inmates, alike. On the day of the incident involving detainee Irias, a Lieutenant ordered Officer Patterson to leave his assigned post in Segregation, serve Central Command with the Facility Count paperwork, and then go relieve other officers for break so GEO would not incur meal penalties. By ordering Officer Patterson to leave Segregation, which was a two-man post, Plaintiff was left alone. Plaintiff was performing the workload of two officers. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. E, "Harris Decl." ¶¶ 15, 16.)<br><br>There is a control center within the Segregation Unit. GEO labels the officer responsible for the post as "control officer" on the shift roster. On the date of the incident, that post was left unattended. If there were an officer manning that station, that officer would have seen the detainee exit the shower and attempt an escape. Instead, GEO used the person that was supposed to be stationed at that post to cover another post in Segregation. "This was a staffing plan that GEO kept getting away with." (Exh. E, "Harris Decl." ¶ 25)<br><br>Plaintiff's submitted report is as follows: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by the staff, and were awaiting distribution. Once I signed for the dinner |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T Irias had not finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve each other on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainees' hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | side proceeded to discipline segregation side to relieve the 2 officers working disciplinary segregation, one officer at the time, leaving me to complete the distribution of dinner trays. The 2 segregation porters were utilized to complete the distribution of dinner trays and I began distributing with them on the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell, so we skipped him and were to go back and feed him. When finished distributing to the bottom of the tier D/T Irias still had not finished in the shower se we continued to the top tier to distribute trays, this time from the right to the left. Once we finished distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I [seen] D/T Irias being escorted by multiple staff back into segregation |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | and into his cell. I had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters."<br>(Exh. A, "Mostafavi Decl." Exhibit 19.)<br>Plaintiff's termination was not justified. He was not the one who allowed a detainee to access 4 different doors. (Exh. C, "Hutchinson Decl." ¶ 12.)<br><br>Plaintiff's termination was not justified because the detainee was still within the facility in a secured area, where general population goes through all the time. Plaintiff was manning the Segregation Unit by himself at the time when there should have been two officers on watch. (Exh. E, "Harris Decl." ¶ 19.)<br><br>Detainee's dangerous propensity was not communicated to the detention officers, including Plaintiff. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Management, like Sergeants, were the only ones aware.<br>(Exh. C, "Hutchinson Decl." ¶ 18.)<br><br>If a detainee was one who posed an escape risk or exhibited violent behavior towards staff, GEO was required to notify the officers in writing indicating that extra precautions should be taken with that detainee. No such information was provided to Plaintiff.<br>(Exh. E, "Harris Decl." ¶ 21.)<br><br>GEO policy states that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl." ¶ 39.)<br><br>During Plaintiff's employment with GEO, detention officers were to secure the shower by locking it if the detainee requested a razor. After the incident on August 5, 2015, GEO policy has |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | changed. Officers at Segregation are now required to secure a detainee in the shower at all times, whether or not the detainee requests a shaving razor (Exh. D, "Nowicki Decl." ¶¶ 46, 47.)<br><br>Plaintiff's termination would have been prevented if GEO provided a Segregation Control Room Officer to monitor the area when other officers are occupied with different, but required tasks.<br>(Exh. F, "Moreiko Decl." ¶ 23.)<br><br>Plaintiff was an effective Detention Officer while employed with GEO Corrections and Detention Facility.<br>(Exh. F, "Moreiko Decl." ¶ 6.)<br><br>GEO has always had problem with short staffing.<br>(Exh. G, "Macias Decl." ¶ 20.)<br><br>GEO suffered from chronic short |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | staffing because of the increased need for more officers in the Segregation Unit and the sheer magnitude of duties officers were assigned and responsible for.<br>(Exh. E, "Harris Decl." ¶ 13.)<br><br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave<br>(Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>GEO learned of Officer Marquez's pregnancy on September 2, 2015. Once they found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination process. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016.<br>(Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident).<br>(Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control. (Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident. (Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.) |
| 28. The CBA includes a grievance | Disputed |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| procedure, which requires covered employees (and GEO) to resolve covered disputes through arbitration. (Janecka Decl., ¶ 19, Ex. G.) | The paragraph 12.1 of the said CBA excludes grievance procedure for claims for discrimination and harassment through arbitration. (Exh. A, "Mostafavi Decl." ¶¶7, 9(f) Exhibit 6: SANTIAGO035, Exhibit 13: GEO000347 (¶12.1).) |
| 29. GEO maintains an active private patrol operator branch license in Adelanto. (Janecka Decl., ¶ 2.) | Undisputed. |

**STATEMENT OF GENUINE DISPUTE OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

**Issue No. 1:** Defendnat is not entitled to summary adjudication in its favor on the first cause of action for "Failure to Prevent Discrimination and Retaliation in Violation of Government Code Section 129

40(K)," because it fails as a matter of law.

**Issue No. 2:** Defendnat is not entitled to summary adjudication in its favor on the second cause of action for "Discrimination Based On Gender In Violation of Government Code Section 12940," because it fails as a matter of law.

**Issue No. 3:** Defendnat is not entitled to summary adjudication in its favor



MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

on the third cause of action for "Wrongful Termination In Violation of Public Policy," because it fails as a matter of law.

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| 1. GEO operates corrections and detentions facilities, including the Adelanto Detention Facility. GEO Corrections and Detentions, LLC hired Plaintiff to work as a Detention Officer at the Adelanto Facility in March 2013. (Declaration of James Janecka, Exhibit 1 to Compendium of Evidence ("Janecka Decl.") ¶¶ 2, 4.) | Disputed<br>James Janecka started working as the Warden and Facility Administrator of the Adelanto Detention Facility in September 2014. ("Janecka Decl.") ¶ 2.)<br><br>Janecka was not working as the Warden and Facility Administrator when Plaintiff was hired in 2013. ("Janecka Decl.") ¶ 2.)<br><br>Santiago was hired on March 18, 2013. (Exh. A, "Mostafavi Decl." ¶ 2-3, Exhibit 1-2: ¶2.)<br><br>Santiago was not an administrative or professional exempt employee. (Exh. A, "Mostafavi Decl." ¶ 6, Exhibit 5: ¶ 2, 3.) |





MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's Evidentiary Objection #3. |
| 2. On August 5, 2015, Plaintiff escorted a detainee from his cell to the shower. Once the detainee was in the shower, Plaintiff did not secure the shower door. Plaintiff left the detainee with the shower door unlocked, and left to attend to other duties.<br>(Janecka Decl., ¶¶ 7-8.) | <u>Disputed.</u><br>Plaintiff was assigned to the Administrative Segregation Unit on August 5, 2015.<br>(Exh. B, "Santiago Decl." ¶ 3.)<br><br>Detainees in the Administrative Unit were allowed to move around the facility without restriction.<br>(Exh. C, "Hutchinson Decl." ¶ 9.)<br><br>Detainees' movement in the segregation unit did not require two-officer escort.<br>(Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶7.)<br><br>GEO did not require, and there were never any indications made on detainee's prison cell of his or her propensity to be dangerous or tendency to attempt an escape. There were never any signs advising staff of |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | detainee Irias being at risk of an escape or being dangerous. (Exh. G, "Macias Decl." ¶ 16.)<br><br>Detainee Irias did not require extra precautions or higher level of security. (Exh. A, "Mostafavi Decl." ¶ 2-3, Exhibit 1-2: ¶12.)<br><br>Detainee Irias was not under any modified procedure or specific restriction different from other detainees. (Exh. A, "Mostafavi Dec." ¶ 2-3, Exhibit 1-2: ¶13.)<br><br>There is no record of detainee Irias exhibiting unusual activity or behavior in his activity log at any time between March 18, 2013 and August 4, 2015. (Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶25.)<br><br>On August 5, 2015, when the incident |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | occurred, Santiago was in the segregation unit handing out the evening meal trays. It was common practice to be able to take a detainee from their cell, take them down to the shower area, and leave them there until they were completed with their shower. It happened on a regular basis that officers left detainees in showers and left the door unlocked. (Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 095.)<br><br>After July 2015, the Administrative Segregation Unit now held detainees who were under protective custody, or for any administrative reason, while the Disciplinary Segregation Unit held only detainees who were on disciplinary status. The new policy for the Administrative Segregation Unit no longer required officers to handcuff or escort detainees outside of their cells. Detainees were allowed |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | to move freely in and out of their cells for access to the showers, television, social interaction, telephones, and law library terminals, which were all in a shared living area (dayroom). As an officer Plaintiff was instructed to treat the detainees in this Unit like they would treat detainees in the general population. (Exh. B, "Santiago Decl." ¶ ¶ 3, 5, 10, 12.)<br><br>At no time on August 5, 2015, was detainee Irias considered to require a dedicated escort, or require to be locked inside the shower as he had not requested a razor. (Exh. B, "Santiago Decl." ¶19.)<br><br>Detainee Irias did not receive a shaving razor when he requested to use the shower on August 5, 2015. (Exh. A, "Mostafavi Decl." ¶5, Exhibit 4: ¶23.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Accordingly, Assistant Warden Patricia Siebert-Love gave the order that detainees need not be secured in the showers.<br>(Exh. C, "Hutchinson Decl." ¶ 9.)<br><br>At the time Plaintiff was working in the Administrative Segregation Unit, Detention Officers were told that Detention Officers shall secure the shower by locking it only if a detainee were to request for a razor. If a detainee did not request a razor while taking a shower, Officers should not lock the showers.<br>(Exh. F, "Moreiko Decl." ¶ 16.)<br><br>Just prior to Plaintiff's termination, GEO circulated paperwork that provided that detainees under protective custody should not be locked in the shower unless they were given a razor. Detainee Irias on the |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | date of the incident did not request a razor.<br>(Exh. E, "Harris Decl. ¶ 18.)<br><br>Detainee Irias requested to use the shower, and given the new policy, Plaintiff allowed him to do so. Plaintiff unlocked his cell door allowing him to proceed to the shower without locking it because detainee did not request a shaving razor.<br>(Exh. B, "Santiago Decl." ¶ 20.)<br><br>Detention Officers working in the Segregation Unit were responsible for conducting many tasks throughout the workday. For example, Detention Officers working in Segregation were responsible for conducting hourly detainee "checks" to ensure that every detainee within their assigned Unit is safe, and present. Post orders state security checks must be |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | completed before every 30 minutes to check for living breathing flesh. Additionally, Officers working in Segregation Unit and particularly during the Second Shift, were required to monitor detainee movement more closely because Detainees frequently requested going to restrooms, bathrooms, recreational areas, and dormitory areas, especially during this shift period.<br>(Exh. F, "Moreiko Decl." ¶ 12.)<br><br>There is an additional pressure on Detention Officers because the Facility is extremely short-staffed; Given the number of tasks to be completed, and that detainee movement is more frequent during Second Watch, and coupled with the fact that Segregation Unit is short-staffed, Officers are given a lot of discretion to accomplish their daily and weekly tasks. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. F, "Moreiko Decl." ¶ 14.)<br><br>Detention Officers often allow detainees to shower during the time that they are conducting other duties, and supervisors have not taken adverse action against Officers for doing so because they realize that there are only so many hours in a day for Officers to complete all their given tasks.<br>(Exh. D, "Nowicki Decl." ¶ 34.)<br><br>Geo allowed Detention Officers to allow detainees to use the showers while unit count was in progress.<br>(Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶68.)<br><br>Right before the incident on August 5, 2015, the 2nd officer on duty with Plaintiff had taken a group of detainees outside for required recreation time. Shortly after Plaintiff |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | placed detainee Irias in the shower, 2nd officer came back to the unit. Detainee Irias had not finished showering when the facility count commenced so he was counted in the shower. Once the count commenced, the dinner trays were delivered to the Unit by kitchen staff. Once the 2nd officer and Plaintiff completed counting the unit, 2nd officer left Administrative Segregation once again to deliver the count paperwork to the Central Control. 2nd officer on duty did not return to the Unit as he was required to cover for another officer at a different post during that officer's meal break. Plaintiff was left alone. Since dinner had arrived, Plaintiff needed to start distributing it to the detainees per GEO's policy. Detainee Irias was still in the shower. Plaintiff distributed dinner on the lower tier of the facility. Once done with the lower |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | tier, Plaintiff checked on detainee Irias again and saw that he was still showering. Plaintiff proceeded to the upper level to finish distributing dinner. Once completed, Plaintiff headed back. This is when Plaintiff saw multiple officers entering the Unit with detainee Irias. They escorted him into his cell and secured the cell door.<br>(Exh. B, "Santiago Decl." ¶ ¶ 21, 22, 23, 24.)<br><br>Plaintiff's Evidentiary Objection # 4.<br>Plaintiff's Evidentiary Objection # 5.<br>Plaintiff's Evidentiary Objection # 6. |
| 3. With Plaintiff away performing other functions, the unattended detainee exited the shower, walked towards the exit from the Restricted Housing Unit, and pushed a button seeking access through a locked door leading out of the unit. Officer Elizabeth Marquez, hired on July 9, | Disputed.<br>Once detainee Irias was in the shower, Santiago began assisting Officer Patterson in returning certain detainees in their cells and securing their cell doors around 4: 25pm on August 5, 2015.<br>(Exh. A, "Mostafavi Decl." ¶6, |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| 2012, was stationed in Central Control and tasked with ensuring only authorized personnel gain access through locked doors. (Janecka Decl., ¶¶ 7-8, Ex. A.) | Exhibit 5: ¶35.)<br><br>On August 5, 2015 Adelanto Detention Facility Count commenced at 4:30pm. (Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶36.)<br><br>In his 4:30pm detainee count on August 5, 2015, Officer Patterson had accounted for detainee Irias. (Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶38.)<br><br>On August 5, 2015, the kitchen staff delivered meals for Santiago to distribute. (Exh. A, "Mostafavi Decl." ¶6, Exhibit 5: ¶67.)<br><br>Food must be delivered to detainees at the proper temperature. (Exh. A, "Mostafavi Decl." ¶7, Exhibit 6: SANTIAGO004 (D).) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | GEO instructed Detention Officers in the Segregation Unit that meals shall be served at the proper temperature. This means that as soon as the kitchen staff delivers the meal trays to the Unit, Officers should assume that the meals are at the proper temperature.<br>(Exh. E, "Harris Decl." ¶ 22.)<br><br>GEO policy dictates that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl." ¶ 39.)<br><br>Detention Officers working in the Segregation Unit were responsible for conducting many tasks throughout the workday. For example, Detention Officers working in Segregation were responsible for conducting hourly detainee "checks" to ensure that |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | every detainee within their assigned Unit is safe, and present. Post orders state security checks must be completed before every 30 minutes to check for living, breathing flesh. Additionally, Officers working in Segregation Unit and particularly during the Second Shift, were required to monitor detainee movement more closely because detainees frequently requested going to restrooms, bathrooms, recreational areas, and dormitory areas, especially during this shift period. (Exh. F, "Moreiko Decl." ¶ 12.)<br><br>There is an additional pressure on Detention Officers because the Facility is extremely short-staffed; Given the number of tasks to be completed, and that detainee movement is more frequent during Second Watch, and coupled with the fact that Segregation Unit is short- |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | staffed, Officers are given a lot of discretion to accomplish their daily and weekly tasks. (Exh. F, "Moreiko Decl." ¶ 14.)<br><br>Following the incident on August 5, 2015 and Plaintiff's termination, GEO changed its meal service procedure. Plaintiff was required to distribute the meal to the entire unit cell by cell. After his termination, GEO requires one detention officers to set-up a food cart in the middle of the dorm at the day room, and another detention officer observe and monitor as detainees leave their cells and come to pick up their meals. (Exh. F, "Moreiko Decl." ¶ 20.)<br><br>Short staffing was a constant problem at the Adelanto Detention Facility, which created significant safety risks for GEO staff, and inmates, alike. On the day of the incident involving |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | detainee Irias, a Lieutenant ordered Officer Patterson to leave his assigned post in Segregation, serve Central Command with the Facility Count paperwork, and then go relieve other officers for break so GEO would not incur meal penalties. By ordering Officer Patterson to leave Segregation, which was a two-man post, Plaintiff was left alone. Plaintiff was performing the workload of two officers.<br>(Exh. E, "Harris Decl." ¶¶ 15, 16.)<br><br>Supervisory Shift Log shows that "D. Marieko" was assigned to the "Segregation Control" on August 5, 2015.(Exh. A, "Mostafavi Decl." Exhibit 23.) No such officer was on site, and so Officer Marquez in Central Control granting detainee Irias access.<br>("Exh. B, "Santiago Decl." ¶13.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's Evidentiary Objection #7. Plaintiff's Evidentiary Objection #8 |
| 4. When the detainee pushed the button, Officer Marquez unlocked the door remotely from Central Control for him, and the detainee passed through the door. The detainee continued on, gaining access through four doors monitored by Officer Marquez, until he was apprehended and returned to the Restricted Housing Unit. (Janecka Decl., ¶¶ 7-8.) | Disputed. Supervisory Shift Log shows that "D. Marieko" was assigned to the "Segregation Control" on August 5, 2015. (Exh. A, "Mostafavi Decl." Exhibit 23.) No such officer was on site, and so Officer Marquez in Central Control granting detainee Irias access. ("Exh. B, "Santiago Decl." ¶13.)<br><br>There is a control center within the Segregation Unit. GEO labels the officer responsible for the post as "control officer" on the shift roster. On the date of the incident, that post was left unattended. If there were an officer manning that station, that officer would have seen the detainee exit the shower and attempt an escape. Instead, GEO used the person |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | that was supposed to be stationed at that post to cover another post in Segregation. "This was a staffing plan that GEO kept getting away with."<br>(Exh. E, "Harris Decl." ¶ 25.)<br><br>Two officers from the Central Control office usually operate facility doors. There is a button by each security door, which has a speaker and microphone. To access a door, an officer presses this button, which relays to Central Control that someone is trying to access the door. Most doors have cameras on both sides of the door so control officers can see who is trying to access the door before remotely unlocking it. Officer Marquez granted detainee Irias access to 4 doors before he was caught.<br>(Exh. B, "Santiago Decl.") ¶ ¶ 26, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | 29.)<br><br>Officer Marquez unlocked the Segregation Housing Unit doors for detainee Irias on August 5, 2015. (Exh. A, "Mostafavi Decl." ¶5, Exhibit 4: ¶54.)<br><br>Plaintiff was not responsible for detainee Irias' access of the 4 door before he was caught. Plaintiff's memo to GEO of the incident on August 5, 2015, is as follows: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by the staff, and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T Irias had not finished showering, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve each other on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainees' hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to discipline segregation side to relieve the 2 officers working disciplinary |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | segregation, one officer at the time, leaving me to complete the distribution of dinner trays. The 2 segregation porters were utilized to complete the distribution of dinner trays and I began distributing with them on the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell, so we skipped him and were to go back and feed him. When finished distributing to the bottom of the tier D/T Irias still had not finished in the shower se we continued to the top tier to distribute trays, this time from the right to the left. Once we finished distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I [seen] D/T Irias being escorted by multiple staff back into segregation and into his cell. I |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters." (Exh. A, "Mostafavi Decl." Exhibit 19.)<br><br>Plaintiff's Evidentiary Objection #9.<br>Plaintiff's Evidentiary Objection #10. |
| 5. Plaintiff submitted a report in connection with the incident. In the report, he described the incident: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Plaintiff's report included additional details about the activities he engaged in after placing the detainee in the shower, including "counting" detainees, and delivering dinner trays to detainees, first on the lower tier, and then on the upper tier, as the detainee remained in the lower | <u>Disputed.</u><br>Plaintiff's submitted report is as follows: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by the staff, and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T Irias had not |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| tier shower. Plaintiff's report states, "I had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters." (Janecka Decl., ¶ 8, Ex. A.) | finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve each other on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainees' hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to discipline segregation side to relieve the 2 officers working |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | disciplinary segregation, one officer at the time, leaving me to complete the distribution of dinner trays. The 2 segregation porters were utilized to complete the distribution of dinner trays and I began distributing with them on the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell, so we skipped him and were to go back and feed him. When finished distributing to the bottom of the tier D/T Irias still had not finished in the shower se we continued to the top tier to distribute trays, this time from the right to the left. Once we finished distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I [seen] D/T Irias being escorted by multiple staff back into segregation and into his cell. I |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters." (Exh. A, "Mostafavi Decl." Exhibit 19.)<br><br>Plaintiff's Evidentiary Objection #11.<br>Plaintiff's Evidentiary Objection #12.<br>Plaintiff's Evidentiary Objection #13.<br>Plaintiff's Evidentiary Objection #14. |
| 6. GEO made the decision to terminate both Plaintiff and Officer Marquez for their respective roles in the escape attempt. Plaintiff was placed on administrative leave immediately after the incident and ultimately terminated.<br>(Janecka Decl., ¶ 9.) | Disputed.<br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged. (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave. (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 2, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. No disclosure was made regarding GEO's decision to terminate her on September 1, 2015. (Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br><br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016. (Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control.<br>(Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident.<br>(Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.) |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #15. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff's Evidentiary Objection #16. |
| 7. Plaintiff's termination notice states: "On 8-5-2015, Officer E. Santiago was assigned as the 2nd Watch West Administrative Segregation Housing Unit Officer. He was given specific direction from Lt. Duran [a supervisor] to ensure two officers are present when escorting Detainee Irias …from in cell in Administrative Segregation to the shower. At approximately 1623 hours Officer Santiago conducted a single officer escort of detainee Irias to the shower area, where he failed to lock and secure the shower door. Officer Santiago then proceeded to retrieve two detainee porters to facilitate distribution of meal trays. Formal count commenced at 1630 and was conducted by Officer Santiago and Officer Patterson. Once count was completed Officer Patterson departed the unit to facilitate a lunch break for | Disputed<br>Even though Plaintiff followed GEO's policies and procures on August 5, 2015, he was still terminated.<br>(Exh. B, "Santiago Decl." ¶ 38.)<br><br>As a detention officer at the Administrative Segregation Unit, Plaintiff was responsible only for areas within range of his vision, areas within sight and sound including windows, emergency fire doors, corridors, the entrances and observation of the exterior of the facility grounds area Plaintiff's responsibility did not extend to different floors at the segregation unit where he was not physically present or could not have been physically present.<br>(Exh. B, "Santiago Decl." ¶ 40.) |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| another officer. Officer Santiago failed to get supervisory authorization to outcount detainee Irias in the shower area and further authorization to bring out two detained porters prior to the facility formal count clearing. While supervising detainee porters as they handed out meal trays on the far upper tier, detainee Irias completed his shower and pushed open the unsecure shower door at 1653 hours. Detainee Irias departed the Segregation housing unit unsupervised and unrestrained at approximately 1653 hours." (Janecka Decl., ¶ 9, Ex. B.) | Detainees in the Administrative Unit were allowed to move around the facility without restriction. Accordingly, Assistant Warden Patricia Siebert-Love gave the order that detainees need not be secured in the showers. (Exh. C, "Hutchinson Decl." ¶ 9.)<br><br>At the time Plaintiff was working in the Administrative Segregation Unit, Detention Officers were told that Detention Officers shall secure the shower by locking it only if a detainee were to request for a razor. If a detainee did not request a razor while taking a shower, Officers should not lock the showers. (Exh. F, "Moreiko Decl." ¶ 16.)<br><br>GEO did not require, and there were never any indications made on detainee's prison cell of his propensity to be dangerous or |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | tendency to attempt an escape. There were never any signs advising staff of detainee Irias being an escape risk or dangerous.<br>(Exh. G, "Macias Decl. ¶ 16.)<br><br>Detention Officers often allow detainees to shower during the time that they are conducting other duties, and supervisors have not taken adverse action against Officers for doing so because they realize that there are only so many hours in a day for Officers to complete all their given tasks.<br>(Exh. D, "Nowicki Decl." ¶ 34.)<br><br>GEO policy dictates that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl. ¶ 39.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | The showers for the detainees are within the Administrative Segregation Unit. For procedural purposes for GEO, this means that if the detainee is in the shower, and the shower is within the housing unit, the officer in that housing unit is still considered to have full custody over the detainee. During count, the detainee in the shower would also be counted regardless whether or not in the shower or secured in the cell. (Exh. D, "Nowicki Decl. ¶ ¶ 30, 31.)<br><br>Following the incident on August 5, 2015 and Plaintiff's termination, GEO changed its meal service procedure. Plaintiff was required to distribute the meal to the entire unit cell by cell. After his termination, GEO requires one detention officers to set-up a food cart in the middle of the dorm at the day room, and |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | another detention officer observe and monitor as detainees leave their cells and come to pick up their meals. (Exh. F, "Moreiko Decl." ¶ 20.)<br><br>Short staffing was a constant problem at the Adelanto Detention Facility, which created significant safety risks for GEO staff, and inmates, alike. On the day of the incident involving detainee Irias, a Lieutenant ordered Officer Patterson to leave his assigned post in Segregation, serve Central Command with the Facility Count paperwork, and then go relieve other officers for break so GEO would not incur meal penalties. By ordering Officer Patterson to leave Segregation, which was a two-man post, Plaintiff was left alone. Plaintiff was performing the workload of two officers. (Exh. E, "Harris Decl." ¶¶ 15, 16.) |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | There is a control center within the Segregation Unit. GEO labels the officer responsible for the post as "control officer" on the shift roster. On the date of the incident, that post was left unattended. If there were an officer manning that station, that officer would have seen the detainee exit the shower and attempt an escape. Instead, GEO used the person that was supposed to be stationed at that post to cover another post in Segregation. "This was a staffing plan that GEO kept getting away with." (Exh. E, "Harris Decl." ¶ 25)<br><br>Plaintiff's submitted report is as follows: "On 8.5.15, shortly before the 1630 count, I placed D/T Irias into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by the |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | staff, and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T Irias had not finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve each other on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | detainees' hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to discipline segregation side to relieve the 2 officers working disciplinary segregation, one officer at the time, leaving me to complete the distribution of dinner trays. The 2 segregation porters were utilized to complete the distribution of dinner trays and I began distributing with them on the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell, so we skipped him and were to go back and feed him. When finished distributing to the bottom of the tier D/T Irias still had not finished in the shower se we continued to the top tier to distribute trays, this time from the right to the left. Once we finished |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I [seen] D/T Irias being escorted by multiple staff back into segregation and into his cell. I had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters." (Exh. A, "Mostafavi Decl." Exhibit 19.)<br><br>Plaintiff's termination was not justified. He was not the one who allowed a detainee to access 4 different doors.<br>(Exh. C, "Hutchinson Decl." ¶ 12.)<br><br>Plaintiff's termination was not justified because the detainee was still within the facility in a secured |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | area, where general population goes through all the time. Plaintiff was manning the Segregation Unit by himself at the time when there should have been two officers on watch. (Exh. E, "Harris Decl." ¶ 19.)<br><br>Detainee's dangerous propensity was not communicated to the detention officers, including Plaintiff. Management, like Sergeants, were the only ones aware. (Exh. C, "Hutchinson Decl." ¶ 18.)<br><br>If a detainee was one who posed an escape risk or exhibited violent behavior towards staff, GEO was required to notify the officers in writing indicating that extra precautions should be taken with that detainee. No such information was provided to Plaintiff. (Exh. E, "Harris Decl." ¶ 21.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | GEO policy states that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm. (Exh. D, "Nowicki Decl." ¶ 39.)<br><br>During Plaintiff's employment with GEO, detention officers were to secure the shower by locking it if the detainee requested a razor. After the incident on August 5, 2015, GEO policy has changed. Officers at Segregation are now required to secure a detainee in the shower at all times, whether or not the detainee requests a shaving razor (Exh. D, "Nowicki Decl." ¶¶ 46, 47.)<br><br>Plaintiff's termination would have been prevented if GEO provided a Segregation Control Room Officer to monitor the area when other officers are occupied with different, but required tasks. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. F, "Moreiko Decl." ¶ 23.)<br><br>Plaintiff was an effective Detention Officer while employed with GEO Corrections and Detention Facility.<br>(Exh. F, "Moreiko Decl." ¶ 6.)<br><br>GEO has always had problem with short staffing.<br>(Exh. G, "Macias Decl." ¶ 20.)<br><br>GEO suffered from chronic short staffing because of the increased need for more officers in the Segregation Unit and the sheer magnitude of duties officers were assigned and responsible for.<br>(Exh. E, "Harris Decl." ¶ 13.)<br><br>Plaintiff's Evidentiary Objection #17. |
| 8. The reason stated on Plaintiff's termination notice was "inability to perform job."<br>(Janecka Decl., ¶ 9, Ex. B.) | <u>Disputed.</u><br>Even though Plaintiff followed GEO's policies and procures on August 5, 2015, he was still |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | terminated.<br>(Exh. B, "Santiago Decl." ¶ 38.)<br><br>As a detention officer at the Administrative Segregation Unit, Plaintiff was responsible only for areas within range of his vision, areas within sight and sound including windows, emergency fire doors, corridors, the entrances and observation of the exterior of the facility grounds area Plaintiff's responsibility did not extend to different floors at the segregation unit where he was not physically present or could not have been physically present.<br>(Exh. B, "Santiago Decl." ¶ 40.)<br><br>Plaintiff's termination was not justified. He was not the one who allowed a detainee to access 4 different doors.<br>(Exh. C, "Hutchinson Decl." ¶ 12.) |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
| --- | --- |
| | Plaintiff's termination was not justified because the detainee was still within the facility in a secured area, where general population goes through all the time. Plaintiff was manning the Segregation Unit by himself at the time when there should have been two officers on watch. (Exh. E, "Harris Decl." ¶ 19.)<br><br>Detainee's dangerous propensity was not communicated to the detention officers, including Plaintiff. Management, like Sergeants, were the only ones aware. (Exh. C, "Hutchinson Decl." ¶ 18.)<br><br>If a detainee was one who posed an escape risk or exhibited violent behavior towards staff, GEO was required to notify the officers in writing indicating that extra precautions should be taken with that |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | detainee. No such information was provided to Plaintiff.<br>(Exh. E, "Harris Decl." ¶ 21.)<br><br>GEO policy states that Detention Officers must stop whatever they are doing and ensure that detainees receive their food while its warm.<br>(Exh. D, "Nowicki Decl." ¶ 39.)<br><br>During Plaintiff's employment with GEO, detention officers were to secure the shower by locking it if the detainee requested a razor. After the incident on August 5, 2015, GEO policy has changed. Officers at Segregation are now required to secure a detainee in the shower at all times, whether or not the detainee requests a shaving razor<br>(Exh. D, "Nowicki Decl." ¶¶ 46, 47.)<br><br>Plaintiff's termination would have been prevented if GEO provided a |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Segregation Control Room Officer to monitor the area when other officers are occupied with different, but required tasks.<br>(Exh. F, "Moreiko Decl." ¶ 23.)<br><br>Plaintiff was an effective Detention Officer while employed with GEO Corrections and Detention Facility.<br>(Exh. F, "Moreiko Decl." ¶ 6.)<br><br>GEO has always had problem with short staffing.<br>(Exh. G, "Macias Decl." ¶ 20.)<br><br>GEO suffered from chronic short staffing because of the increased need for more officers in the Segregation Unit and the sheer magnitude of duties officers were assigned and responsible for.<br>(Exh. E, "Harris Decl." ¶ 13.) |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave (Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>GEO learned of Officer Marquez's pregnancy on September 2, 2015. Once they found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination process. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his termination on September 16, 2016. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident).<br>(Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female.<br>(Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While Officer Marquez was on leave, her |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | position was covered by anyone who remotely understood how to run Central Control.<br>(Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident.<br>(Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>Plaintiff's Evidentiary Objection #16. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| 9. Officer Marquez was pregnant when the August 5, 2015 incident occurred. She began her maternity leave pursuant to the Family Medical Leave Act immediately following the incident, on August 6, 2015. (Janecka Decl., ¶ 10.) | Disputed.<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave (Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to send a letter to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. |

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared and ready to proceed on September 1. On September 2, Sandra Gyenes became aware of Marquez's gender. Instead of proceeding Marquez's termination, she instructed the local HR to send a letter to Marquez, informing her that the investigation regarding the matter would remain open until her return to work. (Exh. A, "Mostafavi Decl." ¶ 9(s), Exhibit 30: GEO000625-628.)<br><br>On September 2, 2015, Aida Aldape, the local HR Specialist notified Marquez in a letter, that Marquez was under an investigation due to the August 5, 2015 incident. The matter would remain open until her return. |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | No disclosure was made regarding GEO's decision to terminate her on September 1, 2015.<br>(Exh. A,"Mostafavi Decl." ¶ 10(d), Exhibit 28: SANTIAGO 180.)<br>A termination request is compiled in the HR office pursuant to an investigation regarding to an infraction by a staff member at the facility. HR provides Janecka with the documentation for review. If Janecka makes a termination decision after review, Janecka submits it to James Black, the regional vice president. It was per Janecka's decision at the facility level to initiate the termination request.<br>(Exh. A, "Mostafavi Decl." ¶ 10(g), Exhibit 35: SANTIAGO 101, Marquez's Trans. 115:21-116:23.)<br><br>Janecka submitted Plaintiff's termination request on August 18, 2016. Plaintiff was notified of his |



MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | termination on September 16, 2016. (Exh. A, "Mostafavi Decl." Exhibit 32, 34.)<br><br>Janecka submitted request for Plaintiff's termination on August 18, 2016 (13 days after the incident). On August 18, 2016, Janecka, as the Warden, had made Plaintiff's termination final. Janecka submitted Officer Marquez's termination request on April 8, 2016 (about 8 months after the incident). (Exh. A, "Mostafavi Decl." Exhibit 31, 32.)<br><br>There have been instances of employees not being fired due to being pregnant or female. (Exh. E, "Harris Decl." ¶ 26.)<br><br>Officer Marquez was not terminated for the incident on August 5, 2015 because she was pregnant. While |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Officer Marquez was on leave, her position was covered by anyone who remotely understood how to run Central Control.<br>(Exh. E, "Harris Decl. ¶ ¶ 29, 30.)<br><br>Officer Marquez was granted maternity leave for a year right after the incident.<br>(Exh. E, "Harris Decl." ¶ 30.)<br><br>GEO treated Plaintiff and Officer Marquez differently even though they both were held responsible for the same incident.<br>(Exh. B, "Santiago Decl." ¶ 31.)<br><br>GEO terminated Plaintiff yet placed Officer Marquez on maternity leave because GEO treats women more favorably than men.<br>(Exh. B, "Santiago Decl." ¶ 39.)<br><br>A Disciplinary Action Form for |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | Santiago's dismissal was approved and signed by the Facility Administrator, James Janecka on August 17, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000234.)<br><br>The Disciplinary Action Form for Santiago's dismissal was approved and signed by GEO's Corporate Legal on August 31, 2015, and by GEO's Corporate HR on September 1, 2015. (Exh. A, "Mostafavi Decl." ¶ 9(p), Exhibit 26: GEO000235.)<br><br>Plaintiff's Evidentiary Objection #15.<br>Plaintiff's Evidentiary Objection #16.<br>Plaintiff's Evidentiary Objection #18. |
| 10. GEO paid her no compensation during her leave. Like Plaintiff, she performed no work for GEO at any time following the August 5, 2015 incident.<br>(Janecka Decl., ¶ 10.) | Disputed<br>Plaintiff was terminated immediately after the incident. Officer Marquez, who allowed the detainee access the 4 doors, was not. Instead, Officer Marquez was granted maternity leave |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | (Exh. C, "Hutchinson Decl." ¶ 16.)<br><br>The investigation of Officer Marquez's involvement and culpability was determined locally at the Adelanto detention facility, and a request for her termination was submitted to GEO. Officer Marquez's termination was approved by GEO on September 1, 2015. On the same date, GEO learned of Officer Marquez's pregnancy. Once GEO found out that Officer Marquez was a woman who requested maternity leave, they instructed the local HR, HR department at Adelanto, to withdraw Officer Marquez's termination. Local HR, Aida Adalpe, obliged.<br>(Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>In addition to withdrawing Officer Marquez's termination, GEO instructed local HR's Aida Aldape to |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD. STE 1055, LOS ANGELES, CA 90064

| GEO'S PURPORTED UNCONTROVERTED FACTS | PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT |
|---|---|
| | send a letter to Officer Marquez notifying her that the *investigation* regarding the August 5, 2015, incident involving Plaintiff and detainee Irias is still pending until her returns from maternity leave. (Exh. A, "Mostafavi Decl." Exhibit. 30.)<br><br>On August 28, 2015, Sandra S. Gyenes, the Director of Human Resources, Western Region, requested for Corporate review on Marquez's termination with an understanding that Marquez was a male employee, and had been put on administrative leave without pay pending approval of his termination. GEO's Corporate Legal and HR completed the review and concurred with the recommendation to terminate. A Disciplinary Action Form for Marquez's termination with the approval signatures was prepared |