27.1   The Union recognizes that it is the responsibility of Officers to familiarize themselves and learn all policies and rules established by the Company or its Client, and faithfully report all violations thereof. The Union agrees that Officers shall discharge all duties as assigned to them impartially and without regard to any Union or non-union affiliation of any Officer of the Company or Client, and that failure to do so may be cause for discipline.

27.2   It is understood that no provisions of this Agreement will apply to any temporary supplementary correctional force transferred to work at the facility to maintain contractual obligations to the Client or during emergency situations. Unless the Client exercises its contractual option to assume operation of the facility or Officers are engaged in an adverse job action against the Company, such supplementary force will not result in job loss or in the loss of normal hours to permanent Officers coming under this agreement while the supplementary force is being utilized.

27.3   The Union recognizes the principle of management responsibility and that the Company must furnish satisfactory service in accordance with the demands and directives of the Company's Client(s) and the requirements of the particular job.

27.4   Officers will be paid at the appropriate rate for all required Company Training.

27.5   Union membership insignia shall be authorized to be worn on Company uniforms provided that if the Client objects then such insignia shall be removed when the Company so requests.

27.6   The Company agrees to permit one (1) full time bargaining unit member selected by the Union as the Union Safety Representative to participate in the facility sponsored safety committee. An alternate may be utilized when the primary Union Safety Representative is not available due to illness or vacation or when circumstances require the assistance of an alternate.

27.7   The Company and the Union agree to meet quarterly (more often if necessary) for Labor/Management meetings to share information, discuss issues and improve communications.   This meeting will be no more than two people from each party represented and will not be to discuss grievances.

27.8   This Agreement shall be binding upon the parties hereto, their successors and assigns and no provisions, terms or obligations herein contained shall be affected, modified, altered or changed in any respect whatsoever by the consolidation, merger, sale transfer or assignment of either party hereto or affected, modified, altered or changed in any respect whatsoever by any change of any kind in the legal status, owner or management of either party hereto.

## **ARTICLE 28**
## **DURATION**

Except as otherwise provided herein, this Agreement becomes effective on July 3, 2015, and

GEO000363

shall continue in force and effect until midnight July 2, 2018, and from year to year thereafter, unless either party receives written notice from the other party, not less than sixty (60) days, nor more than ninety (90) days, immediately prior to the expiration date, of its intention to amend, modify or terminate this Agreement, provided that if the Company shall cease to operate at this site, this Agreement shall automatically terminate and the rights and obligations of both the Union and the Company hereunder, shall automatically cease except with reference to those Officers covered herein shall remain in the employment of the Company for the purpose of performing work arising from the termination provisions of the Company's agreement with the Client, and as to such Officers, this Agreement shall continue in effect until termination of employment of such Officers.

## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have caused their Representatives to sign this Agreement on July 28, 2015, as full acknowledgement of their intentions to be bound by the Agreement.

Michael Burke
DHS VP UGSOA                 Date

Christopher D. Ryan          7·30·15
VP Employee & Labor Relations

GEO000364

# EXHIBIT 14

Segregation/Special Management Unit Office Policy

|  Corrections & Detention ▸ | Adelanto Detention Facility<br><br>POLICY and PROCEDURE MANUAL<br><br>CHAPTER:  Special Management Detainees<br><br>TITLE:  Special Management Unit Operations<br><br>RELATED ACA STANDARDS:  4-ALDF-2A-45, 2A-48, 2A-51–2A-54, 2A-56–2A-64 | <u>NUMBER:</u><br>10.2.11-ADF<br><br><u>SUPERSEDES:</u><br>11/24/2015<br><br><u>EFFECTIVE:</u><br>02/16/2015 |
| --- | --- | --- |

I.      PURPOSE

To describe the operational standards for housing detainees in administrative and disciplinary housing status while confined in the facility.

II.     POLICY

It is the policy of the facility to maintain safe, secure housing for detainees who require protection or whose behavior indicates they require more physical controls than are available in typical housing units in the facility.

III.    DEFINITIONS

A.  **Administrative Segregation** – A form of separation from the general population used when the continued presence of the detainee in the general population would pose a threat to life, property, self, other detainees, or staff or to the security or orderly running of the facility.

B.  **Disciplinary Hearing** – Non-judicial administrative procedure to determine whether substantial evidence supports finding a detainee guilty of a rule violation.

C.  **Disciplinary Segregation** – Confinement in a cell removed from the general population after a serious violation of facility rules.

D.  **Institutional Disciplinary Panel (IDP)** – Review board responsible for conducting disciplinary hearings and imposing sanctions for cases of detainee misconduct referred for disposition following the hearing. The IDP is usually comprised of a Hearing Officer and representatives of different departments in the facility.

E.  **Administration Close Custody (ACC)** – Administrative segregation for the detainee's own safety. The facts associated with the need for this status must be fully documented.

F.  **Segregation** – Confinement in a cell isolated from the general population; for administrative disciplinary or protective reasons.

G.  **Special Management Unit (SMU)** – A housing unit for detainees in administrative or disciplinary segregation.

IV.     PROCEDURES

The facility will operate a locked or secure housing unit that will constitute its prime resource for detainees who are unmanageable, present a threat to themselves or others, or who for other reasons require protection or removal from the general population.

A.  <u>Conditions of Confinement</u>

Segregation housing units provide living conditions that approximate those of the general detainee population. All exceptions are clearly documented.  Segregation cells/rooms permit the detainees assigned to them to converse with and be observed by staff members.  Cells/rooms used for segregation encompass at least 70 square feet of floor area of which 35 square feet is unencumbered.  [4-ALDF-2A-51]

Conditions of confinement in the locked unit will reflect the least restrictive amount of control necessary to adequately supervise and safeguard detainees and staff.  Whenever an emergency arises that requires variance from approved conditions on a temporary basis, such as deprivation of otherwise approved items, an immediate report will be made to the Facility Administrator.  [4-ALDF-2A-58]

GEO000161 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility | |
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

A detainee will not be held in the unit without clothing, a mattress, blankets, and a pillow, except when prescribed for medical or psychiatric reasons.  If a detainee is so seriously disturbed that he or she is likely to destroy clothing or bedding or create a disturbance that would be serious detrimental to others, medical staff will be notified immediately and a regimen of treatment and control will be instituted with the concurrence of the medical department.

B.  **Medical Assessment**

When a detainee is transferred to segregation, health care personnel are informed immediately and provide assessment and review as indicated by the protocols established by the Health Services Administrator. Unless medical attention is needed more frequently, each detainee in segregation receives a daily visit from a health care provider.  The presence of a health care provider in segregation is announced and recorded.  The health authority determines the frequency of physician visits to segregation.  [4-ALDF-2A-45]

A psychiatric or psychological assessment, including a personal interview with the detainee by a qualified mental health professional shall be conducted every 30 days that a detainee continues confinement. This mental health assessment will be submitted to the Facility Administrator in a written report (utilizing Detention/Segregation Mental Health 30-Day Review Form OPR-624) for each individual detainee.

C.  **Operating Procedures**

All GEO staff members, contractors, ICE personal and other visitors entering the Special Management Unit, and who are assigned to work in the Special Management Unit, will sign the Visitor's Logbook documenting the date, time and reason for their visit.  This includes detention officer's relieving the assigned staff member for breaks or lunch/dinner.

Any detainee movement out of a cell will be in restraints.   The restraints will be removed only when the detainee is in a secure enclosure, such as a recreation area, shower, etc.
High security cells will be specially marked with a notice to designate that a two-officer rule is in operation for the occupant.  That cell will only be opened with two officers present.  Two officers will remain in the SMU area during the out of cell time for that detainee.  High security designations will be made in selected cases. Staff may make a recommendation for such action through their supervisor.  The Facility Administrator or the Facility Administrator's designee will make the final decision.

Staff will personally observe every detainee at least every thirty minutes on an irregular schedule and document the checks in their logbook as well as completing the seg 30 minute check form.  Detainees who are violent or mentally disordered or who demonstrate unusual or bizarre behavior receive more frequent observation.  Suicidal detainees are under continuous observation until seen by a mental health professional. Subsequent supervision routines are in accordance with that ordered by the mental health professional.  [4-ALDF-2A-52]

D.  **Placement in Administrative Segregation**

Administrative Segregation status is a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of detainees or others, the protection of property, or the security or good order of the facility.  For matters of safety and security, staff may have to take immediate action to control a detainee, including placement in Administrative Segregation.  Examples include detainees who require Administrator Close Custody, who cannot be placed in the general population because they are en route to another facility ("holdovers"), who are awaiting a disciplinary hearing, or who require separation for medical reasons.

GEO000162 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility | NUMBER: 10.2.11-ADF |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | |
| | CHAPTER: Special Management Detainees | |
| | TITLE: Special Management Unit Operations | |

1. Prior to the detainee's placement in administrative segregation, the Facility Administrator or designee and the Classification Officer will review the case to determine whether administrative segregation is warranted.

2. A detainee may be placed in administrative segregation when the detainee's continued presence in the general population poses a threat to life, property, self, staff, or other detainees; for the secure or orderly operation of the facility; for medical reasons or other circumstances as set forth below.  Examples include, but are not limited to the following:

a. A detainee is awaiting an investigation or a hearing for a violation of facility rules.  Pre-disciplinary hearing detention should be ordered only as necessary to prevent further rules violation(s) or to protect the security and orderly operation of the facility.  It is not to be used as a punitive measure.  Time served in pre-hearing detention may be deducted from any time ordered by the Institutional Disciplinary Panel (IDP).

b. A detainee is a threat to the security of the facility.  The Facility Administrator may determine that a detainee's criminal record, past behavior at other institutions, behavior while in Immigration and Customs Enforcement (I.C.E.) detention, or other evidence is sufficient to warrant placing the detainee in administrative segregation. Copies of records supporting this action will be attached to the Administrative Segregation Order.

c. A detainee requires protection.  A detainee is admitted to Administration Close Custody status when there is documentation that protective custody is warranted and no reasonable alternatives are available.  [4-ALDF-2A-46]  Administration Close Custody (ACC) may be initiated at the detainee's request or ordered to protect the detainee from harm.  Examples include:

    1) Victims of detainee assaults;
    2) Detainee informants/witnesses - detainees who provide information to the institution staff or any law enforcement agency concerning improper activities by others;
    3) Sexual predators;
    4) Detainees who have been pressured by other detainees to participate in sexual activity;
    5) Detainees who request PC;
    6) Detainees who refuse to enter the general population because of alleged intimidation from other detainees;
    7) Detainees who refuse to return to the general population, but who will not provide the reason for refusal;
    8) Detainees who appear to be in danger of bodily harm; or
    9) Detainees who seek protection, claiming to be former law enforcement officers or to have held sensitive law enforcement position, whether or not there is official information to verify the claim.

d. The IDP may order a detainee into administrative segregation following disciplinary segregation after determining that releasing the detainee into the general population would pose a threat to the security and orderly operation of the facility.  A detainee transferred from disciplinary segregation to administrative segregation shall enjoy the same privileges as all others in administrative segregation.

e. A medical professional ordering a detainee removed from the general population shall complete and sign the Administrative Segregation Order, unless the detainee will stay in the medical department's isolation/segregation ward.

f. A detainee is scheduled for release, removal, or transfer within 24 hours.  Such segregation may be ordered for security reasons or for the orderly operation of the facility.

GEO000163 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br>CHAPTER:  Special Management Detainees<br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

### E.  Administrative Segregation Order

A written order shall be completed and approved by a Shift Supervisor before a detainee is placed in administrative segregation, except when exigent circumstances make this impracticable.  In such cases, an order shall be prepared as soon as possible.  A copy of the order shall be given to the detainee within 24 hours, unless delivery would jeopardize the safety, security, or orderly operation of the facility.

1. The Facility Administrator or the Facility Administrator's designee shall complete the Administrative Segregation Order detailing the reasons for placing a detainee in administrative segregation, before actual placement.

2. In an emergency, the detainee's placement in administrative segregation may precede the paperwork, which the Facility Administrator will prepare as soon as possible.

3. All memoranda, medical reports, and other relevant documents shall be attached to the segregation order.

4. A copy of the completed Administrative Segregation Order will be given to the detainee within 24 hours of placement in administrative segregation, unless delivery would jeopardize the safe, secure, or orderly operation of the facility.

5. The order will remain on file with the Special Management Unit (SMU) until the detainee is returned to the general population.

6. When the detainee is released from the SMU, the releasing officer will indicate date and time of release on the Administrative Segregation Order, then forward the completed order to the Classification Officer for insertion into the detainee's detention file.

7. If the segregation is ordered for ACC purposes, the order shall state whether the detainee requested the segregation; also, whether the detainee requests a hearing concerning the segregation.

8. No Administrative Segregation Order is required for a detainee awaiting removal, release, or transfer within 24 hours.

### F.  Review of Detainee Status in Administrative Segregation

1. The SMU review committee, chaired by the Programs Coordinator shall conduct a review within 72 hours of the detainee's placement in administrative segregation to determine whether segregation is still warranted.  The review shall include an interview with the detainee.  A written record shall be made of the decision and the justification.  The Administrative Segregation Review Form will be used for the review.  If the detainee has been segregated for the detainee's protection, but not at the detainee's request, the signature of the Facility Administrator or Assistant Facility Administrator is required on the Administrative Segregation Review Form to authorize continued detention.

2. The SMU review committee shall conduct the same type of review after the detainee has spent seven days in administrative segregation, and every week thereafter for the first two months and at least every 30 days thereafter.  The review shall include an interview with the detainee.  A written record shall be made of the decision and the justification.  [4-ALDF-2A-48, 2A-49].  A reviewing authority who concludes a detainee should be removed from Administrative Segregation, submits that recommendation to the Facility Administrator, or designee for approval.

GEO000164 (INITIAL PRODUCTION 10/03/17)



|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br>CHAPTER:  Special Management Detainees<br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

3.  A copy of the decision and justification for each review shall be given to the detainee, unless, in exceptional circumstances, this provision would jeopardize security.  The detainee shall be given an opportunity to appeal a review decision to a higher authority within the facility.

4.  When a detainee has been held in Administrative Segregation for more than 30 days, the Facility Administrator notifies the Field Office Director, who notifies the ICE/DRO Deputy Assistant Director, Detention Management Division.
Immigration and Customs Enforcement Assistant Director, Detention and Deportation shall be notified when any detainee has been in administrative detention for more than 60 days.  This notification shall be made through the on-site COTR.  The Region shall then consider whether transfer of the detainee to a facility where he/she may be placed in the general population would be appropriate.

5.  If a detainee has been in administrative segregation for more than 30 days and objects to this status, the Facility Administrator shall review the case to determine whether that status should continue. This review shall take into account the views of the detainee.  A written record shall be made of the decision and the justification.  A similar review shall take place every 30 days.

6.  After seven consecutive days in administrative segregation, the detainee may exercise the right to appeal to the Facility Administrator the conclusions and recommendations of any review conducted. The detainee may use any standard form of written communication, e.g., detainee request, to file the appeal.

G.  <u>Conditions of Administrative Segregation (Basic Living Standards)</u>

1.  Detainees in administrative segregation shall receive the same general privileges as detainees in the general population, consistent with available resources and security considerations.

2.  The quarters used for segregation shall be well ventilated, adequately lit, appropriately heated and maintained in a sanitary condition at all times.  All cells must be equipped with beds.

3.  The number of detainees confined to each cell or room in administrative segregation should not exceed the capacity for which it was designed.  The Facility Administrator may approve excess occupancy, on a temporary basis, if the Facility Administrator finds that the other basic living standards can still be maintained.

    Segregation housing units provide living conditions that approximate those of the general inmate population.  All exceptions are clearly documented.  Segregation cells permit the detainees assigned to them to converse with and be observed by staff members.  Cells used for segregation encompass at least 70 square feet of floor area of which 35 square feet is unencumbered.

4.  Clothing and bedding shall be issued to detainees in segregation.  Detainees in segregation will be provided the same opportunity for the exchange of clothing, bedding and linen and for laundry as detainees in the general population.

    A detainee in segregation may wear normal institutional clothing and shall be furnished a mattress and bedding.  A detainee may not be segregated without clothing, mattress, blankets and pillow, except:

GEO000165 (INITIAL PRODUCTION 10/03/17)



| Adelanto Detention Facility | |
|---|---|
| POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| CHAPTER:  Special Management Detainees | |
| TITLE:  Special Management Unit Operations | |

   a.  When prescribed by a medical professional for medical or psychiatric reasons.  If a detainee is so seriously disturbed that he/she is likely to destroy clothing or bedding, or to create a disturbance putting self or others at risk, the medical department shall be consulted immediately to determine whether a regimen of treatment and control may be instituted.

   b.  When the Shift Supervisor determines the detainee poses a threat to self or property.

Exceptions shall occur only when necessary for security purposes, as determined by the Facility Administrator.  Any exception, and the reasons, shall be recorded in the housing unit log.

5.  Detainees in segregation shall receive three nutritionally adequate meals per day, from the menu served to the general population.  For security purposes, detainees in the SMU shall use disposable utensils only.  Under no circumstances shall food be used as punishment.

6.  Segregated detainees shall have the opportunity to maintain a normal level of personal hygiene. Staff shall provide toilet tissue, a wash basin, tooth brush, shaving utensils, etc., as needed, and may issue retrievable kits of toilet articles.

Each segregated detainee shall have the opportunity to shower and shave at least daily, unless these procedures would present an undue security hazard.  This security hazard will be documented and signed by the Facility Administrator or the Facility Administrator's designee, indicating his/her review and approval.  Denial of showers will be temporary and situational, and will continue only as long as justified by the security threat.

7.  Detainees in segregation will be provided, where practicable, barbering services.  Exceptions to this procedure may be permitted only when found necessary by the Facility Administrator.

8.  Detainees in segregation will receive a minimum of two hours of exercise per day outside their cells, Seven days per week, unless security or safety considerations dictate otherwise.

These provisions shall be carried out, absent compelling security or safety reasons documented by the Facility Administrator.  A detainee's recreation privileges may be withheld temporarily after a severely disruptive incident.  Staff shall document by memorandum and logbook(s) notation every instance when a detainee is denied recreation.  The memorandum shall be placed in the detainee's detention file as well as forwarding a copy of the action to the Facility Administrator.

The case of a detainee denied recreation privileges will be reviewed at least once each week, as part of the reviews required for all detainees in the unit. The reviewer will document whether the detainee continues to pose a threat to self, others, or facility security and, if so, why.

Denial of recreation privileges for more than 15 days requires the concurrence of the Facility Administrator and H.S.A. The Facility Administrator will notify ICE when a detainee is denied recreation privileges for more than 15 days.

When space and resources are available, detainees in administrative segregation will be able to participate in TV viewing, board games, socializing and work details (e.g., a housekeeper in the SMU); and provided opportunities to spend time outside their cells, over and above recreation periods.

9.  The Facility Administrator will issue guidelines concerning the property that detainees may retain in administrative segregation.

GEO000166 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

10. A reasonable amount of non-legal reading material will be available to detainees in segregation.  The detainee will also be permitted religious material, unless the religious item would pose a threat to security

11. Detainees in segregation will be permitted to retain a reasonable amount of personal legal material, unless this would create a security threat.  If personal legal material is placed in storage, the detainee shall be able to access the material promptly, upon request.

    Detainees will be permitted to retain all personal legal material upon admittance to segregation, provided such material does not create a safety, security and/or sanitation hazard.  Detainees with a large amount of personal legal material may be required to place a portion of the material in their personal property, with access permitted during designated hours.  Requests to access such legal material should be met as soon as possible, but in no case longer than twenty-four (24) hours after receipt of the initial detainee request to retrieve documents, unless documented security concerns preclude action within this time-frame.

12. In addition to the direct supervision afforded by the unit officer, the Shift Supervisor shall see each segregated detainee daily, including weekends and holidays.

    Unless medical attention is needed more frequently, each detainee in segregation receives a daily visit from a health care provider.  The presence of a health care provider in the Special Management Unit is announced and recorded.  The Health Services Administrator determines the frequency of physician visits to segregation units.  The medical visit shall be notated on the SMU Activity Sheet.  The medical professional will question each detainee to identify medical problems or requests.  Any action taken will be documented in a separate logbook.

13. The facility shall follow the "Visitation" standard in setting visitation rules for detainees in segregation.  Ordinarily, a detainee retains visitation privileges while in segregation.

14. Detainees in ACC will not use the visitation room during normal visitation hours.  In addition, violent and disruptive detainees may be limited to non-contact visitation.  In extreme cases, visitation may be disallowed for a particular detainee where the visit would present an unreasonable security risk.  Under no circumstances are detainees to participate in general visitation while in restraints.  If the detainee's behavior warrants restraints, the visit will not be granted.

    General visitation may be restricted or disallowed when a detainee, while in a segregation status, is charged with, or has been found to have committed, a prohibited act having to do with visiting guidelines or has otherwise acted in a way that would reasonably indicate that he or she would be a threat to the orderliness or security of the visiting room.  Any restriction of visitation will be documented.

    Detainees in segregation may not be denied legal visitation, but reasonable security precautions will be taken where necessary.  Legal service providers and assistants will be notified of any security concerns prior to the meeting.

15. Detainees in segregation shall have the same correspondence privileges as detainees in the general population.

16. The facility shall follow the "Telephone Access" standard that provides guidelines for detainees in segregation.  Detainees in administrative segregation will be permitted telephone access similar to

GEO000167 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

that provided to detainees in the general population, but in a manner consistent with the special security and safety requirements of detainees in these units.

17. Members of the clergy may visit detainees in segregation, unless the shift supervisor determines the visit presents a security risk or will interfere with the orderly operating of the facility.

Violent and uncooperative detainees may be temporarily denied access to religious services until such time as their behavior and attitude warrants.

18. Detainees housed in segregation shall have the same law library access as the general population, consistent with security, although the facility may establish a policy of upon-request-only access. The level of supervision will depend on the individual's behavior and attitude.

Leisure reading materials will be available as requested from the Library.  [4-ALDF-2A-63]

Detainees in locked housing shall have the same law library access as the general population, consistent with security, the facility will grant access upon-request-only.  The level of supervision will depend on the individual's behavior and attitude.  [4-ALDF-2A-62]

Any denial of access to the law library will supported by compelling security concerns, for the shortest period required for security, fully documented in the SMU housing logbook as well as notification to ICE every time law library access is denied.

Detainees in the SMU for protective custody will be required to use the law library separately or will have requested legal material delivered to them.

19. Detainees in segregation shall have the same correspondence privileges as detainees in the general population (see the "Correspondence and Other Mail" standard).

H.  **Placement in Disciplinary Segregation**

To provide detainees in the general population a safe and orderly living environment, facility authorities shall discipline anyone whose behavior does not comply with facility rules and regulations.  This may involve temporary confinement apart from the general population, in the Special Management Unit (SMU).  A detainee may be placed in Disciplinary Segregation only after a finding by the Institution Disciplinary Panel (IDP) or equivalent that the detainee is guilty of a high level prohibited act or rule violation.  [4-ALDF-2A-47]

The disciplinary committee may order placement in disciplinary segregation only when alternative dispositions would inadequately regulate the detainee's behavior.

A maximum sanction of 60 days in disciplinary segregation shall apply to violations associated with a single incident.  After the first 30 days, the Facility Administrator shall send a written justification to the Assistant District Director for Detention and Deportation (ADD/DDP).  Considering the grounds for the Facility Administrator's disciplinary action, the ADD/DDP may decide to transfer the detainee to a facility where security is such that he/she could be placed in the general population.

GEO000168 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

I.     **Disciplinary Segregation Order**

A written order shall be completed and signed by the Disciplinary Hearing Officer before a detainee is placed in disciplinary segregation.  A copy of the order shall be given to the detainee within 24 hours, unless delivery would jeopardize safety, security, or the orderly operation of the facility.

1.   The Disciplinary Hearing Officer shall prepare the Disciplinary Segregation Order, detailing the reasons for placing a detainee in disciplinary segregation, before actual placement.  All relevant documentation must be attached to the order.

2.   A copy of the completed Disciplinary Segregation Order will be given to the detainee within 24 hours of placement in disciplinary segregation, unless delivery would jeopardize the safe, secure, or orderly operation of the facility.

3.   The order will be maintained on file with the Special Management Unit (SMU) until the detainee is released from the SMU.

4.   When the detainee is released from the SMU, the releasing officer will indicate date and time of release on the Disciplinary Segregation Order, then forward the completed order to Segregation Supervisor overseeing SMU.

J.    **Review of Detainee Status in Disciplinary Segregation**

1.   The SMU review committee shall review the status of a detainee in disciplinary segregation within seventy-two hours of admission, every seven days for the first two months, and every thirty days thereafter to determine whether the detainee:

a.   abides by all rules and regulations; and,

b.   is provided showers, meals, recreation, and other basic living standards, weekly review(s) will include an interview with the detainee.  The SDEO shall document his/her findings after every review, by completing a Disciplinary Segregation Review Form (I-887).

2.   The SMU review committee may recommend the detainee's early release from the SMU upon finding that time in disciplinary segregation is no longer necessary to regulate the detainee's behavior.

3.   An early-release recommendation must have the Facility Administrator's approval before the detainee can be returned to the general population.

4.   The committee may shorten, but not extend, the original sanction.

5.   All review documents shall be placed in the detainee's detention file.

6.   Provided institutional security is not compromised, the detainee shall receive at each formal review, a written copy of the reviewing officer's decision and the basis for this finding.

GEO000169 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

**K.  Conditions of Disciplinary Segregation (Basic Living Standards)**

Disciplinary segregation privileges shall be defined by the imposed sanction(s) of the disciplinary official. Detainees placed in disciplinary segregation may have all personal property, to include commissary (excluding hygiene items), impounded and stored by the facility for the duration of the disciplinary sanction. Detainees shall retain all facility issued property and hygiene items as defined on page seven (7) of the Detainee Handbook. Detainees shall not be denied the ability to retain in their possession; personal mail received after the imposed disciplinary sanctions, legal mail, legal materials, regions items deemed necessary by a religious authority and medical devices and/or equipment deemed necessary by a medical provider, unless such items pose a safety and/or security concern.

1.  The conditions of confinement will depend on the amount of supervision required to control the individual and safeguard other detainees and staff.

2.  Detainees housed in disciplinary segregation generally have fewer privileges than those housed in administrative segregation.  These detainees are subject to more stringent personal property control, restricted reading material, commissary privileges, etc.

3.  The Facility Administrator shall maintain the same living levels of decency and humane treatment for each detainee in disciplinary segregation, regardless of the purpose for which the detainee has been segregated.  When different treatment is required for security concerns presented by an individual detainee, staff shall prepare written documentation justifying this action.  The Facility Administrator shall sign this document, indicating his/her approval.

4.  Detainees in disciplinary segregation will be provided the same opportunity for the exchange of clothing, bedding, and linen, and for laundry as detainees in the general population.  If, for security purposes, the Facility Administrator authorizes an exception, the exception, and its justification, shall be documented in the SMU log.

5.  A detainee may be deprived of clothing, mattress, blanket, pillow, etc., for medical or psychiatric reasons only, as determined by the medical officer.

  If a detainee is so seriously disturbed that he/she is likely to destroy clothing or bedding or create a disturbance risking harm to self or others, the medical department shall be notified immediately and a regimen of treatment and control shall be instituted by the Health Services Administrator.

6.  As a rule, detainees in disciplinary segregation will have significantly fewer items of personal property than other detainees.  With the exception of items of personal hygiene, detainees in disciplinary segregation may lose the privilege of making commissary purchases.

7.   Access to legal and non-legal reading material shall be as follows:

  a.  The officer providing library services provide segregated detainee's leisure library access upon-request only.  This request shall be made using the Detainee Request Form.

  b.  When developing the schedule for law library-access, the Facility Administrator will set aside blocks of time for the detainees in disciplinary segregation.  These detainees will be afforded legal access comparable to, but not the same as, that of the general population.  Security constraints may impose limits on law-library access.

GEO000170 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

- Violent and/or uncooperative detainees may be temporarily denied access to the law library, until such time as their behavior and attitude warrants resumed access.

- On a case-by-case basis, legal material may be brought to individuals in disciplinary segregation. Denial of access to the law library must be justified by compelling security concerns, be fully documented in the SMU logbook, and last no longer than necessary for security purposes.

- Any denial of access to the law library will supported by compelling security concerns, for the shortest period required for security, fully documented in the SMU housing logbook as well as notification to ICE every time law library access is denied.

8. In accordance with the "Telephone Access" standard, detainees in disciplinary segregation shall be restricted to telephone calls for the following purposes:  [4-ALDF-2A-65]

   a. calls relating to the detainee's immigration case or other legal matters, including consultation calls;
   b. calls to consular/embassy officials; and
   c. family emergencies, as determined by the Facility Administrator.

9. Segregated detainees shall be allowed visits by members of the clergy, upon request, unless the supervisor determines the visit presents a security risk or will interfere with the orderly operation of the facility.

   a. The clergy member shall be told the detainees present state of behavior.
   b. The clergy member must agree to meet the segregated detainee.
   c. Violent and uncooperative detainees may be temporarily denied access to religious services until such time as their behavior and attitude warrants.

10. Detainees in segregation will receive a minimum of one hour of exercise per day outside their cells, five days per week, unless security or safety considerations dictate otherwise.

   These provisions shall be carried out, absent compelling security or safety reasons documented by the Facility Administrator.  A detainee's recreation privileges may be withheld temporarily after a severely disruptive incident.  Staff shall document by memorandum and logbook(s) notation every instance when a detainee is denied recreation.  The memorandum shall be placed in the detainee's detention file as well as forwarding a copy of the action to the Facility Administrator.

   The case of a detainee denied recreation privileges will be reviewed at least once each week, as part of the reviews required for all detainees in the unit. The reviewer will document whether the detainee continues to pose a threat to self, others, or facility security and, if so, why.

   Denial of recreation privileges for more than 15 days requires the concurrence of the Facility Administrator and H.S.A. The Facility Administrator will notify ICE when a detainee is denied recreation privileges for more than 15 days.

GEO000171 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER: Special Management Detainees | |
| | TITLE: Special Management Unit Operations | |

L.  **Forms and Reviews**

1.  A permanent log will be maintained in the SMU.  The log will record all activities concerning the SMU detainees, e.g., meals served, recreation, visitors, etc.

    **The SMU log will record the detainee's name, A-number, housing location, date admitted, type of infraction or reason for admission, tentative release date (for detainees in disciplinary segregation), special medical or psychiatric problems or needs and the authorizing official. All releases from the unit will be similarly recorded.**

    All persons visiting the unit will sign a separate log, giving time and date of visit.  Unusual activity or behavior of individual detainees will be recorded in the log, with a follow-up memorandum sent through the Facility Administrator to the detainee's file.

2.  The SMU/Segregation Activity Sheet shall be prepared immediately upon the detainee's placement in the SMU.  The form will be filled out at the end of each shift or as the activity takes place.

    The special housing officer for each shift will record whether the detainee ate, showered, exercised and took any medication.  The record will also be used to notate additional information, e.g., if the detainee has a medical condition, has exhibited suicidal/assaultive behavior, etc.

    The facility medical staff will be required to sign each individual record when he/she visits the detainee in segregation.

    A new record must be created for each week the detainee is in segregation or when the reason for placement changes such as Administrative Segregation to Disciplinary.  The completed Special Housing Activity Sheets will be retained in the SMU until the detainee is released from SMU.

    Upon release from the SMU, the releasing officer will ensure that the entire housing unit record relating to the detainee is attached to the Segregation Order and forwarded to the Classification Officer for inclusion in the detainee's detention file.

M.  **Staffing**

1.  The Assistant Facility Administrator of Security will select officers for assignment to the SMU on a rotational basis for their experience, judgment, and ability to manage detainees professionally. Supervision of these staff and unit operations will be a priority for management personnel, as indicated by the specified frequency of supervisory visits to the unit.  Staff assigned to work in the special management unit is selected based on criteria that include: completion of probationary period, experience and suitability for this population.  Staff is closely supervised with documented quarterly reviews conducted by the shift supervisor.  There are provisions for rotation to other duties.

2.  All staff assigned to SEG/SMU will receive training that includes information regarding the type of detainees housed in the unit; a course in dealing with detainees typically retained in segregated status; information on the rules governing SMU operation; special instructive discussions relative to safety and security precautions unique to the SMU area; and a basic course covering Adelanto. Detention Facility policies governing discipline and the use of segregation.

GEO000172 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

**N.  High Security Cell Access**

High security cells will be specially marked with a notice to designate that a two-officer rule is in operation for the occupant.  That cell will only be opened with two officers present.  Two officers will remain in the SMU area during the out of cell time for that detainee.  High security designations will be made in selected cases.  Criteria for such a designation is:

1.  Demonstrated violent behavior toward staff;
2.  Demonstrated violent behavior toward other detainees;
3.  Demonstrated or reported serious escape history or risk; and
4.  Other case-by-case circumstances which warrant the high security designation.

Staff may make a recommendation for such action through their supervisor.  The Facility Administrator or the Facility Administrators designee will make the final decision.

**O.  Property and Contraband Control**

Control of property and contraband will include a thorough search and inventory of all personal property brought by a detainee to the unit.

Disciplinary segregation privileges shall be defined by the imposed sanction(s) of the disciplinary official. Detainees placed in disciplinary segregation may have all personal property, to include commissary (excluding hygiene items), impounded and stored by the facility for the duration of the disciplinary sanction(s). Detainees may also be precluded from ordering commissary for the duration of the disciplinary sanction if sanctioned by the disciplinary official. A secure property storage area is provided in the disciplinary housing unit. All property placed in storage will be thoroughly searched and inventoried, and a copy of the inventory sheet will be provided to the detainee.

Food service carts, laundry carts, tool carts and commissary bins will be thoroughly inspected and searched by staff to prevent the introduction of contraband. All tools must be inventoried upon entering and exiting SMU.

Supervisory staff may remove otherwise permissible items from the cell of a detainee in locked unit status when those items are being used by the detainee to harm himself or herself or others, create a disturbance, or otherwise disrupt the orderly operation of the unit.  Such instances will be documented in memo form or using a General Incident Report (GI), placed in the unit log and the individual detainee log sheet, and a copy of the memo or GI will be forwarded to the Captain and the Facility Administrator.  The Captain must personally approve all such instances that last longer than twenty-four hours.

GEO000173 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

P.  <u>Special Management Unit Programs</u>

The programs and activities named below will be available to detainees in the locked housing unit providing documented security or safety considerations do not prevent delivery of such programs for limited periods.

Isolated recreation and exercise will be provided to all detainees in the locked housing unit no fewer than five times each week for one hour.  Where cover is not provided to mitigate inclement weather, detainees are provided weather-appropriate equipment and attire.  Detainees may be denied access to recreation on a determination, documenting in writing, that the individual involved presents a serious danger to themselves or others or to institutional security.  [4-ALDF-2A-64]

Showers will be offered daily.  Detainees will be permitted to shave at this time. Detainees receive laundry, barbering, and hair care services, and are issued and exchange clothing, bedding, and linen on the same basis as detainees in the general population.  Exceptions are permitted only when determined to be necessary.  Any exception is recorded in the unit log and justified in writing.  [4-ALDF-2A-57]

Crisis counseling and other social services will be provided to detainees on an in-cell basis.  Detainees requiring private counseling may be moved in restraints to a room where the counseling staff member will remain under the observation of a second staff member, who may be outside the room.  The detainee will remain in restraints.

Detainees in locked housing are provided prescribed medication, clothing that is not degrading and access to basic personal items for use in their cells unless there is imminent danger that a detainee or any other detainee(s) will destroy an item or induce self-injury.  [4-ALDF-2A-56]

Religious counseling and materials will be permitted in the unit, as provided by approved religious representatives and approved by the Assistant Facility Administrator of Security.  The Assistant Facility Administrator of Security in conjunction with the Programs Coordinator will determine which religious volunteers, if any, will be permitted to visit the unit and under whose supervision.

Detainees in locked housing can write and receive letters on the same basis as detainees in the general population.  [4-ALDF-2A-60]

Social and legal visiting will be permitted for all detainees in locked status provided they are not under visiting restrictions imposed as part of disciplinary actions.  Detainees in locked status may visit in the general non-contact visiting area.  [4-ALDF-2A-61]

All participation or refusal to participate in recreation, showers, meals, staff interviews, visits or other major unit activities will be logged in the detainees' individual activity sheet.

GEO000174 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br><br>CHAPTER:  Special Management Detainees<br><br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

**Q.   Food Service Operations**

Food service operations will be under the general oversight of the Food Services Administrator and will include in-cell service of meals that are the same as those served to the general population.

No detainee will be used to serve food in the unit.

Staff will ensure that food delivered to detainees is at the proper temperature.  Modification, reduction, or termination of meals will not be used as a behavioral control measure or for punishment.

Unit staff is responsible for ensuring the sanitary conditions of all utensils and trays.

Detainees who use food or other meal-related items to disrupt operations or threaten others will be served the same food as the general population.  However, Styrofoam or disposable trays may be substituted for the regular food tray.  [4-ALDF-2A-59]

**R.   Other Unit Programs**

The following programs and services are in operation in the locked unit:

1.   Detainees may participate in such educational programs as can be provided within the confines of the unit, consistent with the security needs of the unit
2.   In-cell programs such as leisure reading, self-study courses, and other activities will be made available to detainees in non-disciplinary status; detainees in disciplinary status may be limited in the number of reading items permitted in their possession at any one time.
3.   Sanitation in the unit will be maintained at a high level.  Detainees will be responsible for cleaning their own cells.  The Assistant Facility Administrator of Security, on unit staff's recommendation, may approve specially screened detainees housed in the unit for duty as orderlies.

**S.  Tours**

Staff mobility and supervisory visibility in locked units are important factors in ensuring smooth operations.

Detainees in segregation receive daily visits from the Chief of Security (Captain) members of the program staff on request, and a qualified health care daily unless medical attention is needed more frequently. Detainees requiring medication will be provided that medication as prescribed [4-ALDF-2A-53]

The Food Services Administrator will observe the service of meals once a week in locked units.  The Chaplain, classification, or social work staff and other program staff will visit all detainees in locked units as often as necessary to meet the needs of those cases, but in any event no fewer than once a week.

The Shift Supervisor will visit the locked units twice each shift.
A designated medical staff member will visit the unit at least daily and will be available as needed for other required care.  Detainees requiring medication will be provided that medication as prescribed.

The Facility Administrator and Department Heads will visit detainees confined to the segregation unit weekly.

GEO000175 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br><br>CHAPTER:  Special Management Detainees<br><br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

**T.  Other Considerations**

Protective custody cases will require separation, at a minimum, from the detainees by whom they are threatened.  In most cases, separation from all other detainees will be required.  Records on these cases should reflect their status, any known separates, and any other special precautions that must be taken.

In many instances, careful movement through the facility and in the admission/release process will be needed.  When it is necessary in the judgment of the Assistant Facility Administrator of Security; two staff members will be used to escort protective custody cases for such moves.

Detainees with medical and psychiatric aspects to their cases will be handled in accordance with the medical orders for those cases as long as those orders do not conflict with the facility's security needs.  In any case in which there appears to be such a conflict, the Shift Supervisor and, if necessary, the Assistant Facility Administrator or Facility Administrator, will resolve the issue with the Health Services Administrator.

**U.  Case Reviews**

The SMU review committee will review each locked unit detainee's case within seventy-two hours of admission, every seven days for the first two months, and at least every thirty days thereafter.  [4-ALDF-2A-48]

GEO000176 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br>CHAPTER:  Special Management Detainees<br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

**THIS POLICY WILL BE REVIEWED AT LEAST ANNUALLY AND UPDATED AS NEEDED.**

**Gray highlighted areas are the changes made to the current revision.**

QUESTIONS/SUGGESTIONS REGARDING THIS POLICY SHALL BE ADDRESSED TO THE ASSISTANT FACILITY ADMINISTRATOR OF SECURITY.

APPROVED: _____
                    Facility Administrator


EFFECTIVE:  February 16, 2015

Reviewed & Revised: October 2011
Reviewed & Revised: November 2011
Reviewed & Revised: February 2012
Reviewed & Revised: June 2012
Reviewed: July 2013
Reviewed: November 2014
Reviewed & Revised: February 2015

GEO000177 (INITIAL PRODUCTION 10/03/17)

# EXHIBIT 15

## Administrative Segregation Unit Policy

| | Adelanto Detention Facility | **NUMBER:**<br>10.3.7A – ADF |
|---|---|---|
| **GEO**<br>*Corrections & Detention* | POLICY and PROCEDURE MANUAL<br><br>CHAPTER: Post Orders<br><br>TITLE: Administrative Segregation Unit Officer<br><br>RELATED ACA STANDARDS: 4-ALDF-2A-04 | **SUPERSEDES:**<br>NEW<br><br>**EFFECTIVE:**<br>06/15/2015 |

**All Officers will read and sign the appropriate post orders upon assuming a new post. Failure to do so could lead to disciplinary action taken up to and including termination.**

I.    **AREA OF RESPONSIBILITY**

The Officer assigned to this post is responsible for all areas within his/her range of vision. This will include all areas within sight and sound, including windows, emergency fire doors, corridors, the adjacent entrances to the main corridor and observation of the exterior of the facility grounds area.

II.   **SUPERVISION**

The Administrative Segregation/Special Management Unit (ADSEG/SMU) Officer reports directly to the Shift Supervisor.

A.    Shift Hours as scheduled per roster.
B.    Operational hours as scheduled per roster.
C.    Days off as scheduled per roster.

III.  **EQUIPMENT**

**The following equipment will be worn on the SEG/SMU Officer's duty belt:**

A.    Hand Held Radio
B.    Keys
C.    Handcuffs
D.    Tour Pipe Device
E.    Flashlight

IV.   **GENERAL DUTIES**

A.    Receive orders and instructions from the Shift Supervisor.
B.    Make written and oral reports as necessary.
C.    Receive information from the preceding ADSEG/SMU Officer.
D.    Relay all information pertinent to the operation of all other shifts and departments.
E.    Perform other duties as assigned.
F.    All staff is responsible for familiarization with facility policies. All policies are available at designated areas. Electronic access to local policies is also available to designated employees.
G.    All staff assigned to the segregation unit are prohibited from entering the control pod unless in the event of an emergency.
H.    Officer must remain vigilant in segregation performing 30 minute checks and all required counts.
I.    All segregation security video will be reviewed daily by the Assistant Facility Administrator Security to ensure compliance.

Page 1 of 11          Initials _____   Date _____



| | Adelanto Detention Facility | |
| --- | --- | --- |
| | POLICY AND PROCEDURE MANUAL | |
| | CHAPTER:  Post Orders | NUMBER: 10.3.7A – ADF |
| | TITLE:  Administrative Segregation Unit Officer | |

V.    **RESPONSIBILITIES**

A.  **Operating Procedures**

All detainees must be evaluated by a medical professional prior to being placed in Administrative Segregation/Special Management Unit. Administrative Segregation officer duty station will be located at the front of the unit. The adseg officer will be expected to remain at this post unless making required security rounds/counts or performing other required duties

Water flow to the cells in the Administrative Segregation/Special Management Unit may be restricted through the plumbing chases at the direction of the Shift Supervisor Documentation will be submitted to the Facility Administrator for any instance of water flow restrictions

Handcuff ports/food slots in doors will be kept shut unless they are actually in use

Detainees under administrative segregation will retain the same privileges offered to detainees in general population. To accommodate the different classification and safety needs of those detainees in administrative segregation, movement freely in and out of the cells may be restricted Active movement in and out of assigned cells will be scheduled by the facility to accommodate classification, custody group and safety needs.

Detainees will have access to showers, television, social interaction, telephones and law library terminals.

Razors will only be issued to detainees once secured in the shower The Officer will inspect the razor upon completion and prior to movement back to the cell to ensure the blade is intact. The issuance and return of ALL razors will be logged in the Razor log book

Staff will personally observe every detainee at least every thirty minutes on an irregular schedule and document the checks in their logbook as well as the 30 minute check form located near each occupied cell. Detainees who are violent or mentally disordered or who demonstrate unusual or bizarre behavior receive more frequent observation; suicidal detainees are under continuous observation until seen by a mental health professional. Subsequent supervision routines are in accordance with that ordered by the mental health professional. [4-ALDF-2A-52]

B.  **Property and Contraband Control**

Control of property and contraband will include a thorough search and documented inventory of all personal property brought by a detainee to the unit. Upon the detainees arrival to administrative segregation, and before placement into a cell, the detainee and property will thoroughly be searched in accordance with search procedures. Detainee cells will be routinely searched for contraband. All searches will be documented in the search log book.

Food service carts, cells, laundry carts and commissary bins will be thoroughly inspected and searched by staff to prevent the introduction of contraband. Searches will be logged in the unit search log.

Page 2 of 11            Initials _____ Date _____



| | Adelanto Detention Facility POLICY AND PROCEDURE MANUAL CHAPTER: Post Orders TITLE: Administrative Segregation Unit Officer | NUMBER: 10.3.7A – ADF |
|---|---|---|

Supervisory staff may remove otherwise permissible items from the cell of a detainee in administrative segregation unit status when those items are being used by the detainee to harm himself or herself or others, create a disturbance, or otherwise disrupt the orderly operation of the unit. Such instances will be documented in memo form or using a General Incident Report (GI) placed in the unit log and the individual detainee log sheet, and a copy of the memo or GI will be forwarded to the AFA-Security and the Facility Administrator. The AFA-Security must personally approve all such instances that last longer than twenty-four hours.

A secure property storage area is provided in the Intake Property Room. All property placed in storage will be thoroughly searched and inventoried, and a copy of the inventory sheet will be provided to the detainee.

C.     **Special Management Unit Programs**

Detainees in Administrative Segregation for protective custody may interact with other detainees in the same protective custody group.

Religious counseling and materials will be permitted in the unit, as provided by the Chaplain or approved religious representatives and approved by the AFA-Security.

Social and legal correspondence will be permitted, subject to available postage, per normal facility procedures.

Social and legal phone calls will be permitted to detainees in all categories, but may be limited to certain hours in accordance with staff availability.

Social and legal visiting will be permitted for all detainees in administrative segregation status provided they are not under visiting restrictions imposed by the facility administrator.

*Upon notification by the lobby officer of a detainee visit, the segregation Officer will verify the status of the detainee. The segregation Officer will inform the requesting officer of the status to include any documented precautions or restrictions. Detainees housed in segregation for protective custody shall not use the Visitation room during normal visitation hours; protective custody detainees may be restricted to non-contact visiting area to accommodate a visit.*

Commissary will be permitted for detainees in all categories of administrative segregation status provided they are not under commissary restrictions imposed by the facility administrator.

Administrative Segregation detainees will be offered at least two (2) hours of recreation or exercise per day, seven (7) days a week. Detainees will be offered time outside of their assigned cell for social interaction with other detainees in the same custody group as assigned by the facility schedule.

All participation or refusal to participate in recreation, showers, meals, staff interviews, visits or other major unit activities will be logged on the detainees' individual activity sheets.

Initials _____ Date _____

GEO000239 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility<br>POLICY AND PROCEDURE MANUAL<br><br>CHAPTER:  Post Orders<br><br>TITLE:  Administrative Segregation Unit Officer | NUMBER: 10.3.7A – ADF |
|---|---|---|

**D.**     **Food Service Operations**

Food service operations will be under the general oversight of the Food Services Manager and will include in-cell service of meals. All meals will be served with all detainees secured in their assigned cell.

Detainees in the administrative segregation unit shall receive three nutritionally adequate meals per day from the menu served to the general population.

Staff will ensure that food delivered to detainees is at the proper temperature.  Modification, reduction, or termination of meals will not be used as a behavioral control measure or for punishment.

Unit staff is responsible for ensuring the sanitary conditions of all utensils and trays.

Detainees who use food or other meal-related items to disrupt operations or threaten others will be served the same food as the general population.  However, Styrofoam or disposable trays and utensils may be substituted for the regular food tray

**E.**     **Other Unit Programs**

The following programs and services are in operation in the administrative segregation unit:

1.     Laundry and clothing exchange procedures will be equivalent to the services offered in the general population; special demeaning clothing will not be used.
2.     Detainees in administrative segregation status will be given the opportunity to watch television for one (1) hour a day as scheduled by the detainee's custody group.
3.     Sanitation in the unit will be maintained at a high level.  Detainees will be responsible for cleaning their own cells. Classification may approve specially screened detainees housed in the unit for duty as porters.

**F.**     **Other Considerations**

Special categories of detainees may require a locked status in administrative segregation based on safety and security concerns of the facility, and will be handled in on a case by case basis.  These detainees may be housed in the administrative segregation unit.  However the privileges permitted by these detainees may very due to different safety and security concerns displayed by the individual detainee actions. All modifications or restriction to a detainee's individual program or privileges will be documented and notification of such will be made to the Facility Administrator in writing.

Protective custody cases will require separation, at a minimum, from the detainees by whom they are threatened.  In some cases, separation from all other detainees will be required.  Records on these cases should reflect their status and custody group while in administrative segregation, and any other special precautions that must be taken.

Initials _____ Date _____

GEO000240 (INITIAL PRODUCTION 10/03/17)



| Adelanto Detention Facility<br>POLICY AND PROCEDURE MANUAL<br>CHAPTER: Post Orders<br>TITLE: Administrative Segregation Unit Officer | NUMBER: 10.3.7A – ADF |
| --- | --- |

In many instances, careful movement through the facility and in the admission/release process will be needed. When it is necessary in the judgment of the Shift Supervisor, two staff members will be used to escort for such moves. Two staff member escort will be required at all times for any detainee requiring restraints of any kind.

Detainees with medical and psychiatric aspects to their cases will be handled in accordance with the medical orders for those cases as long as those orders do not conflict with the facility security needs. In any case in which there appears to be such a conflict, the Shift Supervisor and, if necessary, the AFA-Security or Facility Administrator will resolve the issue with the Health Services Administrator.

A cut down tool is located in the control pod office hall way in a RED emergency box mounted to the wall. In the event of an emergency, break glass and remove cut down tool.

G.   **Emergency Plans**

It is imperative that you be familiar with all procedures, especially emergency procedures for the post on which you work. You are specifically referred to the following emergency plans:

Facility Evacuation Plan
Bomb Plan
Riot/Disturbance Control Plan
Escape Plan
Hostage Plan
Power Outage Plan

H.   **Security Checks**

Inspect the following items upon assuming the administrative segregation post and every 30 minutes thereafter, at irregular intervals, to assure that security is maintained and to assure sanitation standards are being maintained. This security check will be entered in the log book as well as the 30 minute check form located near each occupied cell. The "PIPE" device will be used to log checks by pressing the "PIPE" against the metal discs mount on _every_ cell door. Irregular 30-minute checks must begin within one-half hour from the time the last check was completed. (i.e., if the last check was completed at 0810 hours, the next check must begin before 0840 hours)

1. Determine that all detainees assigned to the administrative unit are present or accounted for at all times and that each detainee is safe. Detainees who are violent or mentally disordered or who demonstrate unusual or bizarre behavior shall receive more frequent observation; all detainee checks will be logged.
2. Check all doors, locks, windows, window frames and exterior walls to ensure that they are secure.
3. Check the sanitation of the administrative unit, direct cleaning as necessary and supervise the cleaning until it is properly completed.
4. Check for contraband in all areas of the administrative unit.
5. Note any equipment malfunctions and make appropriate notations in the log; prepare a Maintenance Work Order to report any malfunctions. Advise the on-duty Shift Supervisor in writing of the Maintenance Work Orders and malfunctions.

Initials ___   Date ___

GEO000241 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br>POLICY AND PROCEDURE MANUAL<br>CHAPTER: Post Orders<br>TITLE: Administrative Segregation Unit Officer | NUMBER: 10.3.7A – ADF |
| --- | --- | --- |

6.  Ensure no detainee is housed in the same cell longer than 30 days, on the 31st day, the detainee must be moved to another cell. This is done for security and physiological reasons, to deter and prevent any detainee from escaping or tampering with locks, windows etc.

I.   **Forms and Reviews**

1.  A permanent and accurate log will be maintained in the administrative segregation unit. The log will record all activities concerning the administrative segregation detainees (e.g., meals served, recreation, visitors, etc.)

    **The log will record the detainee's name, A-number, housing location, date admitted, reasons for admission, and the authorizing official. All releases from the unit will be similarly recorded.**

    **Any** individual who visits the administrative segregation unit, for **any** reason, their printed name, signature, title, purpose of the visit, time in and time out of the unit will be recorded in the visitor log book located in the entrance sally port of the unit. In addition, cross gender announcements will be made when any visitor, opposite of the gender of the detainees housed in administrative segregation, enters the unit. Cross gender announcements will be recorded in the unit log book

    Unusual activity or behavior of individual detainees will be recorded in the log, with a follow-up General Incident Report sent through the Facility Administrator to the detainee's file. Staff will notify the on shift supervisor and/or medical of the unusual activity or behavior

2.  The segregation activity sheet shall be prepared immediately upon the detainee's placement in the unit. The form will be completely filled out at the end of each shift and as the activity takes place. The detainee will have a custody group assigned to them once documentation has been reviewed by the Segregation Supervisor.

    The administrative segregation officer for each shift will record if the detainee was offered, meals, showers, recreation, and law library (such services will be offered in accordance with facility schedule). Documenting acceptance or refusal of such services offered to the detainee on the detainee's individual activity sheet. Any meal refusals or a declared hunger strike, by a detainee, must be reported to the shift supervisor immediately. Such refusals will also be documented in the unit log book and individual detainee activity sheet.

    The record will also be used to notate additional information, e.g., if the detainee has a medical condition, has exhibited suicidal/assaultive behavior, etc.

    The facility medical staff will be required to sign each individual record when he/she visits the detainee in segregation.

    A new record must be created when the current one is completed. The completed Special Housing Activity Sheets will be retained in the administrative segregation unit until the detainee is released or moved from the administrative segregation unit.

GEO000242 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | |
| | CHAPTER: Post Orders | NUMBER: 10.3.7A – ADF |
| | TITLE:  Administrative Segregation Unit Officer | |

A new record must be created when a detainee is moved from one classification to another, i.e. administrative segregation to disciplinary segregation. This will also occur disciplinary segregation to administrative segregation.

Upon release from the administrative segregation unit, the releasing Officer will ensure that the entire housing unit record relating to the detainee is attached to the Administrative Segregation Order and forwarded to the segregation supervisor who will review and archive the file.

J.   **High Security Cell Access**

High security cells will be specially marked with a notice to designate that an additional two-officer rule is in operation for the occupant. (A handheld video camera may be required for high security cell access). High security cells will only be opened with two additional officers present. Two officers will remain in the administrative segregation area during the out of cell time for that detainee.   High security designations will be made in selected cases.   Criteria for such a designation is:

1.   Demonstrated violent behavior toward staff;
2.   Demonstrated violent behavior toward other detainees;
3    Demonstrated or reported serious escape history or risk; and
4.   Other case-by-case circumstances which warrant the high security designation.

Staff may make a recommendation for such action through their supervisor   The Facility Administrator or designee will make the final decision.

K.   **Counts**

Ensure that the detainees are accounted for in a proper manner.  During all counts, all detainee activity stops.   All detainees are to report directly to their assigned cells.   The count is to be started when all detainees are returned to their cells and master control has announced begin count. Two Officers will be present during all counts; one taking the count and the other Officer will cover the count.   Then the counting Officer will cover the count and the other Officer will make a second count.   Both Officers will compare numbers by showing each Officer what they counted during that count.   Ensure you see living, breathing flesh when you count, do not assume that there is a detainee under the blankets or sheets.  The detainees are to remain in their assigned cells for the duration of the count. No activity will resume until Master Control has announced a clear count. Exceptions may be made under direction of the shift supervisor.

The counts Schedule is as follows:

0200, 0630, 1100, 1630 Face to Photo, 2100 and 2300 hour.

L.   **Detainee Movement**

1.   Control detainee movement and access into the administrative segregation by control of doors. Only those doors for a specific custody group of detainees will be open during scheduled times.  Tray slots will not be left open, unsecured or unattended. Movement in the administrative segregation unit will be strictly controlled and limited.

Page 7 of 11                    Initials ____   Date ____



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | |
| | CHAPTER: Post Orders | NUMBER: 10.3.7A – ADF |
| | TITLE: Administrative Segregation Unit Officer | |

2.  Be familiar with all regulations concerning the movement and conduct of detainees. Ensure different security custody groups do not mix.  Know what to do in emergencies.  When in doubt, call the Shift Supervisor.

3.  Placement of restraints on detainees of administrative segregation will not routinely be applied unless a safety and/or security concern is present. Handcuffs shall not be required for detainees who are out of their cell for cleaning purposes and supervised. Detainees being escorted to Intake to retrieve legal items must have the approval of the Shift Supervisor or higher authority.

    **ALL other detainees in the administrative segregation unit will be secured in their individual cells prior to any movement that involves a restrained detainee.**

4.  Movement of detainees out of the administrative segregation unit that are of a protective custody status will be called in to Master Control to ensure that the hallway is cleared of detainees prior to the movement.

5   Ensure that the following escort procedures are followed.

    a.   Always escort with the detainee(s) walking in front, never behind
    b.   Detainee(s) being escorted will be kept in clear sight.
    c.   Detainee(s) being escorted are not to stray or stop until destination is reached.
    d    The escort officer shall walk on the strong-arm side of the detainee(s).

6.  All detainee movement into and out of the unit will be recorded in the unit logbook.

7.  Whenever detainee porters are used they must remain in the area where they are housed and must be under direct supervision at all times. Except for emergencies no detainees will be allowed out of their cell between 10:00pm - 6:00am. In the event a cell door needs to be open after normal hour activities, the Shift Supervisor must be present.

**M.   Sanitation**

Cells will be cleaned and inspected daily and as detainees are transferred or released.  This will include cleaning the toilet/sink areas, mopping the floor and wiping down flat surfaces, inspecting windows, vents, doors locks, etc for evidence of tampering.  Shower facilities will remain in a sanitary condition at all times.  Direct and supervise cleaning as needed.

**N.   Control of Chemicals**

Responsible for ensuring that all cleaning materials are secured when not in use.  Cleaning materials will be dispensed according to caustic control directives.  The administrative segregation Officer will ensure that cleaning materials are returned to the Chemical Supply area, and the proper forms inventory forms are completed.  The administrative segregation officer will be responsible for all cleaning materials issued are returned, to include the proper documentation being completed.

Initials ___   Date ___

GEO000244 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility POLICY AND PROCEDURE MANUAL CHAPTER: Post Orders TITLE: Administrative Segregation Unit Officer | NUMBER: 10.3.7A – ADF |
|---|---|---|

O.   **Emergency Evacuation Procedures**

1. Notification to Master Control Center and Shift Supervisor.
2. Notification to all detainees and/or staff to prepare to evacuate. Emergency keys are located in Central Control.
3. Detainees are evacuated one at a time, if the situation allows, beginning with the one in most danger first.
4. Disciplinary and Administrative segregation detainees will exit the building, if safe to do so, via directives within the facility emergency evacuation plan.
5. All cells and areas are visually/physically checked by the SEG/SMU Officer to make sure that no one is left in the unit.
6. A count is taken as soon as possible to ensure that all detainees and staff are accounted for.

P.   Responsible for maintaining the post log and all applicable documentation associated with administrative segregation.

Q.   Responsible for maintaining detainee accountability for all detainees assigned to work. Ensure     that detainees report for work as scheduled and that the Detainee Account Clerk receives all   required documentation on a daily basis.

R.   Responsible for maintaining incentive pay sheet on a daily basis, and ensure that they are correct so detainees are given credit for hours worked.

S.   **Special Management Detainee:**

As it pertains to this section and policy, special management detainees are male detainees that are considered as "transgender" and have recognizable anatomical gender ambiguities. Special management detainees are further defined as: any male detainee that presents himself as a female and has undergone a physical transformation from male to female, whether or not the transformation is complete, will be treated as a special management detainee.   Any male detainee that has undergone any surgical procedures to reassign his gender is considered a special management detainee.   Any male detainee that has begun any type of hormonal treatment resulting in female like anatomical changes is considered a special management detainee.   Any male detainee that has undergone any of the above processes or procedures and still possesses male genitalia is considered a special management detainee.

1. All detainees that have been identified as special management according to the criteria provided in this policy will be housed as prescribed above and must be supervised, observed and monitored by **female staff only.**
2. All special management detainees will be kept separate from general population detainees regardless of gender when moved within the facility and must be escorted at all times by **female staff members.**
3. When transportation of special management detainees-as identified by the criteria of this policy-outside of the facility is necessary, each special management detainee will be treated as a separatee with at least one **female staff member** assigned to the transportation team.
4. Unit housing records will identify the detainee as Protective Custody/Special Management.

Initials _____   Date 6/4/55

GEO000245 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
| --- | --- | --- |
| | POLICY AND PROCEDURE MANUAL | |
| | CHAPTER:  Post Orders | NUMBER: 10.3.7A – ADF |
| | TITLE:  Administrative Segregation Unit Officer | |

Direct supervision of detainees in the housing units/posts is required. Officers will not leave their post without proper relief.

It is a violation of this policy to harass or otherwise verbally provoke a detainee or detainees into an assault on staff in order to justify the use of force against those detainees. Non-force forms of intentional cruel punishment, such as public humiliation, are also prohibited.

The information included in this specific Post Order may not include every situation the staff may face during the shift. The times listed are approximate and may be changed due to unforeseen circumstances. The goal of this Post Order is to provide guidance and instruction to the staff this post. In the event of an emergency or unscheduled events, which delays a specific operation, staff is to exercise initiative and good judgment in the performance of his or her duties.

Staff is required to be at the institution in the proper uniform in time to draw keys and equipment for the post, check in with the Shift Supervisor, receive pertinent information, and begin the assigned duties at the designated starting time

Page 10 of 11                    Initials _____    Date _____

GEO000246 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
| | POLICY AND PROCEDURE MANUAL | |
| | CHAPTER: Post Orders | NUMBER: 10.3.7A – ADF |
| | TITLE: Administrative Segregation Unit Officer | |

**THIS POLICY WILL BE REVIEWED AT LEAST ANNUALLY AND UPDATED AS NEEDED.**

QUESTIONS/SUGGESTIONS REGARDING THIS POST ORDER SHALL BE ADDRESSED TO THE AFA-SECURITY.

APPROVED: _____
Facility Administrator

EFFECTIVE: June 15, 2015

Reviewed & Revised:

Page 11 of 11                     Initials_____    Date 6/4/15

GEO000247 (INITIAL PRODUCTION 10/03/17)

# EXHIBIT 16

Geo's FMLA Policy

| | CORPORATE POLICY & PROCEDURE MANUAL | NUMBER: |
|---|---|---|
|  | | 3.4.2 |
| | CHAPTER:  Human Resources | SUPERSEDES: |
| | | 4/1/13 |
| | TITLE:  Unpaid Leave of Absence | EFFECTIVE: |
| | | 5/2/13 |

**POLICY**

It is the policy of The GEO Group, Inc. (GEO) that unpaid leaves of absence may be granted to employees for Family and Medical Leave Act leave, Military Service leave, Personal leave, and State Domestic Violence leave.

**GUIDELINES**

1. **FAMILY AND MEDICAL LEAVE ACT (FMLA)**

   **General Provisions:**

   Under the Family and Medical Leave Act (FMLA) employees who have been employed for at least 12 months (need not be consecutive months) and worked 1,250 hours during the preceding 12 month period are eligible for family and medical leave.

   **Reasons for Leave:**

   Eligible employees may be granted a total of twelve (12) weeks of family and medical leave during a twelve (12) month period or a total of twenty-six (26) weeks to care for a covered service member with a serious injury or illness during a twelve (12) month period.

   Leave may be granted to eligible employees for the following reasons:

   ▪ For incapacity due to pregnancy, prenatal medical care or child birth;

   ▪ To care for the employee's child after birth, or placement for adoption or foster care;

   ▪ To care for the employee's spouse, son or daughter or parent who has a serious health condition;

   ▪ For a serious health condition that makes the employee unable to perform the essential functions of their job;

|  | CORPORATE POLICY & PROCEDURE MANUAL | NUMBER: 3.4.2 |
|---|---|---|

- For a qualifying exigency arising out of the fact that the employee's spouse, son, daughter or parent is on active duty or call to active duty status in support of a contingency operation as a service member of the National Guard or Reserves; or

- Because the employee is the spouse, son, daughter, parent or the next of kin of a covered service member with a serious injury or illness.

The entitlement to leave for the birth or placement of a child for adoption or foster care will expire twelve (12) months from the date of the birth or placement.  Additionally, if both spouses employed by GEO, they are permitted to take only a combined total of twelve (12) weeks of leave for the birth or placement of the child or to care for a sick parent.

Employees in California taking leave under the California's Pregnancy Disability Leave (PDL) are entitled to maintain coverage under a group health plan for the entire duration of leave under PDL, which could be as long as four months over a 12-month period.

**Definitions:**

**A. Serious Health Conditions:** FMLA's definition of a serious health condition covers a variety of physical and mental conditions.  A serious health condition means an illness, injury, impairment or physical or mental condition that involves either:

- Inpatient care (overnight stay) in a hospital, hospice, or residential medical-care facility, including any period of incapacity (inability to work, attend school or perform other regular daily activities) or subsequent treatment in connection with such inpatient care; or

- Continuing treatment by a health care provider, which includes:

  1) A period of incapacity lasting more than three (3) consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also includes:

     - Treatment two or more times by or under the supervision of a health care provider (in person visits, the first within seven (7) days and both within thirty (30) days of the first day of in capacity); or

     - One treatment by a health care provider (in person visit within seven (7) days of the first day of incapacity) with a continuing regiment of treatment (prescription medication, physical therapy etc).



| CORPORATE POLICY & PROCEDURE MANUAL | NUMBER: 3.4.2 |
| --- | --- |

2) Any period of incapacity related to pregnancy of for prenatal care.  A visit to the health care provider is not necessary for each absence;

3) Any period of incapacity (or treatment) for a chronic serious health condition (asthma, diabetes, epilepsy, etc) which continues over an extended period of time, requires periodic visits (at least twice a year) to a health care provider, and may involve occasional episodes of incapacity.  A visit to a health care provider is not necessary for each absence;

4) A period of incapacity that is permanent or long term due to a condition for which treatment may not be effective (Alzheimer's, stroke, terminal diseases, etc.); or

5) Any absences to receive multiple treatments for restorative surgery for a condition that would likely result in a period of incapacity of more than three (3) days if not treated (chemotherapy, physical therapy etc).

Typically, common ailments requiring only brief treatment such as the common cold, flu, ear aches, upset stomach, headaches, etc., are not considered serious health conditions covered by FMLA.

An employee may also take leave "to care for" a spouse, child or parent with a serious health condition. The phrase "to care for" includes both physical and psychological care, and the arrangement of third-party care for the family member (i.e. nursing home or home care nurse).

An employee who is eligible for FMLA leave and sustains a work related injury that qualifies as a serious health condition should be placed on FMLA leave.  The employee may not be forced to return to work in a "light duty" position before the employee's FMLA entitlement has expired.  If the employee accepts the "light duty" position in lieu of FMLA leave, the employee retains their right to FMLA leave.

The Corporate Human Resources Department should be contacted prior to declining an employee's request for FMLA leave.

**B. Spouse, Child or Parent:**  A spouse is a husband or wife as defined or recognized under state law for purposes of marriage in the state where the employee resides, including common law marriage in states where it is recognized. A parent is a biological parent or an individual who stands or stood in the place of a parent to the employee. Persons who stand in place of a parent include those with day-to-day responsibility to care for and financially support a child.

A child is a biological, adopted or foster child, a stepchild, a legal ward, or a child of a person standing in the place of a parent, who is either under age 18, or age 18 or older



| | CORPORATE POLICY & PROCEDURE MANUAL | NUMBER:<br><br>3.4.2 |
|---|---|---|

and "incapable of self-care because of a mental or physical disability".

**C. Next of Kin:**  Next of kin of a covered service member means the nearest blood relative other than the covered service member's spouse, parent, son or daughter, in the following order of priority: blood relatives who have been granted legal custody of the covered service member by court decree or statutory provisions; brothers and sisters, grandparents; aunts and uncles, and first cousins.

<u>**Military Family Leave Entitlements:**</u>

Eligible employees with a spouse, son, daughter, or parent on active duty or call to active duty status in the National Guard or Reserves in support of a contingency operation may use leave entitlement to address certain qualifying exigencies.

Qualifying exigencies may include:

- Short-notice deployment (short-notice deployment is limited in time and duration to a period of seven calendar days beginning on the date a covered military member is notified of an impending call or order to active duty in support of a contingency operation);

- Military events and related activities;

- Childcare and school activities;

- Financial and legal arrangements;

- Counseling;

- Rest and recuperation (eligible employees may take up to five days of leave for each instance of rest and recuperation; or

- Post-deployment activities and additional activities.

GEO may require the employee to provide a copy of the covered military member's active duty orders or other military issued documentation that indicates the covered military member is on active duty or call to active duty status in support of a contingency operation, and the dates of a covered military member's active duty service.

<u>**Special Leave:**</u>



| | CORPORATE POLICY & PROCEDURE MANUAL | NUMBER: 3.4.2 |
| --- | --- | --- |

FMLA also includes a special leave entitlement that permits eligible employees to take up to 26 weeks of leave to care for a covered service member during **a single 12-month period**. A covered service member is a current member of the Armed Forces, including a member of the National Guard or Reserves, who has a serous injury or illness incurred in the line of duty on active duty that may render the service member medically unfit to perform their duties for which the service member is undergoing medical treatment, recuperation or therapy; or is in outpatient status; or is on the temporary disability retired list.

The "single 12-month period" in which an eligible employee may use up to 26 work weeks of leave begins on the first day the eligible employee takes FMLA leave to care for a covered service member and ends 12 months after that date. No more than 26 work weeks of leave may be taken within any single 12-month period.

**Duration of FMLA:**

An eligible employee is entitled to a combined total of 26 work weeks of leave for any FMLA-qualifying reason during the single 12 month period. For example, an eligible employee may take 16 weeks of FMLA leave to care for a covered service member and 10 weeks of FMLA leave to care for a different family member with a serious health condition. However, the employee may not take more than 12 weeks of FMLA leave to care for the family member during the single 12-month period. In the case of leave that qualifies as both leave to care for a covered service member and leave to care for a family member with a serious health condition during the single 12-month period, the facility HR Representative must designate such leave as service member leave first. Leave that qualifies as both cannot be designated and counted as both types of leave.

The FMLA provides that a husband and wife employed by the same employer are limited to a combined total of 26 work weeks of leave during the relevant 12-month period if the leave taken is to care for a covered service member.

***Note: All applicable leave of absences run concurrent with FMLA leave, if the leave qualifies as FMLA leave.***

2. **MILITARY SERVICE LEAVE**

In compliance with the Uniformed Services Employment and Reemployment Rights Act (USERRA), a military leave of absence will be granted to employees who are absent from work because of service in the U.S. Armed Forces, the various reserve units, or the National Guard.



| CORPORATE POLICY & PROCEDURE MANUAL | NUMBER: 3.4.2 |
|---|---|

**Reasons for Leave**:

"Service" means the performance of duty on a voluntary or involuntary basis and includes active duty, active duty for training, inactive duty training, full-time National Guard duty, or an absence to be examined for such service or training. In general, an employee may serve a total of five years on active duty without losing reemployment rights.  However, extensions for training, involuntary active duty and completion of initial period of obligated service beyond five years may be granted.

3.  **PERSONAL LEAVE**

An employee with a minimum of ninety (90) days of service may apply for a Personal Leave. Leaves of absence for personal reasons should be requested by the employee in writing and will require prior approval by the appropriate management personnel.

Personal leaves of absences will normally be limited to thirty (30) days or less.

4.  **STATE DOMESTIC VIOLENCE LEAVE**

Seven (7) states currently have legislation dealing with domestic violence leave (CA, CO, FL, HI, IL, ME and NC).  Following is an example of how it is administered in Florida.  For details on other states see your HR representative.

The law permits employees to take up to three working days of leave within a 12-month period, if the employee or a family or household member is the victim of domestic violence, and if the leave is sought for specific reasons related to the domestic violence as follows:

- To seek an injunction for protection against domestic violence, repeat violence, dating violence, or sexual violence;

- To obtain medical care or mental health counseling for the employee or a family or household member to address physical or psychological injuries resulting from the domestic violence;

- To obtain services from a victim-services organization;

- To make the employee's home secure from the domestic violence perpetrator or to seek new housing to escape the perpetrator; or

- To seek legal assistance to address issues arising from the domestic violence and to attend and prepare for court-related proceedings arising from the domestic violence.

GEO000623



| | CORPORATE POLICY & PROCEDURE MANUAL | NUMBER: 3.4.2 |
|---|---|---|

Leave under this law is considered <u>unpaid</u> to the extent it is not covered by paid leave. Pay for leave under this law must be reviewed with Corporate Human Resources on a case by case basis.

**Definitions:**

**A. Domestic violence:**  Any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death of one family or household member by another family or household member.

**B. Family or household member:**  Spouses, former spouses, persons related by blood or marriage, persons who are presently residing together as if a family or who have resided together in the past as if a family, and persons who are parents of a child in common regardless of whether they have been married. With the exception of persons who have a child in common, the family or household members must be currently residing or have in the past resided together in the same single dwelling unit.

**Eligibility:**

To be eligible for leave under this law, the employee must be employed for at least three (3) months.

APPROVED: _____
                   Corporate Policy Director

                   4/1/13
EFFECTIVE: _____

**POLICY OWNER:** Christopher Ryan, Director, Employee and Labor Relations

# EXHIBIT 17

## Special Management Unit Policy & Procedure



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

1. Prior to the detainee's placement in administrative segregation, the Facility Administrator or designee and the Classification Officer will review the case to determine whether administrative segregation is warranted.

2. A detainee may be placed in administrative segregation when the detainee's continued presence in the general population poses a threat to life, property, self, staff, or other detainees; for the secure or orderly operation of the facility; for medical reasons or other circumstances as set forth below.  Examples include, but are not limited to the following:

a. A detainee is awaiting an investigation or a hearing for a violation of facility rules.  Pre-disciplinary hearing detention should be ordered only as necessary to prevent further rules violation(s) or to protect the security and orderly operation of the facility.  It is not to be used as a punitive measure.  Time served in pre-hearing detention may be deducted from any time ordered by the Institutional Disciplinary Panel (IDP).

b. A detainee is a threat to the security of the facility.  The Facility Administrator may determine that a detainee's criminal record, past behavior at other institutions, behavior while in Immigration and Customs Enforcement (I.C.E.) detention, or other evidence is sufficient to warrant placing the detainee in administrative segregation. Copies of records supporting this action will be attached to the Administrative Segregation Order.

c. A detainee requires protection.  A detainee is admitted to Administration Close Custody status when there is documentation that protective custody is warranted and no reasonable alternatives are available. [4-ALDF-2A-46]   Administration Close Custody (ACC) may be initiated at the detainee's request or ordered to protect the detainee from harm.  Examples include:

   1) Victims of detainee assaults;
   2) Detainee informants/witnesses - detainees who provide information to the institution staff or any law enforcement agency concerning improper activities by others;
   3) Sexual predators;
   4) Detainees who have been pressured by other detainees to participate in sexual activity;
   5) Detainees who request PC;
   6) Detainees who refuse to enter the general population because of alleged intimidation from other detainees;
   7) Detainees who refuse to return to the general population, but who will not provide the reason for refusal;
   8) Detainees who appear to be in danger of bodily harm; or
   9) Detainees who seek protection, claiming to be former law enforcement officers or to have held sensitive law enforcement position, whether or not there is official information to verify the claim.

d. The IDP may order a detainee into administrative segregation following disciplinary segregation after determining that releasing the detainee into the general population would pose a threat to the security and orderly operation of the facility.  A detainee transferred from disciplinary segregation to administrative segregation shall enjoy the same privileges as all others in administrative segregation.

e. A medical professional ordering a detainee removed from the general population shall complete and sign the Administrative Segregation Order, unless the detainee will stay in the medical department's isolation/segregation ward.

f. A detainee is scheduled for release, removal, or transfer within 24 hours.  Such segregation may be ordered for security reasons or for the orderly operation of the facility.

Page 3 of 17

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br>CHAPTER:  Special Management Detainees<br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

### E. Administrative Segregation Order

A written order shall be completed and approved by a Shift Supervisor before a detainee is placed in administrative segregation, except when exigent circumstances make this impracticable.  In such cases, an order shall be prepared as soon as possible.  A copy of the order shall be given to the detainee within 24 hours, unless delivery would jeopardize the safety, security, or orderly operation of the facility.

1. The Facility Administrator or the Facility Administrator's designee shall complete the Administrative Segregation Order detailing the reasons for placing a detainee in administrative segregation, before actual placement.

2. In an emergency, the detainee's placement in administrative segregation may precede the paperwork, which the Facility Administrator will prepare as soon as possible.

3. All memoranda, medical reports, and other relevant documents shall be attached to the segregation order.

4. A copy of the completed Administrative Segregation Order will be given to the detainee within 24 hours of placement in administrative segregation, unless delivery would jeopardize the safe, secure, or orderly operation of the facility.

5. The order will remain on file with the Special Management Unit (SMU) until the detainee is returned to the general population.

6. When the detainee is released from the SMU, the releasing officer will indicate date and time of release on the Administrative Segregation Order, then forward the completed order to the Classification Officer for insertion into the detainee's detention file.

7. If the segregation is ordered for ACC purposes, the order shall state whether the detainee requested the segregation; also, whether the detainee requests a hearing concerning the segregation.

8. No Administrative Segregation Order is required for a detainee awaiting removal, release, or transfer within 24 hours.

### F. Review of Detainee Status in Administrative Segregation

1. The SMU review committee, chaired by the Programs Coordinator shall conduct a review within 72 hours of the detainee's placement in administrative segregation to determine whether segregation is still warranted.  The review shall include an interview with the detainee.  A written record shall be made of the decision and the justification.  The Administrative Segregation Review Form will be used for the review.  If the detainee has been segregated for the detainee's protection, but not at the detainee's request, the signature of the Facility Administrator or Assistant Facility Administrator is required on the Administrative Segregation Review Form to authorize continued detention.

2. The SMU review committee shall conduct the same type of review after the detainee has spent seven days in administrative segregation, and every week thereafter for the first two months and at least every 30 days thereafter.  The review shall include an interview with the detainee.  A written record shall be made of the decision and the justification.  [4-ALDF-2A-48, 2A-49].  A reviewing authority who concludes a detainee should be removed from Administrative Segregation, submits that recommendation to the Facility Administrator, or designee for approval.

GEO000202 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

3. A copy of the decision and justification for each review shall be given to the detainee, unless, in exceptional circumstances, this provision would jeopardize security.  The detainee shall be given an opportunity to appeal a review decision to a higher authority within the facility.

4. When a detainee has been held in Administrative Segregation for more than 30 days, the Facility Administrator notifies the Field Office Director, who notifies the ICE/DRO Deputy Assistant Director, Detention Management Division.
   Immigration and Customs Enforcement Assistant Director, Detention and Deportation shall be notified when any detainee has been in administrative detention for more than 60 days.  This notification shall be made through the on-site COTR.  The Region shall then consider whether transfer of the detainee to a facility where he/she may be placed in the general population would be appropriate.

5. If a detainee has been in administrative segregation for more than 30 days and objects to this status, the Facility Administrator shall review the case to determine whether that status should continue.  This review shall take into account the views of the detainee.  A written record shall be made of the decision and the justification.  A similar review shall take place every 30 days.

6. After seven consecutive days in administrative segregation, the detainee may exercise the right to appeal to the Facility Administrator the conclusions and recommendations of any review conducted.  The detainee may use any standard form of written communication, e.g., detainee request, to file the appeal.

G. **Conditions of Administrative Segregation (Basic Living Standards)**

1. Detainees in administrative segregation shall receive the same general privileges as detainees in the general population, consistent with available resources and security considerations.

2. The quarters used for segregation shall be well ventilated, adequately lit, appropriately heated and maintained in a sanitary condition at all times.  All cells must be equipped with beds.

3. The number of detainees confined to each cell or room in administrative segregation should not exceed the capacity for which it was designed.  The Facility Administrator may approve excess occupancy, on a temporary basis, if the Facility Administrator finds that the other basic living standards can still be maintained.

   Segregation housing units provide living conditions that approximate those of the general inmate population.  All exceptions are clearly documented.  Segregation cells permit the detainees assigned to them to converse with and be observed by staff members.  Cells used for segregation encompass at least 70 square feet of floor area of which 35 square feet is unencumbered.

4. Clothing and bedding shall be issued to detainees in segregation.  Detainees in segregation will be provided the same opportunity for the exchange of clothing, bedding and linen and for laundry as detainees in the general population.

   A detainee in segregation may wear normal institutional clothing and shall be furnished a mattress and bedding.  A detainee may not be segregated without clothing, mattress, blankets and pillow, except:

GEO000203 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

     a.   When prescribed by a medical professional for medical or psychiatric reasons.  If a detainee is so seriously disturbed that he/she is likely to destroy clothing or bedding, or to create a disturbance putting self or others at risk, the medical department shall be consulted immediately to determine whether a regimen of treatment and control may be instituted.

     b.   When the Shift Supervisor determines the detainee poses a threat to self or property.

Exceptions shall occur only when necessary for security purposes, as determined by the Facility Administrator.  Any exception, and the reasons, shall be recorded in the housing unit log.

5. Detainees in segregation shall receive three nutritionally adequate meals per day, from the menu served to the general population.  For security purposes, detainees in the SMU shall use disposable utensils only.  Under no circumstances shall food be used as punishment.

6. Segregated detainees shall have the opportunity to maintain a normal level of personal hygiene. Staff shall provide toilet tissue, a wash basin, tooth brush, shaving utensils, etc., as needed, and may issue retrievable kits of toilet articles.

Each segregated detainee shall have the opportunity to shower and shave at least daily, unless these procedures would present an undue security hazard.  This security hazard will be documented and signed by the Facility Administrator or the Facility Administrator's designee, indicating his/her review and approval.  Denial of showers will be temporary and situational, and will continue only as long as justified by the security threat.

7. Detainees in segregation will be provided, where practicable, barbering services.  Exceptions to this procedure may be permitted only when found necessary by the Facility Administrator.

8. Detainees in segregation will receive a minimum of two hours of exercise per day outside their cells, Seven days per week, unless security or safety considerations dictate otherwise.

These provisions shall be carried out, absent compelling security or safety reasons documented by the Facility Administrator.  A detainee's recreation privileges may be withheld temporarily after a severely disruptive incident.  Staff shall document by memorandum and logbook(s) notation every instance when a detainee is denied recreation.  The memorandum shall be placed in the detainee's detention file as well as forwarding a copy of the action to the Facility Administrator.

The case of a detainee denied recreation privileges will be reviewed at least once each week, as part of the reviews required for all detainees in the unit. The reviewer will document whether the detainee continues to pose a threat to self, others, or facility security and, if so, why.

Denial of recreation privileges for more than 15 days requires the concurrence of the Facility Administrator and H.S.A. The Facility Administrator will notify ICE when a detainee is denied recreation privileges for more than 15 days.

When space and resources are available, detainees in administrative segregation will be able to participate in TV viewing, board games, socializing and work details (e.g., a housekeeper in the SMU); and provided opportunities to spend time outside their cells, over and above recreation periods.

9. The Facility Administrator will issue guidelines concerning the property that detainees may retain in administrative segregation.

GEO000204 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

10. A reasonable amount of non-legal reading material will be available to detainees in segregation.  The detainee will also be permitted religious material, unless the religious item would pose a threat to security

11. Detainees in segregation will be permitted to retain a reasonable amount of personal legal material, unless this would create a security threat.  If personal legal material is placed in storage, the detainee shall be able to access the material promptly, upon request.

Detainees will be permitted to retain all personal legal material upon admittance to segregation, provided such material does not create a safety, security and/or sanitation hazard.  Detainees with a large amount of personal legal material may be required to place a portion of the material in their personal property, with access permitted during designated hours.  Requests to access such legal material should be met as soon as possible, but in no case longer than twenty-four (24) hours after receipt of the initial detainee request to retrieve documents, unless documented security concerns preclude action within this time-frame.

12. In addition to the direct supervision afforded by the unit officer, the Shift Supervisor shall see each segregated detainee daily, including weekends and holidays.

Unless medical attention is needed more frequently, each detainee in segregation receives a daily visit from a health care provider.  The presence of a health care provider in the Special Management Unit is announced and recorded.  The Health Services Administrator determines the frequency of physician visits to segregation units.  The medical visit shall be notated on the SMU Activity Sheet. The medical professional will question each detainee to identify medical problems or requests.  Any action taken will be documented in a separate logbook.

13. The facility shall follow the "Visitation" standard in setting visitation rules for detainees in segregation.  Ordinarily, a detainee retains visitation privileges while in segregation.

14. Detainees in ACC will not use the visitation room during normal visitation hours.  In addition, violent and disruptive detainees may be limited to non-contact visitation.  In extreme cases, visitation may be disallowed for a particular detainee where the visit would present an unreasonable security risk. Under no circumstances are detainees to participate in general visitation while in restraints.  If the detainee's behavior warrants restraints, the visit will not be granted.

General visitation may be restricted or disallowed when a detainee, while in a segregation status, is charged with, or has been found to have committed, a prohibited act having to do with visiting guidelines or has otherwise acted in a way that would reasonably indicate that he or she would be a threat to the orderliness or security of the visiting room.  Any restriction of visitation will be documented.

Detainees in segregation may not be denied legal visitation, but reasonable security precautions will be taken where necessary.  Legal service providers and assistants will be notified of any security concerns prior to the meeting.

15. Detainees in segregation shall have the same correspondence privileges as detainees in the general population.

16. The facility shall follow the "Telephone Access" standard that provides guidelines for detainees in segregation.  Detainees in administrative segregation will be permitted telephone access similar to

GEO000205 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

that provided to detainees in the general population, but in a manner consistent with the special security and safety requirements of detainees in these units.

17. Members of the clergy may visit detainees in segregation, unless the shift supervisor determines the visit presents a security risk or will interfere with the orderly operating of the facility.

Violent and uncooperative detainees may be temporarily denied access to religious services until such time as their behavior and attitude warrants.

18. Detainees housed in segregation shall have the same law library access as the general population, consistent with security, although the facility may establish a policy of upon-request-only access. The level of supervision will depend on the individual's behavior and attitude.

Leisure reading materials will be available as requested from the Library.  [4-ALDF-2A-63]

Detainees in locked housing shall have the same law library access as the general population, consistent with security, the facility will grant access upon-request-only.  The level of supervision will depend on the individual's behavior and attitude.   [4-ALDF-2A-62]

Any denial of access to the law library will supported by compelling security concerns, for the shortest period required for security, fully documented in the SMU housing logbook as well as notification to ICE every time law library access is denied.

Detainees in the SMU for protective custody will be required to use the law library separately or will have requested legal material delivered to them.

19. Detainees in segregation shall have the same correspondence privileges as detainees in the general population (see the "Correspondence and Other Mail" standard).

H.  **Placement in Disciplinary Segregation**

To provide detainees in the general population a safe and orderly living environment, facility authorities shall discipline anyone whose behavior does not comply with facility rules and regulations.  This may involve temporary confinement apart from the general population, in the Special Management Unit (SMU).  A detainee may be placed in Disciplinary Segregation only after a finding by the Institution Disciplinary Panel (IDP) or equivalent that the detainee is guilty of a high level prohibited act or rule violation.  [4-ALDF-2A-47]

The disciplinary committee may order placement in disciplinary segregation only when alternative dispositions would inadequately regulate the detainee's behavior.

A maximum sanction of 60 days in disciplinary segregation shall apply to violations associated with a single incident.  After the first 30 days, the Facility Administrator shall send a written justification to the Assistant District Director for Detention and Deportation (ADD/DDP).  Considering the grounds for the Facility Administrator's disciplinary action, the ADD/DDP may decide to transfer the detainee to a facility where security is such that he/she could be placed in the general population.

GEO000206 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br><br>CHAPTER:  Special Management Detainees<br><br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

I.  **Disciplinary Segregation Order**

A written order shall be completed and signed by the Disciplinary Hearing Officer before a detainee is placed in disciplinary segregation.  A copy of the order shall be given to the detainee within 24 hours, unless delivery would jeopardize safety, security, or the orderly operation of the facility.

1.  The Disciplinary Hearing Officer shall prepare the Disciplinary Segregation Order, detailing the reasons for placing a detainee in disciplinary segregation, before actual placement.  All relevant documentation must be attached to the order.

2.  A copy of the completed Disciplinary Segregation Order will be given to the detainee within 24 hours of placement in disciplinary segregation, unless delivery would jeopardize the safe, secure, or orderly operation of the facility.

3.  The order will be maintained on file with the Special Management Unit (SMU) until the detainee is released from the SMU.

4.  When the detainee is released from the SMU, the releasing officer will indicate date and time of release on the Disciplinary Segregation Order, then forward the completed order to Segregation Supervisor overseeing SMU.

J.  **Review of Detainee Status in Disciplinary Segregation**

1.  The SMU review committee shall review the status of a detainee in disciplinary segregation within seventy-two hours of admission, every seven days for the first two months, and every thirty days thereafter to determine whether the detainee:

    a.  abides by all rules and regulations; and,

    b.  is provided showers, meals, recreation, and other basic living standards, weekly review(s) will include an interview with the detainee.  The SDEO shall document his/her findings after every review, by completing a Disciplinary Segregation Review Form (I-887).

2.  The SMU review committee may recommend the detainee's early release from the SMU upon finding that time in disciplinary segregation is no longer necessary to regulate the detainee's behavior.

3.  An early-release recommendation must have the Facility Administrator's approval before the detainee can be returned to the general population.

4.  The committee may shorten, but not extend, the original sanction.

5.  All review documents shall be placed in the detainee's detention file.

6.  Provided institutional security is not compromised, the detainee shall receive at each formal review, a written copy of the reviewing officer's decision and the basis for this finding.

GEO000207 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br><br>CHAPTER:  Special Management Detainees<br><br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

**K.   Conditions of Disciplinary Segregation (Basic Living Standards)**

Disciplinary segregation privileges shall be defined by the imposed sanction(s) of the disciplinary official. Detainees placed in disciplinary segregation may have all personal property, to include commissary (excluding hygiene items), impounded and stored by the facility for the duration of the disciplinary sanction. Detainees shall retain all facility issued property and hygiene items as defined on page seven (7) of the Detainee Handbook. Detainees shall not be denied the ability to retain in their possession; personal mail received after the imposed disciplinary sanctions, legal mail, legal materials, regions items deemed necessary by a religious authority and medical devices and/or equipment deemed necessary by a medical provider, unless such items pose a safety and/or security concern.

1.   The conditions of confinement will depend on the amount of supervision required to control the individual and safeguard other detainees and staff.

2.   Detainees housed in disciplinary segregation generally have fewer privileges than those housed in administrative segregation.  These detainees are subject to more stringent personal property control, restricted reading material, commissary privileges, etc.

3.   The Facility Administrator shall maintain the same living levels of decency and humane treatment for each detainee in disciplinary segregation, regardless of the purpose for which the detainee has been segregated.  When different treatment is required for security concerns presented by an individual detainee, staff shall prepare written documentation justifying this action.  The Facility Administrator shall sign this document, indicating his/her approval.

4.   Detainees in disciplinary segregation will be provided the same opportunity for the exchange of clothing, bedding, and linen, and for laundry as detainees in the general population.  If, for security purposes, the Facility Administrator authorizes an exception, the exception, and its justification, shall be documented in the SMU log.

5.   A detainee may be deprived of clothing, mattress, blanket, pillow, etc., for medical or psychiatric reasons only, as determined by the medical officer.

   If a detainee is so seriously disturbed that he/she is likely to destroy clothing or bedding or create a disturbance risking harm to self or others, the medical department shall be notified immediately and a regimen of treatment and control shall be instituted by the Health Services Administrator.

6.   As a rule, detainees in disciplinary segregation will have significantly fewer items of personal property than other detainees.  With the exception of items of personal hygiene, detainees in disciplinary segregation may lose the privilege of making commissary purchases.

7.   Access to legal and non-legal reading material shall be as follows:

   a.   The officer providing library services provide segregated detainee's leisure library access upon request only.  This request shall be made using the Detainee Request Form.

   b.   When developing the schedule for law library access, the Facility Administrator will set aside blocks of time for the detainees in disciplinary segregation.  These detainees will be afforded legal access comparable to, but not the same as, that of the general population.  Security constraints may impose limits on law-library access.

GEO000208 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

- Violent and/or uncooperative detainees may be temporarily denied access to the law library, until such time as their behavior and attitude warrants resumed access.

- On a case-by-case basis, legal material may be brought to individuals in disciplinary segregation. Denial of access to the law library must be justified by compelling security concerns, be fully documented in the SMU logbook, and last no longer than necessary for security purposes.

- Any denial of access to the law library will supported by compelling security concerns, for the shortest period required for security, fully documented in the SMU housing logbook as well as notification to ICE every time law library access is denied.

8. In accordance with the "Telephone Access" standard, detainees in disciplinary segregation shall be restricted to telephone calls for the following purposes:  [4-ALDF-2A-65]

   a. calls relating to the detainee's immigration case or other legal matters, including consultation calls;
   b. calls to consular/embassy officials; and
   c. family emergencies, as determined by the Facility Administrator.

9. Segregated detainees shall be allowed visits by members of the clergy, upon request, unless the supervisor determines the visit presents a security risk or will interfere with the orderly operation of the facility.

   a. The clergy member shall be told the detainees present state of behavior.
   b. The clergy member must agree to meet the segregated detainee.
   c. Violent and uncooperative detainees may be temporarily denied access to religious services until such time as their behavior and attitude warrants.

10. Detainees in segregation will receive a minimum of one hour of exercise per day outside their cells, five days per week, unless security or safety considerations dictate otherwise.

   These provisions shall be carried out, absent compelling security or safety reasons documented by the Facility Administrator.  A detainee's recreation privileges may be withheld temporarily after a severely disruptive incident.  Staff shall document by memorandum and logbook(s) notation every instance when a detainee is denied recreation.  The memorandum shall be placed in the detainee's detention file as well as forwarding a copy of the action to the Facility Administrator.

   The case of a detainee denied recreation privileges will be reviewed at least once each week, as part of the reviews required for all detainees in the unit. The reviewer will document whether the detainee continues to pose a threat to self, others, or facility security and, if so, why.

   Denial of recreation privileges for more than 15 days requires the concurrence of the Facility Administrator and H.S.A. The Facility Administrator will notify ICE when a detainee is denied recreation privileges for more than 15 days.

GEO000209 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

L.  **Forms and Reviews**

1.  A permanent log will be maintained in the SMU.  The log will record all activities concerning the SMU detainees, e.g., meals served, recreation, visitors, etc.

    **The SMU log will record the detainee's name, A-number, housing location, date admitted, type of infraction or reason for admission, tentative release date (for detainees in disciplinary segregation), special medical or psychiatric problems or needs and the authorizing official. All releases from the unit will be similarly recorded.**

    All persons visiting the unit will sign a separate log, giving time and date of visit.  Unusual activity or behavior of individual detainees will be recorded in the log, with a follow-up memorandum sent through the Facility Administrator to the detainee's file.

2.  The SMU/Segregation Activity Sheet shall be prepared immediately upon the detainee's placement in the SMU.  The form will be filled out at the end of each shift or as the activity takes place.

    The special housing officer for each shift will record whether the detainee ate, showered, exercised and took any medication.  The record will also be used to notate additional information, e.g., if the detainee has a medical condition, has exhibited suicidal/assaultive behavior, etc.

    The facility medical staff will be required to sign each individual record when he/she visits the detainee in segregation.

    A new record must be created for each week the detainee is in segregation or when the reason for placement changes such as Administrative Segregation to Disciplinary.  The completed Special Housing Activity Sheets will be retained in the SMU until the detainee is released from SMU.

    Upon release from the SMU, the releasing officer will ensure that the entire housing unit record relating to the detainee is attached to the Segregation Order and forwarded to the Classification Officer for inclusion in the detainee's detention file.

M.  **Staffing**

1.  The Assistant Facility Administrator of Security will select officers for assignment to the SMU on a rotational basis for their experience, judgment, and ability to manage detainees professionally.  Supervision of these staff and unit operations will be a priority for management personnel, as indicated by the specified frequency of supervisory visits to the unit.  Staff assigned to work in the special management unit is selected based on criteria that include:  completion of probationary period, experience and suitability for this population.  Staff is closely supervised with documented quarterly reviews conducted by the shift supervisor.  There are provisions for rotation to other duties.

2.  All staff assigned to SEG/SMU will receive training that includes information regarding the type of detainees housed in the unit; a course in dealing with detainees typically retained in segregated status; information on the rules governing SMU operation; special instructive discussions relative to safety and security precautions unique to the SMU area; and a basic course covering Adelanto Detention Facility policies governing discipline and the use of segregation.

GEO000210 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br><br>CHAPTER:  Special Management Detainees<br><br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
| --- | --- | --- |

N. **High Security Cell Access**

High security cells will be specially marked with a notice to designate that a two-officer rule is in operation for the occupant.  That cell will only be opened with two officers present.  Two officers will remain in the SMU area during the out of cell time for that detainee.  High security designations will be made in selected cases.  Criteria for such a designation is:

1. Demonstrated violent behavior toward staff;
2. Demonstrated violent behavior toward other detainees;
3. Demonstrated or reported serious escape history or risk; and
4. Other case-by-case circumstances which warrant the high security designation.

Staff may make a recommendation for such action through their supervisor.  The Facility Administrator or the Facility Administrators designee will make the final decision.

O. **Property and Contraband Control**

Control of property and contraband will include a thorough search and inventory of all personal property brought by a detainee to the unit.

Disciplinary segregation privileges shall be defined by the imposed sanction(s) of the disciplinary official. Detainees placed in disciplinary segregation may have all personal property, to include commissary (excluding hygiene items), impounded and stored by the facility for the duration of the disciplinary sanction(s).  Detainees may also be precluded from ordering commissary for the duration of the disciplinary sanction if sanctioned by the disciplinary official. A secure property storage area is provided in the disciplinary housing unit. All property placed in storage will be thoroughly searched and inventoried, and a copy of the inventory sheet will be provided to the detainee.

Food service carts, laundry carts, tool carts and commissary bins will be thoroughly inspected and searched by staff to prevent the introduction of contraband.  All tools must be inventoried upon entering and exiting SMU.

Supervisory staff may remove otherwise permissible items from the cell of a detainee in locked unit status when those items are being used by the detainee to harm himself or herself or others, create a disturbance, or otherwise disrupt the orderly operation of the unit.  Such instances will be documented in memo form or using a General Incident Report (GI), placed in the unit log and the individual detainee log sheet, and a copy of the memo or GI will be forwarded to the Captain and the Facility Administrator.  The Captain must personally approve all such instances that last longer than twenty-four hours.

GEO000211 (INITIAL PRODUCTION 10/03/17)

| | Adelanto Detention Facility | |
|---|---|---|
|  | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

P.   Special Management Unit Programs

The programs and activities named below will be available to detainees in the locked housing unit providing documented security or safety considerations do not prevent delivery of such programs for limited periods.

Isolated recreation and exercise will be provided to all detainees in the locked housing unit no fewer than five times each week for one hour.  Where cover is not provided to mitigate inclement weather, detainees are provided weather-appropriate equipment and attire.  Detainees may be denied access to recreation on a determination, documenting in writing, that the individual involved presents a serious danger to themselves or others or to institutional security.  [4-ALDF-2A-64]

Showers will be offered daily.  Detainees will be permitted to shave at this time. Detainees receive laundry, barbering, and hair care services, and are issued and exchange clothing, bedding, and linen on the same basis as detainees in the general population.  Exceptions are permitted only when determined to be necessary.  Any exception is recorded in the unit log and justified in writing.  [4-ALDF-2A-57]

Crisis counseling and other social services will be provided to detainees on an in-cell basis.  Detainees requiring private counseling may be moved in restraints to a room where the counseling staff member will remain under the observation of a second staff member, who may be outside the room.  The detainee will remain in restraints.

Detainees in locked housing are provided prescribed medication, clothing that is not degrading and access to basic personal items for use in their cells unless there is imminent danger that a detainee or any other detainee(s) will destroy an item or induce self-injury.  [4-ALDF-2A-56]

Religious counseling and materials will be permitted in the unit, as provided by approved religious representatives and approved by the Assistant Facility Administrator of Security.  The Assistant Facility Administrator of Security in conjunction with the Programs Coordinator will determine which religious volunteers, if any, will be permitted to visit the unit and under whose supervision.

Detainees in locked housing can write and receive letters on the same basis as detainees in the general population.  [4-ALDF-2A-60]

Social and legal visiting will be permitted for all detainees in locked status provided they are not under visiting restrictions imposed as part of disciplinary actions.  Detainees in locked status may visit in the general non-contact visiting area.  [4-ALDF-2A-61]

All participation or refusal to participate in recreation, showers, meals, staff interviews, visits or other major unit activities will be logged in the detainees' individual activity sheet.

GEO000212 (INITIAL PRODUCTION 10/03/17)



| | Adelanto Detention Facility | |
|---|---|---|
| | POLICY AND PROCEDURE MANUAL | NUMBER: 10.2.11-ADF |
| | CHAPTER:  Special Management Detainees | |
| | TITLE:  Special Management Unit Operations | |

Q.   **Food Service Operations**

Food service operations will be under the general oversight of the Food Services Administrator and will include in-cell service of meals that are the same as those served to the general population.

No detainee will be used to serve food in the unit.

Staff will ensure that food delivered to detainees is at the proper temperature.  Modification, reduction, or termination of meals will not be used as a behavioral control measure or for punishment.

Unit staff is responsible for ensuring the sanitary conditions of all utensils and trays.

Detainees who use food or other meal-related items to disrupt operations or threaten others will be served the same food as the general population.  However, Styrofoam or disposable trays may be substituted for the regular food tray.  [4-ALDF-2A-59]

R.   **Other Unit Programs**

The following programs and services are in operation in the locked unit:

1.   Detainees may participate in such educational programs as can be provided within the confines of the unit, consistent with the security needs of the unit
2.   In-cell programs such as leisure reading, self-study courses, and other activities will be made available to detainees in non-disciplinary status; detainees in disciplinary status may be limited in the number of reading items permitted in their possession at any one time.
3.   Sanitation in the unit will be maintained at a high level.  Detainees will be responsible for cleaning their own cells.  The Assistant Facility Administrator of Security, on unit staff's recommendation, may approve specially screened detainees housed in the unit for duty as orderlies.

S.   **Tours**

Staff mobility and supervisory visibility in locked units are important factors in ensuring smooth operations.

Detainees in segregation receive daily visits from the Chief of Security (Captain) members of the program staff on request, and a qualified health care daily unless medical attention is needed more frequently.  Detainees requiring medication will be provided that medication as prescribed [4-ALDF-2A-53]

The Food Services Administrator will observe the service of meals once a week in locked units.  The Chaplain, classification, or social work staff and other program staff will visit all detainees in locked units as often as necessary to meet the needs of those cases, but in any event no fewer than once a week.

The Shift Supervisor will visit the locked units twice each shift.
A designated medical staff member will visit the unit at least daily and will be available as needed for other required care.  Detainees requiring medication will be provided that medication as prescribed.

The Facility Administrator and Department Heads will visit detainees confined to the segregation unit weekly.

GEO000213 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br>CHAPTER:  Special Management Detainees<br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

T.  **Other Considerations**

Protective custody cases will require separation, at a minimum, from the detainees by whom they are threatened.  In most cases, separation from all other detainees will be required.  Records on these cases should reflect their status, any known separates, and any other special precautions that must be taken.

In many instances, careful movement through the facility and in the admission/release process will be needed.  When it is necessary in the judgment of the Assistant Facility Administrator of Security; two staff members will be used to escort protective custody cases for such moves.

Detainees with medical and psychiatric aspects to their cases will be handled in accordance with the medical orders for those cases as long as those orders do not conflict with the facility's security needs.  In any case in which there appears to be such a conflict, the Shift Supervisor and, if necessary, the Assistant Facility Administrator or Facility Administrator, will resolve the issue with the Health Services Administrator.

U.  **Case Reviews**

The SMU review committee will review each locked unit detainee's case within seventy-two hours of admission, every seven days for the first two months, and at least every thirty days thereafter.  [4-ALDF-2A-48]

GEO000214 (INITIAL PRODUCTION 10/03/17)

|  | Adelanto Detention Facility<br><br>POLICY AND PROCEDURE MANUAL<br><br>CHAPTER:  Special Management Detainees<br><br>TITLE:  Special Management Unit Operations | NUMBER: 10.2.11-ADF |
|---|---|---|

**THIS POLICY WILL BE REVIEWED AT LEAST ANNUALLY AND UPDATED AS NEEDED.**

**Gray highlighted areas are the changes made to the current revision.**

QUESTIONS/SUGGESTIONS REGARDING THIS POLICY SHALL BE ADDRESSED TO THE ASSISTANT
FACILITY ADMINISTRATOR OF SECURITY.

APPROVED: _____
                Facility Administrator

EFFECTIVE:  February 16, 2015

Reviewed & Revised: October 2011
Reviewed & Revised: November 2011
Reviewed & Revised: February 2012
Reviewed & Revised: June 2012
Reviewed: July 2013
Reviewed: November 2014
Reviewed & Revised: February 2015

GEO000215 (INITIAL PRODUCTION 10/03/17)

# EXHIBIT 18

Staffing Plan after Separation

6/16/2015   6:11 PM

| | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| 1 | The GEO Group, Inc. | | | | | | |
| 2 | Adelanto California | | | | | | |
| 3 | 1940 Beds for ICE - Adelanto Processing Center East & West & Expand West | | | | | | |
| 4 | STAFFING PLAN * | | | | | | |
| 109 | **Programs** | | | | | | |
| 110 | | | | | | | |
| 111 | | NonShift | Shift 1 | Shift 2 | Shift 3 | Relief | FTE |
| 112 | | | | | | | |
| 113 | Records Supervisor | 1.00 | | | | 1.00 | 1.00 |
| 114 | Chaplain | 1.00 | | | | 1.00 | 1.00 |
| 115 | Classification Officer - Delete 1.0 | 5.00 | | | | 1.00 | 5.00 |
| 116 | Programs Clerk | 1.00 | | | | 1.00 | 1.00 |
| 117 | Library Technician | 2.00 | | | | 1.00 | 2.00 |
| 118 | Detainee Records Clerk | 4.00 | | | | 1.00 | 4.00 |
| 119 | Recreation Specialist | 2.00 | | | | 1.00 | 2.00 |
| 120 | | | | | | | |
| 121 | Sub Total | 16.00 | 0.00 | 0.00 | 0.00 | | 16.00 |
| 122 | | | | | | | |
| 123 | #REF! | | | | | | |
| 124 | **Security Supervisors** | | | | | | |
| 125 | | | | | | | |
| 126 | | NonShift | Shift 1 | Shift 2 | Shift 3 | Relief | FTE |
| 127 | AFA Security - Added 1 | 2.00 | | | | 1.00 | 2.00 |
| 128 | Chief of Security | 1.00 | | | | 1.00 | 1.00 |
| 129 | Captain - NEW | 2.00 | | | | 1.00 | 2.00 |
| 130 | Shift Supervisor / Lieutenant | | 2.00 | 2.00 | 2.00 | 1.67 | 10.00 |
| 131 | Admin / Segregation Lieutenant - NEW | 1.00 | | | | 1.00 | 1.00 |
| 132 | Intake Lieutenant | 2.00 | | | | 1.00 | 2.00 |
| 133 | Armory / Lockshop Sergeant | 1.00 | | | | 1.00 | 1.00 |
| 134 | Assist. Shift Super. / Sgt | | 2.00 | 2.00 | 2.00 | 1.67 | 10.00 |
| 135 | Booking Clerk | 2.00 | | | | 1.00 | 2.00 |
| 136 | Security Clerk | 2.00 | | | | 1.00 | 2.00 |
| 137 | | | | | | | |
| 138 | | | | | | | |
| 139 | | | | | | | |
| 140 | Sub-Total | 13.00 | 4.00 | 4.00 | 4.00 | | 33.00 |
| 141 | | | | | | | |
| 142 | #REF! | | | | | | |
| 143 | **Detention Officers (CBA)** | | | | | | |
| 144 | | | | | | | |
| 145 | | NonShift | Shift 1 | Shift 2 | Shift 3 | Relief | FTE |
| 146 | Medical Transportation Officer | 6.00 | | | | 1.60 | 9.60 |
| 147 | Bailiff - Deleted 1.0 | 5.00 | | | | 1.20 | 6.00 |
| 148 | Court Hall / Holding Cell Off - NEW | 2.00 | | | | 1.20 | 2.40 |
| 149 | Med Holding Observation Cell Officers - NEW | | 2.00 | 2.00 | 2.00 | 1.20 | 7.20 |
| 150 | Central Control Room Officer | | 4.00 | 4.00 | 4.00 | 1.60 | 19.20 |
| 151 | Visitation Officer - Added 1 | 5.00 | | | | 1.60 | 8.00 |
| 152 | (East) Housing A Control   HV1 | 1.00 | 1.00 | 1.00 | | 1.60 | 4.80 |
| 153 | (East) Housing A - Added 1.0 per shift  HV1 | 4.00 | 4.00 | 4.00 | | 1.60 | 19.20 |
| 154 | (East) Housing B Control - Delete 3rd shift  HV2 | 1.00 | 1.00 | | | 1.60 | 3.20 |
| 155 | (East) Housing B            HV2 | 3.00 | 3.00 | 3.00 | | 1.60 | 14.40 |
| 156 | (West) Housing C Control  HV2 | 1.00 | 1.00 | 1.00 | | 1.60 | 4.80 |
| 157 | (West) Housing C            HV2 | 4.00 | 4.00 | 4.00 | | 1.60 | 19.20 |
| 158 | (West) Housing D Control  HV3 | 1.00 | 1.00 | 1.00 | | 1.60 | 4.80 |
| 159 | (West) Housing D            HV3 | 4.00 | 4.00 | 4.00 | | 1.60 | 19.20 |
| 160 | (NEW WEST EXP) Housing E Control - NEW  HV4 | 1.00 | 1.00 | 1.00 | | 1.60 | 4.80 |

Page 3 of 4

GEO000142 (INITIAL PRODUCTION 10/03/17)

6/16/2015   6:11 PM

| | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| 1 | The GEO Group, Inc. | | | | | | |
| 2 | Adelanto California | | | | | | |
| 3 | 1940 Beds for ICE - Adelanto Processing Center East & West & Expand West | | | | | | |
| 4 | STAFFING PLAN * | | | | | | |
| 161 | (NEW WEST EXP) Housing E - NEW HU4 | | 4.00 | 4.00 | 4.00 | 1.60 | 19.20 |
| 162 | (NEW WEST EXP) Housing F Control - NEW HU5 | | 1.00 | 1.00 | 1.00 | 1.60 | 4.80 |
| 163 | (NEW WEST EXP) Housing F - NEW HU5 | | 4.00 | 4.00 | 4.00 | 1.60 | 19.20 |
| 164 | Recreation Yard - Added 1.0 shift 1; 1.0 shift 2 | | 4.00 | 4.00 | | 1.60 | 12.80 |
| 165 | Intake / Release | | 5.00 | 5.00 | 4.00 | 1.60 | 22.40 |
| 166 | Utility / Escort - Added 1.0 per shift Utility 1 | | 6.00 | 5.00 | 4.00 | 1.60 | 24.00 |
| 167 | Perimeter Patrol | | 2.00 | 2.00 | 2.00 | 1.60 | 9.60 |
| 168 | Medical - Deleted shifts 1-2-3 | 1.00 | | | | 1.60 | 1.60 |
| 169 | Segregation Control - NEW | | 1.00 | 1.00 | 1.00 | 1.60 | 4.80 |
| 170 | Segregation/Protective Custody | | 4.00 | 3.00 | 2.00 | 1.60 | 14.40 |
| 171 | Lobby | | 2.00 | 2.00 | | 1.60 | 6.40 |
| 172 | Food Service (East & West) - NEW | | 2.00 | 2.00 | | 1.60 | 6.40 |
| 173 | Law Library (East & West) - NEW | | 2.00 | | | 1.60 | 3.20 |
| 174 | Property Officer - Deleted 1.0 | 3.00 | | | | 1.60 | 4.80 |
| 175 | Laundry - Deleted 1.0 | 1.00 | | | | 1.60 | 1.60 |
| 176 | | | | | | | |
| 177 | | | | | | | |
| 178 | | | | | | | |
| 179 | Sub-Total | 18.00 | 68.00 | 59.00 | 47.00 | | 302.00 |
| 180 | | | | | | | |
| 181 | #REF! | | | | | | |
| 182 | SUMMARY * | | | | | | |
| 183 | | | | | | | |
| 184 | | NonShift | Shift 1 | Shift 2 | Shift 3 | Relief | FTE |
| 185 | | | | | | | |
| 186 | Executive Office | 10.00 | 0.00 | 0.00 | 0.00 | | 10.00 |
| 187 | Business / Support | 23.00 | 0.00 | 0.00 | 0.00 | | 23.00 |
| 188 | Maintenance | 8.00 | 0.00 | 0.00 | 0.00 | | 8.00 |
| 189 | Health Care | 35.00 | 11.00 | 9.00 | 8.00 | | 67.00 |
| 190 | Programs | 16.00 | 0.00 | 0.00 | 0.00 | | 16.00 |
| 191 | Food Service | 2.00 | 9.00 | 7.00 | 0.00 | | 27.00 |
| 192 | Security Supervisors | 13.00 | 4.00 | 4.00 | 4.00 | | 33.00 |
| 193 | Detention Officers (CBA) | 18.00 | 68.00 | 59.00 | 47.00 | | 302.00 |
| 194 | | | | | | | |
| 195 | TOTAL STAFF | 125.00 | 92.00 | 79.00 | 59.00 | | 486.00 |

GEO000143 (INITIAL PRODUCTION 10/03/17)

# EXHIBIT 19

Santiago Memo to Lieutenant Anderson



**Corrections & Detention ®**

Adelanto Detention Facility
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA  92301

# MEMORANDUM

Date: 8-5-15

To: Lt. Anderson

cc:

From: D/O Santiago, E/

RE:

On 8-5-15, shortly before the 1630 count, I placed D/T Irias [Redacted] into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by kitchen staff and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/T Irias had not finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve eachother on 2ND watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainee's hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to disciplinary segregation side to relieve the 2 officers working disciplinary segregation, one officer at a time, leaving me to complete the

# EXHIBIT 20

Sgt. Hutchinson Memo



**Corrections & Detention ®**

# MEMORANDUM

**Adelanto Detention Facility**
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA 92301

Date:  8-5-15

To: LT. Anderson

cc: CAPT. McCusker

From:  SGT. Hutchinson

## RE: DETAINEE IRIAS A#73945866

On August 5, 2015 at approximately 1640 hours, I was notified by Officer Mora and Officer Darmandzhyan that Detainee Irias, Jimmy A# 5866 came out of Segregation by himself unescorted. Myself and Sergeant Solis went to talk to Detainee Irias, whereby he then open the 707 door and walked threw, the door closed and myself and three other Officers reopened the door and approached Detainee Irias, whereby he was given several verbal commands then escorted back to the Administration Segregation side where he came from.

SANTIAGO 154

# EXHIBIT 21

Sgt. Soliz Memo



Corrections & Detention ®

# MEMORANDUM

Date: 08/05/15

To: LT. R. ANDERSON

cc:

From: SGT. A. SOLIZ

**Adelanto Detention Facility**
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA 92301

RE: ATTEMPTED ESCAPE: DETAINEE - IRIAS, JIMMY #5866

ON WEDNESDAY AUGUST 5, 2015 AT APPROXIMATELY 1640 HRS, I, SGT. A. SOLIZ, WAS ADVISED BY OFFICER J. MORA OF AN UNATTENDED DETAINEE IN THE MAIN CORRIDOR. SGT. HUTCHINSON AND MYSELF EXITED THE WATCH OFFICE AND GAVE VERBAL COMMANDS TO DETAINEE IRIAS TO STAND STILL. IRIAS IGNORED COMMANDS AND ENTERED DOOR 707. OFFICER MORA, DESOTO, SGT. HUTCHINSON, AND I FOLLOWED IRIAS THROUGH THE DOOR AND CONTINUED VERBAL COMMANDS. IRIAS COMPLIED AND AGREED TO RETURN TO SEGREGATION. IRIAS WAS SECURED IN HIS HOUSING UNIT.

SANTIAGO 152

# EXHIBIT 22

Detainee Officer Shelton Memo



**Corrections & Detention ®**

Adelanto Detention Facility
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA  92301

# MEMORANDUM

Date: 8/7/15

To: D/o Nowicki

cc:

From: D/o Shelton

## RE:

On 8/7/15, D/o Nowicki came to me and asked what the policy was for the showers in segregation. I advised D/o Nowicki, per A.W. Love, the showers are to remain unlocked unless the detainee is given a razor. A.W. Love gave us this order when the administrative segregation side opened July 1, 2015. After our conversation, D/o Nowicki asked me to document this in memo form.

N. Shelton

# EXHIBIT 23

Supervisor Shift Log Sheets

# ADELANTO DETENTION FACILITY
## Supervisor Shift Log
### SHIFT: West –2nd Watch (1400-2230)



**Day: Monday**          **Date: June 15, 2015**

Officer Accountability:  Standard staffing – 22 x 1.6 = 36(Rounded up)

| Watch Lieutenant | Lt.H. Hamed | Shift Sergeant | | Shift Sergeant | Sgt. M. Rodriguez |
|---|---|---|---|---|---|
| Mandatory Posts | Officer Name | Special Post Instructions | | Staff on RDO's | |
| 1: Central Control – 1 | J. Hernandez | B. Castillo OJT Central | | 1 :Q. Williams | 10: A. Marciel |
| 2: Central Control - 2 | E. Marquez | | | 2: I. Palacios | 11: T. Breck PT |
| 3: Housing 2 Rover | C. Rodriguez | | | 3: D. Moreiko | |
| 4: Housing 2–A Floor | B. Hatch | New full Time | | 4: J. Galvan | |
| 5: Housing 2–B Floor | A. Morales | New Full Time | | 5: D. Baltazar | |
| 6: Housing 2–C Floor | M. Cervantes | | | 6: A. Berns | |
| 7: Housing 2–D Floor | J. Rosas | | | 7: T.Breck | |
| 8: Housing 3 Rover | N. Yasuda | | | 8: M. Camacho | |
| 9: Housing 3–A Floor | T. Medawar | New Full Time | | 9: C. Langill | |
| 10: Housing 3–B Floor | F. Vestal | New Full Time | | | |
| 11: Housing 3–C Floor | L. Perez | | | Staff on Vacation | |
| 12: Housing 3–D Floor | G.Colwell | New Full Time | | 1: | |
| 13: Utility/Escort 1 | R. Ornelas | | | 2: | |
| 14: Med Floor | L. Tate | | | | Leo Chesny project |
| 15: Front Lobby | D. Rayford | | | Staff Call-Off | J. Harris |
| 16: Perimeter West | D. Williams | | | 1: | |
| 17: Perimeter East | B. Patterson | | | 2: | |
| 18: Segregation 1 | E. Macias | | | | |
| 19: Segregation 2 | T. Breck | | | Staff on other leave | Med. Appt. |
| 20: Segregation 3 | A. Martinez | | | 1: | 1: |
| 20: Med Observation | A. Hurtado | | | 2: | 2: |
| Collapsible Posts | | | | 3: | |
| 21: Med Escort | Collapsed | | | Training | RDO SWAP |
| 22: Utility/Escort 2 | L. Fiesco | | | 1: | |
| Non-Essential Posts | | | | 2: | |
| 23: Utility | C. Orr | floors | | | |
| 24: Construction | B. Castillo | Soccer field until 1800 | | Cross level to East | |
| | | | | 1: | |
| | | | | 2: | |
| Hospital Duty | 1: | 2: | | Location: | |
| Hospital Duty | 1: | 2: | | Location: | |
| Suicide Watch | 1: M.Cleveland | 2: | | | |
| Camera Operators | 1: R. Ornelas | 2: | | | |
| Meal Relief Blocks | 1: A. Martinez | 2: B. Castillo | 3: C. Orr | 4: R. Ornelas | 5: J. Rosas |
| First Responders | 1: C. Orr | 2: B. Castillo | 3: A. Martinez | 4: L. Fiesco | 5: J. Rosas | 6: |

EVENT LOG:

| Briefing Topics | Cleaning, Miss Punches, Suicide Watch procedures. |
|---|---|
| Watch Incidents | None |
| OT | None |
| Meal Penalties | None |
| Missed Punches | None |
| SIRs | None |
| Counts | 1630-1705 Pop647/ 2100-2117Pop 649 |
| Meals | 1706-1933 |
| Other | Hallway 711 stripped, H2/H3 hallway stripped and waxed. |

SANTIAGO 159



# ADELANTO DETENTION FACILITY
## Supervisor Shift Log
### SHIFT: West – 2nd Watch (1400-2230)

**Day:  Monday**        **Date:  7/20/2015**

Officer Accountability:  Standard staffing - 36 x 1.6 = 58 (Rounded up)

| Watch Lieutenant | R. Anderson | Sergeant | Sgt.J.Hutchinson | Sergeant | | |
|---|---|---|---|---|---|---|
| Mandatory Posts | Officer Name | Special Post Instructions | | Staff on RDO's | | |
| 1: Central Control - 1 | J. Harris      S/S | | | 1: J. White       S/M | 8: A.Berns      M/T |
| 2: Central Control - 2 | E. Marquez    S/S | | | 2: C. Langill      S/M | 9: M. Camacho M/T |
| 3: Housing 2 Control | P. Castro      S/S | | FR | 3: J.Haynes     M/T | 10: D. Moreiko   S/M |
| 4: Housing 2 – A Floor | M. Lopez   T/W | | | 4: Q. Williams M/T | 11: I. Palacios(W)S/M |
| 5: Housing 2 – B Floor | T. Gates | PT | | 5: L. Garcia      M/T | 12: J. Galvan(W) S/M |
| 6: Housing 2 – C Floor | F. Vestal       S/S | | | 6: A. Gomez     M/T | 13: |
| 7: Housing 2 – D Floor | J. Pasillas  T/W | | | 7: J. Haynes    M/T | 14: |
| 8: Housing 3 Control | M. Davies      Th/F | | FR | | 15: |
| 9: Housing 3 – A Floor | T. Medawar  T/W | | | | |
| 10: Housing 3 – B Floor | A. Morales    Th/F | | | Staff on Vacation | Training |
| 11: Housing 3 – C Floor | A. McMillian   Th/F | | | 1: B. Hatch     T/W | 1: |
| 12: Housing 3 – D Floor | S. Blas | | | 2: B.Rayford   T/W | 2: |
| 13: Housing 4 Control | T. Chanwong/ | 8 hrs. OT | FR | 3: M.Cleveland W/Th | 3: |
| 14: Housing 4-A Floor | J. Hayes/ | 8 hrs. OT | | 4: | 4: |
| 15: Housing 4-B Floor | Mo. Cervantes  Th/F | | | 5: | 5: |
| 16: Housing 4-C Floor | C. Dambski   W/Th | | | | |
| 17: Housing 4-D Floor | P. Monteon   F/S | | | | |
| 18: Housing 5 Control | P. Monteon   F/S | | | Staff  on other leave | Staff Call-Off |
| 19: Housing 5-A Floor | | | | 1: | 1: |
| 20: Housing 5-B Floor | | | | 2: | 2: |
| 21: Housing 5-C Floor | | | | 3: | 3: |
| 22: Housing 5-D Floor | | | | 4: | 4: |
| 23: Front Lobby | J.Rosas   T/W | | | | |
| 24: Perimeter West | E. Flores(W) | EAST | | WEST INTAKE | Construction |
| 25: Perimeter East | J. Narez(W) | EAST | | 1: L. Fiesco (W) F/S | 1: |
| 26: Segregation Control | J. Hernandez  T/W | | | | |
| 27: Segregation 1 | L. Perez    F/S | | | | |
| 28: Segregation 2 | N. Yasuda   W/Th | | | | |
| 29: Segregation 3 | A. Martinez  Th/F | | | Court Runner | Medical Satalite |
| 30:: Recreation 1 | | | | 1: | 1: A. Dobbins |
| 31: Recreation 2 | | | | | 2: |
| 32: Med Observation | A. Hurtado     S/S | | | | |
| 33: Medical Floor | T. Breck | | | L.O.P. | Visitation |
| 34: Medical Escort | C. Orr | | | 1: G. Coldwell | 1: |
| 35: Utility / Escort 1 | C. Rodriguez F/S | | FR | | |
| 36: Utility / Escort 2 | D.Williams  W/Th | | | | |
| 37: Utility / Escort 3 | R.Ornelas (W) F/S | | FR | | |
|  |  |  |  |  |  |
| Hospital Duty | 1: B.Patterson (W)F/S | 2: E.Macias (W)  Th/F | Location: DVH ER | | |
| Hospital Duty | 1: N/A | 2: N/A | Location: | | |
| Suicide Watch | 1: N/A | 2: N/A | Location: N/A | | |
| Camera Operators | 1: | 2: N/A | | | |
| Meal Relief Blocks | P. Castro | M. Davies | T. Chanwong | C. Rodriguez | R. Ornelas | |
| First Responders | P. Castro | M. Davies | T. Chanwong | C. Rodriguez | R. Ornelas | |

1/2

SANTIAGO 160

# ADELANTO DETENTION FACILITY
## Supervisor Shift Log
### SHIFT: West – 2nd Watch (1400-2230)

**GEO** The GEO Group, Inc.

**Day:** Monday          **Date:** 08-03-2015

**Officer Accountability:** Standard staffing – 36 x 1.6 = 58 (Rounded up)

| Watch Lieutenant | R. Anderson | Sergeant | Sgt.J.Hutchinson | Sergeant | A. Soliz |
|---|---|---|---|---|---|
| Mandatory Posts | Officer Name | Special Post Instructions | | Staff on RDO's | |
| 1: Central Control - 1 | J. Harris    S/S | | | 1: I. Palacios(W)S/M | 8: D. Moreiko  S/M |
| 2: Central Control - 2 | E. Marquez   S/S | | | 2: C. Langill     S/M | 9: M. Camacho M/T |
| 3: Housing 2 Control | P. Castro    T/W | E. Santiago (ROVER) | FR | 3: J. Galvan(W) S/M | 10: |
| 4: Housing 2 – A Floor | M. Lopez     T/W | | | 4: Q. Williams M/T | 11: |
| 5: Housing 2 – B Floor | Jon Ruiz W/Th | | | 5: L. Garcia      M/T | 12: |
| 6: Housing 2 – C Floor | Ja. Sanchez  T/W | | | 6: A. Gomez     M/T | 13: |
| 7: Housing 2 – D Floor | A. Morales   Th/F | | | 7: A.Berns       M/T | 14: |
| 8: Housing 3 Control | Mo. Cervantes | E. Flores(W)(ROVER) | FR | | 15: |
| 9: Housing 3 – A Floor | A. Ferretiz | | | | |
| 10: Housing 3 – B Floor | B. Toliver    W/Th | | | Staff on Vacation | Training |
| 11: Housing 3 – C Floor | K. Day       F/S | | | 1: J. Rosas   T/W | 1: C. Dambski W/Th |
| 12: Housing 3 – D Floor | D. Bell      T/W | | | 2: | 2: |
| 13: Housing 4 Control | T. Medawar   T/W | B.Rayford  T/W(ROVER) | FR | 3: | 3: |
| 14: Housing 4-A Floor | M. Davies    Th/F | | | 4: | 4: |
| 15: Housing 4-B Floor | G. Blaesing   F/S | | | 5: | 5: |
| 16: Housing 4-C Floor | A. McMillian  Th/F | | | | |
| 17: Housing 4-D Floor | J. Pasillas   T/W | | | | |
| 18: Housing 5 Control | ▮▮▮▮▮ | | | Staff on other leave | Staff Call-Off |
| 19: Housing 5-A Floor | S. Krpekyan  W/Th | | | 1: | 1: F. Vestal   S/S |
| 20: Housing 5-B Floor | Mat. Santiago Th/F | | | 2: | 2: |
| 21: Housing 5-C Floor | N. Jordan    Th/F | | | 3: | 3: |
| 22: Housing 5-D Floor | G. Colwell   W/Th | | | | |
| 23: Front Lobby | N. Yasuda    W/Th | | | Court Runner | Medical Satellite |
| 24: Perimeter West | J. Afre | EAST | | 1: | 1: G. Bernal |
| 25: Perimeter East | J. Narez | EAST | | | 2: |
| 26: Segregation Control | J. Hernandez T/W | | | | |
| 27: Segregation 1 | M.Cleveland W/Th | | | | |
| 28: Segregation 2 | D. Williams W/Th | | | Court Tank | Visitation |
| 29: Segregation 3 | B. Patterson (W)S/S | | | 1: | 1: J. Haynes |
| 30:: Recreation 1 | ▮▮▮▮▮ | | | | |
| 31: Recreation 2 | ▮▮▮▮▮ | | | L.O.P. | |
| 32: Med Observation | A. Hurtado   S/S | | | 1: B. Hendardi W/Th | |
| 33: Medical Floor | J. White     S/S | | | | |
| 34: Medical Escort | P. Monteon   F/S | | | | |
| 35: Utility / Escort 1 | R.Ornelas (W) F/S | | FR | | |
| 36: Utility / Escort 2 | L. Perez    F/S | | | | |
| 37: Utility / Escort 3 | C. Rodriguez F/S | | FR | | |
| | | | | CELL SEARCH | |

| Hospital Duty | 1: E. Macias (W) Th/F | 2: A. Martinez (W) Th/F | Location: Desert Valley Hospital ER Bed 5 | | |
|---|---|---|---|---|---|
| Hospital Duty | 1: N/A | 2: N/A | Location: | | |
| Suicide Watch | 1: T. Gates | 2: | Location: RM 550 | | |
| Camera Operators | 1: | 2: N/A | | | |
| Meal Relief Blocks | P. Castro | M. Davies | L. Perez | C. Rodriguez | R. Ornelas |
| First Responders | P. Castro | M. Davies | L. Perez | C. Rodriguez | R. Ornelas |

1/2

SANTIAGO 161



# ADELANTO DETENTION FACILITY
## Supervisor Shift Log
### SHIFT: West – 2nd Watch (1400-2230)

**Day:** Tuesday          **Date:** 08-04-2015

Officer Accountability: Standard staffing – 36 x 1.6 = 58 (Rounded up)

| Watch Lieutenant | R. Anderson | Sergeant | | Sergeant | Sgt.J.Hutchinson |
|---|---|---|---|---|---|
| Mandatory Posts | Officer Name | Special Post Instructions | | Staff on RDO's | |
| 1: Central Control - 1 | J. Harris    S/S | | | 1: A.Berns    M/T | 9: Ja. Sanchez T/W |
| 2: Central Control - 2 | E. Marquez    S/S | | | 2: M. Camacho M/T | 10: J. Hernandez T/W |
| 3: Housing 2 Control | P. Castro    S/S | G. Colwell   W/Th (ROVER) | FR | 3: Q. Williams M/T | 11: M. Lopez   T/W |
| 4: Housing 2 – A Floor | N. Nathanson  S/M | | | 4: M. Willrich M/T | 12: T. Medawar T/W |
| 5: Housing 2 – B Floor | Cerulli | OT | | 5: A. Gomez   M/T | 13: J.Rosas   T/W |
| 6: Housing 2 – C Floor | R. Ochoa | PT | | 6: L. Garcia   M/T | 14: F. Vestal   T/W |
| 7: Housing 2 – D Floor | A. Morales  Th/F | | | 7: D. Malaga   M/T | 15: J. Pasillas  T/W |
| 8: Housing 3 Control | G. Bernal    Th/F | B. Hendardi  W/Th (ROVER) | FR | 8: K. Ramos   M/T | 16: D. Bell   T/W |
| 9: Housing 3 – A Floor | Jon Ruiz    W/Th | | | | |
| 10: Housing 3 – B Floor | S. Krpekyan  W/Th | | | Staff on Vacation | Training |
| 11: Housing 3 – C Floor | A. Albarran | OT | | 1: B.Rayford  Th/F | 1: I. Palacios(W)S/M |
| 12: Housing 3 – D Floor | B. Toliver    W/Th | | | 2: | 2: C. Dambski  WTh |
| 13: Housing 4 Control | J. Haynes    F/S | M.Cleveland  W/Th(ROVER) | FR | 3: | 3: |
| 14: Housing 4-A Floor | Mat. Santiago Th/F | | | 4: | 4: |
| 15: Housing 4-B Floor | A. McMillian  F/S | | | 5: | 5: |
| 16: Housing 4-C Floor | N. Jordan    Th/F | | | | |
| 17: Housing 4-D Floor | A. Ferretiz   F/S | | | | |
| 18: Housing 5 Control | M. Davies | (ROVER) | | Staff on other leave | Staff Call-Off |
| 19: Housing 5-A Floor | Joh. Gonzalez | | | 1: | 1: B. Jones   S/M |
| 20: Housing 5-B Floor | ███████████ | | | 2: | 2: |
| 21: Housing 5-C Floor | | | | 3: | 3: |
| 22: Housing 5-D Floor | | | | 4: | 4: |
| 23: Front Lobby | Mo. Cervantes  Th/F | | | | |
| 24: Perimeter West | A. Martinez | | | Medical Appt. | Medical Satellite |
| 25: Perimeter East | Collapsed | | | 1: J. Galvan(W) S/M | 1: E. Flores(W) S/S |
| 26: Segregation Control | L. Perez     F/S | | | 2: | 2: E. Santiago |
| 27: Segregation 1 | D. Moreiko   S/M | | | 3: | |
| 28: Segregation 2 | D.Williams    W/Th | | | | |
| 29: Segregation 3 | N. Yasuda   W/Th | | | Cross Level To East | |
| 30: Recreation 1 | ███████████ | | | 1. K. Day     F/S | |
| 31: Recreation 2 | | | | | |
| 32: Med Observation | A. Hurtado    S/S | | | | |
| 33: Medical Floor | J. White    S/M | | | CELL SEARCH | |
| 34: Medical escort | T. Montes   S/M | | | 204 | |
| 35: Utility / Escort 1 | C. Langill    S/M | | FR | | |
| 36: Utility / Escort 2 | R.Ornelas (W)F/S | | FR | | |
| 37: Utility / Escort 3 | C. Rodriguez  F/S | | | | |
| 38: Utility / Escort 4 | | | | | |
| Hospital Duty | 1: J. Afre | 2: C. Lechuga | Location: DVH Emergency Room. | | |
| Hospital Duty | 1: B.Patterson(W) F/S | 2: E.Macias (W)    Th/F | Location: DVH RM 285 | | |
| Hospital Duty | 1: P. Monteon    F/S | 2: | Location: PHYS. OBS. | | |
| Suicide Watch | 1: D. Ramirez  PT | 2: | Location: Suicide Watch RM 550 | | |
| Camera Operators | 1: | 2: | | | |
| Meal Relief Blocks | C. Langill | J. Galvan(W)/M | M. Cleveland | P. Castro | M. Davies |
| First Responders | C. Langill | J. Galvan(W)  S/M | M. Cleveland | P. Castro | M. Davies |

1/2

SANTIAGO 162

# ADELANTO DETENTION FACILITY
## Supervisor Shift Log
## SHIFT: West – 2nd Watch (1400-2230)

**EVENT LOG:**

| | |
|---|---|
| Briefing Topics | 1400 hrs. briefing begins. Uniforms, Proper training, and Work Ethic. |
| Watch Incidents | Code Blue 1419 hours in 4B Detainee-Sixtos #5833 |
| Overtime Usage | 8.0 |
| PT Usage | 16.0 |
| SIR's Usage | Non- Emergency Transport to Desert Valley Hospital. Completed and submitted |
| Meal Penalties | 1 |
| Missed Punch | None. |
| Disciplinary Issues | None. |
| Housing Moves | None. |
| Count | Begin: 1630 – 1730 Pop: 896    2100 – 2127  Pop: 904 |
| Meal | 1730 – 1830 |
| Kronos Review | Completed and reviewed |

Lt. R. Anderson (T.                    08-04-2015
Watch Commander Signature              Date

SANTIAGO 163



# ADELANTO DETENTION FACILITY
## Supervisor Shift Log
### SHIFT: West – 2nd Watch (1400-2230)

**Day:** Wednesday          **Date:** 08-05-2015

**Officer Accountability:** Standard staffing - 36 x 1.6 = 58 (Rounded up)

| Watch Lieutenant | R. Anderson | Sergeant | Soliz | | Sergeant | Hutchinson |
|---|---|---|---|---|---|---|
| Mandatory Posts | Officer Name | Special Post Instructions | | | Staff on RDO's | |
| 1: Central Control - 1 | E. Marquez | | | | 1: B. Hendardi W/Th | 8: J.Rosas   T/W |
| 2: Central Control - 2 | J. Harris | | | | 2: T. Medawar T/W | 9: |
| 3: Housing 2 Control | P. Castro | C. Rodriguez(Meal Relief) | FR | | 3: M. Lopez  T/W | 10: |
| 4: Housing 2 – A Floor | Mat. Santiago | | | | 4: J. Pasillas  T/W | 11: |
| 5: Housing 2 – B Floor | D. Malaga | | | | 5: J. Hernandez T/W | 12: |
| 6: Housing 2 – C Floor | T. Montes | | | | 6: J. Haynes | 13: |
| 7: Housing 2 – D Floor | A. Morales | | | | 7: M.Cleveland /Th | 14: |
| 8: Housing 3 Control | G. Bernal | N. Nathanson (Meal Relief) | FR | | | 15: |
| 9: Housing 3 – A Floor | Mo. Cervantes | | | | | |
| 10: Housing 3 – B Floor | A. McMillian | | | | RDO Swap | Training |
| 11: Housing 3 – C Floor | K. Day | | | | 1: | 1: I. Palacios(W)S/M |
| 12: Housing 3 – D Floor | N. Jordan | | | | 2: | 2: |
| 13: Housing 4 Control | Q. Williams | A. Berns (Meal Relief) | FR | | | 3: |
| 14: Housing 4-A Floor | Joh. Gonzales | | | | | |
| 15: Housing 4-B Floor | Leo Garcia | | | | | |
| 16: Housing 4-C Floor | A. Ferretiz | | | | | |
| 17: Housing 4-D Floor | M. Willrich | | | | | |
| 18: Housing 5 Control | J. Haynes | | | | Staff  on other leave | Staff Call-Off |
| 19: Housing 5-A Floor | B. Jones | | | | 1: A. Martinez | 1: F. Vestal |
| 20: Housing 5-B Floor | ███████████ | | | | 2: N. Yasuda W/Th | 2: |
| 21: Housing 5-C Floor | ███████████ | | | | 3: | 3: |
| 22: Housing 5-D Floor | ███████████ | | | | 4: | 4: |
| 23: Front Lobby | M. Camacho | | | | | |
| 24: Perimeter West | E.Macias (W) | | | | Medical Satilite | MEDICAL RUN |
| 25: Perimeter East | J. Afre(W) | | | | 1:  P. Monteon | 1: J. Galvan |
| 26: Segregation Control | D. Moreiko | | | | 2:  A. Gomez | |
| 27: Segregation 2 | B. Patterson | | | | | |
| 28: Segregation 3 | L. Perez | | | | | |
| 29: Segregation 4 | E. Santiago | | | | | |
| 30::Medical escort | E. Flores | | | | | |
| 31: Recreation 1 | ███████████ | | | | | |
| 32: Recreation 2 | ███████████ | | | | | |
| 33: Med Observation | A. Hurtado | | | | | |
| 34: Medical Floor | J. White | | | | | |
| 35: Utility / Escort 1 | C. Langill | | FR | | CELL SEARCH | |
| 36: Utility / Escort 2 | R. Ornales | | FR | | 206 | |
| 37: Utility / Escort 3 | K. Ramos | | | | | |
| 38: Utility Relief | S. Nowicki/Female Phys OBS | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Hospital Duty | 1:  N/A | 2: N/A | Location: | | |
| Hospital Duty | 1:  N/A | 2: N/A | Location: | | |
| Suicide Watch | 1   L. Garcia | 2: | Location: | | |
| Camera Operators | 1: A. Gomez | 2: | | | |
| Meal Relief Blocks | L. Garcia | A. Berns | C. Langill | J. Galvan | R. Ornales |
| First Responders | L. Garcia | A. Berns | C. Langill | J. Galvan | R. Ornales |

SANTIAGO 164

## ADELANTO DETENTION FACILITY
## Supervisor Shift Log
## SHIFT: West – 2nd Watch (1400-2230)

**EVENT LOG:**

| | |
|---|---|
| Briefing Topics | 1400 hrs. Briefing begins. |
| Watch Incidents | 1640 hrs. Unattended detainee discovered in the main hallway. D/T gained access, and entered door 707. Watch supervisors Hutchinson and Soliz, Officers Mora and Desoto regain custody and return D/T to Administrative Segregation. 310 hrs. Calculated Use of Force, D/T Arais, Jimmy. Moved to 1-8-105-1L |
| Overtime Usage | The following staff received OT due to a cell extraction: J. Harris 1.75 Hrs. C. Rodriguez 1.75 Hrs. A. Ferretiz 1.75 Hrs E. Santiago 1.75 Hrs. R. Ornelas 1.75 Hrs. Total= 8.75 Hrs. |
| PT Usage | None. |
| SIR's Usage | None. |
| Meal Penalties | None. |
| Missed Punch | None. |
| Disciplinary Issues | None. |
| Housing Moves | None. |
| Count | 1630- 1730        2100 – 2148 |
| Meal | 1710 - 1630 |
| Kronos Review | Reviewed and corrected |

Lt. R. Anderson _____ 8·11·15

Watch Commander Signature

08-05-2015

Date

SANTIAGO 165

# EXHIBIT 24

Investigative Report



Corrections & Detention ®

# MEMORANDUM

Adelanto Detention Facility
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA 92301

Date: 8-5-15

To: Lt. Anderson

cc:

From: D/O Santiago, E/

RE:

On 8-5-15, shortly before the 1630 count, I placed D/t Irias ~~Redacted~~ into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by kitchen staff and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/t Irias had not finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve eachother on 2nd Watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainee's hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to disciplinary segregation side to relieve the 2 officers working disciplinary segregation, one officer at a time, leaving me to complete the

# MEMORANDUM



Date: 8/5/15

To: Cos Johnson

From: LT R. Duran

## RE: ADMINISTRATIVE SEGREGATION ORDER

_IRIAS - JIMMY_        <span style="color:red">Redacted</span>        _WIA - 116 - 1C_

Detainee Name        ID#        Previous Housing Unit

The above named detainee is to be admitted to **Administrative Segregation** for the following reason(s):

_xxx_    (A)    Is pending an investigation/hearing for the commission of a prohibited act or rule violation and requires pre-hearing detention.

_____    (B)    Is under medical observation (medical staff must comment and sign this order).

_____    (C)    Is waiting for bed space in general population commensurate with their classification level (ex: no level three beds available etc.)

_____    (D)    Is terminating confinement in Disciplinary Segregation and has been ordered in Administrative Segregation by the Institutional Disciplinary Panel for institutional security.

_____    (E)    Protective Custody, (must have a due process hearing within 72 hours if detainee contests housing)

_____    (F)    Detainee has requested or an order for admission for Protective Custody exists, I hereby request placement in the Administrative Segregation unit for my own protection.

Detainee Signature        ID#        Date

_____    (G)    Placed in Administrative Segregation pending Classification.

Record a brief outline of the circumstances and names of any witnesses to events leading to this placement:
_Detainee Attempted to Escape by accessing facility Doors._

Medical Staff Signature: _____ R. Escareno R.N._    Date: _8/6/15_

Supervisor Signature: _R R Duran_    Date: _8/6/15_

Admitted by: _LT Anderson_    Title: _LT_

Admitted: (Date) _8/5/15_    Time: _2246_

Released by: _____    Title: _____

Released: (Date) _____    Time: _____

Reviewed by: _____    Date: _8/8/15_

(Facility Administrator or Designee)

I have received a copy of this Administrative Segregation Order _Refused to Sign 8/5/15_

Detainee Signature / ID# / Date

## INCIDENT OF PROHIBITED ACTS AND NOTICE OF CHARGES

Detainee Name: _IRIAS, Jimmy_ _____ A-Number: _Redacted_

ID#: _N/A_ ____ Nationality: _HONDURAS_ _____

Date & Time of Incident: _AUGUST 5, 2015  1640_ Housing Assignment: _1A-116-1_ᵂ

Incident Location: _WEST SEGREGATION_  Work Assignment: _N/A_ ____

Classification Level: _3_ _____

### PROHIBITED ACTS:

1. _ESCAPE FROM UNESCORTED ACTIVITIES_ ____ Code: _200_
2. _ATTEMPT TO COMMIT ANY OF THE ABOVE OFFENSES_ _ Code: _110_
3. _____ Code: ____
4. _____ Code: ____

Description of Incident: _ON AUGUST 5, 2015 AT APPROXIMATELY 1640 HOURS SHIFT SUPERVISORS SGT. SOLIZ AND SGT. HUTCHINSON WERE NOTIFIED BY OFFICER J. MORA REGARDING AN UNATTEN-DED DETAINEE IN THE HALLWAY, STANDING AT DOOR 707. VERBAL COMMANDS WERE ISSUED FOR THE DETAINEE TO STAY WHERE HE WAS AND MOVE AWAY FROM THE DOOR. AT THIS TIME THE DETAINEE, IDENTI-FIED AS IRIAS, JIMMY Redacted PULLED THE DOOR AND WALKED INTO THE HALLWAY._

Staff Witnesses: (Y)  N        Evidence Attached?  Y   N  (N/A)

Supporting Reports:  Y  (N)  N/A

_LT. R. ANDERSON_          _8-6-15  0360_          _[signature]_
Name of Reporting Officer        Date and Time                Signature

Reviewed for accuracy prior to investigation by: _J. Hamelt_ ____
                                                      Supervisor
                                         _8/6/15   0830_
                                         Date and Time

Classification Level Change?  Y   N

Level change from _____ to _____

Rev. 1/04

## CONTINUATION OF INCIDENT REPORT

Detainee Name: IRIAS, Simmy     A-Number: Redacted

ID#: N/A

Continuation of Description: SGT. SOLIZ, SGT. HUTCHINSON, OFFICERS DESOTO AND MORA FOLLOWED DETAINEE IRIAS INTO THE HALLWAY WITH CONTINUED VERBAL COMMANDS TO "STOP" AND "STAY WHERE YOU ARE" DETAINEE IRIAS THEN COMPLIED AND WAS ESCORTED BACK TO SEGREGATION AND SECURED IN HIS CELL WITH OUT FURTHER INCIDENT.

END OF REPORT

Staff Witnesses? (Y)  N

Evidence Attached?  Y   N   (N/A)

Supporting Reports:  Y  (N)  N/A

LT. R. ANDERSON          8-6-15  0300
Name of Reporting Officer      Date and Time          Signature

Reviewed for accuracy prior to investigation by: E. Hamod
                                                 Supervisor
                                                 8/6/15  0330
                                                 Date and Time

## INVESTIGATION REPORT

Detainee Name: _IRIAS - JIMMY_          A-Number: _       <span style="color:red">Redacted</span>

ID#: _N/A_          Date of Incident: _8-5-15_

Place of Incident: _MAIN HALLWAYS_          Housing Assignment: _W1A 116-1L_

Date of Investigation: _8-6-15_          Code(s): _200-110_

Name of Investigating Officer: _S. AVILA_          has advised

_____NA_____ that he/she has the right to remain silent at stages of
           (Detainee ID#)

the disciplinary process, but, that silence may be used to draw an adverse inference
against him/her at any stage of the disciplinary process. However, silence alone may not
be used to support a finding that he/she committed a prohibited act.

I, _REFUSED TO SIGN_ have been advised of the above rights and received
       (Detainee Signature)

a copy of the charges against me.

Detainee Statement and Attitude during the Interview _REFUSED TO TALK_
_____
_____

Other Facts about the Incident (i.e. witness statements, disposition of evidence, etc.): _N/A_
_____
_____

Investigator's Comments and Conclusions: _N/A_
_____
_____

Date and Time Investigation Began: _8-6-15   1345_

Date and Time Investigation Ended: _8-6-15   1345_

_____
Signature of Investigating Officer

_____
Reviewed for accuracy by Supervisor
Rev. 2/09

## UNIT DISCIPLINARY COMMITTEE REPORT OF FINDINGS AND ACTIONS

Detainee Name: _Irias Jimmy_ A#: _Redacted_

Date of Incident: _8·5·15_

Incident Location: _W Segregation_ Prohibited Code(s): _200_

Advise the detainee of the below rights afforded to them at the UDC proceeding:

1. Remain silent at any stage of the disciplinary process
2. Due process, which includes:
   a. Attending the entire hearing (excluding committee deliberations)
   b. Waiving the right to appear; or
   c. Having a UDC hearing within 24 hours after the conclusion of the investigation
3. Present statements and evidence, including witness testimony on his or her own behalf
4. Appeal the committee's determination through the detainee grievance process

It is the finding of the Unit Disciplinary Committee that:

1. You committed the Prohibited Act as charged:  Code(s): _200_
2. You committed the following Prohibited Act:  Code(s): _____
3. You did not commit a Prohibited Act as charged: _____

Committee Findings are based on the following information (witnesses, confidential information, etc. NOT officer's reports): _Doesn't Understand Why Any of this happened Stated he was Just going For a Walk Was asked where he Was Walking to and Detainee Irias Stated He was hoping to find a 7-11 liquer Store_

Committee Action:

[X] Refer to IDP                    Date & Time: _8/5/15   1480_
[ ] Loss of Privileges  [ ] Loss of Job         [ ] Housing Changes
[ ] Restrict to Dorm    [ ] Remove from Program [ ] Reprimand
[ ] Warning             [ ] Confiscate Contraband [ ] Impound Personal Property
Comments: _____

UDC Chairperson's Signature: _Lt R Dwsai_    Date/Time: _8/5/15 1425_

Copy delivered to detainee by: _____ on _____
                          (Signature and Title)        (Date)



# MEMORANDUM

**Adelanto Detention Facility**
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA 92301

Date: 8-5-15

To: Lt. Anderson

cc:

From: D/o Santiago, E/

RE:

On 8-5-15, shortly before the 1630 count, I placed D/t Irias <span style="color:red">Redacted</span> into a lower tier shower. Moments before placing him in the shower, the dinner trays were delivered by kitchen staff and were awaiting distribution. Once I signed for the dinner trays, kitchen staff exited and I proceeded to inspect the dinner cart as required. By this time the 1630 count had commenced and D/t Irias had not finished showering, so we counted him in the shower as to not delay count or cause other issues. Upon completion of our count, we needed to begin our staff lunch breaks in segregation immediately to prevent the possibility of a meal penalty, as we are to relieve eachother on 2ND watch, one at a time, because we do not have a segregation control officer, nor do the utilities assist with lunches in segregation. Also, between the time he was placed in the shower and the time count was commenced, the 2nd segregation officer had returned from outside recreation with 8 detainees who were secured in their cells, as he had completed the detainee's hour of recreation on the lower tier. In order to complete our staff lunches, the 2nd officer on the administrative segregation side proceeded to disciplinary segregation side to relieve the 2 officers working disciplinary segregation, one officer at a time, leaving me to complete the



Corrections & Detention ®

# MEMORANDUM

Adelanto Detention Facility
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA  92301

Date: 8-5-15

To: Lt. Anderson

cc:

From: D/O Santiago, E/

RE: _____

distribution of dinner trays. The 2 segregation porters were utilized to complete the distribution of dinner trays and I began distribution with them on the lower tier. We started on the left side nearest the segregation control and worked our way to the left. At the time we started D/T Irias was still in the shower and not his cell (A-116) so we skipped him and were to go back and feed him. When finished distributing to the bottom tier D/T Irias still had not finished in the shower so we continued to the top tier to distribute trays, this time from the right to the left. Once we finished distributing dinner trays to the top tier I began securing the food ports and then continued down back to the bottom tier where I seen D/T Irias being escorted by multiple staff back into segregation and into his cell. I had not secured the shower door when placing D/T Irias in it due to administrative segregation now being an open dayroom and I believe he exited segregation while I was feeding the top tier with the porters. —End Report



Corrections & Detention ®

# MEMORANDUM

Adelanto Detention Facility
10250 Rancho Road (West)
10400 Rancho Road (East)
Adelanto, CA  92301

Date: 08/05/15

To: LT. R. ANDERSON

cc:

From: SGT. A. SOLIZ

RE: ATTEMPTED ESCAPE. DETAINEE - IRIAS, JIMMY   <span style="color:red">Redacted</span>

ON WEDNESDAY AUGUST 5, 2015 AT APPROXIMATELY 1640 HRS, I, SGT. A. SOLIZ, WAS ADVISED BY OFFICER J. MORA OF AN UNATTENDED DETAINEE IN THE MAIN CORRIDOR. SGT. HUTCHINSON AND MYSELF EXITED THE WATCH OFFICE AND GAVE VERBAL COMMANDS TO DETAINEE IRIAS TO STAND STILL. IRIAS IGNORED COMMANDS AND ENTERED DOOR 707. OFFICER MORA, DESOTO, SGT. HUTCHINSON, AND I FOLLOWED IRIAS THROUGH THE DOOR AND CONTINUED VERBAL COMMANDS. IRIAS COMPLIED AND AGREED TO RETURN TO SEGREGATION. IRIAS WAS SECURED IN HIS HOUSING UNIT.

GEO000256 (INITIAL PRODUCTION 10/03/17)

# MEMORANDUM

**GEO Corrections**

The GEO Group, Inc.
GEO Corrections
Adelanto Detention Facility
10400 Rancho Road
P. O. Box 6005
Adelanto, California 92301
www.geogroup.com

Date: 8/05/15

To: LT. ANDERSON

From: D/O J.MORA

## RE:

AT APPROXIMATELY 1640 I DETENTION OFFICER J.MORA WAS WALKING DOWN THE WEST FACILITIES MAIN CORRIDOR WHEN I OBSERVED DETAINEE (ARIAS, JIMMY  Redacted   W1-A-116-1L) WALK OUT OF DOOR 1X101A, AS HE WALKED TOWARDS DOOR #707. I THEN ADVISED SEARGENTS SOLIS AND HUTCH OF THE SITUATION VIA VERBAL. HE THEN CONTINUED TO GET THROUGH DOOR 707 AND WALKED TO DOOR 322B I THEN FOLLOWED HIM. SEARGENT SOLIS VERBALLY ASKED DETAINEE ARIAS THAT HE WOULD BE ESCORTED BACK TO SEGREGATION AS DETAINEE ARIAS BEGAN TO COMPLY. I THEN ASSISTED WITH ECORTING DETAINEE ARIAS BACK TO SEGREGATION WHERE HE WAS PLACED IN HIS CELL. NOTHING FURTHER TO REPORT AT THIS TIME.

# EXHIBIT 25

Appeal by Union

# UGOSA   LOCAL 880

*A HURTADO -PRESIDENT*
*J HARRIS -VICE PRESIDENT*
*S NOWICKI-SECRETARY*
*M MCCORMICK-TREASURER*

DICIPLINARY APPEAL
August 18, 2015

UGOSA is currently representing officer E. Santiago in the matter of the termination of his employment on August 15,2015.
The following is an appeal of this decision
Officer Santiago has been employed with GEO for two years and has (0) attendance points (0) write-ups  and no documented events of verbal counseling.
Reason for appeal:
To the charges of inattention to duty,  failure to follow the direct order of a supervisor,  and failure to secure his area

1.  GEO Staffing plan -  Ice contractual requirements and GEO policy says that Administrative Segregation is a two man post,  Officer Santiago was left alone on a two man post so that GEO could avoid a meal penalty.  The Lieutenant on duty (Anderson) ordered the second officer (Patterson)  off post to cover a lunch break for another officer elsewhere.  (this info was in the disciplinary report attached)  There was no inattention to duty,  per the shift supervisor Santiago was performing the workload of two officers.  (on the SMU log two officers signed in for all three shifts.)   Copy Attached

2. As to the charge of not securing his area  (shower door)
On July 1,2015 Assistant Warden Love upon activation of this open movement Administrative Segregation unit announced verbally to staff that due to open movement showers could remain unsecured unless a detainee was issued a razor.   Attached is a memo from a senior segregation officer Shelton.

3.  As to the charge of not following a direct order from lieutenant Duran (  that this particular detainee was a two man escort)  We are asking for the documentation to support this

GEO000226 (INITIAL PRODUCTION 10/03/17)

- A notification (written form) which is required to the facility administrator (refer to attached post orders)  this is GEO policy for any modification or restriction to a detainee's program
- A log book entry that states it is a requirement
- A copy of the SMU log that states he was a two man escort (this should be listed under pertinent information
- Notification posted on the outside of the cell-  currently there is a cautionary sign posted

- According to our research during the course of our investigation we found no evidence of these items and we do not believe they exist, therefore there is NOTHING to support any of these charges and therefore all charges should be dismissed.

SUPPORTIVE DOCUMENTS ATTATCHED

In conclusion,

This event would have never occurred had management provided the correct amount of staff to man the post.  If the control pod had been properly staffed as required by the ICE contract this situation could have been avoided completely.

Lieutenant Anderson ordered it,  lieutenant Duran was on duty and aware of the practice of collapsing a required post on a daily basis.  Assistant Warden Love who is in charge of security was aware of the practice.  After the event on 8/5/15 this action was stopped immediately.  Within 3 days all segregation officers were provided with documented OJT training.  In short officer Santiago followed the direct order of a supervisor.  It was the supervisors choice not to man the post properly or the control pod.  The supervisors were able to continue on and correct their mistakes.  Officer Santiago made no mistake and he was terminated.

## _RESOLUTION SOUGHT_:

We are asking that officer Santiago be restored to full active duty status immediately and receive back pay for the time he was off, that he be given the same training that every other officer received after this incident, and that all evidence of this issue be removed from his employee file.

If we do not hear from you within 15 business days of today's date then it will be assumed by both parties that the informal process is over and we will directly proceed with this matter to arbitration where it can be resolved by a third party.

A HURTADO -President 880

Warden,

In our hurrey to file our appele for Santiago there were many Spelling and grammar errors

I have revised a copy with the corrections for you with the exception of 1 change

On the first Copy you had (10) Dayp

After reviewing the CBA it States You have 15 Business Dayp to respond Here is the revised Copy thanks Navick

# Employee Disciplinary Appeal Form



**Employee To Complete:**

Name: *E. SANTIAGO*

Employee ID Number:      Date: *8 / / 2015*

**Reason for Appeal:** *(Be specific as to all details related to the situation) (Attach additional sheet if needed; include name and date)*

*SEE ATTACHED*
*DOCCUMENTS.*

**Resolution Sought:** *(Be specific as to what you would like to see done) (Attach additional sheet if needed; include name and date)*

| Appeal Received By: | Date:    /    / |

**First Level Decision:**

| Signature of Authority: | Date:    /    / |

**Second Level Decision:**

| Signature of Authority: | Date:    /    / |

**Final Decision:**

| Signature of Authority: | Date:    /    / |

*Additional documentation may be attached to this form*

Rev 01/11 NP                       HR-841

GEO000230 (INITIAL PRODUCTION 10/03/17)

Date: Aug. 18,2015

Disciplinary Appeal

UGOSA Local 880, is currently representing officer E. Santago in the matter of his termination of employment on Aug.15,2015.  The following is an appeal of this decision:

Officer Santago has been employed with GEO for two years has (0) attendance points (0) write ups and no documents of verbal counseling.

Reason for the appeal:  To the charges of inattention to duty and failure to follow a direct order of a supervisor and failure to secure the shower door.
  1. staffing plan (GEO) Ice contractual requirement say (GEO) policy, Administrative Segregation is a two man post,officer Santago was left alone on a two man post, so that GEO could avoid a meal penalty. the L.T. on duty (Anderson) ordered the second officer D/O Patterson off post to cover a lunch break for another officer elsewhere, there was No inattention to duty. per the shift supervisor D/O Santago was performing the workload of two officers.
  2. As to the charge of not securing his area ( shower door).
On July 1st. AW Love upon activation of this open movement Administrative Segregation unit announced verbally to staff that due to open movement the shower can remains unsecured unless the detainee is issued a razor. attached is a memo form a senior seg. officer.
  3.As to the charge of not following a direct order from Lt. Duran, that for this particular detainee he was a two man escort). We are asking you to provide us with the documentation that supports this.
  1. A notification (written form) which is required by GEO policy
  2. A log book entry that required this
  3. A copy of the SMU housing unit record that states that this detainee is a two man escort to the shower. (all detainee info should be on the SMU log).
  4. Nothing was posted on the outside the detainee cell stating that this detainee was a two man escort, we are aware that currently today it is posted on the outside of the cell. According to our research during the course of our investigation we found none of those items and we do not believe they exist and therefore there is nothing to support any of these charges. In conclusion this event would have never occurred had management/ supervisors provided the correct amount of staff to man the post. If the control pod had been manned as required by ICE contract this situation could have been avoided completly.

SUPPORTING DOCCUMENTS ATTATCHED:

Friday, September 18, 2015 AOL: Artie24

GEO000231 (INITIAL PRODUCTION 10/03/17)

Date: Aug. 18,2015

Disciplinary Appeal

This is a violation of GEO policy:

Lt. Anderson ordered it, Lt. Duran was on duty and aware of the practice of collapsing a required post.
AW Love who is responsible for security was aware and approved of this practice daily.  After the event on
8/5/2015, this practice was stopped immediately, within (3) days all officers were provided with OJT training.
In short officer Santago followed the direct order of a supervisor,it was the supervisor's choice to not man the
post properly or the H/U control pod for segregation. Supervisors were able to continue and correct their
mistakes after this event. Officer Santago made no mistakes and he was terminated.

Resolution Sought:
We are asking that officer Santago be resorted to full active status immediately and receive back pay for the
time he was off, that he be provided with the same training that all other offers were provided and that all
evidence of this issue be removed from this employee file, if we do not hear from you in (10) business days.
it will be assumed by both parties that the informal process is over and we will directly process with matter to
Arbitration where it can be resolved by a 3rd. party settlement.

A. Hurtado: Union President of Local 880

*A. Hurtado* 8/18/15

Friday, September 18, 2015 AOL: Artie24

GEO000232 (INITIAL PRODUCTION 10/03/17)