# EXHIBIT H

Request For Judicial Notice

AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
11835 W Olympic Blvd., STE 1055
Los Angeles, California 90064
Telephone: (310) 473-1111
Facsimile: (310) 473-2222
amir@mostafavilaw.com

Attorneys for Plaintiff EMANUEL SANTIAGO

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL SANTIAGO, an individual,<br><br>PLAINTIFF,<br><br>vs.<br><br>THE GEO GROUP, INC., a Florida Corporation dba GEO CALIFORNIA, INC.; GEO Corrections and Detention, LLC; DOES 1-10, individuals, and DOES, 11-20, business entities inclusive,<br><br>DEFENDANTS. | Case No. 5:16-cv-02263-DOC-KK<br><br>**PLAINTIFF EMANUEL SANTIAGO'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently: Memorandum of Points and Authorities; Statement of Genuine Disputes of Material Facts; Evidentiary Objections; Evidence, and Proposed Order]*<br><br>Assigned to: Hon. David O. Carter<br>Date: December 18, 2017<br>Time: 8:30 a.m.<br>Courtroom: 9D – 9th Floor<br>Action Filed: July 18, 2016<br>Trial: January 23, 2017 |

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
11835 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

Plaintiff EMANUEL SANTIAGO ("Plaintiff"), pursuant to Federal Rule of Evidence, Rule 201, hereby requests this Court to take judicial notice of the followings:

1. Wage & Hour Class action filed in the United States District Court for the Central District of California under the caption of *Victor Lopez v. The Geo Group, Inc.* Case Number: 2:14-CV-06639-PSG (PLAx).

   a. Attached hereto as Exhibit "1" is a true and correct copy of the Wage & Hour Class Action Settlement Agreement;

   b. Attached hereto as Exhibit "2" is a true and correct copy of the Wage & Hour Class Action Settlement Agreement-Exhibits;

   c. Attached hereto as Exhibit "3" is a true and correct copy of the Motion to Approve W&H Class Action Settlement.

2. The Post Arbitration Hearing Brief submitted by the Union on behalf of Elizabeth Marquez. Attached hereto as Exhibit "4" is a true and correct copy of the Post Arbitration Hearing Brief submitted by the Union on behalf of Elizabeth Marquez.

Plaintiff's request for judicial notice is proper under FRE 201(b) because these documents are not subject to reasonable dispute, and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. (*Id.*, §201(b)(2).

Date: November 27, 2017                    MOSTAFAVI LAW GROUP, APC

By: _____
    Amir Mostafavi, Esq.
    Attorneys for Plaintiff
    EMANUEL SANTIAGO

MOSTAFAVI LAW GROUP, APC
PRACTICE LIMITED IN EMPLOYMENT LAW
1875 W OLYMPIC BLVD, STE 1055, LOS ANGELES, CA 90064

2

# REQUEST FOR JUDICIAL NOTICE

# EXHIBIT 1

Wage & Hour Class Action Settlement Agreement

Robert W. Sink, Esq. (admitted pro hac vice)
rsink@sinklawoffices.com
LAW OFFICES OF ROBERT W. SINK
1800 J.F.K. Boulevard, 14th Floor
Philadelphia, PA 19103
Tel:   215-995-1000
Fax:   215-475-4600

Attorneys for Plaintiff and the Proposed Class
Additional counsel listed on second page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR LOPEZ, on behalf of himself and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC. D/B/A GEO CALIFORNIA, INC.; GEO CORRECTIONS HOLDINGS, INC.; AND GEO CORRECTIONS AND DETENTION, LLC,<br><br>　　　　　Defendant. | Case No.  CV14-06639-PSG (PLAx)<br><br>**CLASS ACTION**<br><br>**SETTLEMENT AGREEMENT** |

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1

Philip A. Downey, Esq. (*admitted pro hac vice*)
downeyjustice@gmail.com

2

Cory G. Lee, Esq. (SBN 216921)
downeyjusticelee@gmail.com

3

4

**THE DOWNEY LAW FIRM, LLC**
9595 Wilshire Boulevard, 9th Floor

5

Beverly Hills, CA 90212

6

Tel:   213-291-3333
Fax:   610-643-4352

7

8

Attorneys for Plaintiff and the Proposed Class

9

Elizabeth Staggs Wilson, Esq. (SBN 183160)
estaggs-wilson@littler.com

10

Michelle Rapoport, Esq. (SBN 247459)
mrapoport@littler.com

11

**LITTLER MENDELSON, PC**
633 W. 5th Street, 63rd Floor

12

Los Angeles, CA 90071
Tel:   213-443-4300

13

Fax:   213-443-4299

14

Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.

## PREAMBLE

1.      This Settlement Agreement ("Settlement Agreement," "Settlement," or "Agreement") is entered into between Plaintiff, Victor Lopez (the "Named Plaintiff"), individually and as Class Representative on behalf of putative Class Members as further defined in Section III of this Agreement (collectively, with the Named Plaintiff, the "Settlement Class"), on the one hand, and Defendants, The GEO Group, Inc. d/b/a GEO California, Inc., GEO Corrections Holdings, Inc., and GEO Corrections and Detention, LLC, their present and former parent companies, present owners, former owners, subsidiaries, shareholders, officers, directors, employees, agents, attorneys, insurers, successors, and assigns and any individual or entity which could be jointly liable with GEO, or any of them (hereinafter "GEO," "Defendants," or "Released Parties"), on the other hand.  The Settlement Class and Defendants will be referred to collectively herein as the "Settling Parties."

2.      The Named Plaintiff is a former employee of Defendants who filed an Amended Complaint entitled *Lopez v. The GEO Group, Inc., et al.* on October 14, 2015 in the U.S. District Court for the Central District of California ("the "Action").

3.      The Action seeks damages for Named Plaintiffs and putative Class Members for unpaid wages, unpaid overtime, denied meal and rest periods, and waiting time penalties, penalties under the Labor Code and California Industrial Welfare Commission ("IWC") wage orders, for violation of the Unfair Business Practices Act ("UCL"), Business and Professions Code §17200, *et seq*., and for penalties under the Private Attorney General Act ("PAGA").  Defendants deny all of the allegations in the Action and make no admission of liability or wrongdoing.

4.      During the course of the Actions, the parties have engaged in more than a year of contentious litigation.  The parties have exchanged and answered numerous interrogatories, requests for production of documents, and extensive data.  Furthermore,

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1    the depositions of the Named Plaintiff and Defendants' former regional director/current

2    warden.

3        5.    On September 23, 2015, the Settling Parties attended a private mediation

4    before respected mediator, Robert Kaplan, Esquire of Judicate West.  This mediation

5    was hotly contested and lasted an entire day.  A few days later, the Settlement was

6    ultimately reached.

7        6.    The Settling Parties have now agreed to avoid further litigation and to

8    settle and resolve the Settlement Class' claims against Defendants as set forth in this

9    Settlement Agreement.

10       7.    This Agreement shall become effective upon the "Effective Date," as set

11   forth in below.  The Settling Parties hereby agree to do all things and to engage in all

12   procedures reasonably necessary and appropriate to obtain final Court approval of this

13   Agreement, in consideration for:  (a) the payment by Defendants of the consideration

14   described herein, subject to the terms, conditions and limitations of this Agreement; and

15   (b) the release and dismissal of all claims by members of the Settlement Class as

16   described herein.

17                              **II.**

18       **PAYMENTS TO THE SETTLEMENT CLASS, CLASS COUNSEL,**

19                 **NAMED PLAINTIFF, AND THE SETTLEMENT**

20                              **ADMINISTRATOR**

21       8.    Subject to Court approval, and the provisions of this Agreement,

22   Defendants must pay one million, three hundred seventy-five thousand U.S. dollars and

23   zero cents ($1,375,000) (the "Gross Settlement Amount" or "GSA") to be paid in

24   consideration for the settlement and dismissal of the Action and the related release of

25   claims the members of the Settlement Class may have against Defendants as described

26   herein.

27       9.    The Gross Settlement Amount is the maximum amount that Defendants

28   shall be required to pay for settlement of the Action, except that Defendants shall pay

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1  the employer's share of any payroll taxes, including, but not limited to, Medicare taxes,

2  Social Security Taxes, federal unemployment taxes, state unemployment taxes, and

3  employment training taxes (collectively, "Payroll Taxes"), on all wages paid as part of

4  the settlement of the Action. The GSA will cover compensation to the Settlement

5  Class, payment to the LWDA for PAGA claims, additional compensation to the Named

6  Plaintiff as Class Representative, the cost of claims administration and notice, and

7  attorneys' fees and reimbursement of litigation costs and expenses to Class Counsel.

8      10.    This settlement is further contingent upon the Court's acceptance of

9  Plaintiff's amended complaint seeking penalties under the California Private Attorney

10  General Act for unpaid wages, including minimum wages, meal and rest break

11  violations, and all penalties available to Plaintiff and the putative class under the Labor

12  Code, including but not limited to sections 226 and 203.

## III.

## CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

15      11.    Solely for the purpose of effectuating this Settlement, and subject to Court

16  approval, the Settling Parties hereby stipulate to certification of the following

17  Settlement Class which consists of approximately 2,513 individuals:

> All persons who, at any time from July 22, 2010, to the date of preliminary approval of this Settlement (the "Class Period"), were employed by GEO as a non-exempt employee at any of the following facilities: (1) Adelanto Detention Facility (East and West); (2) Alhambra Jail; (3) Baldwin Park Jail; (4) Bell Gardens City Jail; (5) Central Valley Modified Community Correctional Facility; (6) Desert View Modified Community Correctional Facility; (7) Downey Jail; (8) Fontana City Jail; (9) Garden Grove City Jail; (10) Golden State Medium Community Correctional Facility; (11) Leo Chesney Community Correctional Facility; (12) McFarland Community Correctional Facility; (13) Mesa Verde Community Correctional Facility; (14) Montebello City Jail; (15) Ontario City Jail; (16) Western Region Detention Facility at San Diego.

26      12.    The certification of the Settlement Class, the Settling Parties' settlement

27  of the Action, and their rights and obligations hereunder, are contingent upon final

28  approval by the Court of this Agreement.

## IV.

## APPOINTMENT OF NAMED PLAINTIFF'S COUNSEL

## AS SETTLEMENT CLASS COUNSEL

13.     Subject to the Court's approval, the Settling Parties hereby stipulate to the Court's appointment of Settlement Class Counsel as follows:  Robert Sink and the Law Offices of Robert Sink, and Philip Downey of The Downey Law Firm, LLC.

## V.

## SETTLEMENT APPROVAL PROCEDURES, APPOINTMENT OF

## SETTLEMENT ADMINISTRATOR, AND NOTICE TO CLASS

## MEMBERS

14.     The Settling Parties' settlement of the Actions, and their rights and obligations hereunder, are expressly conditioned on both the Court's preliminary and final approval of this Settlement as to the Settlement Class defined in Section III of this Agreement.  Preliminary approval shall be through the entry of an "Order of Preliminary Approval," substantially in the form and content of Exhibit A hereto, including, requesting that the Court enjoin the Class Members from filing any DLSE/DOL claims, or from initiating other proceedings, regarding claims released by the Settlement pending final approval of the Settlement Agreement by the Court.

15.     On or before November 3, 2015, Class Counsel shall file a motion with the Court for preliminary approval of the Settlement Agreement, and for an order certifying the Settlement Class for settlement purposes only, and setting a date for the settlement fairness hearing ("Final Approval Hearing").  In conjunction with this request, Class Counsel shall submit this Agreement and supporting papers including proposed forms of all notices and other documents, as attached hereto, necessary to implement the Settlement Agreement.  The Order for Preliminary Approval shall provide for notice of the Agreement and related matters ("Class Notice") to the Settlement Class as specified herein.  Class Notice will provide notice to the Settlement Class, with the exception of the Named Plaintiff, of the procedures to 1.) participate in the Settlement (by submitting

a "Claim Form"), 2.) withdraw from the Settlement Class ("Request for Exclusion") or 3.) object to the Settlement. Said Class Notice, Claim Form, and Request for Exclusion shall be in the form attached hereto as Exhibits B, C, and D, respectively.

16.     Subject to Court approval, the Settling Parties agree that Simpluris will be appointed as Settlement Administrator. Simpluris has agreed to cap its fees at $22,000. The Settlement Administrator shall be paid from the GSA as set forth in Paragraph 8 of this Agreement. The Settlement Administrator will be responsible for calculating the monies to be made available to each Qualified Claimant of the Settlement Class; mailing the Class Notices; receiving and logging the Claims Forms; receiving and logging the Requests for Exclusion; researching and updating addresses through skip-traces and similar means; answering questions from Settlement Class Members; reporting on the status of the Settlement to the Settling Parties; preparing a declaration regarding its due diligence in the claims administration process; providing the Settling Parties with data regarding the filing of Claim Forms and Requests for Exclusion, the calculation of distributions; establishing and maintaining a noninterest-bearing distribution account for purposes of distributing settlement checks and distributions of attorneys' fees, costs, and Enhancement Awards; calculating withholding amounts and other tax obligations; handling reporting obligations including processing 1099s and W-2s; and performing such other tasks as the Settling Parties may direct.

17.     Defendants agree to provide the Settlement Administrator, within ten (10) calendar days of preliminary approval by the Court of the Settlement, a database containing the following information: (1) the full name, and last known address and full social security number of all Settlement Class Members; (2) the data necessary to calculate the number of work weeks for each Settlement Class Member, including, but not limited to, the start and end dates for each period during the Class Period that Settlement Class Members were employed by Defendants.

18.     Defendants shall meet-and-confer with the Settlement Administrator regarding the format of the database referenced in Paragraph 17 of this Agreement, and

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

1    shall cooperate to provide any additional information which the Settlement

2    Administrator may request that is reasonable and necessary for the purpose of giving

3    Class Notice and otherwise administering this Agreement.

4         19.    Within twenty (20) calendar days of entry of the Order of Preliminary

5    Approval, the Settlement Administrator will mail the Notice, Claims Form, and

6    Request for Exclusion ("Notice Documents") to the Settlement Class Members via

7    first-class U.S. Mail.

8         20.    Any Notice Documents that are returned as undeliverable by the Postal

9    Service with a forwarding address will be re-mailed to the new address and the

10   Settlement Administrator will update the Settlement Class Member List accordingly.

11        21.    For any Notice Documents that are returned as undeliverable by the Postal

12   Service without a forwarding address, the Settlement Administrator will perform one

13   "skip trace" or equivalent address search to locate the most accurate and updated

14   address information.  The Settlement Administrator shall then re-mail the Notice

15   materials to any new addresses found.

16        22.    A reminder postcard shall be sent to all Class Members who have not made

17   a claim or opted out within fifteen (15) calendar days of the first mailing.

18        23.    To be effective, a Request for Exclusion must be postmarked no later than

19   thirty (30) calendar days after the mailing of the Notice Documents (the "Exclusion

20   Deadline").  Within five (5) business days after the Exclusion Deadline, the Settlement

21   Administrator shall send a list to counsel for the parties of all Settlement Class

22   Members who timely sent their Request for Exclusion.  If there are 250 or more Class

23   Members who timely exclude themselves, Defendants will have the option, in their sole

24   discretion to void the Settlement, within ten (10) business days after the Exclusion

25   Deadline.

26        24.    The Class Notice shall be accompanied by a Claim Form substantially in

27   the form and content of Exhibit C hereto, which a member of the Settlement Class may

28   fill out and return to the Settlement Administrator indicating that the individual wishes

1    to receive payment pursuant to this Agreement.   To be effective, a Claim Form must be

2    postmarked no later than thirty (30) calendar days after the mailing of the Notice

3    Documents (the "Claims Deadline").  Within five (5) business days after the Claims

4    Deadline, the Settlement Administrator shall send a list to counsel for the parties of all

5    Settlement Class Members who properly completed a Claim Form and returned it to the

6    Settlement Administrator in a timely manner ("Qualified Claimants").  Payments to

7    Class Members from the NSA shall only be made to Qualified Claimants ("Qualified

8    Member Payouts").

9         25.    The Class Notice shall indicate that all members of the Settlement Class

10   shall have the right to file written objections to the Settlement and/or to appear at the

11   Final Approval Hearing (the then-current date of which shall be included in the Class

12   Notice).  Written objections, if any, must be filed with the Court, and mailed with a

13   postmark to the contact persons set out in Paragraph 49, no later than thirty (30)

14   calendar days after the mailing of the Notice Documents (the "Objection Deadline").

15   The Settling Parties agree that if any Settlement Class Member objects to the Settlement

16   or disputes the basis for determining their share of the NSA, Defendants' records shall

17   presumptively control.  The Settling Parties further agree that any dispute that cannot be

18   resolved by Class Counsel (as defined below) and GEO's counsel may be brought

19   before the Court before final approval of the Settlement.

20        26.    The Settlement Administrator shall provide written notice to Class

21   Counsel and Defendants no later than five (5) business days after the Claims and

22   Exclusion Deadlines – as defined in Paragraphs 23 and 24 of this Agreement – with a

23   complete list of Qualified Claimants as well as all members of the Settlement Class who

24   have timely submitted Requests for Exclusion.

25

26

27

28

# VI.

## THE EFFECTIVE DATE AND TERMINATION

27.     If the Settling Parties does not void the settlement pursuant to Paragraph 31, this Agreement shall become final and effective (the "Effective Date") on the occurrence of all of the following events described in Paragraphs 28 through 30:

28.     The Settlement is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

29.     Entry by the Court of an Order and Judgment Granting Final Approval. The parties shall jointly prepare a proposed Order and Judgment to this effect, which shall reflect, inter alia, the Court's approval of the settlement pursuant to the terms of this Agreement.  Said proposed Order and Judgment shall be filed with the Court no later than 15 calendar days before the Final Approval Hearing.

30.     The time for appeal from the Court's approval of the Settlement as described in Paragraph 28 hereof and entry of a final judgment as described in Paragraph 29 hereof has expired or, if appealed, either all such appeals have been dismissed prior to resolution by the appellate court or approval of this Settlement Agreement and final judgment has been affirmed in its entirety by the court of the last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review, by certiorari or otherwise.

31.     Subject to the obligation(s) of Mutual Full Cooperation, either Settling Party may terminate this Settlement if any Court declines to enter the Preliminary Approval Order, the Final Approval Order, or final judgment in substantially the form submitted by the Settling Parties, or if the Settlement as agreed does not become final because of appellate court action.  The terminating Settling Party shall give to the other Settling Party (through its counsel) written notice of its decision to terminate no later than ten (10) calendar days after receiving notice that one of the enumerated events has occurred.  Termination shall have the following effects:

(a)     The Settlement Agreement and Memorandum of Understanding ("MOU") shall be terminated and shall have no force or effect, and no Party shall be bound by any of its terms.

(b)     In the event the Settlement is terminated, GEO shall have no obligation to make any payments to any party, Class Member or attorney.

(c)     The Preliminary Approval Order, Final Approval Order and final judgment, including any order of class certification, shall be vacated.

(d)     The Settlement Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions prior to the Settlement.

(e)     Except as otherwise discoverable, neither this Agreement nor the MOU any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Action or any other action for any purpose whatsoever.

## VII.

## ATTORNEYS' FEES, COSTS AND EXPENSES, AND ENHANCEMENT AWARDS

32.     The Action alleges a claim for attorneys' fees and costs.  The Settling Parties agree that any and all such claims for attorneys' fees and costs have been settled in this Agreement and are included in the settlement amount set forth in Paragraph 8 of this Agreement.

33.     Class Counsel may petition the Court for attorneys' fees not to exceed one-third (33 1/3%) of $1,375,000, including any interest, plus reasonable costs not to exceed $75,000, subject to approval by the Court.  Attorneys' fees paid pursuant to this Settlement Agreement shall be inclusive of all fees in this matter.  Defendants agree not

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

1   to object to Class Counsel's fees of up to one-third (33⅓ %) of $1,375,000 and

2   reasonable costs approved by the Court not to exceed $75,000.  The Parties agree that

3   the apportionment of attorneys' fees and costs among Class Counsel is an independent

4   and separate agreement among Class Counsel.  Any reduction by the Court of Class

5   Counsel's claimed attorneys' fees and/or reasonable costs shall not be sufficient

6   grounds to void the Settlement.  Additionally, Class Counsel will petition the Court to

7   pay the Settlement Administrator out of the GSA and Defendants agrees not to object to

8   that amount

9        34.    Class Counsel may apply to the Court for an additional award to Named

10   Plaintiff of up to five thousand U.S. dollars and no cents ($5,000) as reasonable

11   additional compensation for the time and effort expended by him in connection with the

12   initiation and maintenance of the Action and in consideration for the claims released

13   herein (the "Enhancement Award").  Defendants will not oppose Class Counsel's

14   application under this Paragraph.  Any Enhancement Award will be in addition to any

15   amount Named Plaintiff may be entitled to receive on account of his own individual

16   claims pursuant to Section IX of this Agreement; however, the releases set out in

17   Paragraphs 44, 45 and 46 of this Agreement shall bind the Named Plaintiff, and the

18   Enhancement Award shall be adequate consideration for said release.

19        35.    Any awards pursuant to Paragraphs 33 and/or 34 will be funded solely and

20   completely from the GSA.

## IX.

## PLAN OF ALLOCATION AND

## DISTRIBUTION OF THE SETTLEMENT FUND

24        36.    The GSA shall be allocated, in order, as follows:

25        (a)    First, to attorneys' fees, costs and expenses of Class Counsel, as

26   may be awarded by the Court pursuant to Paragraph 33 of this Agreement;

27        (b)    Second, to any Enhancement Award, as may be awarded by the

28   Court pursuant to Paragraph 34 of this Agreement;

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

10.

1         (c)     Third, to costs of settlement administration; and

2         (d)     Fourth, to the LWDA, a $15,000 payment, which represents 75% of

3 the amount allocated to settlement of the PAGA claims (or such other amount, if any,

4 ordered by the Court);

5         (e)     Fifth, to the "Net Settlement Amount" or "NSA."   The Net

6 Settlement Amount shall be defined as the Gross Settlement Amount less attorneys'

7 fees, costs and expenses of Class Counsel, costs of settlement administration,

8 Enhancement Award to the Class Representative, and payment to the LWDA. The

9 Parties agree that 100% of the Net Settlement Amount will be distributed as described

10 in Paragraph 37.

11     37.    Defendants agree to distribute 100% of the NSA on a pro rata basis to all

12 Qualified Claimants based on the number of weeks each person worked.

13     38.    The Settlement Administrator shall make payments from the NSA only

14 pursuant to the terms of this Settlement Agreement and only after the Effective Date.

15     39.    For the purposes of calculating applicable taxes:

16         (a)     From the NSA, one-third (1/3) of each Settlement Payment shall be

17 allocated to unpaid wages, one-third (1/3) to penalties, and one-third (1/3) to

18 interest on wages.  The Settlement Administrator shall make appropriate

19 withholdings for the payment of taxes and other required withholdings.

20 Defendants will be responsible for the employer's share of any Payroll Taxes and

21 withholdings applicable to the Settlement Payments, and the Qualified Claimants

22 shall be individually responsible for the employee's share of taxes attributable to

23 receipt of the Qualified Member's payment.  The Settlement Administrator shall

24 be responsible for determining the employer share of any applicable payroll taxes

25 and withholdings attributable to the Class Member Payouts, after which

26 Defendants shall –through the Settlement Administrator – remit said monies,

27 along with the appropriate documentation, to the relevant taxing agencies in

28 accordance with applicable laws and regulations.  Defendants shall provide the

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1   Settlement Administrator with any information reasonably necessary to perform

2   the calculations discussed in this Paragraph.

3       (b)     One hundred percent (100%) of the Enhancement Award will be

4   allocated to ordinary income, payable on a Form 1099.

5       40.     Defendants shall fund the GSA, plus Defendants' share of payroll taxes

6   attributable to same, to the Settlement Administrator no later than fifteen (15) days after

7   the Effective Date.

8       41.     The Settlement Administrator shall deposit the GSA, plus Defendants'

9   share of the Payroll Taxes attributable to same, in a noninterest-bearing distribution

10  account immediately upon receipt of the fund transfer discussed in Paragraph 40.  The

11  Settlement Administrator shall pay Class Member Payouts, less applicable taxes and

12  withholdings, by mailing the payments via first-class mail to the Qualified Claimants of

13  the Settlement Class within five (5) business days of receipt of the GSA.

14      42.     The Settlement Administrator shall pay Class Counsel any attorneys' fees,

15  costs and expenses approved by the Court within five (5) business days of receipt of the

16  GSA.

17      43.     The Settlement Administrator shall pay Named Plaintiff any Enhancement

18  Award approved by the Court within five (5) business days of receipt of the GSA.

19                              **X.**

20                          **RELEASES**

21      44.     Upon the Effective Date, the claims released by the Class Members who

22  do not opt out of this Settlement will include all claims against the Released Parties, for

23  work performed during the Class Period, which were alleged or could have been alleged

24  as part of the litigation, including the following:

25      a.      Any claims for unpaid wages (including but not limited to overtime pay,

26              minimum wage, regular wages, salary, bonuses, commissions, missed

27              meal period pay, missed rest period pay, paid time off or other benefits),

28              and claims for interest, penalties (including but not limited to wait time

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

12.

1   penalties), or premiums in connection therewith, as well as any claims

2   under the California Labor Code, or California Wage Orders alleged or

3   which could have been alleged under the facts pleaded in the complaints

4   filed as part of the Litigation.

5   b.   Any claims for injunctive relief, declaratory relief, restitution, fraudulent

6   business practices or punitive damages alleged or which could have been

7   alleged under the facts pleaded in the complaints filed as part of the

8   Litigation;

9   c.   Any claims under PAGA arising out of the wage, hour and payroll

10   practices alleged or could have been alleged under the facts pleaded in the

11   complaints filed as part of the Litigation; and

12   d.   Any and all other claims under California common law, the California

13   Labor Code, California Wage Orders, and the California Business and

14   Professions Code asserted in or that could have been asserted in the

15   complaints filed as part of the Litigation.

16   45.   Upon the Effective Date, any and all claims for unpaid wages, penalties,

17   interest and attorneys' fees that could have been alleged under the Fair Labor Standards

18   Act based upon the facts alleged in the complaint against the Released Parties for work

19   performed during the Class Period will be released by the Class Members who opt in to

20   this Settlement by submitting a Claim Form.

21   46.   Upon the Effective Date, as to the claims of Lopez, the Released Claims

22   further include, without limitation, any and all claims whatsoever regarding Lopez's

23   employment and/or the termination of his employment with Defendants and/or any of

24   the Released Parties including, but not limited to, any claims for wages, bonuses,

25   severance pay, employment benefits, stock options, violation of any personnel policy,

26   any claims based on discrimination, harassment, unlawful retaliation, violation of

27   public policy, or damages of any kind whatsoever, arising out of any common law torts,

28   contracts, express or implied, any covenant of good faith and fair dealing, any theory of

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

13.

wrongful discharge, any theory of negligence, any theory of retaliation, any legal restriction on Defendants' right to terminate the employment relationship, or any federal, state, or other governmental statute, executive order, regulation or ordinance, or common law, or any other basis whatsoever, to the fullest extent provided by law. Lopez shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished to the fullest extent permitted by law the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law that purports to limit the scope of a general release. Lopez, for himself, has read Section 1542 of the Civil Code of the State of California, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

## XI.

## ADDITIONAL TERMS AND CONDITIONS

47. <u>Settlement Fair and Reasonable</u>

Class Counsel has considerable experience in litigating and settling wage-and-hour class actions of this type, and is sufficiently familiar with the facts of this case and the applicable laws and regulations to make an informed judgment as to the fairness of this Settlement. In light of this experience, and for reasons that will be more fully explained in Class Counsel's motion for preliminary approval, Class Counsel and the Named Plaintiff believe that the settlement terms herein are fair and reasonable with regard to the interests of the Settlement Class.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

48.     <u>Settlement the Result of Arm's-Length Bargaining</u>.

The terms of the Settlement Agreement are the result of over one year of litigation with extensive discovery, and following an entire day of arm's-length negotiations before a respected mediator.

49.     <u>Notices</u>.

Except for Settlement Class Member notices which are required herein to be made to or by the Settlement Administrator, all notices, requests, demands and other communications related to or in connection with this Agreement shall be in writing, and shall be provided by appropriate method depending on the urgency (<u>e.g.</u>, personal delivery, facsimile, overnight delivery, or first-class U.S. mail) to:

**TO THE SETTLING CLASS:**

Robert Sink
**LAW OFFICES OF ROBERT W. SINK**
1800 JFK Boulevard, 14th Floor
Philadelphia, Pennsylvania 19103
Telephone:   215-995-1000
Facsimile:   215-475-4600

**TO DEFENDANTS:**

Elizabeth Staggs-Wilson
Michelle Rapoport
**LITTLER MENDELSON, PC**
633 W. 5th Street, 63rd Floor
Los Angeles, CA 90071
Telephone:   213-443-4300
Facsimile:   213-443-4299

50.     <u>Modification by Writing Only</u>.

This Agreement, and its terms and Exhibits, may be modified only in a writing signed by all counsel of record for the Settling Parties, and will not become effective unless and until approved by the Court or otherwise as ordered by the Court.

51.     <u>Representations</u>.

(a)     The Named Plaintiff, on behalf of himself and the Settlement Class, has expressly authorized Class Counsel to take all appropriate actions required or permitted to be taken pursuant to this Agreement to effectuate its terms.

(b)     Each attorney executing this Agreement or any of its Exhibits on behalf of any Settling Party hereto hereby warrants that full authority to do so has been given by his/her client(s).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

15.

(c)     The Settling Parties represent and agree that neither have received and/or relied upon any advice and/or representations from the other party and/or its attorneys as to the necessity for withholding or the taxability of the consideration paid pursuant to this Agreement, whether pursuant to federal, state or local income tax statutes or otherwise.

52.     <u>Publicity.</u> Lopez, Defendants, and their respective counsel will not make any public disclosure of the Settlement until after the filing of the Application for Preliminary Approval of the Settlement.  Lopez, Defendants, and their respective counsel represent that they have not made any such disclosure.  Notwithstanding the foregoing, the Parties agree that Defendants may make such disclosures that in Defendants' judgment are required in the ordinary course of business, except that Defendants' and their counsel shall not encourage Class Members to opt-out.  Nor shall Lopez and Class Counsel encourage Class Members to opt-out.  Class Counsel will take all steps necessary to ensure that Lopez is aware of, and will encourage them to adhere to, the restriction against any public disclosure of the Settlement until after the Settlement is preliminarily approved by the Court.  Class Counsel and Lopez agree not to publicize the terms of this Settlement with the media, including but not limited to, any newspaper, journal, magazine, website and/or on-line reporter of settlements.  Class Counsel, however, are free to state on their website that they settled the lawsuit and the industry generally.  Class Counsel shall refrain from referencing the case name, Defendants' names, or including the claim form on their website.

53.     <u>Mutual Cooperation</u>.  The Settling Parties and their counsel shall use their best efforts to cause the Court to give preliminary and final approval to this Settlement Agreement as promptly as practical, to take all steps contemplated by this Settlement Agreement to effectuate its terms and conditions, to perform all acts and execute and deliver all documents, data and declarations necessary to effectuate all provisions of this Settlement Agreement, including but not limited to declarations from the Settling

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Parties in support of class certification, and to oppose any appeal by any objector ("Mutual Full Cooperation").

54.    Construction and Integration.

This Agreement, including its exhibits, constitutes the entire agreement and understanding between the parties, and supersedes any previous agreements or understandings between the Settling Parties.  No representations, warranties or inducements have been made to any party concerning the subject matter of this Agreement and/or exhibits other than the representations, warranties and covenants contained in such documents.  This Agreement and related exhibits shall be construed each as a whole, and with reference to one another, according to their fair meaning and intent.  Each of the Settling Parties represent that its/their counsel has participated and cooperated in the drafting and preparation of this Agreement and related exhibits; hence, in any construction to be made of this Agreement and/or exhibits, the same shall not be construed against any party on the basis that said party was the drafter.

55.    Governing Law.

This Agreement and the Exhibits hereto shall be deemed to have been negotiated, executed and delivered, and to be wholly performed, in the State of California.  The rights and obligations of the parties under the Agreement shall be construed and enforced in accordance with, and be governed by, the substantive and procedural laws of the State of California without regard to California's choice of law principles.

56.    Counterparts.

This Agreement may be executed in one or more faxed counterparts, which may be filed with the Court.  All executed counterparts, and each of them, shall be deemed to be one and the same instrument.  Once available, a complete set of executed counterparts shall be filed with the Court.  Copies of the complete set of executed counterparts may be used for all purposes in lieu of the originals, and shall have the same force and effect as the originals.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

17.

57.     <u>Attorneys' Fees, Costs and Expenses</u>.

        Except as otherwise specifically provided for herein, each party shall bear its/her own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Actions, and shall not seek reimbursement thereof from any other party to this Agreement.

58.     <u>Continuing Jurisdiction</u>.

        Except as otherwise specifically provided for herein, the United States District Court for the Central District of California shall retain jurisdiction to construe, interpret and enforce this Agreement and the settlement, to supervise all notices, the administration of the settlement and this Agreement and distribution of the Settlement Fund, and to hear and adjudicate any dispute arising from or related to the settlement and/or this Agreement.

59.     The signatories hereto represent and warrant that they have the authority to sign on behalf of their designated parties. This Settlement Agreement is intended to have a binding effect to the maximum extent permitted under state and federal law.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

18.

1

2

3

4

5 **IN WITNESS WHEREOF**, the undersigned Settling Parties and their duly-authorized

6 representatives of accept and agree to the terms of this Agreement and hereby execute it

7 voluntarily and with a full understanding of its consequences.

8

9

10 _____        _____
   Victor Lopez, individually,                            Date
11   and on behalf of the Settlement Class as Class Representative

12

13 _____        _____
    for and on behalf of Defendants              Date
14

15 **APPROVED AS TO CONTENT AND FORM:**

16 **LAW OFFICES OF ROBERT W. SINK**

17

18 _____        Nov. 3, 2015
   Robert Sink, on behalf of Class Counsel       Date
19   Attorney for Victor Lopez and the Settlement Class

20

21 **LITTLER MENDELSON**

22

23

24 _____        Nov. 3, 2015
   Elizabeth Staggs-Wilson                       Date
25

26 Firmwide:136747525.1 059218.1179

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

19.

1

2

3

4

5

6   **IN WITNESS WHEREOF**, the undersigned Settling Parties and their duly-authorized

7   representatives of accept and agree to the terms of this Agreement and hereby execute it

8   voluntarily and with a full understanding of its consequences.

9

10       Victor Lopez                       11-03-2015

11       Victor Lopez, individually,                  Date
      and on behalf of the Settlement Class as Class Representative

12

13

14
      for and on behalf of Defendants        Date

15

16   **APPROVED AS TO CONTENT AND FORM:**

17   **LAW OFFICES OF ROBERT W. SINK**

18

19
      Robert Sink, on behalf of Class Counsel       Date

20       Attorney for Victor Lopez and the Settlement Class

21

22   **LITTLER MENDELSON**

23

24
      Elizabeth Staggs-Wilson            Date

25

26   Firmwide:136747525.1 059218.1179

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
53rd Floor
Los Angeles, CA 90071
213.443.4300

19.

**IN WITNESS WHEREOF**, the undersigned Settling Parties and their duly-authorized representatives of accept and agree to the terms of this Agreement and hereby execute it voluntarily and with a full understanding of its consequences.

_____          _____
Victor Lopez, individually,                                    Date
and on behalf of the Settlement Class as Class Representative

_____          _____
for and on behalf of Defendants              Date          11·03·15

**APPROVED AS TO CONTENT AND FORM:**

**LAW OFFICES OF ROBERT W. SINK**

_____          _____
Robert Sink, on behalf of Class Counsel      Date
Attorney for Victor Lopez and the Settlement Class

**LITTLER MENDELSON**

_____          _____
Elizabeth Staggs-Wilson                          Date

Firmwide:136747525.1 059218.1179

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

19.

# EXHIBIT A

ROBERT W. SINK (*admitted pro hac vice*)
rsink@sinklawoffices.com
LAW OFFICES OF ROBERT W. SINK
1800 J.F.K. Boulevard, 14th Floor
Philadelphia, PA 19103
Telephone:   215-995-1000
Facsimile:   215-475-4600

Attorneys for Plaintiffs

ELIZABETH STAGGS WILSON, Bar No. 183160
estaggs-wilson@littler.com
MICHELLE RAPOPORT, Bar No. 247459
mrapoport@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street, 63rd Floor
Los Angeles, CA  90071
Telephone:   213.443.4300
Facsimile:   213.443.4299

ANDREA R. MILANO, Bar No. 278937
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067
Telephone:   310.553.0308
Fax No.:   310.553.5583

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR LOPEZ, on behalf of himself and on behalf of all other similarly situated individuals,<br><br>          Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC. D/B/A GEO CALIFORNIA, INC.; GEO CORRECTIONS HOLDINGS, INC.; GEO CORRECTIONS AND DETENTION, LLC; and DOES 1-50, inclusive,<br>          Defendants. | Case No.  CV14-6639-PSG (PLAx)<br><br>**CLASS ACTION**<br><br>**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, APPROVING NOTICE OF CLASS ACTION SETTLEMENT, AND SETTING HEARING FOR FINAL APPROVAL**<br><br>**HEARING DATE: Dec. 21, 2015**<br>**TIME: 1:30p.m.**<br><br>**HON. PHILIP GUTIERREZ** |

Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement was filed on November 3, 2015.  The Court has considered the papers submitted in support of the Motion and the terms of the proposed class action settlement.  Based on the papers and pleadings on file herein, the Court hereby finds that the settlement falls within the range of possible final approval, also described as "the range of reasonableness," and is therefore deserving of preliminary approval. *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.* (1994) 27 Cal.App.4th 1085, 1089-1090.

Having made this determination, now, on this _____ day of _____, 2015, the Court hereby **ORDERS** as follows:

1.     The Court grants preliminary approval of the class action Settlement Agreement attached as Exhibit 1 to the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and incorporates it herein;

2.     The Court hereby preliminarily finds the Settlement Agreement was the product of informed, non-collusive negotiations conducted at arms-length by the Parties.  In making these preliminarily findings, the Court considered the estimate of the Settlement Class Members' total recovery, Defendants' potential liability, the allocation of settlement proceeds among Settlement Class Members, and the fact that the Settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial.  The Court further preliminarily finds that the terms of the Settlement Agreement have no obvious deficiencies;

3.     The Court appoints Simpluris as Settlement Administrator and preliminarily approves the costs of claims administration;

4.     The parties stipulate and the Court provisionally certifies the following Settlement Class pending final approval of the Settlement:

All persons who, at any time from July 22, 2010, to the date of preliminary approval of this Settlement (the "Class Period"), were employed by GEO as a non-exempt employee at any of the following

facilities: (1) Adelanto Detention Facility (East and West); (2) Alhambra Jail; (3) Baldwin Park Jail; (4) Bell Gardens City Jail; (5) Central Valley Modified Community Correctional Facility; (6) Desert View Modified Community Correctional Facility; (7) Downey Jail; (8) Fontana City Jail; (9) Garden Grove City Jail; (10) Golden State Medium Community Correctional Facility; (11) Leo Chesney Community Correctional Facility; (12) McFarland Community Correctional Facility; (13) Mesa Verde Community Correctional Facility; (14) Montebello City Jail; (15) Ontario City Jail; (16) Western Region Detention Facility at San Diego;

5.     With respect to this provisionally certified class for settlement purposes, if the Agreement does not become final for any reason, the fact that the parties were willing to stipulate to class certification as part of the Agreement shall have no bearing on and will not be admissible in connection with, the issue of whether a class in this action should be certified in a non-settlement context.

6.     The Court appoints Plaintiff, Victor Lopez, as the Class Representative on behalf of the Settlement Class;

7.     The Court appoints the Law Offices of Robert W. Sink and The Downey Law Firm, LLC as Class Counsel for the Settlement Class;

8.     The Court approves the forms of Class Notice, Claim Form, and Request for Exclusion, in the form attached as Exhibits A, B, and C, respectively, to the Parties Settlement Agreement (Exhibit 1);

9.     Settlement Class Members are enjoined from filing any DLSE/DOL claims, or from initiating other proceedings, regarding claims released by the Settlement pending final approval of the Settlement Agreement by the Court.

10.     Defendants shall provide the Claims Administrator with all information necessary for the Claims Administrator to be able to administer the proposed class action Settlement and mail the Settlement Class Notice and Claim Form to all Settlement Class Members.

11.     The Settlement Class Notice shall be delivered via First Class U.S. Mail to the most recent known address of each Settlement Class Member.  The Claims Administrator shall follow administration procedures as set forth in the Settlement Agreement.

12.     Class Members shall submit Claim forms no later than 30 calendar days after the original date of the Claims Administrator mailing of the Notice packet.

13.     Any Settlement Class Member requesting to be excluded from the Class must submit a written, signed, and dated request for exclusion to the Court no later than 30 days after the original date of the Claims Administrator's mailing of the Notice packet.  Any Settlement Class Member who submits a valid and timely written request to be excluded from the settlement shall no longer be a member of the Settlement Class, shall not be bound by the terms of the Settlement as provided for in the Settlement Agreement, shall have no right no object to this Settlement, and shall receive no benefit from this Settlement.

14.     Any Settlement Class Member objecting to the proposed class action settlement shall file such written objection with the Clerk of the United States District Court Central District of California, Edward R. Roybal Federal Building and United States Courthouse 255 East Temple Street Los Angeles, CA 90012-3332 CA 92701 no later than 30 days after the original date of the Claims Administrator's mailing of the Notice packet and shall serve copies to Class Counsel and Defendants' counsel.

15.     Class Counsel shall file a Motion for Final Approval of Settlement and Motion for Attorneys' Fees, Expenses and Enhancement Awards 15 calendar days before the hearing on Final Approval of Settlement.

16.     A hearing on Final Approval of Settlement and Motion for Attorneys' Fees, Expenses and Enhancement Awards is scheduled to be held on the _____ day of _____, 2016 at _____ a.m./p.m. in Courtroom _____ at the United States District Court for the Central District of California, Edward R. Roybal Federal

Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012-3332.

BY THE COURT:

_____

**Philip Gutierrez, U.S.D.J.**

**EXHIBIT B**

NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT

*Victor Lopez v. The GEO Group, Inc. Case No.* 2:14-CV-06639-PSG (PLAx)

## To: All persons who worked as non-exempt, hourly employees for The GEO Group, Inc., dba GEO California, Inc.; GEO Corrections Holdings, Inc.; and/or GEO Corrections and Detention, LLC (collectively, "GEO") between July 22, 2010 and [Date of preliminary approval] in California.

**PLEASE READ THIS NOTICE CAREFULLY. TO RECEIVE YOUR SHARE OF THE SETTLEMENT PROCEEDS YOU NEED TO RETURN THE ENCLOSED CLAIM FORM BY MAIL BY THIRTY (30) DAYS FROM THE MAILING OF THE NOTICE.**

Pursuant to the settlement of the parties and order of the United States District Court of the Central District of California, entered [date court approved settlement], YOU ARE HEREBY NOTIFIED AS FOLLOWS:  A settlement has been reached between the parties in the lawsuit pending in the United States District Court for the Central District of California on behalf of the following class, which has been provisionally certified for purposes of this settlement:

All persons who, at any time from July 22, 2010, to [date of preliminary approval] of this Settlement (the "Class Period"), were employed by GEO as a non-exempt employee at any of the following facilities: (1) Adelanto Detention Facility (East and West); (2) Alhambra Jail; (3) Baldwin Park Jail; (4) Bell Gardens City Jail; (5) Central Valley Modified Community Correctional Facility; (6) Desert View Modified Community Correctional Facility; (7) Downey Jail; (8) Fontana City Jail; (9) Garden Grove City Jail; (10) Golden State Medium Community Correctional Facility; (11) Leo Chesney Community Correctional Facility; (12) McFarland Community Correctional Facility; (13) Mesa Verde Community Correctional Facility; (14) Montebello City Jail; (15) Ontario City Jail; (16) Western Region Detention Facility at San Diego.

This document describes your rights with respect to this class action settlement.  Please read it carefully.  The details of the action and settlement are described below, but the relevant points are as follows:

- GEO has agreed to settle a class action lawsuit for $1,375,000 to pay claims by current and former hourly employees of GEO who worked at any time between July 22, 2010 and [date of preliminary approval] in certain California facilities;
- **If you want to receive a payout from this settlement you MUST complete, sign, and mail the enclosed Claim Form by [ Date];**
- The settlement resolves a lawsuit in which an hourly worker claimed that GEO failed to pay all wages owed, failed to offer legally-compliant 30-minute meal periods, and failed to comply with other related state labor laws;
- GEO has denied all liability and vigorously defended its payroll practices as lawful;

- The parties agreed that the settlement was reasonable to avoid the costs and risks associated with continuing the lawsuit;
- The settlement releases GEO from liability of certain claims related to the claims set forth in this lawsuit;
- GEO has agreed that the Court-approved lawyers may petition the Court for up to 33⅓% of the total settlement amount from the settlement as fees and up to $75,000 as expenses for investigating the facts, litigating the case and negotiating the settlement.  At this juncture the Court has not yet determined the amount to be awarded to class counsel for fees and expenses;
- The Court in charge of this case still has to decide whether the settlement is fair and whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.
- Your legal rights are affected whether you act, or do not act.  These rights and options—**and the deadlines to exercise them**—are explained in this notice.
- Class Counsel support this settlement.  Among the reasons for Class Counsel support of the settlement are the complete defenses to liability available to GEO on whether their payroll practices were lawful.

I.    **OVERVIEW OF THE CASE**

A putative class action lawsuit entitled *Lopez v. The GEO Group, Inc.et al*. was filed on July 22, 2014 in the Superior Court of Los Angeles County and then removed to the United States District Court for the Central District of California.  On October 14, 2015, Plaintiff filed an Amended Complaint (the "Action"), seeking damages for Plaintiff and putative Class Members for unpaid wages, unpaid overtime, denied meal and rest periods, and waiting time penalties, penalties under the Labor Code and California Industrial Welfare Commission ("IWC") wage orders, for violation of the Unfair Business Practices Act ("UCL"), Business and Professions Code §17200, et seq., and for penalties under the Private Attorney General Act ("PAGA").

GEO contends that Plaintiff and the putative class members were properly paid all wages and compensation owed and deny all alleged wrongdoing associated with these and all other claims.  GEO further contend that since the putative class members were properly compensated, the remainder of the claims are also without merit.  GEO, therefore, disputes all claims for damages and other relief made by and also dispute that the lawsuit is appropriate for class action treatment.  Further, the Court has not stated or determined that GEO did anything wrong.

GEO has agreed to settle this class action lawsuit for $1,375,000 to pay claims by current and former hourly employees of GEO who worked at any time between July 22, 2010 and [date of preliminary approval] in certain California facilities.  Also, as part of the settlement GEO will pay its employer's share of the payroll taxes.

II.    **PARTIES TO THE ACTION**

Victor Lopez is the Plaintiff in this class action lawsuit, acting on behalf of himself and on behalf of other current and former non-exempt hourly employees in California. The Defendants are:

The GEO Group, Inc. D/B/A GEO California, Inc.; GEO Corrections Holdings, Inc.; and GEO Corrections and Detention, LLC. (GEO").

III.   **OVERVIEW OF THIS NOTICE**

You have received this notice because records indicate that you are a class member in this lawsuit. The settlement will resolve claims described below during the class period of July 22, 2010 until [ date of preliminary approval]

You may be entitled to receive money from a settlement that has been reached in the lawsuit. The Court must finally approve the terms of the settlement described below as fair and reasonable to the class. The settlement will affect all members of the class, including you. You may receive money from the class action settlement if you submit a valid and timely claim form as instructed below. This notice will explain the terms of the settlement and the amount of money you may get.

The Court will hold a Final Fairness Hearing concerning the proposed settlement on [date] at [time], in Courtroom [880] at the United States District Court for the Central District of California located at:

> Edward R. Roybal Federal Building and United States Courthouse
> 255 East Temple Street
> Los Angeles, CA 90012-3332

> **The hearing may be continued without further notice to the settlement class.  It is not necessary for you to appear at this hearing unless you have timely filed an objection.**

IV.   **SUMMARY OF THE PROPOSED SETTLEMENT**

The Plaintiff and Class Counsel support this settlement.  Among the reasons given for support includes the inherent risk of trial on the merits and the delays associated with litigation. The settlement provides for the following:

A.      **Settlement Formula**

Simpluris, the Claims Administrator, will pay to each Settlement Class Member who returns a valid and timely Claim Form ("Qualified Claimant") a pro-rata share of the Net Settlement Amount ("NSA") based upon the number of weeks worked during the class period.  The NSA is $1,375,000 minus attorneys' fees, costs, actual enhancement awards to Lopez, the PAGA Payment, and actual claims administration expenses.  As part of the settlement of the PAGA claim, $15,000 from the NSA will be paid to the California Labor & Workforce Development Agency.  Simpluris estimates that the claims expenses will be about $22,000.  It is your responsibility to ensure the Claims Administrator has timely received your Claim Form. You may contact the Claims Administrator at the toll-free number listed at the bottom of each page to ensure it has been received.  It is also your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your Settlement Claim Payment.

**B.      Calculations**

Defendants' records will be determinative with respect to the number of shifts you worked in each position unless you dispute those records as provided below.

**C.      Release**

The settlement is intended to settle and fully release and discharge any and all claims against Defendants, their present and former parent companies, present owners, former owners, subsidiaries, related or affiliated companies, shareholders, officers, directors, employees, agents, attorneys, insurers, successors, and assigns, and any individual or entity which could be jointly liable with Defendants, or any of them (the "Releasees"), for any and all claims that were or otherwise could have been brought under the facts pleaded in the Action arising out of or relating to work performed during the Class Period, including the following:

- Any claims for unpaid wages (including but not limited to overtime pay, minimum wage, regular wages, salary, bonuses, commissions, missed meal period pay, missed rest period pay, paid time off or other benefits), and claims for interest, penalties (including but not limited to wait time penalties), or premiums in connection therewith, as well as any claims under the California Labor Code, or California Wage Orders alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Action;
- Any claims for injunctive relief, declaratory relief, restitution, fraudulent business practices or punitive damages alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Action;
- Any claims under PAGA arising out of the wage, hour and payroll practices alleged or that could have been alleged under the facts pleaded in the complaints filed as part of the Action;
- Any and all other claims under California common law, the California Labor Code, California Wage Orders, and the California Business and Professions Code asserted in or that could have been asserted in the complaints filed as part of the Action; and
- Upon the Effective Date, any and all claims for unpaid wages, penalties, interest and attorneys' fees that could have been alleged under the Fair Labor Standards Act based upon the facts alleged in the complaint against the Released Parties for work performed during the Class Period will be released by the Class Members who submit a Claim Form.

If the Settlement is approved and you submit a timely and valid Claim Form, you will receive compensation and will be forever barred from asserting the above claims against the Released Parties.  If the settlement is approved and you have not submitted a timely and valid Claim Form and have not submitted a timely Request for Exclusion Form, you will not receive any money from the settlement and you will also be forever barred from asserting the above claims (excluding FLSA) against the Released Parties.

V.      **THE ATTORNEYS REPRESENTING THE PARTIES**

Attorneys for Plaintiff & the Class are:

Law Offices of Robert W. Sink
Robert Sink
1800 JFK Blvd., 14th Floor
Philadelphia, PA 19103
Telephone: 215-995-1000
Facsimile:  215-475-4600

The Downey Law Firm, LLC
Philip A. Downey
Cory Lee
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Tel: 213- 291-3333
Fax: 610-813-4579

Attorneys for Defendants are:

Littler Mendelson, PC
Elizabeth Staggs-Wilson
Michelle Rapoport
633 West Fifth Street, 63rd Floor
Los Angeles, California 90071
Telephone: 213-443-4300
Facsimile:  213-443-4299

VI.     **YOUR RIGHTS AS A CLASS MEMBER**

Your interests as a Settlement Class Member are represented by the Plaintiff and Class Counsel. Unless you opt out of the Class, you are a part of the Settlement Class, you will be bound by the terms of the settlement and any final judgment that may be entered by the Court, and will be deemed to have released certain claims against Defendants as described above.  As a member of the Class you will not be responsible for the payment of attorneys' fees or reimbursement of litigation expenses unless you retain your own counsel, in which event you will be responsible for your own attorneys' fees and costs.

        A.      **Submit a Claim**

In order to receive your share of the settlement you must complete and sign the Claim Form and return it, no later than thirty (30) days after mailing of this notice via regular mail to _____ at the following address:

c/o _____

The Claim Form must be postmarked no later than thirty (30) days after mailing of this notice. If the Claim Form is sent from within the United States it must be sent through the United States Postal Service via regular mail.  If you lost, misplaced, or need another Claim Form, in addition to contacting any of the class counsel at the addresses identified in Section I of this Notice, you may also contact the Claims Administrator toll-free at [1-_____.

## B.     Object to Settlement

You can object to the settlement before final approval.  However, if the Court rejects your objection you will still be bound by the terms of the settlement.  To object, you must file a written objection with the Clerk of the United States District Court Central District of California, Edward R. Roybal Federal Building and United States Courthouse, Courtroom 880-Roybal, 255 East Temple Street Los Angeles, CA 90012-3332 thirty (30) days after mailing of this notice, and send copies to Class Counsel and Defendants' counsel at the addresses listed in section I above.

Any written objection must contain your full name, current address, and include all objections and the reasons therefore, and include any and all supporting papers (including, without limitation, all briefs, written evidence, and declarations).  If you fail to comply with the objection procedure set forth herein you will be deemed to have not objected. To be valid and effective, any objection to approval of the settlement must be filed with the Clerk of the United States District Court Central District of California and served upon and received by each of the attorneys identified in section I above, postmarked no later than thirty (30) days after mailing of this notice.

If you wish to appear at the Final Approval Hearing and present your objection to the Court orally, your written statement must include a statement of intent to appear at the Final Approval Hearing. Failure to do so will bar you from appearing at the Final Approval Hearing and presenting your objections to the court. If you fail to timely file written objections you will not be permitted to present your objections at the Final Approval Hearing. If you choose to file an objection to the terms of this settlement, you may enter an appearance in propria persona (meaning you choose to represent yourself) or through your own attorney. The Final Approval Hearing at which the Court will adjudicate any Objections, and be asked to approve the settlement will be held at the    United States District Court Central District of California,    , on [date] at [time] in Courtroom  or such other, later date as the Court may authorize.
If you file an objection you remain eligible to submit a Claim Form and receive monetary compensation from the settlement.

**IF YOU INTEND TO OBJECT TO THE SETTLEMENT, BUT WISH TO RECEIVE YOUR SHARE OF APPROVED SETTLEMENT FUNDS, YOU MUST TIMELY FILE YOUR CLAIM AS STATED ABOVE.  IF THE COURT APPROVES THE SETTLEMENT DESPITE ANY OBJECTIONS, AND YOU DO NOT HAVE A CLAIM ON FILE, YOU WILL NOT RECEIVE ANY SETTLEMENT FUNDS.**

### C.    Exclude Yourself from the Settlement

In order for you to validly and effectively request exclusion from, and opt out of, this Settlement, you must submit a written, signed, and dated request to the Claims Administrator.   The Exclusion request must include the last four digits of your social security number to be valid or applicable work permit number if you have no social security number.  The request for exclusion must be postmarked, or physically delivered to the Claims Administrator, no later than, thirty (30) days after mailing.

If you desire to be excluded from, and opt out of, this Settlement but fail to comply with the Exclusion procedure set forth herein, you shall be deemed to have not been excluded or opted out. Any person who files a complete and timely request for Exclusion shall, upon receipt, no longer be a member of the settlement class, shall be barred from participating in any portion of the settlement, may not object to the settlement, and shall receive no benefits from the settlement.  Any such person will not release any claims he/she may have against Defendants. You may choose to proceed against the Defendants at your expense and costs.

If you first request exclusion from, and opt out of, the settlement and then object, the objections will not be considered valid. If you object and then request exclusion from, and opt out of the settlement, you will be deemed to have waived your objection. If you submit both a Claim Form and a request for exclusion, only the Claim Form will be valid.

### D.    Do Nothing

You are not required to take any action by reason of receipt of this Notice.  If you do nothing, then, you will not receive any portion of the settlement, but will remain a member of the Settlement Class and will be bound by the terms of the settlement and have released your claims as described above.

## VII.    PAYMENT TO CLASS COUNSEL

The attorneys for the plaintiffs will be paid from the total settlement amount. The attorneys may ask for an award of up to 33 ⅓% of the Gross Settlement in fees and up to $75,000 in costs, and will receive that award if their request is approved by the Court. If approved by the Court, an Enhancement Award not exceeding $5,000 total for Plaintiff will be paid from the settlement proceeds for his service.

## VIII.    ADDITIONAL INFORMATION IS AVAILABLE

The above is a summary of the basic terms of the settlement.  For the precise terms and conditions of the settlement, you are referred to the detailed Stipulated Settlement Agreement ("Stipulation") and Order thereon, which will be on file with the Clerk of the Court.  The pleadings and other records in this litigation including the Stipulation may be examined at any time during regular business hours at United States District Court, Central District of California, Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012-3332.

Please do not call the Court for information about this Settlement or the claims process.

**EXHIBIT C**

# CLAIM FORM

United States District Court for the Central District of California
*Victor Lopez v. The GEO Group, Inc. Case No.* 2:14-CV-06639-PSG (PLAx) This Claim Form includes information based on GEO's records.  It is important that you carefully check the information provided and correct any inaccuracies.  This Claim Form MUST be postmarked no later than _____ and received by the Claims Administrator.  **You MUST complete, sign, and return this Claim Form if you wish to receive money from this settlement.**

## I.    CLAIMANT INFORMATION

This is the information that we have for you and where your settlement check will be mailed:

Corrected or New Information

_____          _____

_____          _____

_____          _____

Tel:_____          _____

If your name, address, or phone number is incorrect or has changed, please legibly print the correct or new information on the corresponding lines above.

## II.    EMPLOYMENT INFORMATION

Defendants' personnel records state that the exact dates of your employment for Defendants' in California during the Class Period were **[## / ## / #### through ## / ## / ####]**.

Defendants' records reflect that during your employment you worked ____ weeks as a nonexempt employee.

Based on the stated information your estimated settlement share is $_____.

If you agree with the information stated above, please sign, date where indicated on the reverse, and return this Claim Form postmarked on or before 30 days of mailing, to receive your monetary recovery.

☐         I disagree with the information stated above.  I believe that my actual dates of employment during the Class Period were ____ ___ / ___ ___ / ___ ___ ___ ___ to ___ ___ / ___ ___ / ___ ___ ___ ___.  I have attached tax and/or other documentation that supports this belief.

## III.    RELEASE OF CLAIMS

By completing this Claim Form and accepting the benefits under this settlement, I hereby agree that: I, and all persons purporting to act on my behalf or purporting to assert a claim under or through me, including, but not limited to, my dependents, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, representative, legal, equitable, direct or indirect, or any other type or in any other capacity hereby forever completely and irrevocably release and discharge The GEO Group, Inc. d/b/a GEO California, Inc., GEO Corrections Holdings, Inc., and GEO Corrections and Detention,

LLC, their present and former parent companies, present owners, former owners, subsidiaries, shareholders, officers, directors, employees, agents, attorneys, insurers, successors, and assigns and any individual or entity which could be jointly liable with GEO, or any of them (hereinafter "GEO," "Defendants," or "Released Parties") of all claims against the Released Parties for work performed during the class period which were alleged or could have been alleged as part of the litigation, including the following:

a.      Any claims for unpaid wages (including but not limited to overtime pay, minimum wage, regular wages, salary, bonuses, commissions, missed meal period pay, missed rest period pay, paid time off or other benefits), and claims for interest, penalties (including but not limited to wait time penalties), or premiums in connection therewith, as well as any claims under the California Labor Code, or California Wage Orders alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Litigation;

b.      Any claims for injunctive relief, declaratory relief, restitution, fraudulent business practices or punitive damages alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Litigation;

c.      Any claims under PAGA arising out of the wage, hour and payroll practices alleged or could have been alleged under the facts pleaded in the complaints filed as part of the Litigation;

d.      Any and all other claims under California common law, the California Labor Code, California Wage Orders, and the California Business and Professions Code asserted in or that could have been asserted in the complaints filed as part of the Litigation; and

e.      Any and all claims for unpaid wages, penalties, interest and attorneys' fees that could have been alleged under the Fair Labor Standards Act based upon the facts alleged in the complaint.

## IV.    MAILING INFORMATION

Please mail this completed Claim Form to the Claims Administrator at the address listed below.  Your completed Claim Form must be postmarked on or before 30 days from mailing or else you will forfeit your benefits under this Settlement.

> GEO Class Action Settlement
> c/o Simpluris, Claims Administrator
> _____
> _____
> Tel:_____

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: _____                    _____
                                         Signature

                                         _____
                                         Print Name

**EXHIBIT D**

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR LOPEZ, on behalf of himself and on behalf of all others similarly situated, <br> Plaintiff <br> v. <br> THE GEO GROUP, INC. D/B/A GEO CALIFORNIA, INC.; GEO CORRECTIONS HOLDINGS, INC.; AND GEO CORRECTIONS AND DETENTION, LLC, <br> Defendants. | Case No. CV14-06639-PSG (PLAx) <br><br> **CLASS ACTION** <br><br> **OPT OUT/ REQUEST FOR EXCLUSION** |

**ONLY SUBMIT THIS FORM IF YOU <u>DO NOT</u> WISH TO BE PART OF THE PROPOSED CLASS ACTION SETTLEMENT.**

**IF YOU SUBMIT THIS FORM, YOU WILL BE EXCLUDED FROM THE PROPOSED CLASS ACTION SETTLEMENT AND YOU WILL NOT RECEIVE ANY PAYMENT FROM THIS SETTLEMENT**

I, _____, wish to opt-out of the proposed class action settlement.  Please print the following information (this information is necessary to ensure that the correct person is deleted from the list of Class Members):

_____

Full Name and Address

_____

Last Four Digits of Social Security Number

_____

SIGNATURE                              DATE

**IF YOU WISH TO BE EXCLUDED FROM THIS SETTLEMENT, RETURN THIS FORM IN THE ENVELOPE PROVIIDED POSTMARKED NO LATER THAN [DATE] UNTIMELY OPT-OUT FORMS WILL NOT BE ACCEPTED.**

# REQUEST FOR JUDICIAL NOTICE

# EXHIBIT 2

Wage & Hour Class Action Settlement Agreement -
EXHIBITS

1 Robert W. Sink, Esq. (*admitted pro hac vice*)
  rsink@sinklawoffices.com
2 **LAW OFFICES OF ROBERT W. SINK**
  1800 J.F.K. Boulevard, 14th Floor
3 Philadelphia, PA 19103
  Tel:   215-995-1000
4 Fax:   215-475-4600
5
6 Philip A. Downey, Esq. (*admitted pro hac vice*)
  downeyjustice@gmail.com
7 Cory G. Lee, Esq. (SBN 216921)
  downeyjusticelee@gmail.com
8 **THE DOWNEY LAW FIRM, LLC**
  9595 Wilshire Boulevard, 9th Floor
9 Beverly Hills, CA 90212
  Tel:   213-291-3333
10 Fax:   610-643-4352
11
12 Attorneys for Plaintiff and the Proposed Class
13
14 **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16 VICTOR LOPEZ, on behalf of himself and on behalf of all others similarly situated, | Case No. CV14-06639-PSG (PLAx) |
| 17 | **CLASS ACTION** |
| Plaintiff, | |
| 18 v. | **EXHIBIT 1** |
| | **TO MEMORANDUM OF POINTS** |
| 19 THE GEO GROUP, INC. D/B/A GEO | **AND AUTHORITIES I.S.O.** |
| 20 CALIFORNIA, INC.; GEO | **PLAINTIFF'S UNOPPOSED** |
| CORRECTIONS HOLDINGS, INC.; | **MOTION FOR PRELIMINARY** |
| 21 AND GEO CORRECTIONS AND | **APPROVAL OF CLASS ACTION** |
| 22 DETENTION, LLC, | **SETTLEMENT** |
| Defendants. | |
| 23 | **HEARING DATE: Dec. 21, 2015** |
| | **TIME: 1:30p.m.** |
| 24 | |
| 25 | **Hon. Philip Gutierrez** |

26
27
28

**EXHIBIT 1**
**TO MEMORANDUM OF POINTS AND AUTHORITIES I.S.O. PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Lopez v. The GEO Group, Inc. d/b/a GEO California, Inc., et al.*

Robert W. Sink, Esq. (admitted pro hac vice)
rsink@sinklawoffices.com
LAW OFFICES OF ROBERT W. SINK
1800 J.F.K. Boulevard, 14th Floor
Philadelphia, PA 19103
Tel:   215-995-1000
Fax:   215-475-4600

Attorneys for Plaintiff and the Proposed Class
Additional counsel listed on second page

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VICTOR LOPEZ, on behalf of himself and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC. D/B/A GEO CALIFORNIA, INC.; GEO CORRECTIONS HOLDINGS, INC.; AND GEO CORRECTIONS AND DETENTION, LLC,<br><br>        Defendant. | Case No.  CV14-06639-PSG (PLAx)<br><br>**CLASS ACTION**<br><br>**SETTLEMENT AGREEMENT** |

1

Philip A. Downey, Esq. (*admitted pro hac vice*)

2

downeyjustice@gmail.com
Cory G. Lee, Esq. (SBN 216921)

3

downeyjusticelee@gmail.com

4

**THE DOWNEY LAW FIRM, LLC**
9595 Wilshire Boulevard, 9th Floor

5

Beverly Hills, CA 90212

6

Tel:   213-291-3333
Fax:   610-643-4352

7

8

Attorneys for Plaintiff and the Proposed Class

9

Elizabeth Staggs Wilson, Esq. (SBN 183160)
estaggs-wilson@littler.com

10

Michelle Rapoport, Esq. (SBN 247459)
mrapoport@littler.com

11

**LITTLER MENDELSON, PC**
633 W. 5th Street, 63rd Floor

12

Los Angeles, CA 90071
Tel:   213-443-4300

13

Fax:   213-443-4299

14

Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## PREAMBLE

1.    This Settlement Agreement ("Settlement Agreement," "Settlement,"  or "Agreement") is entered into between Plaintiff, Victor Lopez (the "Named Plaintiff"), individually and as Class Representative on behalf of putative Class Members as further defined in Section III of this Agreement (collectively, with the Named Plaintiff, the "Settlement Class"), on the one hand, and Defendants, The GEO Group, Inc. d/b/a GEO California, Inc., GEO Corrections Holdings, Inc., and GEO Corrections and Detention, LLC, their present and former parent companies, present owners, former owners, subsidiaries, shareholders, officers, directors, employees, agents, attorneys, insurers, successors, and assigns and any individual or entity which could be jointly liable with GEO, or any of them (hereinafter "GEO," "Defendants," or "Released Parties"), on the other hand.  The Settlement Class and Defendants will be referred to collectively herein as the "Settling Parties."

2.    The Named Plaintiff is a former employee of Defendants who filed an Amended Complaint entitled *Lopez v. The GEO Group, Inc., et al.* on October 14, 2015 in the U.S. District Court for the Central District of California ("the Action").

3.    The Action seeks damages for Named Plaintiffs and putative Class Members for unpaid wages, unpaid overtime, denied meal and rest periods, and waiting time penalties, penalties under the Labor Code and California Industrial Welfare Commission ("IWC") wage orders, for violation of the Unfair Business Practices Act ("UCL"), Business and Professions Code §17200, *et seq*., and for penalties under the Private Attorney General Act ("PAGA").  Defendants deny all of the allegations in the Action and make no admission of liability or wrongdoing.

4.    During the course of the Actions, the parties have engaged in more than a year of contentious litigation.  The parties have exchanged and answered numerous interrogatories, requests for production of documents, and extensive data.  Furthermore,

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1  the depositions of the Named Plaintiff and Defendants' former regional director/current

2  warden.

3       5.     On September 23, 2015, the Settling Parties attended a private mediation

4  before respected mediator, Robert Kaplan, Esquire of Judicate West.  This mediation

5  was hotly contested and lasted an entire day.  A few days later, the Settlement was

6  ultimately reached.

7       6.     The Settling Parties have now agreed to avoid further litigation and to

8  settle and resolve the Settlement Class' claims against Defendants as set forth in this

9  Settlement Agreement.

10       7.     This Agreement shall become effective upon the "Effective Date," as set

11  forth in below.  The Settling Parties hereby agree to do all things and to engage in all

12  procedures reasonably necessary and appropriate to obtain final Court approval of this

13  Agreement, in consideration for:  (a) the payment by Defendants of the consideration

14  described herein, subject to the terms, conditions and limitations of this Agreement; and

15  (b) the release and dismissal of all claims by members of the Settlement Class as

16  described herein.

17  ## II.

18  ## PAYMENTS TO THE SETTLEMENT CLASS, CLASS COUNSEL,

19  ## NAMED PLAINTIFF, AND THE SETTLEMENT

20  ## ADMINISTRATOR

21       8.     Subject to Court approval, and the provisions of this Agreement,

22  Defendants must pay one million, three hundred seventy-five thousand U.S. dollars and

23  zero cents ($1,375,000) (the "Gross Settlement Amount" or "GSA") to be paid in

24  consideration for the settlement and dismissal of the Action and the related release of

25  claims the members of the Settlement Class may have against Defendants as described

26  herein.

27       9.     The Gross Settlement Amount is the maximum amount that Defendants

28  shall be required to pay for settlement of the Action, except that Defendants shall pay

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1    the employer's share of any payroll taxes, including, but not limited to, Medicare taxes,

2    Social Security Taxes, federal unemployment taxes, state unemployment taxes, and

3    employment training taxes (collectively, "Payroll Taxes"), on all wages paid as part of

4    the settlement of the Action.  The GSA will cover compensation to the Settlement

5    Class, payment to the LWDA for PAGA claims, additional compensation to the Named

6    Plaintiff as Class Representative, the cost of claims administration and notice, and

7    attorneys' fees and reimbursement of litigation costs and expenses to Class Counsel.

8        10.     This settlement is further contingent upon the Court's acceptance of

9    Plaintiff's amended complaint seeking penalties under the California Private Attorney

10    General Act for unpaid wages, including minimum wages, meal and rest break

11    violations, and all penalties available to Plaintiff and the putative class under the Labor

12    Code, including but not limited to sections 226 and 203.

13                           **III.**

14        **CLASS CERTIFICATION FOR SETTLEMENT PURPOSES**

15        11.     Solely for the purpose of effectuating this Settlement, and subject to Court

16    approval, the Settling Parties hereby stipulate to certification of the following

17    Settlement Class which consists of approximately 2,513 individuals:

18

19           All persons who, at any time from July 22, 2010, to the date of preliminary approval of this Settlement (the "Class Period"),

20           were employed by GEO as a non-exempt employee at any of the following facilities: (1) Adelanto Detention Facility (East and

21           West); (2) Alhambra Jail; (3) Baldwin Park Jail; (4) Bell Gardens City Jail; (5) Central Valley Modified Community

22           Correctional Facility; (6) Desert View Modified Community Correctional Facility; (7) Downey Jail; (8) Fontana City Jail; (9)

23           Garden Grove City Jail; (10) Golden State Medium Community Correctional Facility; (11) Leo Chesney Community

24           Correctional Facility; (12) McFarland Community Correctional Facility; (13) Mesa Verde Community Correctional Facility;

25           (14) Montebello City Jail; (15) Ontario City Jail; (16) Western Region Detention Facility at San Diego.

26        12.     The certification of the Settlement Class, the Settling Parties' settlement

27    of the Action, and their rights and obligations hereunder, are contingent upon final

28    approval by the Court of this Agreement.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

3.

## IV.

## APPOINTMENT OF NAMED PLAINTIFF'S COUNSEL

## AS SETTLEMENT CLASS COUNSEL

13.     Subject to the Court's approval, the Settling Parties hereby stipulate to the Court's appointment of Settlement Class Counsel as follows:  Robert Sink and the Law Offices of Robert Sink, and Philip Downey of The Downey Law Firm, LLC.

## V.

## SETTLEMENT APPROVAL PROCEDURES, APPOINTMENT OF

## SETTLEMENT ADMINISTRATOR, AND NOTICE TO CLASS

## MEMBERS

14.     The Settling Parties' settlement of the Actions, and their rights and obligations hereunder, are expressly conditioned on both the Court's preliminary and final approval of this Settlement as to the Settlement Class defined in Section III of this Agreement.  Preliminary approval shall be through the entry of an "Order of Preliminary Approval," substantially in the form and content of Exhibit A hereto, including, requesting that the Court enjoin the Class Members from filing any DLSE/DOL claims, or from initiating other proceedings, regarding claims released by the Settlement pending final approval of the Settlement Agreement by the Court.

15.     On or before November 3, 2015, Class Counsel shall file a motion with the Court for preliminary approval of the Settlement Agreement, and for an order certifying the Settlement Class for settlement purposes only, and setting a date for the settlement fairness hearing ("Final Approval Hearing").  In conjunction with this request, Class Counsel shall submit this Agreement and supporting papers including proposed forms of all notices and other documents, as attached hereto, necessary to implement the Settlement Agreement.  The Order for Preliminary Approval shall provide for notice of the Agreement and related matters ("Class Notice") to the Settlement Class as specified herein.  Class Notice will provide notice to the Settlement Class, with the exception of the Named Plaintiff, of the procedures to 1.) participate in the Settlement (by submitting

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1  a "Claim Form"), 2.) withdraw from the Settlement Class ("Request for Exclusion") or

2  3.) object to the Settlement.  Said Class Notice, Claim Form, and Request for Exclusion

3  shall be in the form attached hereto as Exhibits B, C, and D, respectively.

4     16. Subject to Court approval, the Settling Parties agree that Simpluris will be

5  appointed as Settlement Administrator.  Simpluris has agreed to cap its fees at $22,000.

6  The Settlement Administrator shall be paid from the GSA as set forth in Paragraph 8 of

7  this Agreement.  The Settlement Administrator will be responsible for calculating the

8  monies to be made available to each Qualified Claimant of the Settlement Class;

9  mailing the Class Notices; receiving and logging the Claims Forms; receiving and

10  logging the Requests for Exclusion; researching and updating addresses through

11  skip-traces and similar means; answering questions from Settlement Class Members;

12  reporting on the status of the Settlement to the Settling Parties; preparing a declaration

13  regarding its due diligence in the claims administration process; providing the Settling

14  Parties with data regarding the filing of Claim Forms and Requests for Exclusion, the

15  calculation of distributions; establishing and maintaining a noninterest-bearing

16  distribution account for purposes of distributing settlement checks and distributions of

17  attorneys' fees, costs, and Enhancement Awards; calculating withholding amounts and

18  other tax obligations; handling reporting obligations including processing 1099s and

19  W-2s; and performing such other tasks as the Settling Parties may direct.

20     17. Defendants agree to provide the Settlement Administrator, within ten (10)

21  calendar days of preliminary approval by the Court of the Settlement, a database

22  containing the following information: (1) the full name, and last known address and full

23  social security number of all Settlement Class Members; (2) the data necessary to

24  calculate the number of work weeks for each Settlement Class Member, including, but

25  not limited to, the start and end dates for each period during the Class Period that

26  Settlement Class Members were employed by Defendants.

27     18. Defendants shall meet-and-confer with the Settlement Administrator

28  regarding the format of the database referenced in Paragraph 17 of this Agreement, and

1    shall cooperate to provide any additional information which the Settlement
2    Administrator may request that is reasonable and necessary for the purpose of giving
3    Class Notice and otherwise administering this Agreement.

4        19.    Within twenty (20) calendar days of entry of the Order of Preliminary
5    Approval, the Settlement Administrator will mail the Notice, Claims Form, and
6    Request for Exclusion ("Notice Documents") to the Settlement Class Members via
7    first-class U.S. Mail.

8        20.    Any Notice Documents that are returned as undeliverable by the Postal
9    Service with a forwarding address will be re-mailed to the new address and the
10   Settlement Administrator will update the Settlement Class Member List accordingly.

11       21.    For any Notice Documents that are returned as undeliverable by the Postal
12   Service without a forwarding address, the Settlement Administrator will perform one
13   "skip trace" or equivalent address search to locate the most accurate and updated
14   address information.  The Settlement Administrator shall then re-mail the Notice
15   materials to any new addresses found.

16       22.    A reminder postcard shall be sent to all Class Members who have not made
17   a claim or opted out within fifteen (15) calendar days of the first mailing.

18       23.    To be effective, a Request for Exclusion must be postmarked no later than
19   thirty (30) calendar days after the mailing of the Notice Documents (the "Exclusion
20   Deadline").  Within five (5) business days after the Exclusion Deadline, the Settlement
21   Administrator shall send a list to counsel for the parties of all Settlement Class
22   Members who timely sent their Request for Exclusion.  If there are 250 or more Class
23   Members who timely exclude themselves, Defendants will have the option, in their sole
24   discretion to void the Settlement, within ten (10) business days after the Exclusion
25   Deadline.

26       24.    The Class Notice shall be accompanied by a Claim Form substantially in
27   the form and content of Exhibit C hereto, which a member of the Settlement Class may
28   fill out and return to the Settlement Administrator indicating that the individual wishes

1   to receive payment pursuant to this Agreement.   To be effective, a Claim Form must be

2   postmarked no later than thirty (30) calendar days after the mailing of the Notice

3   Documents (the "Claims Deadline").  Within five (5) business days after the Claims

4   Deadline, the Settlement Administrator shall send a list to counsel for the parties of all

5   Settlement Class Members who properly completed a Claim Form and returned it to the

6   Settlement Administrator in a timely manner ("Qualified Claimants").  Payments to

7   Class Members from the NSA shall only be made to Qualified Claimants ("Qualified

8   Member Payouts").

9        25.   The Class Notice shall indicate that all members of the Settlement Class

10   shall have the right to file written objections to the Settlement and/or to appear at the

11   Final Approval Hearing (the then-current date of which shall be included in the Class

12   Notice).  Written objections, if any, must be filed with the Court, and mailed with a

13   postmark to the contact persons set out in Paragraph 49, no later than thirty (30)

14   calendar days after the mailing of the Notice Documents (the "Objection Deadline").

15   The Settling Parties agree that if any Settlement Class Member objects to the Settlement

16   or disputes the basis for determining their share of the NSA, Defendants' records shall

17   presumptively control.  The Settling Parties further agree that any dispute that cannot be

18   resolved by Class Counsel (as defined below) and GEO's counsel may be brought

19   before the Court before final approval of the Settlement.

20        26.   The Settlement Administrator shall provide written notice to Class

21   Counsel and Defendants no later than five (5) business days after the Claims and

22   Exclusion Deadlines – as defined in Paragraphs 23 and 24 of this Agreement – with a

23   complete list of Qualified Claimants as well as all members of the Settlement Class who

24   have timely submitted Requests for Exclusion.

25

26

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

7.

## VI.

## THE EFFECTIVE DATE AND TERMINATION

27.    If the Settling Parties does not void the settlement pursuant to Paragraph 31, this Agreement shall become final and effective (the "Effective Date") on the occurrence of all of the following events described in Paragraphs 28 through 30:

28.    The Settlement is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

29.    Entry by the Court of an Order and Judgment Granting Final Approval. The parties shall jointly prepare a proposed Order and Judgment to this effect, which shall reflect, inter alia, the Court's approval of the settlement pursuant to the terms of this Agreement.  Said proposed Order and Judgment shall be filed with the Court no later than 15 calendar days before the Final Approval Hearing.

30.    The time for appeal from the Court's approval of the Settlement as described in Paragraph 28 hereof and entry of a final judgment as described in Paragraph 29 hereof has expired or, if appealed, either all such appeals have been dismissed prior to resolution by the appellate court or approval of this Settlement Agreement and final judgment has been affirmed in its entirety by the court of the last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review, by certiorari or otherwise.

31.    Subject to the obligation(s) of Mutual Full Cooperation, either Settling Party may terminate this Settlement if any Court declines to enter the Preliminary Approval Order, the Final Approval Order, or final judgment in substantially the form submitted by the Settling Parties, or if the Settlement as agreed does not become final because of appellate court action.  The terminating Settling Party shall give to the other Settling Party (through its counsel) written notice of its decision to terminate no later than ten (10) calendar days after receiving notice that one of the enumerated events has occurred.  Termination shall have the following effects:

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

8.

1   (a)   The Settlement Agreement and Memorandum of Understanding

2   ("MOU") shall be terminated and shall have no force or effect, and no Party shall

3   be bound by any of its terms.

4   (b)   In the event the Settlement is terminated, GEO shall have no

5   obligation to make any payments to any party, Class Member or attorney.

6   (c)   The Preliminary Approval Order, Final Approval Order and final

7   judgment, including any order of class certification, shall be vacated.

8   (d)   The Settlement Agreement and all negotiations, statements and

9   proceedings relating thereto shall be without prejudice to the rights of any of the

10   Parties, all of whom shall be restored to their respective positions prior to the

11   Settlement.

12   (e)   Except as otherwise discoverable, neither this Agreement nor the

13   MOU any ancillary documents, actions, statements or filings in furtherance of

14   settlement (including all matters associated with the mediation) shall be

15   admissible or offered into evidence in the Action or any other action for any

16   purpose whatsoever.

17

18   **VII.**

19   **ATTORNEYS' FEES, COSTS AND EXPENSES, AND**

20   **ENHANCEMENT AWARDS**

21   32.   The Action alleges a claim for attorneys' fees and costs.  The Settling

22   Parties agree that any and all such claims for attorneys' fees and costs have been settled

23   in this Agreement and are included in the settlement amount set forth in Paragraph 8 of

24   this Agreement.

25   33.   Class Counsel may petition the Court for attorneys' fees not to exceed

26   one-third (33 1/3%) of $1,375,000, including any interest, plus reasonable costs not to

27   exceed $75,000, subject to approval by the Court.  Attorneys' fees paid pursuant to this

28   Settlement Agreement shall be inclusive of all fees in this matter.  Defendants agree not

9.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

1    to object to Class Counsel's fees of up to one-third (33⅓ %) of $1,375,000 and

2    reasonable costs approved by the Court not to exceed $75,000.  The Parties agree that

3    the apportionment of attorneys' fees and costs among Class Counsel is an independent

4    and separate agreement among Class Counsel.  Any reduction by the Court of Class

5    Counsel's claimed attorneys' fees and/or reasonable costs shall not be sufficient

6    grounds to void the Settlement.  Additionally, Class Counsel will petition the Court to

7    pay the Settlement Administrator out of the GSA and Defendants agrees not to object to

8    that amount

9        34.    Class Counsel may apply to the Court for an additional award to Named

10   Plaintiff of up to five thousand U.S. dollars and no cents ($5,000) as reasonable

11   additional compensation for the time and effort expended by him in connection with the

12   initiation and maintenance of the Action and in consideration for the claims released

13   herein (the "Enhancement Award").  Defendants will not oppose Class Counsel's

14   application under this Paragraph.  Any Enhancement Award will be in addition to any

15   amount Named Plaintiff may be entitled to receive on account of his own individual

16   claims pursuant to Section IX of this Agreement; however, the releases set out in

17   Paragraphs 44, 45 and 46 of this Agreement shall bind the Named Plaintiff, and the

18   Enhancement Award shall be adequate consideration for said release.

19       35.    Any awards pursuant to Paragraphs 33 and/or 34 will be funded solely and

20   completely from the GSA.

## IX.

## PLAN OF ALLOCATION AND

## DISTRIBUTION OF THE SETTLEMENT FUND

24       36.    The GSA shall be allocated, in order, as follows:

25           (a)    First, to attorneys' fees, costs and expenses of Class Counsel, as

26   may be awarded by the Court pursuant to Paragraph 33 of this Agreement;

27           (b)    Second, to any Enhancement Award, as may be awarded by the

28   Court pursuant to Paragraph 34 of this Agreement;

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

10.

1         (c)      Third, to costs of settlement administration; and

2         (d)      Fourth, to the LWDA, a $15,000 payment, which represents 75% of

3 the amount allocated to settlement of the PAGA claims (or such other amount, if any,

4 ordered by the Court);

5         (e)      Fifth, to the "Net Settlement Amount" or "NSA."   The Net

6 Settlement Amount shall be defined as the Gross Settlement Amount less attorneys'

7 fees, costs and expenses of Class Counsel, costs of settlement administration,

8 Enhancement Award to the Class Representative, and payment to the LWDA. The

9 Parties agree that 100% of the Net Settlement Amount will be distributed as described

10 in Paragraph 37.

11     37.     Defendants agree to distribute 100% of the NSA on a pro rata basis to all

12 Qualified Claimants based on the number of weeks each person worked.

13     38.     The Settlement Administrator shall make payments from the NSA only

14 pursuant to the terms of this Settlement Agreement and only after the Effective Date.

15     39.     For the purposes of calculating applicable taxes:

16         (a)      From the NSA, one-third (1/3) of each Settlement Payment shall be

17 allocated to unpaid wages, one-third (1/3) to penalties, and one-third (1/3) to

18 interest on wages.  The Settlement Administrator shall make appropriate

19 withholdings for the payment of taxes and other required withholdings.

20 Defendants will be responsible for the employer's share of any Payroll Taxes and

21 withholdings applicable to the Settlement Payments, and the Qualified Claimants

22 shall be individually responsible for the employee's share of taxes attributable to

23 receipt of the Qualified Member's payment.  The Settlement Administrator shall

24 be responsible for determining the employer share of any applicable payroll taxes

25 and withholdings attributable to the Class Member Payouts, after which

26 Defendants shall –through the Settlement Administrator – remit said monies,

27 along with the appropriate documentation, to the relevant taxing agencies in

28 accordance with applicable laws and regulations.  Defendants shall provide the

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

11.

1   Settlement Administrator with any information reasonably necessary to perform
2   the calculations discussed in this Paragraph.

3   (b)   One hundred percent (100%) of the Enhancement Award will be
4   allocated to ordinary income, payable on a Form 1099.

5   40.   Defendants shall fund the GSA, plus Defendants' share of payroll taxes
6   attributable to same, to the Settlement Administrator no later than fifteen (15) days after
7   the Effective Date.

8   41.   The Settlement Administrator shall deposit the GSA, plus Defendants'
9   share of the Payroll Taxes attributable to same, in a noninterest-bearing distribution
10  account immediately upon receipt of the fund transfer discussed in Paragraph 40.  The
11  Settlement Administrator shall pay Class Member Payouts, less applicable taxes and
12  withholdings, by mailing the payments via first-class mail to the Qualified Claimants of
13  the Settlement Class within five (5) business days of receipt of the GSA.

14  42.   The Settlement Administrator shall pay Class Counsel any attorneys' fees,
15  costs and expenses approved by the Court within five (5) business days of receipt of the
16  GSA.

17  43.   The Settlement Administrator shall pay Named Plaintiff any Enhancement
18  Award approved by the Court within five (5) business days of receipt of the GSA.

19                                      **X.**

20                                 **RELEASES**

21  44.   Upon the Effective Date, the claims released by the Class Members who
22  do not opt out of this Settlement will include all claims against the Released Parties, for
23  work performed during the Class Period, which were alleged or could have been alleged
24  as part of the litigation, including the following:

25  a.   Any claims for unpaid wages (including but not limited to overtime pay,
26       minimum wage, regular wages, salary, bonuses, commissions, missed
27       meal period pay, missed rest period pay, paid time off or other benefits),
28       and claims for interest, penalties (including but not limited to wait time

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

12.

1  penalties), or premiums in connection therewith, as well as any claims

2  under the California Labor Code, or California Wage Orders alleged or

3  which could have been alleged under the facts pleaded in the complaints

4  filed as part of the Litigation.

5   b.   Any claims for injunctive relief, declaratory relief, restitution, fraudulent

6  business practices or punitive damages alleged or which could have been

7  alleged under the facts pleaded in the complaints filed as part of the

8  Litigation;

9   c.   Any claims under PAGA arising out of the wage, hour and payroll

10  practices alleged or could have been alleged under the facts pleaded in the

11  complaints filed as part of the Litigation; and

12   d.   Any and all other claims under California common law, the California

13  Labor Code, California Wage Orders, and the California Business and

14  Professions Code asserted in or that could have been asserted in the

15  complaints filed as part of the Litigation.

16   45.   Upon the Effective Date, any and all claims for unpaid wages, penalties,

17  interest and attorneys' fees that could have been alleged under the Fair Labor Standards

18  Act based upon the facts alleged in the complaint against the Released Parties for work

19  performed during the Class Period will be released by the Class Members who opt in to

20  this Settlement by submitting a Claim Form.

21   46.   Upon the Effective Date, as to the claims of Lopez, the Released Claims

22  further include, without limitation, any and all claims whatsoever regarding Lopez's

23  employment and/or the termination of his employment with Defendants and/or any of

24  the Released Parties including, but not limited to, any claims for wages, bonuses,

25  severance pay, employment benefits, stock options, violation of any personnel policy,

26  any claims based on discrimination, harassment, unlawful retaliation, violation of

27  public policy, or damages of any kind whatsoever, arising out of any common law torts,

28  contracts, express or implied, any covenant of good faith and fair dealing, any theory of

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

13.

1   wrongful discharge, any theory of negligence, any theory of retaliation, any legal

2   restriction on Defendants' right to terminate the employment relationship, or any

3   federal, state, or other governmental statute, executive order, regulation or ordinance, or

4   common law, or any other basis whatsoever, to the fullest extent provided by law.

5   Lopez shall be deemed to have, and by operation of the Final Judgment shall have,

6   expressly waived and relinquished to the fullest extent permitted by law the provisions,

7   rights, and benefits of Section 1542 of the California Civil Code, or any other similar

8   provision under federal or state law that purports to limit the scope of a general release.

9   Lopez, for himself, has read Section 1542 of the Civil Code of the State of California,

10  which provides as follows:

11   **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH**

12   **THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS**

13   **OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,**

14   **WHICH IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY**

15   **AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

16                                    **XI.**

17              **ADDITIONAL TERMS AND CONDITIONS**

18       47.   Settlement Fair and Reasonable

19            Class Counsel has considerable experience in litigating and settling

20  wage-and-hour class actions of this type, and is sufficiently familiar with the facts of

21  this case and the applicable laws and regulations to make an informed judgment as to

22  the fairness of this Settlement. In light of this experience, and for reasons that will be

23  more fully explained in Class Counsel's motion for preliminary approval, Class

24  Counsel and the Named Plaintiff believe that the settlement terms herein are fair and

25  reasonable with regard to the interests of the Settlement Class.

26

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

14.

48.     Settlement the Result of Arm's-Length Bargaining.

The terms of the Settlement Agreement are the result of over one year of litigation with extensive discovery, and following an entire day of arm's-length negotiations before a respected mediator.

49.     Notices.

Except for Settlement Class Member notices which are required herein to be made to or by the Settlement Administrator, all notices, requests, demands and other communications related to or in connection with this Agreement shall be in writing, and shall be provided by appropriate method depending on the urgency (e.g., personal delivery, facsimile, overnight delivery, or first-class U.S. mail) to:

**TO THE SETTLING CLASS:**                    **TO DEFENDANTS:**
Robert Sink                                   Elizabeth Staggs-Wilson
**LAW OFFICES OF ROBERT W.**                  Michelle Rapoport
**SINK**                                      **LITTLER MENDELSON, PC**
1800 JFK Boulevard, 14th Floor                633 W. 5th Street, 63rd Floor
Philadelphia, Pennsylvania 19103              Los Angeles, CA 90071
Telephone:   215-995-1000                     Telephone:   213-443-4300
Facsimile:   215-475-4600                     Facsimile:   213-443-4299

50.     Modification by Writing Only.

This Agreement, and its terms and Exhibits, may be modified only in a writing signed by all counsel of record for the Settling Parties, and will not become effective unless and until approved by the Court or otherwise as ordered by the Court.

51.     Representations.

(a)     The Named Plaintiff, on behalf of himself and the Settlement Class, has expressly authorized Class Counsel to take all appropriate actions required or permitted to be taken pursuant to this Agreement to effectuate its terms.

(b)     Each attorney executing this Agreement or any of its Exhibits on behalf of any Settling Party hereto hereby warrants that full authority to do so has been given by his/her client(s).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

15.

1          (c)      The Settling Parties represent and agree that neither have received

2   and/or relied upon any advice and/or representations from the other party and/or its

3   attorneys as to the necessity for withholding or the taxability of the consideration paid

4   pursuant to this Agreement, whether pursuant to federal, state or local income tax

5   statutes or otherwise.

6          52.      Publicity. Lopez, Defendants, and their respective counsel will not make

7   any public disclosure of the Settlement until after the filing of the Application for

8   Preliminary Approval of the Settlement.  Lopez, Defendants, and their respective

9   counsel represent that they have not made any such disclosure.  Notwithstanding the

10  foregoing, the Parties agree that Defendants may make such disclosures that in

11  Defendants' judgment are required in the ordinary course of business, except that

12  Defendants' and their counsel shall not encourage Class Members to opt-out.  Nor shall

13  Lopez and Class Counsel encourage Class Members to opt-out.  Class Counsel will take

14  all steps necessary to ensure that Lopez is aware of, and will encourage them to adhere

15  to, the restriction against any public disclosure of the Settlement until after the

16  Settlement is preliminarily approved by the Court.  Class Counsel and Lopez agree not

17  to publicize the terms of this Settlement with the media, including but not limited to,

18  any newspaper, journal, magazine, website and/or on-line reporter of settlements.  Class

19  Counsel, however, are free to state on their website that they settled the lawsuit and the

20  industry generally.  Class Counsel shall refrain from referencing the case name,

21  Defendants' names, or including the claim form on their website.

22         53.      Mutual Cooperation.  The Settling Parties and their counsel shall use their

23  best efforts to cause the Court to give preliminary and final approval to this Settlement

24  Agreement as promptly as practical, to take all steps contemplated by this Settlement

25  Agreement to effectuate its terms and conditions, to perform all acts and execute and

26  deliver all documents, data and declarations necessary to effectuate all provisions of

27  this Settlement Agreement, including but not limited to declarations from the Settling

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

16.

1  Parties in support of class certification, and to oppose any appeal by any objector

2  ("Mutual Full Cooperation").

3       54.   <u>Construction and Integration</u>.

4       This Agreement, including its exhibits, constitutes the entire agreement

5  and understanding between the parties, and supersedes any previous agreements or

6  understandings between the Settling Parties.  No representations, warranties or

7  inducements have been made to any party concerning the subject matter of this

8  Agreement and/or exhibits other than the representations, warranties and covenants

9  contained in such documents.  This Agreement and related exhibits shall be construed

10  each as a whole, and with reference to one another, according to their fair meaning and

11  intent.  Each of the Settling Parties represent that its/their counsel has participated and

12  cooperated in the drafting and preparation of this Agreement and related exhibits;

13  hence, in any construction to be made of this Agreement and/or exhibits, the same shall

14  not be construed against any party on the basis that said party was the drafter.

15       55.   <u>Governing Law</u>.

16       This Agreement and the Exhibits hereto shall be deemed to have been

17  negotiated, executed and delivered, and to be wholly performed, in the State of

18  California.  The rights and obligations of the parties under the Agreement shall be

19  construed and enforced in accordance with, and be governed by, the substantive and

20  procedural laws of the State of California without regard to California's choice of law

21  principles.

22       56.   <u>Counterparts</u>.

23       This Agreement may be executed in one or more faxed counterparts,

24  which may be filed with the Court.  All executed counterparts, and each of them, shall

25  be deemed to be one and the same instrument.  Once available, a complete set of

26  executed counterparts shall be filed with the Court.  Copies of the complete set of

27  executed counterparts may be used for all purposes in lieu of the originals, and shall

28  have the same force and effect as the originals.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

57.     <u>Attorneys' Fees, Costs and Expenses</u>.

Except as otherwise specifically provided for herein, each party shall bear its/her own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them in or arising out of the Actions, and shall not seek reimbursement thereof from any other party to this Agreement.

58.     <u>Continuing Jurisdiction</u>.

Except as otherwise specifically provided for herein, the United States District Court for the Central District of California shall retain jurisdiction to construe, interpret and enforce this Agreement and the settlement, to supervise all notices, the administration of the settlement and this Agreement and distribution of the Settlement Fund, and to hear and adjudicate any dispute arising from or related to the settlement and/or this Agreement.

59.     The signatories hereto represent and warrant that they have the authority to sign on behalf of their designated parties. This Settlement Agreement is intended to have a binding effect to the maximum extent permitted under state and federal law.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

18.

1
2
3
4
5  **IN WITNESS WHEREOF**, the undersigned Settling Parties and their duly-authorized
6  representatives of accept and agree to the terms of this Agreement and hereby execute it
7  voluntarily and with a full understanding of its consequences.
8
9
10 _____          _____
    Victor Lopez, individually,                               Date
11  and on behalf of the Settlement Class as Class Representative
12
13 _____          _____
    for and on behalf of Defendants                    Date
14
15 **APPROVED AS TO CONTENT AND FORM:**
16 **LAW OFFICES OF ROBERT W. SINK**
17
18 _____          Nov. 3, 2015
    Robert Sink, on behalf of Class Counsel            Date
19  Attorney for Victor Lopez and the Settlement Class
20
21 **LITTLER MENDELSON**
22
23
24 _____          Nov. 3, 2015
    Elizabeth Staggs-Wilson                            Date
25
26 Firmwide:136747525.1 059218.1179
27
28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

19.

1

2

3

4

5

6    **IN WITNESS WHEREOF**, the undersigned Settling Parties and their duly-authorized

7    representatives of accept and agree to the terms of this Agreement and hereby execute it

8    voluntarily and with a full understanding of its consequences.

9

10   _Victor Lopez_                          _11-03-2015_
                                             Date

11   Victor Lopez, individually,
     and on behalf of the Settlement Class as Class Representative

12

13

14   _____          Date  _____
     for and on behalf of Defendants

15

16   **APPROVED AS TO CONTENT AND FORM:**

17   **LAW OFFICES OF ROBERT W. SINK**

18

19   _____          Date  _____
     Robert Sink, on behalf of Class Counsel

20   Attorney for Victor Lopez and the Settlement Class

21

22   **LITTLER MENDELSON**

23

24   _____          Date  _____
     Elizabeth Staggs-Wilson

25

26   Firmwide:136747525.1 059218.1179

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

19.

1
2
3
4
5
6   **IN WITNESS WHEREOF**, the undersigned Settling Parties and their duly-authorized

7   representatives of accept and agree to the terms of this Agreement and hereby execute it

8   voluntarily and with a full understanding of its consequences.

9
10
11   _____         _____
     Victor Lopez, individually,                            Date
12   and on behalf of the Settlement Class as Class Representative

13
14   _____         11·03·15
     for and on behalf of Defendants          Date

15
16   **APPROVED AS TO CONTENT AND FORM:**

17   **LAW OFFICES OF ROBERT W. SINK**

18
19   _____         _____
     Robert Sink, on behalf of Class Counsel              Date
20   Attorney for Victor Lopez and the Settlement Class

21
22   **LITTLER MENDELSON**

23
24   _____         _____
     Elizabeth Staggs-Wilson                              Date
25
26   Firmwide:136747525.1 059218.1179

27
28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

19.

# EXHIBIT A

1  ROBERT W. SINK (*admitted pro hac vice*)
   rsink@sinklawoffices.com
2  LAW OFFICES OF ROBERT W. SINK
   1800 J.F.K. Boulevard, 14th Floor
3  Philadelphia, PA 19103
   Telephone:  215-995-1000
4  Facsimile:   215-475-4600

5

6  Attorneys for Plaintiffs

7  ELIZABETH STAGGS WILSON, Bar No. 183160
   estaggs-wilson@littler.com
8  MICHELLE RAPOPORT, Bar No. 247459
   mrapoport@littler.com
9  LITTLER MENDELSON, P.C.
   633 West 5th Street, 63rd Floor
10 Los Angeles, CA  90071
   Telephone:  213.443.4300
11 Facsimile:   213.443.4299

12 ANDREA R. MILANO, Bar No. 278937
   LITTLER MENDELSON, P.C.
13 2049 Century Park East
   5th Floor
14 Los Angeles, CA  90067
   Telephone:  310.553.0308
15 Fax No.:     310.553.5583

16 Attorneys for Defendants

17                    UNITED STATES DISTRICT COURT

18                   CENTRAL DISTRICT OF CALIFORNIA

19 VICTOR LOPEZ, on behalf of himself    Case No.  CV14-6639-PSG (PLAx)
   and on behalf of all other similarly
20 situated individuals,                 **CLASS ACTION**

21                Plaintiff,             **[PROPOSED] ORDER
                                         PRELIMINARILY APPROVING
22 v.                                    CLASS ACTION SETTLEMENT,
                                         APPROVING NOTICE OF CLASS
23 THE GEO GROUP, INC. D/B/A GEO         ACTION SETTLEMENT, AND
   CALIFORNIA, INC.; GEO                 SETTING HEARING FOR FINAL
24 CORRECTIONS HOLDINGS, INC.;           APPROVAL
   GEO CORRECTIONS AND
25 DETENTION, LLC; and DOES 1-50,        **HEARING DATE: Dec. 21, 2015**
   inclusive,                            **TIME: 1:30p.m.**
26                Defendants.
                                         **HON. PHILIP GUTIERREZ**
27

28

LITTLER MENDELSON, P.C.
   633 West 5th Street
      63rd Floor
Los Angeles, CA  90071
    213.443.4300

Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement was filed on November 3, 2015.  The Court has considered the papers submitted in support of the Motion and the terms of the proposed class action settlement.  Based on the papers and pleadings on file herein, the Court hereby finds that the settlement falls within the range of possible final approval, also described as "the range of reasonableness," and is therefore deserving of preliminary approval.  *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.* (1994) 27 Cal.App.4th 1085, 1089-1090.

Having made this determination, now, on this _____ day of _____, 2015, the Court hereby **ORDERS** as follows:

1.      The Court grants preliminary approval of the class action Settlement Agreement attached as Exhibit 1 to the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and incorporates it herein;

2.      The Court hereby preliminarily finds the Settlement Agreement was the product of informed, non-collusive negotiations conducted at arms-length by the Parties.  In making these preliminarily findings, the Court considered the estimate of the Settlement Class Members' total recovery, Defendants' potential liability, the allocation of settlement proceeds among Settlement Class Members, and the fact that the Settlement represents a compromise of the Parties' respective positions rather than the result of a finding of liability at trial.  The Court further preliminarily finds that the terms of the Settlement Agreement have no obvious deficiencies;

3.      The Court appoints Simpluris as Settlement Administrator and preliminarily approves the costs of claims administration;

4.      The parties stipulate and the Court provisionally certifies the following Settlement Class pending final approval of the Settlement:

All persons who, at any time from July 22, 2010, to the date of preliminary approval of this Settlement (the "Class Period"), were employed by GEO as a non-exempt employee at any of the following

facilities: (1) Adelanto Detention Facility (East and West); (2) Alhambra Jail; (3) Baldwin Park Jail; (4) Bell Gardens City Jail; (5) Central Valley Modified Community Correctional Facility; (6) Desert View Modified Community Correctional Facility; (7) Downey Jail; (8) Fontana City Jail; (9) Garden Grove City Jail; (10) Golden State Medium Community Correctional Facility; (11) Leo Chesney Community Correctional Facility; (12) McFarland Community Correctional Facility; (13) Mesa Verde Community Correctional Facility; (14) Montebello City Jail; (15) Ontario City Jail; (16) Western Region Detention Facility at San Diego;

5.      With respect to this provisionally certified class for settlement purposes, if the Agreement does not become final for any reason, the fact that the parties were willing to stipulate to class certification as part of the Agreement shall have no bearing on and will not be admissible in connection with, the issue of whether a class in this action should be certified in a non-settlement context.

6.      The Court appoints Plaintiff, Victor Lopez, as the Class Representative on behalf of the Settlement Class;

7.      The Court appoints the Law Offices of Robert W. Sink and The Downey Law Firm, LLC as Class Counsel for the Settlement Class;

8.      The Court approves the forms of Class Notice, Claim Form, and Request for Exclusion, in the form attached as Exhibits A, B, and C, respectively, to the Parties Settlement Agreement (Exhibit 1);

9.      Settlement Class Members are enjoined from filing any DLSE/DOL claims, or from initiating other proceedings, regarding claims released by the Settlement pending final approval of the Settlement Agreement by the Court.

10.      Defendants shall provide the Claims Administrator with all information necessary for the Claims Administrator to be able to administer the proposed class action Settlement and mail the Settlement Class Notice and Claim Form to all Settlement Class Members.

1

2          11.    The Settlement Class Notice shall be delivered via First Class U.S. Mail

3   to the most recent known address of each Settlement Class Member.  The Claims

4   Administrator shall follow administration procedures as set forth in the Settlement

5   Agreement.

6          12.    Class Members shall submit Claim forms no later than 30 calendar days

7   after the original date of the Claims Administrator mailing of the Notice packet.

8          13.    Any Settlement Class Member requesting to be excluded from the Class

9   must submit a written, signed, and dated request for exclusion to the Court no later

10  than 30 days after the original date of the Claims Administrator's mailing of the

11  Notice packet.  Any Settlement Class Member who submits a valid and timely written

12  request to be excluded from the settlement shall no longer be a member of the

13  Settlement Class, shall not be bound by the terms of the Settlement as provided for in

14  the Settlement Agreement, shall have no right no object to this Settlement, and shall

15  receive no benefit from this Settlement.

16         14.    Any Settlement Class Member objecting to the proposed class action

17  settlement shall file such written objection with the Clerk of the United States District

18  Court Central District of California, Edward R. Roybal Federal Building and United

19  States Courthouse 255 East Temple Street Los Angeles, CA 90012-3332 CA 92701

20  no later than 30 days after the original date of the Claims Administrator's mailing of

21  the Notice packet and shall serve copies to Class Counsel and Defendants' counsel.

22         15.    Class Counsel shall file a Motion for Final Approval of Settlement and

23  Motion for Attorneys' Fees, Expenses and Enhancement Awards 15 calendar days

24  before the hearing on Final Approval of Settlement.

25         16.    A hearing on Final Approval of Settlement and Motion for Attorneys'

26  Fees, Expenses and Enhancement Awards is scheduled to be held on the ____ day of

27  _____, 2016 at _____ a.m./p.m. in Courtroom _____ at the United

28  States District Court for the Central District of California, Edward R. Roybal Federal

1

2  Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA

3  90012-3332.

4                                        **BY THE COURT:**

5                                        _____

6                                        **Philip Gutierrez, U.S.D.J.**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

4.

**EXHIBIT B**

NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT

*Victor Lopez v. The GEO Group, Inc. Case No.* 2:14-CV-06639-PSG (PLAx)

**To: All persons who worked as non-exempt, hourly employees for The GEO Group, Inc., dba GEO California, Inc.; GEO Corrections Holdings, Inc.; and/or GEO Corrections and Detention, LLC (collectively, "GEO") between July 22, 2010 and [Date of preliminary approval] in California.**

**PLEASE READ THIS NOTICE CAREFULLY. TO RECEIVE YOUR SHARE OF THE SETTLEMENT PROCEEDS YOU NEED TO RETURN THE ENCLOSED CLAIM FORM BY MAIL BY THIRTY (30) DAYS FROM THE MAILING OF THE NOTICE.**

Pursuant to the settlement of the parties and order of the United States District Court of the Central District of California, entered [date court approved settlement], YOU ARE HEREBY NOTIFIED AS FOLLOWS:  A settlement has been reached between the parties in the lawsuit pending in the United States District Court for the Central District of California on behalf of the following class, which has been provisionally certified for purposes of this settlement:

All persons who, at any time from July 22, 2010, to [date of preliminary approval] of this Settlement (the "Class Period"), were employed by GEO as a non-exempt employee at any of the following facilities: (1) Adelanto Detention Facility (East and West); (2) Alhambra Jail; (3) Baldwin Park Jail; (4) Bell Gardens City Jail; (5) Central Valley Modified Community Correctional Facility; (6) Desert View Modified Community Correctional Facility; (7) Downey Jail; (8) Fontana City Jail; (9) Garden Grove City Jail; (10) Golden State Medium Community Correctional Facility; (11) Leo Chesney Community Correctional Facility; (12) McFarland Community Correctional Facility; (13) Mesa Verde Community Correctional Facility; (14) Montebello City Jail; (15) Ontario City Jail; (16) Western Region Detention Facility at San Diego.

This document describes your rights with respect to this class action settlement.  Please read it carefully.  The details of the action and settlement are described below, but the relevant points are as follows:

- GEO has agreed to settle a class action lawsuit for $1,375,000 to pay claims by current and former hourly employees of GEO who worked at any time between July 22, 2010 and [date of preliminary approval] in certain California facilities;
- **If you want to receive a payout from this settlement you MUST complete, sign, and mail the enclosed Claim Form by [ Date];**
- The settlement resolves a lawsuit in which an hourly worker claimed that GEO failed to pay all wages owed, failed to offer legally-compliant 30-minute meal periods, and failed to comply with other related state labor laws;
- GEO has denied all liability and vigorously defended its payroll practices as lawful;

- The parties agreed that the settlement was reasonable to avoid the costs and risks associated with continuing the lawsuit;
- The settlement releases GEO from liability of certain claims related to the claims set forth in this lawsuit;
- GEO has agreed that the Court-approved lawyers may petition the Court for up to 33⅓% of the total settlement amount from the settlement as fees and up to $75,000 as expenses for investigating the facts, litigating the case and negotiating the settlement.  At this juncture the Court has not yet determined the amount to be awarded to class counsel for fees and expenses;
- The Court in charge of this case still has to decide whether the settlement is fair and whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.
- Your legal rights are affected whether you act, or do not act.  These rights and options—**and the deadlines to exercise them**—are explained in this notice.
- Class Counsel support this settlement.  Among the reasons for Class Counsel support of the settlement are the complete defenses to liability available to GEO on whether their payroll practices were lawful.

## I.   OVERVIEW OF THE CASE

A putative class action lawsuit entitled *Lopez v. The GEO Group, Inc.et al*. was filed on July 22, 2014 in the Superior Court of Los Angeles County and then removed to the United States District Court for the Central District of California.  On October 14, 2015, Plaintiff filed an Amended Complaint (the "Action"), seeking damages for Plaintiff and putative Class Members for unpaid wages, unpaid overtime, denied meal and rest periods, and waiting time penalties, penalties under the Labor Code and California Industrial Welfare Commission ("IWC") wage orders, for violation of the Unfair Business Practices Act ("UCL"), Business and Professions Code §17200, et seq., and for penalties under the Private Attorney General Act ("PAGA").

GEO contends that Plaintiff and the putative class members were properly paid all wages and compensation owed and deny all alleged wrongdoing associated with these and all other claims.  GEO further contend that since the putative class members were properly compensated, the remainder of the claims are also without merit.  GEO, therefore, disputes all claims for damages and other relief made by and also dispute that the lawsuit is appropriate for class action treatment.  Further, the Court has not stated or determined that GEO did anything wrong.

GEO has agreed to settle this class action lawsuit for $1,375,000 to pay claims by current and former hourly employees of GEO who worked at any time between July 22, 2010 and [date of preliminary approval] in certain California facilities.  Also, as part of the settlement GEO will pay its employer's share of the payroll taxes.

## II.   PARTIES TO THE ACTION

Victor Lopez is the Plaintiff in this class action lawsuit, acting on behalf of himself and on behalf of other current and former non-exempt hourly employees in California. The Defendants are:

The GEO Group, Inc. D/B/A GEO California, Inc.; GEO Corrections Holdings, Inc.; and GEO Corrections and Detention, LLC. (GEO").

III.    **OVERVIEW OF THIS NOTICE**

You have received this notice because records indicate that you are a class member in this lawsuit. The settlement will resolve claims described below during the class period of July 22, 2010 until [ date of preliminary approval]

You may be entitled to receive money from a settlement that has been reached in the lawsuit. The Court must finally approve the terms of the settlement described below as fair and reasonable to the class. The settlement will affect all members of the class, including you. You may receive money from the class action settlement if you submit a valid and timely claim form as instructed below. This notice will explain the terms of the settlement and the amount of money you may get.

The Court will hold a Final Fairness Hearing concerning the proposed settlement on [date] at [time], in Courtroom [880] at the United States District Court for the Central District of California located at:

> Edward R. Roybal Federal Building and United States Courthouse
> 255 East Temple Street
> Los Angeles, CA 90012-3332

> **The hearing may be continued without further notice to the settlement class.  It is not necessary for you to appear at this hearing unless you have timely filed an objection.**

IV.    **SUMMARY OF THE PROPOSED SETTLEMENT**

The Plaintiff and Class Counsel support this settlement.  Among the reasons given for support includes the inherent risk of trial on the merits and the delays associated with litigation. The settlement provides for the following:

**A.    Settlement Formula**

Simpluris, the Claims Administrator, will pay to each Settlement Class Member who returns a valid and timely Claim Form ("Qualified Claimant") a pro-rata share of the Net Settlement Amount ("NSA") based upon the number of weeks worked during the class period.  The NSA is $1,375,000 minus attorneys' fees, costs, actual enhancement awards to Lopez, the PAGA Payment, and actual claims administration expenses.  As part of the settlement of the PAGA claim, $15,000 from the NSA will be paid to the California Labor & Workforce Development Agency.  Simpluris estimates that the claims expenses will be about $22,000.  It is your responsibility to ensure the Claims Administrator has timely received your Claim Form. You may contact the Claims Administrator at the toll-free number listed at the bottom of each page to ensure it has been received.  It is also your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your Settlement Claim Payment.

### B.    Calculations

Defendants' records will be determinative with respect to the number of shifts you worked in each position unless you dispute those records as provided below.

### C.    Release

The settlement is intended to settle and fully release and discharge any and all claims against Defendants, their present and former parent companies, present owners, former owners, subsidiaries, related or affiliated companies, shareholders, officers, directors, employees, agents, attorneys, insurers, successors, and assigns, and any individual or entity which could be jointly liable with Defendants, or any of them (the "Releasees"), for any and all claims that were or otherwise could have been brought under the facts pleaded in the Action arising out of or relating to work performed during the Class Period, including the following:

- Any claims for unpaid wages (including but not limited to overtime pay, minimum wage, regular wages, salary, bonuses, commissions, missed meal period pay, missed rest period pay, paid time off or other benefits), and claims for interest, penalties (including but not limited to wait time penalties), or premiums in connection therewith, as well as any claims under the California Labor Code, or California Wage Orders alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Action;
- Any claims for injunctive relief, declaratory relief, restitution, fraudulent business practices or punitive damages alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Action;
- Any claims under PAGA arising out of the wage, hour and payroll practices alleged or that could have been alleged under the facts pleaded in the complaints filed as part of the Action;
- Any and all other claims under California common law, the California Labor Code, California Wage Orders, and the California Business and Professions Code asserted in or that could have been asserted in the complaints filed as part of the Action; and
- Upon the Effective Date, any and all claims for unpaid wages, penalties, interest and attorneys' fees that could have been alleged under the Fair Labor Standards Act based upon the facts alleged in the complaint against the Released Parties for work performed during the Class Period will be released by the Class Members who submit a Claim Form.

If the Settlement is approved and you submit a timely and valid Claim Form, you will receive compensation and will be forever barred from asserting the above claims against the Released Parties.  If the settlement is approved and you have not submitted a timely and valid Claim Form and have not submitted a timely Request for Exclusion Form, you will not receive any money from the settlement and you will also be forever barred from asserting the above claims (excluding FLSA) against the Released Parties.

V.     **THE ATTORNEYS REPRESENTING THE PARTIES**

Attorneys for Plaintiff & the Class are:

Law Offices of Robert W. Sink
Robert Sink
1800 JFK Blvd., 14th Floor
Philadelphia, PA 19103
Telephone: 215-995-1000
Facsimile:  215-475-4600

The Downey Law Firm, LLC
Philip A. Downey
Cory Lee
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Tel: 213- 291-3333
Fax: 610-813-4579

Attorneys for Defendants are:

Littler Mendelson, PC
Elizabeth Staggs-Wilson
Michelle Rapoport
633 West Fifth Street, 63rd Floor
Los Angeles, California 90071
Telephone: 213-443-4300
Facsimile:  213-443-4299

VI.    **YOUR RIGHTS AS A CLASS MEMBER**

Your interests as a Settlement Class Member are represented by the Plaintiff and Class Counsel. Unless you opt out of the Class, you are a part of the Settlement Class, you will be bound by the terms of the settlement and any final judgment that may be entered by the Court, and will be deemed to have released certain claims against Defendants as described above.  As a member of the Class you will not be responsible for the payment of attorneys' fees or reimbursement of litigation expenses unless you retain your own counsel, in which event you will be responsible for your own attorneys' fees and costs.

A.     **Submit a Claim**

In order to receive your share of the settlement you must complete and sign the Claim Form and return it, no later than thirty (30) days after mailing this notice via regular mail to _____ at the following address:

c/o _____

The Claim Form must be postmarked no later than thirty (30) days after mailing of this notice. If the Claim Form is sent from within the United States it must be sent through the United States Postal Service via regular mail.  If you lost, misplaced, or need another Claim Form, in addition to contacting any of the class counsel at the addresses identified in Section I of this Notice, you may also contact the Claims Administrator toll-free at [1-_____.

     **B.**    **Object to Settlement**

You can object to the settlement before final approval.  However, if the Court rejects your objection you will still be bound by the terms of the settlement.  To object, you must file a written objection with the Clerk of the United States District Court Central District of California, Edward R. Royal Federal Building and United States Courthouse, Courtroom 880-Roybal, 255 East Temple Street Los Angeles, CA 90012-3332 thirty (30) days after mailing of this notice, and send copies to Class Counsel and Defendants' counsel at the addresses listed in section I above.

Any written objection must contain your full name, current address, and include all objections and the reasons therefore, and include any and all supporting papers (including, without limitation, all briefs, written evidence, and declarations).  If you fail to comply with the objection procedure set forth herein you will be deemed to have not objected. To be valid and effective, any objection to approval of the settlement must be filed with the Clerk of the United States District Court Central District of California and served upon and received by each of the attorneys identified in section I above, postmarked no later than thirty (30) days after mailing of this notice.

If you wish to appear at the Final Approval Hearing and present your objection to the Court orally, your written statement must include a statement of intent to appear at the Final Approval Hearing. Failure to do so will bar you from appearing at the Final Approval Hearing and presenting your objections to the court. If you fail to timely file written objections you will not be permitted to present your objections at the Final Approval Hearing. If you choose to file an objection to the terms of this settlement, you may enter an appearance in propria persona (meaning you choose to represent yourself) or through your own attorney. The Final Approval Hearing at which the Court will adjudicate any Objections, and be asked to approve the settlement will be held at the    United States District Court Central District of California,    , on [date] at [time] in Courtroom  or such other, later date as the Court may authorize.
If you file an objection you remain eligible to submit a Claim Form and receive monetary compensation from the settlement.

**IF YOU INTEND TO OBJECT TO THE SETTLEMENT, BUT WISH TO RECEIVE YOUR SHARE OF APPROVED SETTLEMENT FUNDS, YOU MUST TIMELY FILE YOUR CLAIM AS STATED ABOVE.   IF THE COURT APPROVES THE SETTLEMENT DESPITE ANY OBJECTIONS, AND YOU DO NOT HAVE A CLAIM ON FILE, YOU WILL NOT RECEIVE ANY SETTLEMENT FUNDS.**

### C.        Exclude Yourself from the Settlement

In order for you to validly and effectively request exclusion from, and opt out of, this Settlement, you must submit a written, signed, and dated request to the Claims Administrator.  The Exclusion request must include the last four digits of your social security number to be valid or applicable work permit number if you have no social security number.  The request for exclusion must be postmarked, or physically delivered to the Claims Administrator, no later than, thirty (30) days after mailing.

If you desire to be excluded from, and opt out of, this Settlement but fail to comply with the Exclusion procedure set forth herein, you shall be deemed to have not been excluded or opted out. Any person who files a complete and timely request for Exclusion shall, upon receipt, no longer be a member of the settlement class, shall be barred from participating in any portion of the settlement, may not object to the settlement, and shall receive no benefits from the settlement.  Any such person will not release any claims he/she may have against Defendants. You may choose to proceed against the Defendants at your expense and costs.

If you first request exclusion from, and opt out of, the settlement and then object, the objections will not be considered valid. If you object and then request exclusion from, and opt out of the settlement, you will be deemed to have waived your objection. If you submit both a Claim Form and a request for exclusion, only the Claim Form will be valid.

### D.        Do Nothing

You are not required to take any action by reason of receipt of this Notice.  If you do nothing, then, you will not receive any portion of the settlement, but will remain a member of the Settlement Class and will be bound by the terms of the settlement and have released your claims as described above.

## VII.    PAYMENT TO CLASS COUNSEL

The attorneys for the plaintiffs will be paid from the total settlement amount. The attorneys may ask for an award of up to 33 ⅓% of the Gross Settlement in fees and up to $75,000 in costs, and will receive that award if their request is approved by the Court. If approved by the Court, an Enhancement Award not exceeding $5,000 total for Plaintiff will be paid from the settlement proceeds for his service.

## VIII.   ADDITIONAL INFORMATION IS AVAILABLE

The above is a summary of the basic terms of the settlement.  For the precise terms and conditions of the settlement, you are referred to the detailed Stipulated Settlement Agreement ("Stipulation") and Order thereon, which will be on file with the Clerk of the Court.  The pleadings and other records in this litigation including the Stipulation may be examined at any time during regular business hours at United States District Court, Central District of California, Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA 90012-3332.

Please do not call the Court for information about this Settlement or the claims process.

**EXHIBIT C**

# CLAIM FORM

United States District Court for the Central District of California

*Victor Lopez v. The GEO Group, Inc. Case No.* 2:14-CV-06639-PSG (PLAx) This Claim Form includes information based on GEO's records.  It is important that you carefully check the information provided and correct any inaccuracies.  This Claim Form MUST be postmarked no later than _____ and received by the Claims Administrator.  **You MUST complete, sign, and return this Claim Form if you wish to receive money from this settlement.**

## I.     CLAIMANT INFORMATION

This is the information that we have for you and where your settlement check will be mailed:

<u>Corrected or New Information</u>

_____          _____
_____          _____
_____          _____

Tel:_____          _____

If your name, address, or phone number is incorrect or has changed, please legibly print the correct or new information on the corresponding lines above.

## II.     EMPLOYMENT INFORMATION

Defendants' personnel records state that the exact dates of your employment for Defendants' in California during the Class Period were **[## / ## / #### through ## / ## / ####].**

Defendants' records reflect that during your employment you worked ____ weeks as a nonexempt employee.

Based on the stated information your estimated settlement share is $_____.

If you agree with the information stated above, please sign, date where indicated on the reverse, and return this Claim Form postmarked on or before 30 days of mailing, to receive your monetary recovery.

☐          I disagree with the information stated above.  I believe that my actual dates of employment during the Class Period were ___ ___ / ___ ___ / ___ ___ ___ ___ to ___ ___ / ___ ___ / ___ ___ ___ ___.  I have attached tax and/or other documentation that supports this belief.

## III.     RELEASE OF CLAIMS

By completing this Claim Form and accepting the benefits under this settlement, I hereby agree that: I, and all persons purporting to act on my behalf or purporting to assert a claim under or through me, including, but not limited to, my dependents, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, representative, legal, equitable, direct or indirect, or any other type or in any other capacity hereby forever completely and irrevocably release and discharge The GEO Group, Inc. d/b/a GEO California, Inc., GEO Corrections Holdings, Inc., and GEO Corrections and Detention,

LLC, their present and former parent companies, present owners, former owners, subsidiaries, shareholders, officers, directors, employees, agents, attorneys, insurers, successors, and assigns and any individual or entity which could be jointly liable with GEO, or any of them (hereinafter "GEO," "Defendants," or "Released Parties") of all claims against the Released Parties for work performed during the class period which were alleged or could have been alleged as part of the litigation, including the following:

a.      Any claims for unpaid wages (including but not limited to overtime pay, minimum wage, regular wages, salary, bonuses, commissions, missed meal period pay, missed rest period pay, paid time off or other benefits), and claims for interest, penalties (including but not limited to wait time penalties), or premiums in connection therewith, as well as any claims under the California Labor Code, or California Wage Orders alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Litigation;

b.      Any claims for injunctive relief, declaratory relief, restitution, fraudulent business practices or punitive damages alleged or which could have been alleged under the facts pleaded in the complaints filed as part of the Litigation;

c.      Any claims under PAGA arising out of the wage, hour and payroll practices alleged or could have been alleged under the facts pleaded in the complaints filed as part of the Litigation;

d.      Any and all other claims under California common law, the California Labor Code, California Wage Orders, and the California Business and Professions Code asserted in or that could have been asserted in the complaints filed as part of the Litigation; and

e.      Any and all claims for unpaid wages, penalties, interest and attorneys' fees that could have been alleged under the Fair Labor Standards Act based upon the facts alleged in the complaint.

## IV.     MAILING INFORMATION

Please mail this completed Claim Form to the Claims Administrator at the address listed below.  Your completed Claim Form must be postmarked on or before 30 days from mailing or else you will forfeit your benefits under this Settlement.

> GEO Class Action Settlement
> c/o Simpluris, Claims Administrator
>
> _____
> _____
> Tel:_____

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: _____                    _____
                                         Signature


                                         _____
                                         Print Name

**EXHIBIT D**

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR LOPEZ, on behalf of himself and on behalf of all others similarly situated,<br>Plaintiff<br>v.<br>THE GEO GROUP, INC. D/B/A GEO CALIFORNIA, INC.; GEO CORRECTIONS HOLDINGS, INC.; AND GEO CORRECTIONS AND DETENTION, LLC,<br>Defendants. | Case No. CV14-06639-PSG (PLAx)<br><br>**CLASS ACTION**<br><br>**OPT OUT/ REQUEST FOR EXCLUSION** |

**ONLY SUBMIT THIS FORM IF YOU <u>DO NOT</u> WISH TO BE PART OF THE PROPOSED CLASS ACTION SETTLEMENT.**

**IF YOU SUBMIT THIS FORM, YOU WILL BE EXCLUDED FROM THE PROPOSED CLASS ACTION SETTLEMENT AND YOU WILL NOT RECEIVE ANY PAYMENT FROM THIS SETTLEMENT**

I, _____, wish to opt-out of the proposed class action settlement.  Please print the following information (this information is necessary to ensure that the correct person is deleted from the list of Class Members):

_____

Full Name and Address

_____

Last Four Digits of Social Security Number

_____

SIGNATURE                                    DATE

**IF YOU WISH TO BE EXCLUDED FROM THIS SETTLEMENT, RETURN THIS FORM IN THE ENVELOPE PROVIIDED POSTMARKED NO LATER THAN [DATE] UNTIMELY OPT-OUT FORMS WILL NOT BE ACCEPTED.**

# REQUEST FOR JUDICIAL NOTICE

# EXHIBIT 3

Motion to Approve W&H Class Action Settlement

1  Robert W. Sink, Esq. (admitted *pro hac vice*)
   rsink@sinklawoffices.com
2  **LAW OFFICES OF ROBERT W. SINK**
   1800 J.F.K. Blvd., 14th Floor
3  Philadelphia, PA 19103
   Tel: 215-995-1000 | Fax: 215-475-4600
4
5  Attorneys for Plaintiff and the proposed Class

6                  **UNITED STATES DISTRICT COURT**
                   **CENTRAL DISTRICT OF CALIFORNIA**
7

8  VICTOR LOPEZ, on behalf of himself and on )   Case No. 2:14-cv-06639-PSG-PLA
   behalf of all other similarly situated        )
9  individuals,                                   )   **CLASS ACTION**
                              Plaintiff,          )
10                                                )   **PLAINTIFF'S UNOPPOSED NOTICE**
                                                  )   **OF MOTION FOR PRELIMINARY**
11               v.                               )   **APPROVAL OF CLASS ACTION**
                                                  )   **SETTLEMENT**
12 THE GEO GROUP, INC. D/B/A GEO                  )
   CALIFORNIA, INC.; GEO CORRECTIONS             )
13 HOLDINGS, INC.; GEO CORRECTIONS              )   **HEARING DATE: Dec. 21, 2015**
   AND DETENTION, LLC; and DOES 1-50,            )   **TIME: 1:30p.m.**
14 inclusive,                                     )
                              Defendants.         )   **Hon. Philip Gutierrez**
15                                                )
16                                                )
                                                  )
17                                                )
                                                  )
18 _____ )
19
20
21
22
23
24
25
26
27
28

                              - 1 –
_____
PLAINTIFF'S UNOPPOSED NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
                              SETTLEMENT
              *Lopez v. The GEO Group, Inc. d/b/a GEO California, Inc., et al.*

**UNOPPOSED NOTICE OF MOTION**

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT at 1:30PM on December 21, 2015 or as soon as counsel may be heard in the United States District Court for the Central District of California, Edward R. Roybal Federal Building and United States Courthouse, Courtroom 880-Roybal, 255 East Temple Street, Los Angeles, CA 90012-3332 Plaintiff, VICTOR LOPEZ, will and hereby does move the Court for an order preliminarily approving a class action settlement.

This motion is based on the attached Memorandum of Points and Authorities, all pleadings and materials on file in this action, and upon such other matters as may be presented to the Court before or at the time of the hearing.

Dated:  November 3, 2015      **LAW OFFICES OF ROBERT W. SINK**


     /s/Robert W. Sink
     Robert W. Sink, Esq. (admitted *pro hac vice*)
     rsink@sinklawoffices.com
     **LAW OFFICES OF ROBERT W. SINK**
     1800 J.F.K. Blvd., 14th Floor
     Philadelphia, PA 19103
     Tel: 215-995-1000 | Fax: 215-475-4600

     Philip A. Downey, Esq. (admitted *pro hac vice*)
     downeyjustice@gmail.com
     Cory G. Lee, Esq. (SBN 216921)
     downeyjusticelee@gmail.com
     **THE DOWNEY LAW FIRM, LLC**
     9595 Wilshire Boulevard, 9th Floor
     Beverly Hills, CA 90212
     Tel:     213-291-3333 | Fax: 610-643-4352

     Attorneys for Plaintiff and the proposed Class

– 2 –

1  Robert W. Sink, Esq. (*admitted pro hac vice*)
   rsink@sinklawoffices.com
2  **LAW OFFICES OF ROBERT W. SINK**
   1800 J.F.K. Boulevard, 14th Floor
3  Philadelphia, PA 19103
   Tel:   215-995-1000
4  Fax:   215-475-4600
5
6  Philip A. Downey, Esq. (*admitted pro hac vice*)
   downeyjustice@gmail.com
7  Cory G. Lee, Esq. (SBN 216921)
   downeyjusticelee@gmail.com
8  **THE DOWNEY LAW FIRM, LLC**
   9595 Wilshire Boulevard, 9th Floor
9  Beverly Hills, CA 90212
   Tel:   213-291-3333
10 Fax:   610-643-4352
11
12 Attorneys for Plaintiff and the Proposed Class
13             **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| 15 VICTOR LOPEZ, on behalf of himself and on behalf of all others similarly situated, | Case No. CV14-06639-PSG (PLAx) |
| 16 | **CLASS ACTION** |
| 17          Plaintiff, | |
|     v. | **MEMORANDUM OF POINTS AND** |
| 18 | **AUTHORITIES I.S.O.** |
| 19 THE GEO GROUP, INC. D/B/A GEO CALIFORNIA, INC.; GEO | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY** |
| 20 CORRECTIONS HOLDINGS, INC.; AND GEO CORRECTIONS AND | **APPROVAL OF CLASS ACTION SETTLEMENT** |
| 21 DETENTION, LLC, | |
| 22          Defendants. | **HEARING DATE: Dec. 21, 2015 TIME: 1:30p.m.** |
| 23 | |
| 24 | **Hon. Philip Gutierrez** |

25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………...…………iii

I.      INTRODUCTION……………………………………………….……1

II.     FACTUAL AND PROCEDURAL BACKGROUND ………………..…………4

III.    SUMMARY OF SETTLEMENT TERMS……………………………….6

IV.     LEGAL ARGUMENT…………………………………………….……10

   A.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AND SCHEDULE A FINAL FAIRNESS HEARING…………………………………………………………10

      1.    The Proposed Settlement Falls Well Within the Range of Possible Approval……………………………………...............12

      2.    The Proposed Settlement was the Product of Informed, Non-Collusive Negotiations and Does Not Present Any Grounds to Doubt its Fairness……………………………..............15

      3.    The Proposed Notices to Settlement Class Members and Method of Notification are Adequate……………………………...17

   B.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE…………………………………………...............19

   C.    CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(A)……………………………………………………………19

      1.    Numerosity…………………………………………………19

      2.    Commonality………………………………………………20

      3.    Typicality……………………………………………………21

      4.    Adequacy of Representation………………………………...22

   D.    CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(B)(3)………………………………………………………23

V.    THE PROPOSED SCHEDULING ORDER……………………………...........23

VI.   CONCLUSION……………………………………………………...........23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1          <u>**TABLE OF AUTHORITIES**</u>

2  <u>**Cases:**</u>

3  *Amchem Products, Inc. v. Windsor,*

4          *521 U.S. 591, 620 (1997)*………………………………………………...……..…19

5  *Armstrong v. Davis,*

6          *275 F.3d 849, 868 (9th Cir.2001)*…………….....................................20

7  *Chem. Bank v. City of Seattle,*

8          *955 F.2d 1268, 1291 (9th Cir.1992)*……………………….…………………11

9  *Churchill Village LLC v. General Electric,*

10          *361 F.3d 566, 575 (9th Cir. 2004)*…………………………………………..…17

11  *Class Plaintiffs v. City of Seattle,*

12          *955 F.2d 1268, 1276 (9th Cir. 1992)*…………….….………….….…………..10

13  *Dukes v. Wal–Mart, Inc.,*

14          *509 F.3d 1168, 1177 (9th Cir. 2007)*……………………………..……20, 21

15  *Fry v. Hayt, Hayt & Landau,*

16          *198 F.R.D. 461, 466 (E.D. Pa. 2000)*……………………….…………19, 20, 21,22

17  *General Tel. Co. of S.W. v. Falcon,*

18          *457 U.S. 147, 156 (1982)*…………………………………………………….21

19  *Hanlon v. Chrysler Corp.,*

20          *150 F.3d 1001, 1027 (9th Cir. 1998)*………………………………10, 17, 20, 21

21  *In re General Motors Corp.,*

22          *55 F.3d 768, 784 (3d Cir. 1995)*……………………………………….....…..……10

23  *In re Tableware Antitrust Litig.,*

24          *484 F. Supp.2d 1078, 1079 (N.D. Cal. 2007)*………………………………11, 12

25  *In re Vitamins Antitrust Litig.,*

26          *2001 WL 856292 at *4 (D.D.C. July 25, 2001)*……………………………..15

27  *Johnson v. California*, 543 U.S. 499, 504–05 (2005)…………………………………20

28

1  *Lerwill v. Inflight Motion Pictures, Inc.,*
2       582 F.2d 507, 512 (9th Cir. 1978). …………………………………………..22
3  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
4       221 F.R.D. 523, 525 (C.D. Cal. 2004)………………………………………10
5  *Pigford v. Glickman,*
6       185 F.R.D. 82, 103 (D.D.C. 1999)…………………………………………10
7  *Schwartz v. Dallas Cowboys Football Club, Ltd.,*
8       157 F. Supp. 2d 561 n. 12 (E.D. Pa. 2001))……………………………......12
9  *Shiller v. David's Bridal, Inc.,*
10      2012 WL 2117001 *19 (E.D. Cal. 2012)……………………………………16
11 *Valentino v. Carter-Wallace, Inc.,*
12      97 F.3d 1227, 1234 (9th Cir. 1996)…………………………………………19
13 *Van Vranken v. Atlantic Richfield Co.,*
14      901 F. Supp. 294 (N.D. Cal. 1995)……………………………...………15, 16
15 *Vizcaino v. Microsoft Corp.,*
16      290 F.3d 1043, 1047 (9th Cir. 2002)………………………………………16
17 **Other authorities:**
18 Fed.R.Civ.P. 23……………………………………………………………*passim*
19 *Manual for Complex Litig.* 3d,
20      § 30.41……………………………………………………………………10
21      § 21.311 ……………………………………………………………………18
22      § 21.312…… ……………………………………………………………18
23 5 Moore Federal Practice, sec. 23.85 (Matthew Bender 3d ed.).…………………10
24 4 NEWBERG,
25      § 8.21………………………………………………………...………………18
26      § 8.39…………………………………………………...……………………18
27
28

## I.    **INTRODUCTION**

Plaintiff, Victor Lopez, on behalf of himself and others similarly situated, moves for an order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure granting preliminary approval of the settlement of this wage and hour class and collective action litigation (the "Settlement"). Defendants, The GEO Group, Inc. d/b/a GEO California, Inc., GEO Corrections Holdings, Inc., and GEO Corrections and Detention, LLC have agreed to the terms of the Settlement and do not oppose this motion.

Plaintiff brought this action (the "Action") on behalf of himself and a putative Class of approximately 2,513 non-exempt, hourly workers employed at 16 of Defendants' California correctional facilities seeking compensation and penalties for time spent being searched, and waiting to be searched, for "contraband" prior to entering Defendants' facilities. Specifically, the Action seeks damages for unpaid wages, unpaid overtime, denied meal and rest periods, and waiting time penalties, penalties under the Labor Code and California Industrial Welfare Commission ("IWC") wage orders, for violation of the Unfair Business Practices Act ("UCL"), Business and Professions Code §17200, *et seq*., and for penalties under the Private Attorney General Act ("PAGA"). Defendants deny all of the allegations in the Action and make no admission of liability or wrongdoing.

The terms of the parties' Settlement are set forth in the attached Agreement (Exhibit 1) that was negotiated after the parties engaged in an arms-length mediation session before Robert Kaplan, Esq., an experienced mediator at Judicate West. This mediation was hotly contested and lasted an entire day. A few days later, the Settlement

was ultimately reached.  The Settlement includes a cash payment of one million, three hundred seventy-five thousand U.S. dollars ($1,375,000) (the "Gross Settlement Amount" or "GSA") to be paid in consideration for the settlement and dismissal of the Action and the related release of claims the members of the Settlement Class may have against Defendants as described in the attached Agreement (Exhibit 1, ¶¶ 8, 9, 44-46).

Plaintiff's Counsel's recovery of $1,375,000 represents almost 100% of Plaintiff's and Class Members' realistic expected recovery of $1,396,656.  Sink Decl. ¶ 18. Plaintiff's Counsel not only believes that this recovery is reasonable, but that it is exceptional.  *Id.*  If finally approved by the Court, the Settlement would represent a superior and highly beneficial result for Plaintiff and all putative Class Members.  *Id.* ¶ 7.

The Parties engaged in more than a year of contentious litigation before reaching the Settlement.  The Parties conducted significant discovery, having exchanged and answered numerous interrogatories and over 100 requests for production of documents. Sink Decl. ¶ 3.  Following a contested motion to compel, Defendant produced, and Class Counsel extensively reviewed, over 12,000 pages of documents, including thousands of pages of data, plus voluminous electronic data video surveillance of Defendants' premises.  *Id.*  Additionally, the depositions of the Named Plaintiff and Defendants' former regional director and current warden were conducted.  *Id.*  Moreover, Class Counsel conducted significant legal research regarding the strengths of weakness of the Plaintiff's claims based on the information adduced during discovery.  *Id.* ¶ 4.  The terms of the Settlement Agreement are therefore based on a thorough evaluation of the evidence and the underlying case law. The Settlement offers the Settlement Class

Members significant advantages over continued prosecution of their case against Defendants. *Id.* ¶ 8. Members of the Settlement Class who participate in the Settlement will receive significant financial compensation and will avoid the risks inherent in continued prosecution of this case in which the Defendant asserts various defenses to its liability. *Id.*

Accordingly, Plaintiff now seeks, and Defendants do not oppose, the Court's (1) preliminary approval of the Settlement Agreement; (2) approval of Simpluris as Claims Administrator and preliminary approval of the costs of administration; (3) provisional certification of the proposed Rule 23 Class for settlement purposes; (4) approval of Plaintiff as the Class Representative of the Settlement Class; (5) approval of Plaintiff's counsel as Class Counsel for the Settlement Class; (6) approval of the mailing of the Notice, Claim Form and Request for Exclusion submitted herewith; and (7) approval of the schedule and procedure for the final approval process for this Settlement.

The Parties respectfully submit that this Motion should be granted because the proposed Settlement falls well within the range of reasonableness and there are no grounds to doubt its fairness. The Settlement was negotiated by experienced counsel on both sides, with oversight from an experienced mediator, after substantial and in-depth discovery and investigation of the claims and defenses. Sink Decl. ¶¶ 3-5. It has the explicit support of the Named Plaintiff, and public policy favors settlement of complex class actions. *Id.* ¶ 11. Accordingly, Plaintiff respectfully requests that the Court enter the unopposed proposed Order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2014, Named Plaintiff, Lopez, filed a class action Complaint in Los Angeles County Superior Court (Case No. BC552481) seeking damages for unpaid wages, unpaid overtime, denied meal and rest periods, and waiting time penalties, penalties under the Labor Code and California Industrial Welfare Commission ("IWC") wage orders, for violation of the Unfair Business Practices Act ("UCL"), Business and Professions Code §17200, *et seq*.  On August 22, 2014, Defendants removed Plaintiff's complaint to this Court.  On February 3, 2015, Lopez filed a separate complaint in Los Angeles County Superior Court (Case No. YC070379) seeking penalties under the Private Attorney General Act ("PAGA") for alleged unpaid wages, unpaid overtime, meal and rest break violations, paystub violations and waiting time penalties.  Prior to filing his PAGA complaint, on September 11, 2014, Lopez served the California Labor & Workforce Development Agency ("LWDA") with a notice of his intent to file the lawsuit. The allegations in Lopez' letter to the LWDA were identical to those later stated in his state court PAGA complaint.  Defendants filed a special demurrer/plea in abatement, which was sustained without leave to amend on June 17, 2015.  Defendants stipulated to allow Lopez to amend his complaint to add the allegations in the instant matter, Case No. CV14-6639-PSG (PLAx) to seek PAGA penalties.  On October 14, 2015, Named Plaintiff filed a First Amended Complaint adding a claim for penalties under the PAGA.

Plaintiff now seeks to represent the following Settlement Class comprised of approximately 2,513 individuals:

All persons who, at any time from July 22, 2010, to the date of preliminary approval of this Settlement (the "Class Period"), were employed by GEO as a non-exempt employee at any of the following facilities: (1) Adelanto Detention Facility (East and West); (2) Alhambra Jail; (3) Baldwin Park Jail; (4) Bell Gardens City Jail; (5) Central Valley Modified Community Correctional Facility; (6) Desert View Modified Community Correctional Facility; (7) Downey Jail; (8) Fontana City Jail; (9) Garden Grove City Jail; (10) Golden State Medium Community Correctional Facility; (11) Leo Chesney Community Correctional Facility; (12) McFarland Community Correctional Facility; (13) Mesa Verde Community Correctional Facility; (14) Montebello City Jail; (15) Ontario City Jail; (16) Western Region Detention Facility at San Diego.

Plaintiff seeks compensation and penalties for time spent being searched, and waiting to be searched, for "contraband" prior to entering Defendants' correctional facilities, meal period violations, wage statement violations, waiting time violations and PAGA violations.

Plaintiff retained The Downey Law Firm, LLC and the Law Offices of Robert W. Sink to pursue his legal claims against Defendants.  In litigating this case, and in reaching the Settlement, Plaintiff's Counsel ("Class Counsel") have cooperated and coordinated their efforts to further the best interests of the Settlement Class and avoid duplication of effort and unnecessary expense.  Sink Decl. ¶ 13.

Class Counsel and counsel for Defendant engaged in substantial discovery during the course of this litigation.  *Id* ¶ 3.  The parties have exchanged disclosures pursuant to Fed. R. Civ. P. 26(a); answered numerous interrogatories and over 100 requests for production of documents, and exchanged over 12,000 pages of documents and data, including company policies, employee handbooks, training materials, emails, timekeeping data, and payroll data, plus voluminous electronic data and video

surveillance.  Additionally, the Parties conducted depositions.  *Id.*  Moreover, Class Counsel made a thorough study of the legal principles applicable to the claims asserted against Defendants and the defenses thereto.  *Id.* ¶ 4.

The parties participated in a full-day mediation session with Robert Kaplan, Esq., an experienced mediator at Judicate West.  *Id*. ¶ 5.  This mediation was hotly contested and lasted an entire day.  *Id*.  A few days later, the Settlement was ultimately reached. *Id*.  As a result, the parties reached a class-wide settlement of this action, subject to the Court's approval.  *Id*.

Class Counsel have spent considerable time drafting the Settlement Agreement to ensures that Settlement Class members:  (1) are provided with notice of the Settlement Agreement and its terms; (2) have an opportunity to opt out or object to the settlement, and (3) will not lose their right to sue under the FLSA even after receiving notice, unless they affirmatively opt-in to this Settlement.  *Id.* ¶ 6.

## III.   SUMMARY OF SETTLEMENT TERMS

The Settlement includes the payment of one million, three hundred seventy-five thousand dollars ($1,375,000)[1] ("Gross Settlement Amount") to be paid in consideration of the Settlement and dismissal of the Action and the related release of claims the members of the Settlement Class may have against Defendants.  Agreement ¶ 8.  This is a non-reversionary settlement:  100% of the Net Settlement Amount will be distributed to all Settlement Class Members who submit a Claim Form ("Qualified Claimants") on a

---

[1]     Defendants shall also pay the employer's share of any payroll taxes.  Agreement ¶ 9.

pro-rata basis based on the number of weeks worked. *Id*. at ¶ 37. None of the

Settlement monies revert back to Defendants.

Pursuant to the Settlement Agreement, by separate application prior to the Final

Fairness Hearing, Class Counsel will apply to the Court for an award of attorneys' fees

in an amount up to thirty-three and one-third percent (33⅓%) of the Gross Settlement

Amount, an award of Class Counsel's expenses in an amount up to seventy-five

thousand dollars ($75,000), and an enhancement award of up to five thousand dollars

($5,000) for the Class Representative. *Id*. at ¶¶ 33, 34. Defendants do not oppose these

requests. *Id*. Also, pursuant to the Settlement Agreement, the Parties have agreed to use

Simpluris as the Settlement Administrator to, *inter alia*, mail Notices, Claim Forms and

Request for Exclusion to Class Members and make individual payments. *Id*. at ¶ 16.

Simpluris' fees as Settlement Administrator have been capped at $22,000. *Id*. Simpluris

had the lowest bid for Settlement Administrator. Sink Decl. ¶ 12. Pursuant to the

Settlement Agreement, Class Counsel's attorneys' fees and costs, the Class

Representative's enhancement award, PAGA penalties, and the cost of the Settlement

Administrator will be deducted from the Gross Settlement Amount to arrive at the Net

Settlement Amount.   Agreement ¶ 36.

The balance remaining after these costs and expenses are deducted shall constitute

the Net Settlement Amount from which awards to eligible Qualified Claimants (*i.e.*,

those who return the Court-approved Claim Form), will be calculated. *Id*. at ¶¶ 36-37.

Defendants agree to provide the Settlement Administrator, within ten (10) calendar days

of preliminary approval by the Court of the Settlement, the data necessary to calculate

Case 5:16-cv-02263-DOC-KK   Document 50-12   Filed 11/27/17   Page 108 of 158   Page ID
#:4526
Case 2:14-cv-06639-PSG-PLA   Document 63-1   Filed 11/03/15   Page 13 of 29   Page ID
#:1111

1   the number of work weeks for each Settlement Class Member, including, but not limited

2   to, the start and end dates for each period during the Class Period that Settlement Class

3   Members were employed by Defendants.  *Id*. at ¶ 17.  Defendants agree to distribute

4   100% of the NSA on a pro rata basis to all Qualified Claimants based on the number of

5   weeks each person worked.  *Id*. at ¶ 37.  From the Net Settlement Amount, one-third

6   (1/3) of each Settlement Payment shall be allocated to unpaid wages, one-third (1/3) to

7   penalties, and one-third (1/3) to interest on wages.  *Id*. at ¶ 39.

8       The Settlement Agreement provides what Class Counsel believe is the fairest and

9   most practicable procedure for notifying the Settlement Class Members concerning the

10  terms of the Settlement and their respective rights under the Settlement.  Sink Decl. ¶

11  12.  The Claims Administrator, Class Counsel and Defendants will make all reasonable

12  efforts, as specified in the Settlement Agreement, to best ensure that each Settlement

13  Class Member receives full and adequate notice of the Settlement, including: the Gross

14  and Net Settlement Amounts, the requirement that a Settlement Class Member timely

15  submits a Claim Form to participate in the Settlement, an opportunity to submit

16  objections to the Settlement and appear at the Final Fairness Hearing; and an opportunity

17  to opt-out of the Settlement Class.  Agreement ¶ 18.

18      In exchange for the Settlement benefits, Settlement Class Members who do not

19  opt-out of the Settlement Class will release Defendants from all claims, other than

20  claims under the Fair Labor Standards Act ("FLSA"), asserted in the Action.  Agreement

21  ¶ 44.  In addition, Class Members who submit a Claim Form will also release all claims

22  under the FLSA.  *Id*. at ¶ 45.  Class Members who do not submit a Claim Form will not

Case 5:16-cv-02263-DOC-KK   Document 50-12   Filed 11/27/17   Page 109 of 158   Page ID
#:4527
Case 2:14-cv-06639-PSG-PLA   Document 63-1   Filed 11/03/15   Page 14 of 29   Page ID
#:1112

release any claims under the FLSA but will release all remaining claims asserted in the Action unless they opt to be excluded from the Settlement. *Id.* at ¶¶ 44-45.

Any Settlement Class Member who wants to be excluded may be excluded from the Settlement by providing timely notice to the Claims Administrator. *Id.* ¶ 23. Settlement Class Members who do not exclude themselves from the Settlement may also object to the fairness, reasonableness or adequacy of the Settlement or any award of fees or expenses. *Id.* ¶ 25. The Notice will fully explain the opt-out and objection procedures. *Id.* ¶ 23, 25 and Exhibit A thereto.

The Parties further agreed that preliminary approval shall be through the entry of an "Order of Preliminary Approval," substantially in the form and content of Exhibit A to the Settlement Agreement attached hereto, including, requesting that the Court enjoin the Class Members from filing any DLSE/DOL claims, or from initiating other proceedings, regarding claims released by the Settlement pending final approval of the Settlement Agreement by the Court. *Id.* ¶ 14.

Because this lawsuit is before the Court under the Class Action Fairness Act, Defendants are required to notify appropriate Federal and State officials of the Settlement. 28 U.S.C. § 1715. The Proposed Order states that within five business days of the Court's preliminary approval of the Settlement, counsel for Defendants will cause a notice of the proposed settlement to be served upon the appropriate state official of each state in a class member resides and the appropriate federal official. The notice to government agencies will include all documents and information required by 28 U.S.C. § 1715.

## IV.  LEGAL ARGUMENT

### A.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AND SCHEDULE A FINAL FAIRNESS HEARING.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Although approval of class settlements lies within the discretion of the Court, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1001, 1027 (9th Cir. 1998), this discretion is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases.  *See, e.g., Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999).  A court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion."  *Hanlon*, 150 F.3d at 1026; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (*citing Manual for Complex Litig.* 3d, § 30.41).  Final approval is warranted where the settlement is "fundamentally fair adequate, and reasonable."  *Id.* (quoting 5 *Moore Federal Practice,* sec. 23.85 (Matthew Bender 3d ed.)).

"The preliminary determination establishes an initial presumption of fairness." *In re General Motors Corp.*, 55 F.3d 768, 784 (3d Cir. 1995).  Preliminary approval of a settlement and notice to the proposed class is appropriate:

[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval . . .

*In re Tableware Antitrust Litig.,* 484 F. Supp.2d 1078, 1079 (N.D. Cal. 2007) (*quoting*

*Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 n. 12 (E.D. Pa.

2001)); *Manual for Complex Litig.* 3d, § 30.41 (preliminary approval is warranted "if the

preliminary evaluation of the proposed settlement does not disclose grounds to doubt its

fairness or other obvious deficiencies, such as preferential treatment of class

representatives or of segments of the class, or excessive compensation for attorneys, and

appears to fall within the range of possible approval").

In reviewing the settlement, although it is not a court's province to "reach any

ultimate conclusions on the contested issues of fact and law which underlie the merits of

the dispute," a court should weigh the strength of plaintiff's case; the risk, expense,

complexity, and likely duration of further litigation; the stage of the proceedings, and the

value of the settlement offer. *Chem. Bank v. City of Seattle,* 955 F.2d 1268, 1291 (9th

Cir.1992). The court should also watch for collusion between class counsel and

defendants. *Id.*

Preliminary approval of a settlement and notice to the proposed class is

appropriate: "[i]f the proposed settlement appears to be the product of serious, informed,

non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly

grant preferential treatment to class representatives or segments of the class, and [4] falls

with the range of possible approval...." *In re Tableware Antitrust Litig.,* 484 F.Supp.2d

1078, 1079 (N.D.Cal.2007) (adding numbers). The Settlement proposed by the parties satisfies this test.

The Settlement proposed by the parties falls well within the range of possible approval since it meets each of the requirements of substantive and procedural fairness and there are no grounds to doubt the reasonableness of the proposed Settlement.

### 1. The Proposed Settlement Falls Well Within the Range of Possible Approval

First, the proposed Settlement falls within the range of possible approval.  To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.  Based on evidence revealed during discovery, in conjunction with Defendants' defenses of the de-minimus time spent for searches, rounding of compensable time, and additional time provided for meal periods, there was a realistic potential that Plaintiff and Class Members could expect no recovery at all.  Sink Decl. ¶ 9, 18.  Ignoring these significant barriers to recovery, Plaintiff's Counsel calculated Class Members' realistic expected recovery to equal $1,396,656.  **(FOR A HIGHLY DETAILED ANALYSIS OF THE RELEVANT CLAIMS AND DEFENSES, AND PLAINTIFF'S COUNSEL'S CALCULATION OF REALISTIC EXPECTED RECOVERY, SEE SINK DECL. ¶ 18).**  Thus, Plaintiff's Counsel's recovery of $1,375,000 represents almost 100% of Plaintiff's and Class Members' realistic expected recovery of $1,396,656.  Sink Decl. ¶ 18.  Plaintiff's Counsel not only believes that this recovery is reasonable, but that it is exceptional. *Id*.

-12-

Balanced against this, the $1,375,000 Settlement should be approved because it confers a substantial benefit on the Settlement Class Members, whereas proceeding with litigation would impose significant risk of no recovery as well as ongoing, substantial expense.  Qualified Claimants will share in a $1,375,000 Gross Settlement Amount (less the costs of administration, Class Counsel fees and costs, enhancement award and payment to LWDA), which will provide each Qualified Claimant with substantial monetary relief.

The Parties engaged in more than a year of contentious litigation before reaching the Settlement.  Sink Decl. ¶ 3.  The Parties conducted significant discovery, having exchanged and answered numerous interrogatories and over 100 requests for production of documents.  *Id.*  Following a contested motion to compel, Defendant produced, and Class Counsel extensively reviewed, over 12,000 pages of documents, including thousands of pages of data, plus voluminous electronic data and video surveillance of Defendants' premises.  *Id.*  Additionally, the depositions of the Named Plaintiff and Defendants' former regional director and current warden were conducted.  *Id.*  Moreover, Class Counsel conducted significant legal research regarding the strengths of weakness of the Plaintiff's claims based on the information adduced during discovery.  *Id.* ¶ 4.  The terms of the Settlement Agreement are therefore based on a thorough evaluation of the evidence and the underlying case law.

Defendants deny any liability in this action.  Agreement ¶ 3.  Plaintiff's claims, if the Action cannot be settled, including the maintenance of this action as a class action, are subject to serious manageability issues stemming from individual considerations that

-13-

would arise at trial. Although Plaintiff believes his claims have merit, parties in the litigation process always face significant risk of an adverse result, or a partially adverse result and would be required to expend additional time and resources litigating the case. The Settlement with Defendants for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable and adequate and is in the best interests of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the risk the Settlement Class would not be certified by the Court, hurdles to proving liability and damages, and significant defenses asserted by Defendants.

Continued litigation of Plaintiff's and the Class' claims in this action would require substantial additional preparation and discovery. Sink Decl. ¶ 10. It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports. *Id.* In addition, Defendant would oppose class certification. *Id.* If this case were to go to trial, it is estimated that fees and costs would easily add up to millions of dollars. *Id.*

By contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the Class. Such a result will benefit the parties and the court system. In exchange for the Settlement benefits, the Class Members will be required to execute a release that is appropriately tailored only to those claims that have been alleged based on the facts alleged in the Action. For these reasons, Plaintiff believes this is an excellent Settlement for Plaintiff and the Class.

2. **The Proposed Settlement was the Product of Informed, Non-Collusive Negotiations and Does Not Present Any Grounds to Doubt its Fairness**

Settlement in this matter was reached only after informed arms' length negotiations between the parties. *Id.* Class Counsel conducted extensive investigation allowing them to assess the strengths and weaknesses of the case. *Id.* ¶¶ 3-4. A formal mediation before a skilled and experienced mediator was required, and the parties also engaged in additional in-depth negotiations in the weeks following a full-day mediation session concerning the detailed terms of the proposed settlement. *Id.* ¶¶ 5-6. Thus, the Settlement is the product of non-collusive negotiations.

Next, the proposed Settlement should be preliminarily approved because it has no "obvious deficiencies," such as "unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *In re Vitamins Antitrust Litig.*, 2001 WL 856292 at *4 (D.D.C. July 25, 2001). The Settlement Agreement provides that Class Counsel will pay reasonable enhancements to Class Representatives as compensation for their extensive services as Class Representatives and substantial assistance to Class Counsel in prosecuting this action on behalf of other, absent class members. The enhancements are reasonable and should be granted. *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).

In this action, the Representative Plaintiff took very real steps to advance the interests of the Settlement Class in this litigation. Sink Decl. ¶ 15. He brought the claim to the attention of Class Counsel. *Id.* He searched his files and produced all of the documents he had relating to his employment by Defendants. *Id.* He explained the employment practices that he encountered. *Id.* He gave extensive interviews concerning

his experiences.  *Id.*  Moreover, he travelled overnight to appear for, and provided, lengthy deposition testimony.  *Id.*  Finally, he took the extraordinary step of putting himself on the line by agreeing to serve as Class Representative, with all of the attendant duties, and by agreeing to put the interests of the Classes ahead of his own. As a result of his efforts, the Settlement Class Members will benefit from substantial financial recoveries.  The proposed service payments of $5,000 to the Class Representatives is reasonable in light of the efforts he made and risks he took in bringing and prosecuting this action to obtain the Gross Settlement Amount.  *See Van Vranken*, 901 F. Supp. at 300 (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).

The Agreement's provisions concerning attorneys' fees are likewise fair and reasonable.  Class Counsel does not seek, with this Motion, approval of an attorneys' fee award.  Rather, Class Counsel will make an appropriate motion, pursuant to Fed. R. Civ. P. 23(h), requesting an award of attorneys' fees not to exceed one-third of the Gross Settlement Amount.  Such an award is well within the range of the Ninth Circuit's 25% "benchmark for calculating common fund attorneys' fees." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Indeed, 33 ⅓ % of the Gross Settlement Amount is commensurate with the percentage awarded in other wage-and-hour class actions in California District Court.  *See Shiller v. David's Bridal, Inc.,* 2012 WL 2117001 *19 (E.D.Cal. 2012) (collecting cases that awarded 30 to 33 ⅓ % in attorneys' fees).  Class Counsel's extensive efforts on behalf of the Class Members to date, as well as the substantial time Class Counsel expects to devote to the implementation and

-16-

1   administration of the Settlement Agreement, should be recognized at the appropriate

2   time, with the appropriate procedure.  Class Counsel believe that they have obtained an

3   extraordinarily successful result for the Settlement Class in this case.  A standard one-

4

5   third fee is the norm in contingency-fee cases.  *See Vizcaino*, 290 F.3d at 1051.

6           **3.      The Proposed Notices to Settlement Class Members and Method of Notification are Adequate**

7

8           "Adequate notice is critical to court approval of a class settlement under Rule

9   23(e)." *Hanlon,* 150 F.3d at 1025.  A class action settlement notice "is satisfactory if it

10  'generally describes the terms of the settlement in sufficient detail to alert those with

11  adverse viewpoints to investigate and to come forward and be heard.'"  *Churchill Village*

12  *LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. U.S.,*

13  623 F.2d 1338, 1352 (9th Cir. 1980)).

14

15          Here, the Notice and manner of distribution negotiated and agreed upon by the

16  parties is "the best notice practicable," as required under Federal Rule of Civil Procedure

17  23(c)(2)(B).  All Settlement Class Members have been identified and the Notice will be

18  mailed directly to each Class Member.  *See* Agreement ¶ 24.  The proposed Notice (*see*

19

20  Exhibit A to the Settlement Agreement) is clear and straightforward and provides

21  information on the meaning and nature of the proposed Settlement Class and class

22  action, the terms and provisions of the Settlement Agreement, and the monetary awards

23

24  that the Settlement will provide Class Members.

25          The Notice clearly explains the procedures and deadlines for making a claim for a

26  settlement award, opting-out of the settlement or submitting objections, the

27  consequences of taking or foregoing the various options available to Class Members,

28

and the date, time and place of the final settlement approval hearing.  Pursuant to Federal Rule of Civil Procedure 23(h), the proposed Class Notice also sets forth the amount of attorneys' fees and costs sought by Plaintiff, as well as an explanation of the procedure by which Plaintiff's counsel will apply for them.  The Class Notice clearly states that the Settlement does not constitute an admission of liability by Defendants.  It makes clear that the final settlement approval decision has yet to be made.

Accordingly, the Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  4 NEWBERG, §§ 8.21 and 8.39; MANUAL, § 21.311 and 21.312.

The Notice will be mailed by the Class Administrator within 20 days following this Court's grant of preliminary approval of the proposed Settlement Agreement, and the Settlement Class Members will be provided a period of thirty (30) days to participate in the Settlement by signing and returning their Claim Forms.

Reasonable steps will be taken to ensure that all Class Members receive the Notice.  Before mailing the Class Notice and Claim Form the Claims Administrator will receive the full names, last-known addresses and social security numbers of the Settlement Class Members.  Agreement ¶ 17.  Any Notice Documents that are returned as undeliverable by the Postal Service with a forwarding address will be re-mailed to the new address and the Settlement Administrator will update the Settlement Class Member List accordingly.  *Id*. at ¶ 20.  For any Notice Documents that are returned as undeliverable by the Postal Service without a forwarding address, the Settlement Administrator will perform one "skip trace" or equivalent address search to locate the

most accurate and updated address information.  *Id*. at ¶ 21.  The Settlement

Administrator shall then re-mail the Notice materials to any new addresses found.  *Id*.  A

reminder postcard shall be sent to all Class Members who have not made a claim or

opted out within fifteen (15) calendar days of the first mailing. *Id*. at ¶ 22.

**B.     PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS
         IS APPROPRIATE**

Pursuant to Federal Rule of Civil Procedure 23(c)(1), the Court may "make a

conditional determination of whether an action should be maintained as a class action,

subject to final approval at later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461,

466 (E.D. Pa. 2000) (*citing* Fed. R. Civ. P. 23(c)(1)).  Conditional approval of the class

is appropriate where the plaintiff demonstrates numerosity, commonality, typicality and

adequacy of representation, and one of the three requirements of Fed. R. Civ. P. 23(b) is

met.  *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Plaintiff submits that all of the requirements of Rule 23(a) as well as those of Rule

23(b)(3) are met in this case for purposes of settlement.  *See Amchem Products, Inc. v.

Windsor*, 521 U.S. 591, 620 (1997).

**C.     CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(A)**

**1.     Numerosity**

To meet the numerosity requirement of Rule 23(a)(1), "the class size only need be

large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467.  The

proposed Settlement Class here easily meets the numerosity requirement because

approximately 2,513 Settlement Class Members have been identified in a Class Member

list produced by Defendants during discovery.  Sink Decl. ¶ 16.

### 2.    Commonality

The commonality requirement of Rule 23(a)(2) "is met if there is 'at least one common question or law or fact." *Fry*, 198 F.R.D. at 467.  To satisfy the commonality requirement, Plaintiff need only point to a single issue common to the class. *Dukes v. Wal–Mart, Inc*., 509 F.3d 1168, 1177 (9th Cir. 2007). Commonality exists when there is either a common legal issue stemming from divergent factual predicates or a common nucleus of facts resulting in divergent legal theories.  *Hanlon v. Chrysler Corp. ("Chrysler Corp.")*, 150 F.3d 1011, 1019 (9th Cir. 1998).  In other words, commonality is generally satisfied where, as in this case, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality.  *Id*. at 868 (finding commonality requirement satisfied despite individual class members having different disabilities, since all suffered similar harm as a result of defendant's actions).

Here, common questions of law and fact predominate.  The alleged common issues, which predominate in this action, include, for example: whether the Settlement Class Members during the Class Period were similarly denied compensation for all hours worked, including time spent being searched, and waiting to be searched, for "contraband" prior to entering Defendants' facilities, and whether Defendants denied the Settlement Class Members their meal and rest breaks required under California state law.  Common facts included predominated because, it was adduced during discovery,

that all 16 of Defendants' facilities required non-exempt employees to be searched prior
to entry.  Sink Decl. ¶ 17.  These sample common questions of law and fact, which
Plaintiff contends apply uniformly to all of the members of the proposed Settlement
Class, predominate over any individual questions of individual liability.

### 3.    Typicality

"Rule 23(a)(3) requires that the claims of the named parties be typical of the
claims of the members of the class." *Fry*, 198 F.R.D. at 468.  "Under the rule's
permissive standards, a representatives' claims are 'typical' if they are reasonably
coextensive with those of absent class members; they need not be substantially
identical." *Hanlon*, 150 F.3d at 1020; *Dukes*, 474 F.3d at 1232.  To satisfy the
requirement of typicality, "a class representative must be part of the class and possess
the same interest and suffer the same injury as the class members." *General Tel. Co. of
S.W. v. Falcon*, 457 U.S. 147, 156 (1982).

Plaintiff contends that his claims are sufficiently typical of the common claims
presented.  Plaintiff and Class Members were nonexempt employees of 16 of
Defendants' California correctional facilities who were allegedly: 1) required to be
searched for contraband prior to entering Defendants' facilities, 2.) not paid their wages
for all hours worked, and 3.) denied legally-compliant meal periods during their
employment.  As set forth above, Plaintiff contends that Defendants' uniform treatment
of the proposed Settlement Class Members with respect to these issues demonstrate that
the proposed Settlement Class Members possess similar interests and suffered similar
injuries.  According to Plaintiffs, a class action adjudicating all of these claims is clearly

superior to individual adjudication of each Class Member's claims, which would require numerous separate trials and could lead to contradictory results.

For purposes of preliminary approval of the parties' settlement, because the claims of the Named Plaintiff and Settlement Class all arise from the same alleged practices, policies, events and courses of conduct, and are all based on the same facts and legal theories, the typicality requirement is also satisfied.

### 4.      Adequacy of Representation

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469; *see also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

The adequacy of representation requirement is met here because the Named Plaintiff has the same interests as the Settlement Class Members and Plaintiff is represented by experienced and competent counsel. *See* Sink Decl. ¶ 14.  There is no conflict between Plaintiff and the Settlement Class in this case – Plaintiff's claims are in-line with the claims of the Class.  Moreover, there is no conflict between Plaintiff's claims and those of Class Members.  Plaintiff and his Counsel will continue to aggressively and competently assert the interests of the Settlement Class.

-22-

**D.    CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23(B)(3)**

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b).  Under Rule 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

For the reasons discussed, Plaintiff submits that the Settlement Classes defined above satisfy the predominance requirement.  Moreover, Plaintiff contends that allowing Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court and others across the state.  It also is superior to the alternative of leaving these important labor rights unredressed due to the difficulty of finding legal representation and filing claims on an individualized basis.

**V.    THE PROPOSED SCHEDULING ORDER**

The [proposed] Order sets forth the Parties' proposed sequence for the relevant dates and deadlines, assuming the Court preliminarily approves the Settlement.

**VI.    CONCLUSION**

For the foregoing reasons, the parties respectfully request that this Court grant this unopposed Motion in its entirety and enter the accompanying proposed Order.

1

2      Dated:  November 3, 2015          **LAW OFFICES OF ROBERT W. SINK**

3

4                                        /s/Robert W. Sink

5                                        Robert W. Sink, Esq. (admitted *pro hac vice*)
                                         rsink@sinklawoffices.com
6                                        **LAW OFFICES OF ROBERT W. SINK**

7                                        1800 J.F.K. Blvd., 14th Floor

8                                        Philadelphia, PA 19103
                                         Tel: 215-995-1000 | Fax: 215-475-4600
9

10                                       Philip A. Downey, Esq. (admitted *pro hac vice*)
                                         downeyjustice@gmail.com
11                                       Cory G. Lee, Esq. (SBN 216921)
                                         downeyjusticelee@gmail.com
12                                       **THE DOWNEY LAW FIRM, LLC**

13                                       9595 Wilshire Boulevard, 9th Floor

14                                       Beverly Hills, CA 90212
                                         Tel:   213-291-3333
15                                       Fax:   610-643-4352

16
                                         Attorneys for Plaintiff and the proposed Class
17

18

19

20

21

22

23

24

25

26

27

28

                                         -24-

1

Robert W. Sink, Esq. (*admitted pro hac vice*)
rsink@sinklawoffices.com

2

**LAW OFFICES OF ROBERT W. SINK**

3

1800 J.F.K. Boulevard, 14th Floor
Philadelphia, PA 19103

4

Tel:   215-995-1000

5

Fax:   215-475-4600

6

Attorneys for Plaintiff and the Proposed Class

7

**UNITED STATES DISTRICT COURT**

8

**CENTRAL DISTRICT OF CALIFORNIA**

9

VICTOR LOPEZ, on behalf of himself
and on behalf of all others similarly
situated,

10

11

                         Plaintiff,

12

     v.

13

THE GEO GROUP, INC. D/B/A GEO
CALIFORNIA, INC.; GEO
CORRECTIONS HOLDINGS, INC.;
AND GEO CORRECTIONS AND
DETENTION, LLC,

14

15

16

                         Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV14-06639-PSG (PLAx)

**CLASS ACTION**

**DECLARATION OF ROBERT W. SINK I.S.O. PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**HEARING DATE: Dec. 21, 2015 TIME: 1:30p.m.**

**Hon. Philip Gutierrez**

I, Robert W. Sink, hereby declare as follows:

    1.    I am co-counsel for the Plaintiffs in this case.

    2.    I am the principal of the Law Offices of Robert W. Sink.  I have more than twenty years of experience litigating class actions and complex cases.  I have successfully litigated other class action cases in federal and state courts.  In addition to having my J.D., I have a M.B.A. in Accounting and a LL.M. in Trial Advocacy.  My firm resume is attached as Exhibit A.

    3.    The Parties engaged in more than a year of contentious litigation before reaching the Settlement.  During that time, the Parties conducted significant discovery, having exchanged disclosures pursuant to Fed. R. Civ. P. 26(a), and answered numerous interrogatories and over 100 requests for production of documents.  Following a contested motion to compel, Defendants produced, and Class Counsel extensively reviewed, over 12,000 pages of documents, including thousands of pages of data, company policies, employee handbooks, training materials, emails, timekeeping data, and payroll data, plus voluminous electronic data and video surveillance of Defendants' premises.  Additionally, the depositions of the Named Plaintiff and Defendants' former regional director and current warden were conducted.

    4.    Class Counsel conducted significant legal research regarding the strengths of weakness of the Plaintiff's claims based on the information adduced during discovery.

    5.    The parties participated in a full-day mediation session with Robert Kaplan, Esq., an experienced mediator at Judicate West.  This mediation was hotly contested and lasted an entire day.  A few days later, the Settlement was ultimately reached.  As a

result, the parties reached a class-wide settlement of this action, subject to the Court's approval.

6.     The parties also engaged in additional in-depth negotiations in the weeks following a full-day mediation session concerning the detailed terms of the proposed settlement.  Plaintiff's Counsel since spent considerable time drafting the Settlement Agreement to ensure that Settlement Class Members:  (1) are provided with notice of the Settlement Agreement and its terms; (2) have an opportunity to opt-out or object to the settlement, and (3) will not lose their right to sue under the FLSA even after receiving notice, unless they affirmatively opt-in to this Settlement.

7.     It is my belief that the negotiated Settlement Agreement provides a fair and reasonable settlement for Plaintiff and the Settlement Class with respect to their claims for allegedly unpaid wages, liquidated damages, interest, and other penalties arising from the Defendants' alleged improper wage and hour practices at issue in this case.  If finally approved by the Court, I believe that the Settlement would represent a superior and highly beneficial result for Plaintiff and all putative Class Members.

8.     I believe that the Settlement offers the Settlement Class Members significant advantages over continued prosecution of their case against Defendants. Members of the Settlement Class who participate in the Settlement will receive significant financial compensation and will avoid the risks inherent in continued prosecution of this case in which the Defendant asserts various defenses to its liability.

9.     Based on Defendants' defenses of the de minimus time spent for searches, rounding of compensable time, and additional time provided for meal periods, as well as

evidence revealed during discovery, there was a realistic potential that Plaintiff and Class Members could expect no recovery at all.

10.     Continued litigation of Plaintiff's and the Class' claims in this action would require substantial additional preparation and discovery.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports. In addition, Defendant would oppose class certification.  If this case were to go to trial, it is estimated that fees and costs would easily add up to millions of dollars.

11.     The terms of the Settlement Agreement have been reviewed by the Named Plaintiff and have his explicit support.

12.     I believe that the Settlement Agreement provides the fairest and most practicable procedure for notifying the Settlement Class Members concerning the terms of the Settlement and their respective rights under the Settlement.  Simpluris provided me with the lowest bid to act as Settlement Administrator.

13.     In litigating this case, and in reaching the Settlement, Plaintiff's Counsel ("Class Counsel") have cooperated and coordinated their efforts to further the best interests of the Settlement Class and avoid duplication of effort and unnecessary expense.

14.     I am experienced and competent in class actions and complex litigation.  I have been lead counsel in a number of class actions, including the following wage-and-hour class actions in California: *Garcia v. Pitman Farms*, Fresno County Superior Court, Case No. 12CECG00193 (settled and approved), *Gutierrez v. Zacky Farms, LLC*, Fresno County Superior Court, Case No. 10CECG00771 (settled and approved), and *Alvarez v.*

*Rose & Shore, Inc.*, Los Angeles County Central District, Case No. BC577291 (in litigation).

15.    In this action, the Representative Plaintiff took very real steps to advance the interests of the Settlement Class in this litigation. He brought the claim to the attention of Class Counsel, searched his files and produced all of the documents he had relating to his employment by Defendants, explained the employment practices that he encountered, and gave extensive interviews concerning his experiences.    Moreover, he travelled overnight to appear for, and provided, lengthy deposition testimony. *Id.*

16.    Approximately 2,513 Settlement Class Members have been identified in a Class Member list produced by Defendants during discovery.

17.    It was adduced during discovery that all 16 of Defendants' facilities required non-exempt employees to be searched prior to entry.

18.    The evidence adduced during the discovery process, in conjunction with the defenses raised by Defendants, revealed significant hurdles to proving Plaintiff's claims. Regarding Plaintiff's claim that he was not compensated for time he was searched prior to his shift, objective video surveillance revealed that some searches were often performed in a short period of time – sometimes as little as one minute.  Therefore, Defendants' defense that search time was *de minimus* posed a serious impediment to Plaintiff's and Class Members claims.

Additionally, discovery revealed that Defendants had a policy of time rounding, which meant that Defendants' timekeeping system rounded time to the nearest quarter hour based on when an employee punched in or out. Defendant's lawful rounding of non-exempt employees' time often compensated employees for additional time beyond which

they actually worked and therefore compensated non-exempt employees for time undergoing screenings in the circumstance that such screening was not *de minimus*. Therefore, Defendants presented the strong defense to class certification that a highly individualized inquiry was required to determine when, if ever, such screenings were not *de minimus* and whether, on any particular day or week or pay period, the rounding was in the employee's favor such that it fully compensated the particular employee for screening time.  This also presented a significant bar to Plaintiff's and Class Members' claims.

Moreover, discovery revealed that Plaintiff and Class Members were provided between 31 and 38 minutes for lunch, which, based on short search times revealed in the video surveillance, also posed a complete bar to Plaintiff's and Class Members' meal period claims.

Plaintiff's and Class Members' claims for waiting time penalties, failure to properly itemize wage statements, and PAGA violations were derivative of the above claims, and therefore faced the same barriers to recovery.  Moreover, the claims for waiting time penalties required proof of willfulness, and the claims for failure to itemize required knowing and intentional conduct, making them all but insurmountable.

Ignoring these significant barriers to recovery, Plaintiff's Counsel calculated Class Members' realistic expected recovery – assuming an average search time of three minutes a day – to equal $1,396,656.  Plaintiff's Counsel calculated Class Members' realistic expected recovery as follows:  Discovery revealed that Class Members worked 249,403 workweeks between July 22, 2010 and November 1, 2015.  The number of workweeks (249,403) multiplied by 5 workdays equals 1,247,015.  Assuming an average pay rate of

Case 5:16-cv-02263-DOC-KK   Document 50-12   Filed 11/27/17   Page 131 of 158   Page ID
#:4549
Case 2:14-cv-06639-PSG-PLA   Document 63-2   Filed 11/03/15   Page 7 of 9   Page ID #:1134

$15/hour (Lopez made $14/hour), 3 minutes per workday of overtime ($15 x 1.5) equals

$1.12 per workday ($22.5 x 3 ÷ 60).  $1.12 per workday multiplied by 1,247,01

workdays equals $1,396, 656.  Thus, Plaintiff's Counsel's recovery of $1,375,000

represents almost 100% of Plaintiff's and Class Member's realistic expected recovery.

Plaintiff's Counsel not only believes that this recovery is reasonable, but that it is

exceptional.

I declare under penalty of perjury under the laws of the Untied States of America

that the foregoing is true and correct.  Executed on November 3, 2015.

Respectfully submitted,

LAW OFFICES OF ROBERT W. SINK

_____

Robert W. Sink

-7-



## LAW OFFICES OF ROBERT W. SINK

**DELAWARE COUNTY OFFICE:**
319 WEST FRONT STREET
MEDIA, PA 19063

**PHILADELPHIA OFFICE:**
1800 J.F.K. BLVD., 14TH FLOOR
PHILADELPHIA, PA 19103

**MONTGOMERY COUNTY OFFICE:**
1417 CROSBY DRIVE
FORT WASHINGTON, PA 19034

TEL: 215-995-1000 • FAX: 215-475-4600
WWW.SINKLAWOFFICES.COM

## EXHIBIT A

## FIRM RESUME

The Law Offices of Robert W. Sink is a nationally-recognized law firm with significant experience handling class actions and other complex litigation.  The firm's principal, Robert W. Sink, has successfully served in leadership positions in several class actions including:

- *Garcia v. Pitman Farms*, (2014) Fresno County Superior Court Case No.12CECG00193 MWS   Status:  Settled.

- *Gutierrez v. Zacky Farms, LLC,* (2011) Fresno County Superior Court Case No. 10CECG00771 AMS.  Status:  Settled.

- *Cohen v. Warner Chilcott*, 522 F.Supp. 2d 105 (D.D.C. 2007).  Status: Settled.

- *Vista Healthplan, et al. v. Cephalon, Inc., et al.*, C.A. No. 2:06-cv-01833-MSG (M.D.Pa. 2006). Status: Litigation.

- *Sochin, et al. v. Master Lock Company,* N.J.Super., Burlington County, No. BUR-L-1071-05 (2006).  Status: Settled.

- *Schaeffer v. County of Berks, et al.*, Pa.Comm.Pleas, Berks County, No. 99-9158 (2004).  Status: Settled.

- *Davidson v. AIG Warranty Guard,* Inc., *et al.*, Pa.Comm.Pleas, Philadelphia County, No. 980802283 (2002).  Status: Settled.

Mr. Sink is a seasoned and accomplished trial attorney, and is one of less than 1,000 lawyers nationwide who has received a Masters in Trial Advocacy. Moreover, Mr. Sink is a Life Member of the Million Dollar Advocates Forum, which limits its membership to

attorneys who have won million and multi-million dollar verdicts and settlements.  Fewer than 1% of U.S. lawyers are members.  Some of Mr. Sink's noteworthy verdicts and settlements include:

- **$8.3 million antitrust class action settlement**
  *Cohen v. Warner Chilcott*, 522 F.Supp. 2d 105 (D.D.C. 2007).

- **$6.6 million Dram Shop settlement prior to trial**
  *Mercado v. Prime 570, Inc, et al.,* C.A. No. 3:11-CV-02315 (M.D.Pa. 2013)

- **$4 million medical malpractice jury verdict**
  *Bowman v. Albert Einstein Medical Center, et al*., Pa. Comm. Pleas, Philadelphia County, No. 970802166, (1999)

- **$4.025 million settlement prior to trial**
  *Rotola v. Black, et al.*, C.A. No. 3:03- CV-01517 (M.D.Pa. 2005)

- **$3.325 million class action settlement**
  *Gutierrez v. Zacky Farms, LLC,* (2011) Fresno County Superior Court Case No. 10CECG00771 AMS

- **$1.4 million settlement following Plaintiff's jury verdict on liability only**
  *Guglielmo v. A-P-A Transport, et al*., Pa. Comm. Pleas, Philadelphia No. 990002049 (2001)

- **$1.1 million settlement prior to trial**
  *Bruno v. Jackson, et al.,* C.A. No. 3:02-CV-2353, (M.D.Pa.2005)

Mr. Sink achieved one of the top 50 verdicts in Pennsylvania in 1999 and 2005, and his achievements have been recognized in *The National Law Journal, Pennsylvania Law Weekly* and *The Legal Intelligencer*.

1

Robert W. Sink, Esq. (admitted *pro hac vice*)
rsink@sinklawoffices.com

2

**LAW OFFICES OF ROBERT W. SINK**
1800 J.F.K. Blvd., 14th Floor

3

Philadelphia, PA 19103
Tel: 215-995-1000 | Fax: 215-475-4600

4

5

Attorneys for Plaintiff and the proposed Class

6

**UNITED STATES DISTRICT COURT**

7

**CENTRAL DISTRICT OF CALIFORNIA**

8

VICTOR LOPEZ, on behalf of himself and on )

9

behalf of all other similarly situated
individuals,

10

Plaintiff,

11

v.

12

THE GEO GROUP, INC. D/B/A GEO

13

CALIFORNIA, INC.; GEO CORRECTIONS

14

HOLDINGS, INC.; GEO CORRECTIONS
AND DETENTION, LLC; and DOES 1-50,

15

inclusive,

16

Defendants.

Case No. 2:14-cv-06639-PSG-PLA

**CLASS ACTION**

**PROOF OF SERVICE**

17

I, Robert W. Sink, declare, under penalty of perjury, that on this 3rd day of

18

November, 2015, Plaintiff's Notice of Motion and Memorandum of Points and Authorities

19

in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action

20

Settlement and supporting documents and Exhibits were served upon all counsel of record

21

22

via E.C.F.

23

24

Dated:  November 3, 2015          **LAW OFFICES OF ROBERT W. SINK**

25

26

/s/Robert W. Sink

27

28

- 1 –

**PROOF OF SERVICE**
*Lopez v. The GEO Group, Inc. d/b/a GEO California, Inc., et al.*

REQUEST FOR JUDICIAL NOTICE

EXHIBIT 4

Post Arbitration Hearing Brief submitted by the Union on behalf of Elizabeth Marquez

AN ARBITRATION BETWEEN

| | | |
|---|---|---|
| UNITED GOVERNMENT SECURITY | : | |
| OFFICERS OF AMERICA, | : | |
| LOCAL 880, | : | |
| UNION, | : | BEFORE IMPARTIAL ARBITRATOR |
| | : | LEONARD M. SHAPIRO |
| and | : | |
| | : | |
| | : | FMCS NO. 1655686 |
| GEO GROUP, INC. | : | |
| | : | LOCAL 880 MARQUEZ TERMINATION |
| COMPANY. | : | |

_____

**UNION'S POST HEARING BRIEF**

_____


Respectfully submitted,


United Government Security
Officers of America, International Union

/s/ Robert B. Kapitan
Robert B. Kapitan (OH #0074327)
General Counsel
2879 Cranberry Highway
E. Wareham, MA 02538
(330) 703-9307 - mobile
(774) 678-0936 - office (774)
678-4658 - fax
rkapitan@ugsoa.com
Counsel for the UGSOA, Local 880

## I.     <u>INTRODUCTION</u>

GEO Group, Inc. ("GEO" or "the Company") terminated Officer Elizabeth Marquez after it alleged she permitted detainee Jimmy Irias to access several doors. While it is not contested that Detainee Irias was able to gain access through the doors, there were systemic errors and Company shortcuts that led to the Detainee being able to gain access. Officer Marquez was tasked with handling three separate jobs at once, during an emergency period when she should have been only responsible for one. The cost-cutting by GEO, and understaffing, resulted in Officer Marquez's attention to be diverted. The position GEO put her in has since been re-evaluated and GEO recognized their errors by now using two officers to conduct the tasks that it expected Officer Marquez to perform on her own.

## II.   <u>**ISSUES TO BE DETERMINED**</u>

Did the Company have just cause to terminate Elizabeth Marquez? If not, what is the proper

remedy?

### III.   RELEVANT CONTRACT PROVISIONS

### ARTICLE 12
### GRIEVANCE PROCEDURE AND ARBITRATION

**12.1**  The parties agree that all problems should be resolved, whenever possible, before the filing of a grievance but within the time limits for filing grievances stated elsewhere in this Article, and encourage open communications between the Company and Officers so that resorting to the formal grievance procedure will not normally be necessary. The parties further encourage the informal resolution of grievances whenever possible. A grievance is defined as an alleged violation of a specific term or provision of this Agreement. The purpose of this Article is to promote a prompt and efficient procedure for the investigation and resolution of grievances. This grievance procedure is not intended for complaints of harassment or discrimination as referenced in the Employment Handbook and Corporate Policy.

**12.2**  GENERAL PROVISIONS:

The number of days outlined in Article 12.3 in the processing and presentation of grievances shall establish the maximum time allowed for the presentation and processing of a grievance.

While it is the intent of the Company to respond to grievances on a timely basis, if the Company fails to respond to a grievance within the time period allotted for a specific step 1 the grievance may be treated by the Union as if it were denied at that step and the Union may proceed to the next step. The Parties, by mutual written agreement, may agree to extend any of the time limitations.

The Parties agree that if the Union fails to move the grievance to the next step in the process within the time period allotted for a specific step, the grievance shall be treated by the Company as resolved, and no further action shall be taken.

**12.3**  An Officer who believes that any provision of this Agreement has not been properly applied or interpreted may present his grievance to be settled by the following procedures. During each step of the grievance procedure **the Parties** have the right to perform a reasonable investigation into the complaint.

INFORMAL STEP

The Parties shall make their best efforts to resolve any dispute on an informal basis. Both the Company and the Union agree that the Union representative will first discuss the matter with the supervisor and attempt to resolve the dispute within ten (10) business days after the actions giving rise to the dispute occurred, and became known or should have become known to the Union.

STEP 1

If the matter is not resolved informally, a Union representative, not later than ten (10) business days after the informal discussion with the supervisor, shall set forth the facts in writing, specifying the language of this Agreement allegedly violated. This shall be signed by the aggrieved officer (if available and willing to sign the grievance) **and/or**

the Union representative and shall be submitted to the Chief of Security. The Chief of Security shall have ten (10) business days to meet with the Union representative and return a decision in writing, delivering copies to the Union representative and grievant.

**STEP 2**

If the grievance is not settled in Step 1, the grievance may be appealed in writing to the Facility Administrator or designee, not later than ten (10) business days from the Step 1 grievance response. The Facility Administrator, or designee, shall have ten (10) business days to meet with the Union and return a decision in writing, delivering copies to the Union and grievant.

**STEP 3**

If the grievance is not settled in Step 2, the grievance may be appealed in writing to the Western Region Vice President, or designee, not later than ten (10) business days from the Step 2 grievance response. Arrangements will be made for the Western Region VP, or designee, and the Local Union to discuss and attempt to resolve the grievance. The discussion will be held no late than fifteen (15) business days and a decision, in writing, will be delivered to the Local Union and grievant.

12.4   Any grievance involving the termination of an Officer's employment shall be automatically advanced to Step 3 of the grievance and arbitration process.

12.5   Prior to the grievance being process for Arbitration, it will be reviewed by the International Union President, or designee and the Company's Vice President of Employee and Labor Relations, within fifteen (15) business days of the denial by the Company's Western Region Vice president, or their designee. A meeting or telephonic review between the above referenced parties may be held by mutual agreement.

12.6   Grievances processed in accordance with the requirements of Section 12.3 that remain unresolved may be processed to arbitration by the Union, giving the Company's Vice President of Employee and labor Relations written notice of its desire to proceed to arbitration not later than fifteen (15) business days after the Step 3 grievance response.

Grievances that proceed to arbitration shall be processed in

5

accordance with the following procedures and limitations:

A. Selection of an Arbitrator - Within fifteen (15) business days the Party requesting arbitration will request the Federal Mediation Conciliation Service (FMCS) to supply a list of seven (7) arbitrators. If the two Parties cannot agree on an arbitrator during the review of the original list, a second list of prospective arbitrators may be requested from the FMCS. If the Parties still cannot agree on an arbitrator then the strike method will be used on the second list. The Party requesting arbitration will strike the list first.

B. Decision of the Arbitrator - The arbitrator shall commence the hearing at the earliest possible agreed to date. It is understood and agreed between the Parties that the arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement. The decision or award of the arbitrator shall be final and binding upon the Company, the Union and the grievant, provided any party may appeal to an appropriate court of law a decision that was rendered by the arbitrator acting outside of or beyond the arbitrator's jurisdiction, pursuant to applicable law.

C. Arbitration Expense - The arbitrator's fees and expenses, including the cost of any hearing room, shall be shared equally between the Company and the Union. Each Party to the arbitration will be responsible for its own expenses and compensation incurred bringing any of its witnesses or other participants to the arbitration. Any other expenses, including transcript costs, shall be borne by the party incurring such expenses.

**12. 7** Officers have the right to be present during each step of the grievance process. It is understood between the parties that the Union will act as the representative in question.

**12.8** The Union shall have the power to determine whether or not a grievance filed by a member of the Union should be submitted at each step of the grievance process.

**12.9** Each dispute shall constitute a separate proceeding unless the question involved is common to more than one dispute, in which case the proceeding may be consolidated, but only with mutual consent of the parties.

**12.10** No claim for back wages under this Agreement shall exceed the amount of earnings the Officer would have otherwise earned by working for the Company, less any and all compensation the

6

Officer received from any other source, including unemployment
compensation. Under no circumstances will interest charges be
included in any award for back pay. In no event may the arbitrator
enter a monetary award for any item other than lost wages.

**12.11** Nothing contained herein shall prohibit the Company's ability to
file and process its own grievance under the procedure outlined
above.

**12.12** In the event the parties settle any grievance prior to a final and
binding determination by an arbitrator, such settlement shall be on
a non-precedent setting basis unless the parties affirmatively state
otherwise in writing signed by both parties. Evidence of any such
non-precedent setting settlements shall not be admissible in any
proceedings under this Article, including but not limited to,
arbitration hearings.

**12.13** In no case shall a local Company representative respond at more than
one step of the grievance process as outlined above.

## ARTICLE 14 JUST CAUSE

14.1    Except where otherwise provided in this Agreement, where
appropriate, the Company will adhere to concepts of Progressive Discipline,
which it defines as the corrective process of applying penalties short of
dismissal where conduct is of a less serious nature. The nature of discipline
should be appropriate to the conduct and need not begin with the least serious
disciplinary action. Acceptance of the principle of progressive discipline does
not limit the Company's authority to immediately dismiss for serious offenses
that cannot be condoned.

14.2    No Officer shall be disciplined or discharged without just cause. The
Company shall provide the Officer and the Union with a copy of all
disciplinary action forms. Any Officer not granted a required security
clearance by the Client shall be terminated with no recourse to either the
grievance or arbitration procedures set forth in Article 12 of this
Agreement.

14.3    The following violations are representative only of the reasons that
constitute Just Cause for immediate dismissal. The list of violations below is
not an all-inclusive list:

•       Proven dishonesty,

•       The use, sale, possession or introduction into the facility of
contraband,

7

- Any type of theft,
- Aiding or Abetting an escape,
- Insubordination,
- Fighting,
- Being under the influence of illegal drugs or alcohol,
- Leaving a duty post without being properly relieved,
- Inattention to post (sleeping, etc.),
- Sexual and other forms of harassment, in conjunction with the Company's general orders and regulations.
- Unnecessary and/or Excessive Use of Force,
- Failure to respond to an emergency,
- Failure to obey lawful orders,
- Failure to fully and truthfully participate in any facility investigation or attempt to obstruct a facility investigation,
- Refusal to allow a search of themselves and/or their property.
- · Falsification of Company or Client records.
- Unauthorized  possession of Company, Client or  other's property

14.4    Other disciplinary action will consist of:

Counseling - A discussion between an Officer and his supervisor regarding their violation of a behavioral or performance standard, policy or procedure along with guidance or instructions from the supervisor for correcting the problem. All verbal counseling events will be documented.

Written Reprimand - When counseling was given for a violation and that violation is repeated, or for a more serious offense.

Final Reprimand - The "last chance" for the officer to make immediate and sustained improvement in performance and behavior.

Dismissal - The result of a serious breach of a rule, standard, practice, policy, procedure or as a result of repeated disciplinary violations.

Informal coaching which is defined as instantaneous, verbal correction to minor job performance or behavioral issues are not considered disciplinary actions. As such, these coaching sessions should not be documented on a disciplinary action form. Informal coaching sessions may occur between each

of the disciplinary actions listed above (i.e. Counseling, Written Reprimand and Final Reprimand).

To decide on the appropriate action the Company may consider: the seriousness of the Officer's conduct, employment record within the prior year, ability to correct the conduct, actions taken for similar conduct by other Officers, how the conduct affects detainees, the client, the public and other relevant circumstances. At any step in the above process Officers may (at the discretion of the Company) be placed on a Performance Improvement Plan (PIP) as a last attempt to assist the Officer to be successful.

The Officer should be informed of the incident that gave rise to the potential disciplinary action as soon as practical.

14.5    Any Officer who is under investigation by any law enforcement agency; including those for, or charged with, a felony or misdemeanor          will   be placed on administrative leave without pay pending the outcome of the investigation. If an Officer enters a plea of guilty or nolo contendere to the criminal charges stemming from the arrest, then officer will be terminated with no recourse to either the grievance or arbitration procedures set forth in Article 12 of this Agreement. If the Officer is found not guilty or the charges are dropped, the Officer will be reinstated with no back pay, but with no loss of seniority.

14.6    Disciplinary actions, excluding statutory claims that have been upheld, will remain in an Officer's personnel file, but cannot be used against the Officer after the expiration of 12 months from the date of the   last violation.

14.7 An Officer interviewed concerning his discipline may request a Union representative be present during such interview. Nothing herein shall be construed to compel an Officer to have Union representation present If an Officer requests Union representation, the Officer will not be required to respond to questions until the representative is present. Once the Union representative is present, questioning may begin and the Officer may confer with the Union representative regarding his responses. Although the Officer may consult with the Union representative related to the issue at hand, the Company requires all interview responses come from the Officer.

14.8 Officers are entitled to meet with the Facility Administrator or his designee to review their personnel file. This review will be scheduled at a mutually convenient time in accordance with the needs of the business or

9

applicable state laws. Information contained in an Officer's personnel tile
shall be considered confidential. Officers may not request removal of items
from their file, but can if they wish add rebuttal statements or additional
information related to items contained within the flle. Officers may request
copies of file documents that bear their signature.

IV.   **STATEMENT OF FACTS**

Elizabeth Marquez was employed by GEO from July 9, 2012 through May 2, 2016

as a detention officer. Tr., p. 176; CX-2. Prior to working for GEO, she was a full-time

student studying criminal justice, while also holding down two jobs. Tr., p. 177. She

received her degree and began working for GEO. Her job as a detention officer for GEO at

first entailed working in the dormitories. Tr., p. 177. She was then transferred to a utility

position which provided breaks to other officers and helped out with meals. Tr., p. 177.

After that she was transferred to Central Control in the summer of 2014 and worked there

on and off until she found out she was pregnant in February, 2015. Tr., p. 178. At that

point, she was posted in Central Control on a continuing basis. Tr., p. 178.

**A.    The Central Control Post.**

The Central Control center post requires the detention officer to perform a number

of duties. Security Officer Shawna Nowicki and Officer Marquez both testified about the

duties and described it as a "very busy" post. Tr., p. 148. First, the officer is required to

communicate by radio with detention officers in order to coordinate and document their

activities. Tr., p. 179. On a busy day, radio calls could come in every couple seconds. On a

slow day, the calls would be every couple minutes. Tr., p. 180. In addition, the Central

Control officer is also responsible for answering phones. Tr., p. 180. Calls would come in

from different facilities, management, and others who wanted to leave messages for detainees. Tr., p. 180. Officer Nowicki summarized it by saying that there is not much time during a shift when the Central Control officer is not on the phone. Tr., p. 148. After 4 p.m. each day, when the front desk was closed, the Central Control officer would also be responsible for incoming calls that would normally be handled by the receptionist. Tr., p. 180.

In addition to the radio and phone calls, the Central Control officer was also responsible for monitoring movement on the board. Tr., p. 149, 180. That meant watching the board and reacting to indicator lights when someone tried to access a secured door. That happened continuously every couple seconds as hundreds of people moved through the facility. Tr., p. 181. Officer Nowicki testified that, depending on the time of day, the board would indicate someone trying to access a door 20 times every five seconds. Tr., p. 149. But Officer Nowicki also testified that there is a difference between the procedure now as opposed to August, 2015. Then, Central Control was responsible for all of the doors in the facility. Tr., p. 150-152. That is because, again, at the time in August, 2015, housing officers had to cover breaks so they were taken away from their duties. Tr., p. 151.

Shortly after the incident with Detainee Irias, GEO changed their policy so that housing officers were no longer giving breaks. That meant that they could control access to the doors within their own housing units, and the Central Control officer no longer had to cover them. Tr., p. 151-152. Since there were five housing units and one segregation unit, a total of eight officers were monitoring the doors after the change in policy, instead of two at the time of the incident in this case. Tr., p. 153.

But the work day also involves times that are atypical when it is even more

11

stressful. In addition to the other responsibilities, the Central Control officer must also

participate during the procedure to count the detainees. Tr., p. 181. In August, 2015, when

a count had to be done, one Central Control officer would hand over responsibility for their

half of the board to the other officer and conduct the count. Tr., p. 153-154. That meant

that the Central Control officer responsible for monitoring both boards is also monitoring

the radio and phones, and is also in contact with the dormitory pod officers to get the

number count of the detainees for each pod. Tr., p. 154, 181. There are also emergency

counts when a detainee count in conducted because one is found missing. That involves

transporting all detainees to their pods from other areas like medical or visitation. And then

conducting a physical face-to-photo count. Tr., p. 182. Basically, it is a much more

involved and time-consuming process than a regular count. It is also different from a

normal count because radio and phone traffic increase as detainees are moved from other

areas to their dormitories. Tr., p. 182-183.

Shortly after the incident involving Detainee Irias, GEO also changed the policy

regarding how to process counts. Instead of one Control Center officer being responsible

for the whole board, a third officer now comes in during the count and one of the officers

conducts the count in the watch room. Tr., p. 154. Again, this was a change in GEO policy

as a result of the Irias incident and GEO recognizing that their system was flawed. Tr., p.

154.

While performing all these duties, the Central Control officer must still monitor the

video board. That is a screen which has multiple feeds for the many secure access doors in

the facility which are controlled at that post. If someone tries to access one of the secure

doors that does not have a video feed, the Central Control officer uses the intercom so that

the person can identify their last name. Tr., p. 183-184. Any last name will permit access since GEO does not maintain a list for cross-referencing. Tr., p. 156, 184. If someone tries to access a door that has a video feed, an image of the door and the person will come up on the video screen which is next to the board. Tr., p. 185. The Central Control officer does not see what happens before or after the person pushes the button to access the door, only a still shot of the door for a second or two. Tr., p. 159.

###    B.    Detainee Irias Incident.

On August 5, 2015, there was a perfect storm of events that led to Detainee Irias to be able to access several secure doors.[1] Not only did Officer Marquez have the typical responsibilities of her post at Central Control, but, at 1630 hours, she also had to handle all of the telephone traffic from the front desk since that was shut down. Tr., p. 186. In addition, one of the housing units was off on their count, so Officer Marquez instituted an emergency count that required moving detainees from the intake office. Tr., p. 186. This entailed moving them to their housing units for the count. And to make matters even worse, all of this occurred during a time when people were changing shifts. Tr., p. 159-160. This means there is a lot of movement through the building and security doors as people are leaving or coming on shift. Tr., p. 160.

At the hearing, Officer Marquez simply could not recall any of the events that were specific to Detainee Irias. Tr., p. 187. She only remembered Sergeant Hutchinson on the

---

[1] GEO attempted to exaggerate the security risk associated with Detainee Irias but it is clear from Lt. Anderson's testimony that all classifications of detainees, whether they be low, medium or high, are treated the same and no special precautions were taken. Tr., p. 63. The only exception are disciplinary segregation detainees. Even though Lt. Anderson testified that Detainee Irias had a history of violence, he was not in disciplinary segregation, so he must not have been considered dangerous. Tr., p. 67.

13

radio asking about Detainee Irias. Tr., p. 187. That was corroborated by Officer Nowicki who testified she heard the same radio call, but that she never heard Mr. Anderson make a radio call. Tr., p. 161. That night, Officer Marquez experienced problems with her pregnancy and her doctor immediately placed her on work restrictions. Tr., p. 188. She ended up taking FMLA leave until the birth of her baby. Tr., p. 187.

### C.  Detainee Irias's Second Incident.

The incident at the heart of this case was not the only one involving Detainee Irias, but it is the only one for which a detention officer was fired. Approximately six weeks after the incident in this case, Officer Nowicki was working as a visitation officer monitoring detainees who had visitors. Tr., p. 161. The visitation room is arranged so that the detainee sits at a bank of windows in a room to speak with the visitor. Tr., p. 161. Behind the detainee is a secure door where the detainees enter the room. Tr., p. 162. On this day, Detainee Irias pushed the button to access the secure door in that room. Tr., p. 162. The officer who was working Central Control on that day allowed Detainee Irias to access through the door without verification. Tr., p. 162. Another officer happened to be passing by and ordered Detainee Irias to go back. Tr., p. 162. At the same time, Officer Nowicki called Central Control and told the officer not to allow the detainee through. Despite committing the exact same infraction as Officer Marquez, the Central Control officer who worked that day was not disciplined. Tr., p. 163.

14

## V.   <u>LAW AND ARGUMENT</u>

### A.   The Company's Burden by Clear and Convincing Evidence

Since this case involves a disciplinary matter, the Company bears the burden of proof.  In judging whether that burden has been met, the Arbitrator "exercise[s] independent judgments not only about the events that occurred, but also about the nature of the penalties imposed."  Elkouri

& Elkouri, Fourth Edition, *How Arbitration Works*, Page 625. Furthermore, the Company's burden is both that of production and that of persuasion, which must establish that the employee engaged in the charged conduct, and that the penalty imposed as a result is justified. Id.  Absent clear and convincing evidence, the imposed discipline cannot be sustained. H*artford, Connecticut Board of Education*, 71-1 ARB. ¶8318 (1970). The purpose of using the "clear and convincing standard" in discharge cases is to ensure that there is sufficient evidence to justify such a harsh penalty. *Providence St. Peter Hospital*, 123 LA 473 (Gaba, 2006).

### B.   The Just Cause Standard

It is well established that in discharge cases involving collective bargaining agreements with just cause provisions, it is the role of the arbitrator to determine whether the penalty imposed by management is excessive, unreasonable, or an abuse of discretion. Elkouri & Elkouri, *How Arbitration Works*, 5th Ed., pp. 910-911, *citing* Franz Food Prods., 28 LA 543, 548 (Bothwell 1957). In this case, it is clear that Company's ability to terminate Officer Gordon's employment is restricted by a just cause provision. (See Articles 2.1 and 10.1 of Jt. Ex. 1).

Arbitrators have insisted that just cause includes a determination of whether the penalty imposed is reasonable and not arbitrary under the totality of the circumstances. See e.g. *Asset Protection and Security Services*, 127 LA 904, 908 (Whelan, 2009); *Dearborn Sausage Co.*,

118 LA 632, 635 (VanDagens, 2003).     This determination goes beyond any Company discretion to determine whether or not a policy was violated but looks at whether the employer's conduct was arbitrary. *Chevron Products Co.*, 116 LA at 279.

The applicable contract in this case states that the Company cannot discharge an employee without "just cause." JX-1, Section 14.  In fact, the parties included an entire article to the concept of just cause and appropriate discipline. The CBA does not define just cause but does require that GEO use progressive discipline when applying penalties. Since there is no contractual definition, it is reasonably implied that the parties intended application of the generally accepted meaning that has evolved in labor-management jurisprudence: that the "just cause" standard is a broad and elastic concept, involving a balance of interests and notions of fundamental fairness. *Rabanco Recycling*, 118 LA 1411 (2003).  Described in very general terms, the applicable standard is one of reasonableness: "whether a reasonable (person) taking into account all relevant circumstances would find sufficient justification in the conduct of the employee to warrant discharge (or discipline)." *Fluor Hanford*, 122 LA 65 (2006).

With respect to progressive discipline, the parties did list infractions that may result in immediate dismissal. JX-1, Section 14.3. All of them involve infractions which were intentional or otherwise involve *mens rea*. If that element is not present, discipline must follow Section 14.4, progressive discipline. The discipline issued to Officer Marquez did

16

not list a rule violation even though the form called for one. CX-1, p. 3.

### C.     The Company is Culpable for its Failed Policies.

➢ GEO changed its policy and the housing officers no longer give breaks but take responsibility for access through security doors in their own housing units.
➢ GEO changed its policy and now a third officer assists Central Control with the detainee counts.
➢ GEO changed its facility just prior to the incident and created a segregation unit that altered how detainees are monitored resulting in Detainee Irias being allowed to move through the facility without restraints or an escort.

The facts regarding Detainee Irias's movement on August 15, 2015 may be largely gleaned from the video presented by GEO. CX-2. But what the video does not show are the failures on the part of GEO that set Officer Marquez up to fail and led to Detainee Irias being able to access secure doors. First, GEO changed the structure and procedure of the building shortly before the incident with Detainee Irias that had a drastic impact on what happened. In the summer of 2015, GEO separated the detainees, who were segregated for disciplinary reasons, from the detainees who were separated for administrative reasons. Tr., p. 64. This entailed building a wall between the two units and creating new procedures for how to deal with detainees. Tr., p. 64. It also changed the staffing levels. Prior to the wall going up, there were three officers in one unit, two line officers and one control officer. Tr., p. 65. After the wall went up there were less. In administrative segregation, there were still two line officers, but they had to share the control officer with the disciplinary unit. Tr., p. 66. Along with the separation of the two units, how the detainees were handled also changed. Prior to the separation, all detainees were hand-cuffed whenever they left their cells, even to the showers. Tr., p. 160. After the separation, the administrative segregation unit detainees were permitted to go outside their

17

cell without restraints.

Another factor that led to Detainee Irias being allowed access through the doors was the GEO policy to use a housing officer to give meal breaks to other officers. In August, 2015, one of the two officers assigned to each housing pod would be required to stop monitoring access through the security doors, transfer that duty to Central Control, and provide breaks. Tr., p. 76. This meant that instead of having each unit monitor their own doors, Central Control had to take over the entire facility. Lt. Anderson testified that this meant being responsible for hundreds of doors within the individual units as well as hundreds of doors in the building. Tr., p. 73-75. Shortly after the incident with Detainee Irias, GEO changed this policy so that, now, housing officers do not give meal breaks and they are able to constantly monitor the doors. Tr., p. 151-152.

A third policy consideration led to the errors in this case that GEO subsequently corrected. In August, 2015, the Central Control officers had to conduct the detainee count. That meant having one Central Control officer take over the monitoring duties of the Board in addition to their normal duties and helping with the count. Tr., p. 154. Shortly after the incident with Detainee Irias, GEO changed its policy so that the Central Control officer who conducts the count is relieved of duty and performs the count in the watch room. Tr., p. 133-134. This means that the responsibility for the board is not handed off to only one officer but remains with both Central Control officers.

In summary, these were the factors that led to the errors involving Detainee Irias:

➢ The Administrative Segregation Unit was brand new and had new procedures, which allowed Detainee Irias to shower without any restraints and without an escort, something that had never previously occurred.
➢ The incident occurred after the reception desk closed which transferred all

18

phone traffic to Officer Marquez.

➢ The incident occurred during a shift change which meant that it was the busiest time of day for people to be accessing secure doors as they entered or left the building.

➢ A meal break was taking place which meant that the monitoring duties for the housing units were transferred to Central Control, something that GEO does not do anymore.

➢ An emergency count was taking place which meant that all of the increased monitoring duties were transferred from the Central Control officer doing the count to Officer Marquez. GEO changed this policy and now the officer is relieved to do the count so there are always two officers manning the board.

➢ The emergency count also meant that radio, telephone and board traffic all increased as detainees were transferred to their housing units.

The position in which Officer Marquez was placed on August 5, 2015 was extraordinary. Given the fact that the administrative segregation unit was new, and that policies have since changed, it can be said that no one ever faced the type of environment and stress placed on Officer Marquez. And if that was not bad enough, Officer Marquez was eight months pregnant and experiencing complications. If there were ever a case which warranted consideration of mitigating circumstances, this is it.

### D.     The Employer Applied Their Policy Inconsistently.

It is a long-standing principle in arbitral law that an employer does not have just cause to discipline an employee if the discipline is inconsistently enforced. *Enterprise Wire*, 46 LA 359 (Daugherty); *SVT, LLC*, 125 LA 172 (Betts, 2008); *Commercial Warehouse Co*., 100 LA 247, 251 (Woolf, 1992). This is particularly true in termination cases since discharge is considered "industrial capital punishment" and employers are held to a higher standard of proof. *BLine Sys*., 94 LA 1047 (Fowler, 1990).

In this case, GEO attempted to overplay their hand and describe the incident in the worst possible terms. They characterized Detainee Irias as violent even though he

19

was not in the disciplinary segregation unit. They stressed that he was able to access

secure doors and only be a couple doors away from being outside the facility. They made

it sound as bad as possible. Yet, when Detainee Irias was able to access another door just

six weeks later, GEO did not discipline the Central Control officer who committed that

violation. If Officer Marquez's conduct is as bad as GEO proclaims it to be, why did the

other officer's conduct not even warrant counseling?

 The truth is that both incidents are teachable infractions. In both cases, the

officers' conduct could be corrected through progressive discipline and training. What is

impermissible is for GEO to arbitrarily terminate Officer Marquez and fail to discipline

the other officer who committed the exact same infraction.

### E.  Termination of Officer Marquez was Excessive.

 The parties agreed to language in the CBA that requires GEO to apply progressive

discipline for infractions which are not intentional. Section 14.1 demands that a "corrective

process of applying penalties short of dismissal" is required when conduct is of a less

serious nature. The article leaves open the possibility that GEO may terminate an employee

for a first offense, but identifies those types of infractions as ones with are committed with

intent and knowledge of the wrong, such as theft, fighting, harassment, refusal to follow

orders, etc. JX-1, Section 14.3. On the other hand, if an officer commits an unintentional

violation of a performance standard or procedure, progressive discipline short of dismissal

must be applied. JX-1, Section 14.4. The Union asks that the Arbitrator review the

mitigating factors identified above, recognize that Officer Marquez's conduct was not

intentional and interpret it in the light of just cause. *Kaiser Permanente*, 122 LA 1520

(Oberdank, 2006).  Under this analysis, the Arbitrator must find that the penalty imposed in this case is too severe; "Discipline may be considered excessive if it is disproportionate to the degree of the offense, if it is out of step with the principles of progressive discipline, if it is punitive rather than corrective, or if mitigating circumstances were ignored."  Elkouri & Elkouri, *How Arbitration Works*, p. 85.

Arbitrator Stix stated that "consideration has to be given to whether a lesser penalty will serve the employer's purpose, especially since discharge *** makes it difficult, if not impossible, for a person to obtain other employment."  *Yellow Freight Sys., Inc*., 103 LA 737 (Stix, 1994).  And the purpose of the company should be to correct the behavior, not punish the employee.  Therefore, the attitude of the employee must be taken into account to determine whether the employee is likely to commit the same infraction.  *King Soopers, Inc*., 101 LA 107 (Snider, 1993); *Frontier Airlines, Inc*., 61 LA 304, 314 (Kahn, 1973).

In this case, Officer Marquez is just beginning her career in law enforcement after obtaining her degree in criminal justice in 2012. She was placed in a position of extraordinary difficulty when she was asked to cover the Central Control access board alone during an emergency count and shift change, while handling all of the telephone traffic since the reception desk was closed, while taking on responsibility for the housing doors since the housing officers were giving meal breaks, and in addition to dealing with complications from being eight-months pregnant.  Officer Marquez did not choose to let a detainee through secure doors, it was an unintentional mistake, one that she could learn from. It is simply unfair to impose the stain of termination on Officer Marquez's record so early in her career when we consider that GEO created the situation that set her up to fail. The Union asks the Arbitrator to take these factors into account and order GEO to apply

21

progressive discipline, as it is required to do under the CBA.

## VI.     CONCLUSION.

The Union has proven that GEO bears some of the blame for Detainee Irias being able to access the secure doors. GEO put Officer Marquez in an extremely difficult position by having to handle all of the board traffic in addition to the radio and telephone calls, and helping out with an emergency count. GEO recognized their errors and corrected at least two policies that changed the way Central Control is run. Now, GEO makes sure that no officer is put in the same position that Officer Marquez was forced to endure. Lastly, Officer Marquez was suffering through difficulties with a late term pregnancy and is just beginning her career. It is unfair to her to saddle her with all the blame for this incident, tarnish her record, and ignore GEO's errors. Therefore, the Arbitrator must sustain the grievance, order GEO to reinstate Elizabeth Marquez to her former position and post with seniority, pay her back pay for all lost time, including lost benefits, and otherwise make her whole. The Union also requests that the Arbitrator retain jurisdiction to enforce such an award.

Respectfully submitted,

United Government Security
Officers of America, International Union

/s/ Robert B. Kapitan
Robert B. Kapitan (Oh. #0074327)
General Counsel
2879 Cranberry Highway
E. Wareham, MA 02538
Phone: (774) 678-0936
Fax: (774) 678-4658
rkapitan@ugsoa.com
Counsel for the UGSOA, Local 880

23